UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| AUBURN FOUNDRY, INC., ) | CASE NO. 04-10427 |
| ) | CHAPTER 11 |
| Debtor. ) | |

**EMERGENCY MOTION FOR ORDER (I) PURSUANT TO 11 U.S.C. § 363
AUTHORIZING INTERIM USE OF CASH COLLATERAL (II)
PROVIDING ADEQUATE PROTECTION REGARDING SAME; AND (III)
SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

Auburn Foundry, Inc., debtor-in-possession herein ("AFI" or the "Debtor"), by counsel, moves this Court for an interim order pursuant to 11 U.S.C. §§ 361 and 363 authorizing use of cash collateral, providing adequate protection regarding same, and scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) (the "Motion"), and in support thereof states:

**Preliminary Statement**

1.By this Motion, the Debtor seeks to use the cash collateral of the Senior Lenders as defined herein to fund the Debtor's normal operating expenses.

**Jurisdiction**

2.This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

3.The relief sought with this Motion is based on sections 361 and 363 of Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

## The Chapter 11 Reorganization Proceeding

4. On February 8, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5. The Debtor continues in possession of its property and in management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No trustee or examiner has been appointed herein. To date, no committee has been formed, informally or otherwise. In addition, the Debtor's prepetition senior secured lenders (the "Senior Lenders") and Subordinated Lenders (as defined herein) have been advised of this filing.

7. AFI is headquartered in Auburn, Indiana, and manufactures its products at two facilities in DeKalb County, Indiana. AFI owns each of these facilities.

8. AFI is a QS-9000 certified producer of high-quality iron castings. It provides a variety of gray iron and ductile iron castings for the automotive OEM market and the automotive after market. It also supplies the heavy truck industry as well as light trailer components, appliance parts, and castings for industrial and commercial applications.

9. The assets of AFI are subject to an alleged first priority lien in favor of Bank of America, National Association, acting as collateral agent for itself and GMAC Commercial Finance, LLC (collectively, the "Senior Lenders"). AFI is indebted to the Senior Lenders in the approximate amount of $26,253,599.05 (the "Senior Debt").

10. In addition to the debt owed the Senior Lenders, AFI is indebted to certain shareholders and/or affiliates of the Debtor (the "Subordinated Lenders"), in the approximate amount of $8,000,000 (the "Subordinated Debt").

11. This Court has jurisdiction of this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code.

### Relief Requested

12. By this motion, the Debtor seeks an order authorizing it to use the Senior Lenders' Cash Collateral pursuant to sections 361 and 363 of the Bankruptcy Code.

13. It is necessary for the survival of the Debtor's business and to protect its opportunity to reorganize that the Debtor be able to use the Cash Collateral to fund its operations. If the Debtor is not permitted to use the Cash Collateral, the Debtor will not be able to continue to operate. If the Debtor is unable to operate, some 570 employees will go unpaid and it is highly unlikely that the unsecured creditors will receive a distribution on their claims against the bankruptcy estate.

14. The Debtor requests that it be permitted to use the Cash Collateral in accordance with the budget (the "Budget") attached hereto as Exhibit A and incorporated herein by reference. The expenditures shown therein are the expenditures for which AFI requires use of cash collateral on an immediate, three week basis to maintain and preserve its business operations.

15. The Debtor's request should be granted because the Senior Lenders are adequately protected.

### Applicable Standard

16. Section 363(c) of the Bankruptcy Code provides that a debtor may not use cash collateral unless the entity with an interest in the cash collateral consents or the court authorizes

such use. At the request of the entity with an interest in the cash collateral, the court may condition the use of such cash collateral on the debtor providing adequate protection of the entity's interest in the cash collateral.

17.     Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in the value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property.

18.     "Adequate protection" is a flexible concept that requires a court to make decisions on a case by case basis. *See In re Gallegos Research Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995); *In re Plaza Family P'ship*, 95 B.R. 166, 171 (Bankr. E.D. Cal. 1989). In determining whether the protection provided is adequate, the "important question . . . is whether that interest, whatever it is, is being unjustifiably jeopardized." *In re Aqua Assoc.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991), *citing In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376, 386-89 (Bankr. E.D. Pa.), *aff'd*, 75 B.R. 819 (E.D. Pa. 1987); *In re Alyucan Interstate Corp.*, 12 B.R. 803, 809-12 (Bankr. D. Utah 1981).

19.     While the debtor has the burden to seek permission to use the cash collateral of the secured creditor and to prove that "adequate protection" exists for the creditor, it is the purported secured party or other entity asserting an interest in the alleged cash collateral that has the burden of proof on the issues of validity, priority or extent of such interest. *See* 11 U.S.C. § 363(o); *see also In re Grieves*, 81 B.R. 912, 960 (Bankr. N.D. Ind. 1987).

20.     The adequate protection standard is less strict for interim matters than for final matters, such as when a creditor may be saddled with a long-term plan without future redress. *See In re Sheehan*, 38 B.R. 859, 864 (Bankr. D.S.D. 1984).

### The Senior Lenders Are Adequately Protected

21.     The Senior Lenders are adequately protected (as defined in section 361 of the Bankruptcy Code) because (1) they will receive replacement liens to the extent that the use of the Cash Collateral will cause a decrease in the value of their interest in the Cash Collateral and (2) they will realize the indubitable equivalent of their interest in the Cash Collateral upon completion of reorganization.

22.     As adequate protection, the Debtor is willing to provide the Senior Lenders with replacement liens on the Debtors' postpetition assets, to the same extent, and with the same priority and validity, as their security interests in such assets prepetition, to the extent that use of Cash Collateral results in a decrease in the value of the Senior Lenders' interest in the Cash Collateral during the period of time that this Order is in effect, provided, however, that the replacement lien on cash shall extend only to the amount by which non-cash Cash Collateral is less than the amount of the prepetition revolving loan debt to the Senior Lenders.  Such replacement liens shall be subject to the fees and expenses of the Debtor's professionals, which are payable prior to the Senior Lenders' claims against the Debtor.  Such claims shall be imposed against the Senior Lenders' pre- and post-petition claims and collateral.

23.     "While adequate protection is required under section 362, 363, or 364 of the Bankruptcy Code of an interest of an entity in property, such adequate protection may be provided by providing to such entity an additional or replacement lien to the extent that such stay, use, lease, or grant results in a decrease in the value of such entity's interest in such

property." 11 U.S.C. § 361(2). The purpose of this method of providing adequate protection is to provide the protected entity with a means of realizing the value of the original property, if it should decline during the case, by granting an interest in additional property from whose value the entity may realize its loss. *See* H.R. Rep. No. 595, 95th Cong. 1st Sess. 338-40 (1977).

24. In addition, the use and expenditure of the Cash Collateral in the Debtor's business operations provides the Senior Lenders with adequate protection because such use maximizes the Debtor's going concern value, allows the Debtor to operate profitably and greatly improves the likelihood that the Senior Lenders will realize the value or the indubitable equivalent of its interest in the Cash Collateral.

25. An entity is adequately protected if it will realize the indubitable equivalent of its collateral upon completion of reorganization. *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 377 (1988); *In re Sherwood Square Associates*, 87 B.R. 388, 393-94 (Bankr. D. Md. 1988).

26. If the Debtor is permitted to operate, the Senior Lenders' positions will improve as the value of the Debtor's assets against which the Senior Lenders' alleged liens attach will increase.

27. It is essential to the preservation of the Senior Lenders' collateral and to an eventual distribution to unsecured creditors that the Debtor continue as a going concern. If the Debtor is forced to cease operations as a result of a lack of working capital, the value of the Senior Lenders' collateral will dissipate. Because continuing to operate as a going concern protects the value of the Senior Lenders' collateral, the use of the Cash Collateral in the Debtor's normal operations provides sufficient adequate assurance to the Senior Lenders.

28.     In addition, the Debtor will continue to maintain insurance coverage on its tangible assets, will provide to the Senior Lenders borrowing base certificates on a weekly basis, and will provide to the Senior Lenders cash receipts and cash disbursements reports on a monthly basis.

## Procedure

29.     The Debtor requests a preliminary hearing as soon as the Court's calendar will permit to consider the Debtor's request to use cash collateral consistent with the Budget.  The Debtor requests that the Court set a final hearing to consider authorization to use cash collateral thereafter.

30.     The Debtor has provided notice of this Motion via first class mail or electronic filing to (i) the Office of United States Trustee for the Northern District of Indiana, (ii) counsel to the Senior Lenders and the Subordinated Lenders, and (iii) the Debtor's twenty (20) largest creditors.  The Debtor submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

31.     No prior application for the relief requested herein has been made to this or any other court.

## Conclusion

32.     The Senior Lenders are adequately protected (as defined in section 361 of the Bankruptcy Code) because (1) they will receive replacement liens to the extent that the use of the Cash Collateral will cause a decrease in the value of their interest in the Cash Collateral and (2) they will realize the indubitable equivalent of their interest in the Cash Collateral upon completion of reorganization.  Therefore, the Debtor's request for authority to use the Cash Collateral should be granted.

WHEREFORE, the Debtor requests entry of an order of this Court substantially in the form annexed hereto granting it the relief requested by this Motion and such other and further relief as is just and proper.

                        BAKER & DANIELS

                        By:  /s/ John R Burns, III
                              John R Burns, III (#3016-02)
                              Mark A. Werling (#20426-02)
                              111 East Wayne Street, Suite 800
                              Fort Wayne, Indiana 46802
                              Telephone:  (260) 424-8000
                              Facsimile:  (260) 460-1700
                              john.burns@bakerd.com
                              mark.werling@bakerd.com

                        ATTORNEYS FOR THE DEBTOR,
                        AUBURN FOUNDRY, INC.

Auburn Foundry
Cash Use Analysis First 3 Weeks of Bankruptcy
As of Feb 6, 2004

| Week ending dates | Week 1 | Week 2 | Week 3 |
|---|---|---|---|
| **Sales for week** | | | |
| Pounds | 4000 | 4000 | 4000 |
| Dollars | $1,360 | $1,360 | $1,360 |
| Collections | $1,300 | $1,350 | $1,500 |
| **Mandatory payments** | | | |
| Scrap - COD | 557 | 557 | 557 |
| Hourly payroll | 320 | 275 | 275 |
| Salary payroll | 240 | | 240 |
| Payroll taxes | 100 | | |
| Insurance | 100 | 100 | 100 |
| Utilities | 150 | 150 | 175 |
| Must mails - payroll w/h etc | 40 | 40 | 40  0 |
| **Key Ingredient Supplier - Paid on COD** | | | |
| Miller & Co - Chemicals | 9 | 9 | 9 |
| Dauber - Silicon Carbide | 39 | 39 | 39 |
| Great Lakes Carbon - Carbon | 9 | 9 | 9 |
| Unimin - Bond | 31 | 31 | 31 |
| Elkem - Supercede | | 16 | 0 |
| Fairmont Minerals - Sand | 11 | 11 | 11 |
| Ashland - Chemicals | 8 | 8 | 8 |
| Wheelabrator - Shot | 8 | | 8 |
| Metaltech - Shot | 8 | 8 | 8 |
| CC Metals - FeSi | 12 | | |
| Indiana Refractory - Repair materials | 8 | 8 | 8 |
| Empire Refractory - Repair materials | 4 | 4 | 4 |
| Refco - Repair materials | | 9 | |
| Vesuvius - Stopper rods | | | 6 |
| Midwest Instrument - Temp probes | 3 | 3 | 3 |
| Heraes - Temp probes | | | 2 |
| Estimated new needs for other vendors - freight etc. | 50 | 50 | 50 |
| **Total payments** | 1,707 | 1,327 | 1,583 |
| Net cash proceeds | ($407) | $24 | ($83) |
| Cummulative Cash | ($407) | ($383) | ($466) |

**Impact on borrowing base - normal calculations**

| | | | |
|---|---|---|---|
| Sales | $1,360 | $1,360 | $1,360 |
| Less receipts | ($1,300) | ($1,350) | ($1,500) |
| Net change in A/R | $60 | $10 | ($140) |
| Cummulative change in A/R | $60 | $70 | ($70) |

Assumptions:
1. No deposit yet for utilities
2. Take 80 hourly people out immediately - impact on second week of cash
3. Salary to include severance
4. Benefits ( ie insurance ) to continue - funding for new trust on Workemens Comp not included
5. Scrap costs assumed at $265/ton
6. Assumes no price increase from other vendors

**EXHIBIT A**