# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF INDIANA

IN RE:                      )
                          )
AUBURN FOUNDRY, INC.,      )     CASE NO. 04-10427
                          )     (Chapter 11)
          Debtor.       )

### OBJECTION OF BANK OF AMERICA, N.A., TO DEBTOR'S EMERGENCY MOTION SEEKING A PRELIMINARY ORDER AUTHORIZING THE USE OF CASH COLLATERAL

Bank of America, N.A., a secured creditor herein ("BofA"), by and through its attorneys, hereby submits this objection (the "Objection") to the emergency motion of Auburn Foundry, Inc., debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Case"), seeking a preliminary order authorizing the use of cash collateral (the "Motion").[1]  In support hereof, BofA respectfully represents as follows:

### Background

1.      On February 8, 2004 (the "Petition Date"), the Debtor commenced this Case by filing a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code.

2.      Since that time, the Debtor has continued in possession of its property and has operated and managed its business, as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  No trustee, examiner or official committee of unsecured creditors has been appointed in this case.

---

[1]    Although the Debtor informed BofA of the bankruptcy filing and its intention to seek the use of cash collateral, the Debtor has not provided BofA with the Motion or any of the exhibits thereto.

4.      Prior to the Petition Date, BofA, as agent, GMAC Business Credit LLC, as co-agent and certain other financial institutions (collectively, the "Lenders") established loan facilities (the "Pre-Petition Credit Facilities") with Auburn, as borrower.  The Lenders and Auburn (the "Borrower"), are party to that certain Credit Agreement, dated as of April 10, 2000 (as amended, supplemented or otherwise modified prior to the commencement of this chapter 11 case, the "Pre-Petition Credit Agreement") and all collateral and ancillary documents executed in connection therewith (the "Pre-Petition Loan Documents").  A true and correct copy of the Pre-Petition Credit Agreement  is attached hereto as <u>Exhibit A</u> and incorporated herein by reference. On February 6, 2004, shortly before the Petition Date,  $11,211,700.24 was outstanding under a revolving line of credit including $1,021,096.00  on an undrawn letter of credit, and $12,410,722.74 was owing under a term note, totaling $23,622,422.98 owing  under the Pre-petition Credit Facilities (plus continuing interest, fees, charges, costs and other expenses). Contemporaneously herewith, BofA has filed a proof of claim setting forth in further detail all such amounts owed to BofA.

## I.  LACK OF MEANINGFUL NOTICE

5.      Bankruptcy Rule 4001(b)(1) provides, in relevant part, that "[a] motion for authorization to use cash collateral shall be … served on any entity which has an interest in the cash collateral…."  <u>See</u> Fed. R. Bankr. P. 4001(b)(1).  In order to satisfy due process requirements, such notice is sufficient only if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  <u>See</u> <u>In re Grand Union Co.</u>, 204 B.R. 864, 871 (Bankr. D. Del. 1997) (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).

6.      The Debtor has yet to file the Motion and, despite BofA's request for the same, has not provided BofA with either a copy of the Motion or a proposed cash collateral budget. This last minute notice is not sufficient to afford BofA an opportunity to meaningfully evaluate the relief requested in the Motion and, as such, the requested relief should not be granted.

## II.  **BANK OF AMERICA DOES NOT CONSENT TO THE USE OF CASH COLLATERAL AND IS NOT ADEQUATELY PROTECTED**

7.       A debtor-in-possession may not use cash collateral without the consent of a secured creditor absent Bankruptcy Court approval, and the Court cannot approve the use of cash collateral unless the interests of the secured creditor are adequately protected.

8.       Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor is prohibited from using cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use … in accordance with the provisions of this section."  See 11 U.S.C. § 363(c)(2).  See In re Cross Baking Co, 818 F.2d 1027, (1st Cir. 1987); In re Zeeway Corp., 71 B.R. 210, 211 (B.A.P. 9th Cir. 1987); In re Safeguard Self-Storage Trust, 2 F.3d 967, 969 (9th Cir. 1993); In re Colonial Center, Inc., 156 B.R. 452, 463 (Bankr. E.D. Pa. 1993).

9.       Further, section 361 of the Bankruptcy Code provides, in relevant part, that "[w]hen adequate protection is required… such adequate protection may be provided by … a cash payment or periodic cash payments … an additional or replacement lien … or granting such other relief … as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  See 11 U.S.C. § 361.  BofA is entitled to adequate protection as a matter of right, not merely as a matter of discretion to ensure that as a secured creditor, it does not suffer a decline in the value of its interest in the estate's property.  In re Townley, 256 B.R. 697, 700 (Bankr. D.N.J. 2000)("The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment."); In re Goode, 253 B.R. 584 (Bankr. E.D. Tex. 1999)(debtor's need for funds could not substitute for adequate protection).

10.       Moreover, the ultimate burden of proof on the issue of adequate protection lies with the debtor seeking permission to use the creditor's cash collateral.  See  11 U.S.C. § 363(O); In re JKJ Chevrolet, Inc., 190 B.R. 543, 546 (Bankr. E.D. Va. 1995); First Bank of Miller v. Wieseler, 45 B.R. 871, 876 (D.S.D. 1985)("The debtor's standard in cash collateral cases is a high one.").

11.     In ruling on Debtor's Motion for authority to use cash collateral, this court should not focus on "whether or not it is in the best interest of the Debtor and the secured creditor, but whether or not the Debtor carries its burden to show that its use of the cash collateral will not reduce the value of the creditor's interest in the property without providing adequate protection-- the indubitable equivalent of the creditor's interest in the property." In re Glasstream Boats, Inc., 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990); See In re Waste Conversion Technolgies, Inc., 205 B.R. 1004, 1007 (D. Conn. 1997)("Such protection must not be illusory and, particularly in the context of the use of cash collateral, must be "of the most indubitable equivalence."). As the Court in In re Future Energy Corp. stated, the indubitable equivalence standard is an exacting one:

> Not only must the Court conclude that the equivalent will be "realized", but that conclusion must be "indubitable." One is impressed with the burden that such a test involves when one considers that "indubitable" connotes a conclusion more certain than proof by a preponderance of the evidence and even beyond "a reasonable doubt"; the conclusion must be *in* dubitable. If reasonable people can differ on the valuation of property, the valuation might be proved by a preponderance of the evidence but the conclusion would not be "indubitable." It is hard to imagine an appraisal that is "indubitable."

See In re Future Energy Corp., 83 B.R. 470, 495 (Bankr. S.D. Oh. 1989).

12.     The Lenders do not consent to the use of cash collateral on an interim basis. More importantly, the Debtor has yet to meet its burden that it is able to adequately protect the Lenders.

13.     Finally, Bankruptcy Rule 4001(b)(2) only permits use of cash collateral "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Courts which have interpreted this phrase, whether in the context of emergency relief sought with respect to the use of cash collateral or obtaining borrowings under a debtor-in-possession facility, have authorized only an amount to meet the actual and necessary operating expenses of the debtor. See In re Ames Dep't. Stores, Inc., 115 B.R. 34 (Bankr. S.D.N.Y. 1990). The Debtor

has yet to demonstrate that the failure to use of the Lenders' cash collateral will result in immediate and irreparable harm to the Debtor and as such, such use should not be permitted.

### III.  RESERVATION OF RIGHTS

14.     Because the Lenders have not seen the Motion, BofA hereby reserves the right to object to the Motion on any grounds, regardless of whether such grounds are set forth herein.

WHEREFORE, BofA respectfully requests that this Court (i) deny the Motion or, in the alternative, continue the hearing on the Motion to give the Lenders an adequate amount of time to evaluate the relief requested in the Motion and (ii) grant such other relief as this Court deems necessary.

February 9,  2004                              Respectfully submitted,


/s/_____Grant F. Shipley_____
Grant F. Shipley
SHIPLEY & ASSOCIATES
233 West Baker Street
Fort Wayne, Indiana  46802
(260) 422-2700

and

Josef S. Athanas
Caroline A. Reckler
LATHAM & WATKINS, LLP
233 South Wacker Drive
Sears Tower, Suite 5800
Chicago, Illinois  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Attorneys of Bank of America, N.A.

<u>Exhibit A</u>

Credit Agreement