request the Bank to make a Swing-Line Loan pursuant to the terms of Section 2.2(h) in the amount of the requested Borrowing; provided, however, that if the Bank declines in its sole discretion to make a Swing-Line Loan pursuant to Section 2.2(h), the Agent shall elect to have the terms of Section 2.2(g) apply to such requested Borrowing.

(g)     Making of Revolving Loans.  In the event that the Agent shall elect to have the terms of this Section 2.2(g) apply to a requested Borrowing as described in Section 2.2(f), then promptly after receipt of a Notice of Borrowing or telephonic notice pursuant to Section 2.2(b), the Agent shall notify the Lenders by telecopy, telephone or other similar form of transmission, of the requested Borrowing. Each Lender shall make the amount of such Lender's Pro Rata Share of the requested Borrowing available to the Agent in immediately available funds, to such account of the Agent as the Agent may designate, not later than 1:00 p.m. (Chicago time), on the Funding Date applicable thereto. After the Agent's receipt of the proceeds of such Revolving Loans, the Agent shall make the proceeds of such Revolving Loans available to the Borrower on the applicable Funding Date by transferring same day funds equal to the proceeds of such Revolving Loans received by the Agent to the account of the Borrower, designated in writing by the Borrower and acceptable to the Agent; provided, however, subject to Section 2.2(b)(2), that the amount of Revolving Loans so made on any date shall in no event exceed the Availability on such date.

(1)     Unless the Agent receives notice from a Lender on or prior to the Closing Date or, with respect to any Borrowing after the Closing Date, at least one Business Day prior to the date of such Borrowing, that such Lender will not make available as and when required hereunder to the Agent for the account of the Borrower the amount of that Lender's Pro Rata Share of the Borrowing, the Agent may assume that each Lender has made such amount available to the Agent in immediately available funds on the Funding Date and the Agent may (but shall not be so required), in reliance upon such assumption, make available to the Borrower on such date a corresponding amount. If and to the extent any Lender shall not have made its full amount available to the Agent in immediately available funds and the Agent in such circumstances has made available to the Borrower such amount, that Lender shall on the Business Day following such Funding Date make such amount available to the Agent, together with interest at the Federal Funds Rate for each day during such period. A notice by the Agent submitted to any Lender with respect to amounts owing under this subsection shall be conclusive, absent manifest error. If such amount is so made available, such payment to the Agent shall constitute such Lender's Revolving Loan for all purposes of this Agreement. If such amount is not made available to the Agent on the Business Day following the Funding Date, the Agent will notify the Borrower of such failure to fund and, upon demand by the Agent, the Borrower shall pay such amount to the Agent for the Agent's account, together with interest thereon for each day elapsed since the date of such Borrowing, at a rate per annum equal to the Interest Rate applicable at the time to the Revolving Loans comprising such Borrowing. The failure of any Lender to make any Revolving Loan on any Funding Date (any such Lender, prior to the cure of such failure, being hereinafter referred to as a "Defaulting Lender") shall not relieve any other Lender of any obligation hereunder to make a Revolving Loan on such Funding Date, but no Lender shall be responsible for the failure of any other Lender to make the Revolving Loan to be made by such other Lender on any Funding Date.

(2) The Agent shall not be obligated to transfer to a Defaulting Lender any payments made by the Borrower to the Agent for the Defaulting Lender's benefit; nor shall a Defaulting Lender be entitled to the sharing of any payments hereunder. Amounts payable to a Defaulting Lender shall instead be paid to or retained by the Agent. The Agent may hold and, in its discretion, re-lend to the Borrower the amount of all such payments received or retained by it for the account of such Defaulting Lender. Any amounts so re-lent to the Borrower shall bear interest at the rate applicable to Prime Rate Revolving Loans and for all other purposes of this Agreement shall be treated as if they were Revolving Loans; provided, however, that for purposes of voting or consenting to matters with respect to the Loan Documents and determining Pro Rata Shares, such Defaulting Lender shall be deemed not to be a "Lender". Until a Defaulting Lender cures its failure to fund its Pro Rata Share of any Borrowing (A) such Defaulting Lender shall not be entitled to any portion of the Unused Line Fee and (B) the Unused Line Fee shall accrue in favor of the Lenders which have funded their respective Pro Rata Shares of such requested Borrowing and shall be allocated among such performing Lenders ratably based upon their relative Commitments. This Section shall remain effective with respect to such Lender until such time as the Defaulting Lender shall no longer be in default of any of its obligations under this Agreement. The terms of this Section shall not be construed to increase or otherwise affect the Commitment of any Lender, or relieve or excuse the performance by the Borrower of its duties and obligations hereunder.

(h) Making of Swing-Line Loans.

(1) In the event the Agent shall elect, with the consent of the Bank, to have the terms of this Section 2.2(h) apply to a requested Borrowing as described in Section 2.2(f), the Bank shall make a Revolving Loan in the amount of such Borrowing (any such Revolving Loan made solely by the Bank pursuant to this Section 2.2(h) being referred to as a "Swing-Line Loan" and such Revolving Loans being referred to collectively as "Swing-Line Loans") available to the Borrower on the Funding Date applicable thereto by transferring same day funds to an account of the Borrower, designated in writing by the Borrower and acceptable to the Agent. Each Swing-Line Loan shall be subject to all the terms and conditions applicable to other Revolving Loans except that all payments thereon shall be payable to the Bank solely for its own account (and for the account of the holder of any participation interest with respect to such Revolving Loan). The Agent shall not request the Bank to make any Swing-Line Loan if (A) the Agent shall have received written notice from any Lender that one or more of the applicable conditions precedent set forth in ARTICLE 10 will not be satisfied on the requested Funding Date for the applicable Borrowing, (B) the requested Borrowing would exceed the Availability on such Funding Date, or (C) the requested Borrowing would exceed the Swing-Line Sublimit. The Bank shall not otherwise be required to determine whether the applicable conditions precedent set forth in ARTICLE 10 have been satisfied or the requested Borrowing would exceed the Availability on the Funding Date applicable thereto prior to making, in its sole discretion, any Swing-Line Loan.

(2) The Swing-Line Loans shall be secured by the Agent's Liens in and to the Collateral, shall constitute Revolving Loans and Obligations hereunder, and shall bear interest at the rate applicable to the Revolving Loans from time to time.

(3)     Without the oral consent of the Required Lenders, no Swing-Line Loan shall be made during the continuation of a Default or Event of Default.

(i)     <u>Agent Advances</u>.

(1) Subject to the limitations set forth in the provisos contained in this <u>Section 2.2(i)</u>, the Agent is hereby authorized by the Borrower and the Lenders, from time to time in the Agent's sole discretion, (A) after the occurrence of a Default or an Event of Default, or (B) at any time that any of the other applicable conditions precedent set forth in <u>ARTICLE 10</u> have not been satisfied, to make Prime Rate Revolving Loans to the Borrower on behalf of the Lenders which the Agent, in its reasonable business judgment, deems necessary or desirable (1) to preserve or protect the Collateral, or any portion thereof, (2) to enhance the likelihood of, or maximize the amount of, repayment of the Loans and other Obligations, or (3) to pay any other amount chargeable to the Borrower pursuant to the terms of this Agreement, including costs, fees and expenses as described in <u>Section 15.7</u> (any of the advances described in this <u>Section 2.2(i)</u> being hereinafter referred to as "Agent Advances"); <u>provided</u>, that the Required Lenders may at any time revoke the Agent's authorization contained in this <u>Section 2.2(i)</u> to make Agent Advances, any such revocation to be in writing and to become effective prospectively upon the Agent's receipt thereof;

(2)     The Agent Advances shall be repayable on demand and secured by the Agent's Liens in and to the Collateral, shall constitute Revolving Loans and Obligations hereunder, and shall bear interest at the rate applicable to Prime Rate Revolving Loans from time to time. The Agent shall notify each Lender in writing of each such Agent Advance.

(j)     <u>Settlement</u>.  It is agreed that each Lender's funded portion of the Revolving Loans is intended by the Lenders to be equal at all times to such Lender's Pro Rata Share of the outstanding Revolving Loans. Notwithstanding such agreement, the Agent, the Bank, and the other Lenders agree (which agreement shall not be for the benefit of or enforceable by the Borrower) that in order to facilitate the administration of this Agreement and the other Loan Documents, settlement among them as to the Revolving Loans, the Swing-Line Loans and the Agent Advances shall take place on a periodic basis in accordance with the following provisions:

(1)     The Agent shall request settlement ("Settlement") with the Lenders on at least a weekly basis, or on a more frequent basis if so determined by the Agent, (A) on behalf of the Bank, with respect to each outstanding Swing-Line Loan, (B) for itself, with respect to each Agent Advance, and (C) with respect to collections received, in each case, by notifying the Lenders of such requested Settlement by telecopy, telephone or other similar form of transmission, of such requested Settlement, no later than 11:00 a.m. (Chicago time) on the date of such requested Settlement (the "Settlement Date"). Each Lender (other than the Bank, in the case of Swing-Line Loans and the Agent in the case of Agent Advances) shall make the amount of such Lender's Pro Rata Share of the outstanding principal amount of the Swing-Line Loans and Agent Advances with respect to which Settlement is requested available to the Agent, to such account of the Agent as the Agent may designate, not later than 1:00 p.m. (Chicago time), on the Settlement Date applicable thereto, which may occur before or after the occurrence or during the continuation of a Default or an Event of Default and whether or not the applicable

conditions precedent set forth in ARTICLE 10 have then been satisfied. Such amounts made available to the Agent shall be applied against the amounts of the applicable Swing-Line Loan or Agent Advance and, together with the portion of such Swing-Line Loan or Agent Advance representing the Bank's Pro Rata Share thereof, shall constitute Revolving Loans of such Lenders. If any such amount is not made available to the Agent by any Lender on the Settlement Date applicable thereto, the Agent shall (A) on behalf of the Bank, with respect to each outstanding Swing-Line Loan, and (B) for itself, with respect to each Agent Advance be entitled to recover such amount on demand from such Lender together with interest thereon at the Federal Funds Rate for the first three (3) days from and after the Settlement Date and thereafter at the Interest Rate then applicable to the Revolving Loans.

(2) Notwithstanding the foregoing, not more than one (1) Business Day after demand is made by the Agent (whether before or after the occurrence of a Default or an Event of Default and regardless of whether the Agent has requested a Settlement with respect to a Swing-Line Loan or Agent Advance), each other Lender (A) shall irrevocably and unconditionally purchase and receive from the Bank or the Agent, as applicable, without recourse or warranty, an undivided interest and participation in such Swing-Line Loan or Agent Advance equal to such Lender's Pro Rata Share of such Swing-Line Loan or Agent Advance and (B) if Settlement has not previously occurred with respect to such Swing-Line Loans or Agent Advances, upon demand by Bank or Agent, as applicable, shall pay to Bank or Agent, as applicable, as the purchase price of such participation an amount equal to one-hundred percent (100%) of such Lender's Pro Rata Share of such Swing-Line Loans or Agent Advances. If such amount is not in fact made available to the Agent by any Lender, the Agent shall be entitled to recover such amount on demand from such Lender together with interest thereon at the Federal Funds Rate for the first three (3) days from and after such demand and thereafter at the Interest Rate then applicable to Prime Rate Revolving Loans.

(3) From and after the date, if any, on which any Lender purchases an undivided interest and participation in any Swing-Line Loan or Agent Advance pursuant to clause (ii) preceding, the Agent shall promptly distribute to such Lender, such Lender's Pro Rata Share of all payments of principal and interest and all proceeds of Collateral received by the Agent in respect of such Swing-Line Loan or Agent Advance.

(4) Between Settlement Dates, the Agent, to the extent no Agent Advances are outstanding, may pay over to the Bank any payments received by the Agent, which in accordance with the terms of this Agreement would be applied to the reduction of the Revolving Loans, for application to the Bank's Revolving Loans including Swing-Line Loans. If, as of any Settlement Date, collections received since the then immediately preceding Settlement Date have been applied to the Bank's Revolving Loans (other than to Swing-Line Loans or Agent Advances in which such Lender has not yet funded its purchase of a participation pursuant to Section 2.2(j)(2) above), as provided for in the previous sentence, the Bank shall pay to the Agent for the accounts of the Lenders, to be applied to the outstanding Revolving Loans of such Lenders, an amount such that each Lender shall, upon receipt of such amount, have, as of such Settlement Date, its Pro Rata Share of the Revolving Loans. During the period between Settlement Dates, the Bank with respect to Swing-Line Loans, the Agent with respect to Agent Advances, and each Lender with respect to the Revolving Loans other than Swing-Line Loans and Agent Advances, shall be entitled to interest at the applicable rate or rates payable under this

Agreement on the actual average daily amount of funds employed by the Bank, the Agent and the other Lenders.

(k) <u>Notation</u>. The Agent shall record on its books the principal amount of the Revolving Loans owing to each Lender, including the Swing-Line Loans owing to the Bank, and the Agent Advances owing to the Agent, from time to time. In addition, each Lender is authorized, at such Lender's option, to note the date and amount of each payment or prepayment of principal of such Lender's Revolving Loans in its books and records, including computer records, such books and records constituting presumptive evidence, absent manifest error, of the accuracy of the information contained therein.

(l) <u>Lenders' Failure to Perform</u>. All Revolving Loans (other than Swing-Line Loans and Agent Advances) shall be made by the Lenders simultaneously and in accordance with their Pro Rata Shares. It is understood that (i) no Lender shall be responsible for any failure by any other Lender to perform its obligation to make any Revolving Loans hereunder, nor shall any Commitment of any Lender be increased or decreased as a result of any failure by any other Lender to perform its obligation to make any Revolving Loans hereunder, (ii) no failure by any Lender to perform its obligation to make any Revolving Loans hereunder shall excuse any other Lender from its obligation to make any Revolving Loans hereunder, and (iii) the obligations of each Lender hereunder shall be several, not joint and several.

2.3  <u>Term Loans A</u>.

(a) <u>Amounts of Term Loans A</u>. Each Lender severally agrees to make a term loan (any such term loan being referred to as a "Term Loan A" and such term loans being referred to collectively as the "Term Loans A") to the Borrower on the Closing Date, upon the satisfaction of the conditions precedent set forth in <u>ARTICLE 10</u>, in an amount equal to such Lender's Pro Rata Share of Twenty Two Million Dollars ($22,000,000). The Term Loans A shall initially be Prime Rate Term Loans A.

(b) <u>Making of Term Loans A</u>. Each Lender shall make the amount of such Lender's Term Loan A available to the Agent in same day funds, to such account of the Agent as the Agent may designate, not later than 1:00 p.m. (Chicago time) on the Closing Date. After the Agent's receipt of the proceeds of such Term Loans A, upon satisfaction of the conditions precedent set forth in <u>ARTICLE 10</u>, the Agent shall make the proceeds of such Term Loans A available to the Borrower on such Funding Date by transferring same day funds equal to the proceeds of such Term Loans A received by the Agent to an account of the Borrower designated in writing by the Borrower or as the Borrower shall otherwise instruct in writing.

(c) <u>Term Loan Notes A</u>. The Borrower shall execute and deliver to the Agent on behalf of each Lender, on the Closing Date, a promissory note, substantially in the form of <u>Exhibit A-1</u> attached hereto and made a part hereof (such promissory notes, together with any new notes issued pursuant to <u>Section 13.2(a)</u> upon the assignment of any portion of any Lender's Term Loan, being hereinafter referred to collectively as the "Term Loan Notes A" and each of such promissory notes being hereinafter referred to individually as a "Term Loan Note A"), to evidence such Lender's Term Loan A, in an original principal amount equal to the amount of such Lender's Pro Rata Share of Twenty Two Million Dollars ($22,000,000) and with other

appropriate insertions. The principal amount of the Term Loan Notes A delivered to the Agent on behalf of each Lender shall be dated the Closing Date and stated to amortize in sixty (60) monthly installments. Each of the first thirty (30) installments of principal shall be in an amount equal to such Lender's Pro Rata Share of $282,051.28 and shall be payable on the first day of each month, commencing on October 1, 2000, and ending on March 1, 2003. Each of the thirty-first (31st) through the fifty-ninth (59th) installments of principal shall be in an amount equal to such Lender's Pro Rata Share of $463,869.46 and shall be payable on the first day of each month, commencing on April 1, 2003, and ending on August 1, 2005. The final installment of principal shall be in an amount equal to such Lender's Pro Rata Share of the then remaining principal balance of the Term Loan Note A, and shall be payable on September 1, 2006. Each such installment shall be payable to the Agent for the account of the applicable Lender. Notwithstanding the foregoing, if not sooner paid, the entire unpaid principal balance of the Term Loan A shall be due and payable in full on the Termination Date.

(d)   Notation and Endorsement. The Agent shall record on its books the principal amount of the Term Loans A owing to each Lender from time to time. In addition, each Lender is authorized, at such Lender's option, to note the date and amount of each payment or prepayment of principal of such Lender's Term Loans A in its books and records, such books and records constituting rebuttably presumptive evidence, absent manifest error, of the accuracy of the information contained therein. Prior to the transfer of a Term Loan Note A, the applicable Lender shall endorse on the reverse side thereof the outstanding principal balance of the Term Loan A evidenced thereby. Failure by such Lender to make such notation or endorsement shall not affect the obligations of the Borrower under such Term Loan Note A or any of the other Loan Documents.

2.4   Term Loans B.

(a)   Amounts of Term Loans B. Each Lender severally agrees to make a term loan (any such term loan being referred to as a "Term Loan B" and such term loans being referred to collectively as the "Term Loans B") to the Borrower on the Closing Date, upon the satisfaction of the conditions precedent set forth in ARTICLE 11, in an amount equal to such Lender's Pro Rata Share of Six Million Dollars ($6,000,000). The Term Loans B shall initially be Prime Rate Term Loans B.

(b)   Making of Term Loans B. Each Lender shall make the amount of such Lender's Term Loan B available to the Agent in same day funds, to such account of the Agent as the Agent may designate, not later than 1:00 p.m. (Chicago time) on the Closing Date. After the Agent's receipt of the proceeds of such Term Loans B, upon satisfaction of the conditions precedent set forth in ARTICLE 10, the Agent shall make the proceeds of such Term Loans B available to the Borrower on such Funding Date by transferring same day funds equal to the proceeds of such Term Loans B received by the Agent to an account of the Borrower designated in writing by the Borrower or as the Borrower shall otherwise instruct in writing.

(c)   Term Loan Notes B. The Borrower shall execute and deliver to the Agent on behalf of each Lender, on the Closing Date, a promissory note, substantially in the form of Exhibit A-2 attached hereto and made a part hereof (such promissory notes, together with any new notes issued pursuant to Section 13.2(a) upon the assignment of any portion of any Lender's

{KAC1124.DOC;10}                                35

Term Loan B, being hereinafter referred to collectively as the "Term Loan Notes B" and each of such promissory notes being hereinafter referred to individually as a "Term Loan Note B"), to evidence such Lender's Term Loan B, in an original principal amount equal to the amount of such Lender's Pro Rata Share of Six Million Dollars ($6,000,000) and with other appropriate insertions. The principal amount of the Term Loan Notes B delivered to the Agent on behalf of each Lender shall be dated the Closing Date and stated to amortize in thirty-three (33) monthly installments. Each of the first thirty-two (32) installments of principal shall be in an amount equal to such Lender's Pro Rata Share of $181,818.18 and shall be payable on the first day of each month, commencing on July 1, 2000 and ending on February 1, 2003, and the final installment of principal shall be in an amount equal to such Lender's Pro Rata Share of the then remaining principal balance of the Term Loan Notes B, and shall be payable on March 1, 2003. Each such installment shall be payable to the Agent for the account of the applicable Lender. Notwithstanding the foregoing, if not sooner paid, the entire unpaid principal balance of the Term Loan B shall be due and payable in full on the Termination Date.

(d) <u>Notation and Endorsement</u>. The Agent shall record on its books the principal amount of the Term Loans B owing to each Lender from time to time. In addition, each Lender is authorized, at such Lender's option, to note the date and amount of each payment or prepayment of principal of such Lender's Term Loans B in its books and records, such books and records constituting rebuttably presumptive evidence, absent manifest error, of the accuracy of the information contained therein. Prior to the transfer of a Term Loan Note B, the applicable Lender shall endorse on the reverse side thereof the outstanding principal balance of the Term Loan B evidenced thereby. Failure by such Lender to make such notation or endorsement shall not affect the obligations of the Borrower under such Term Loan Note B or any of the other Loan Documents.

2.5    <u>Letters of Credit</u>.

(a) <u>Agreement to Issue or Cause To Issue</u>. Subject to the terms and conditions of this Agreement, and in reliance upon the representations and warranties of the Borrower herein set forth, the Agent agrees (i) to cause the Letter of Credit Issuer to issue for the account of the Borrower one or more commercial/documentary and standby letters of credit ("Letter of Credit") and/or (ii) to provide credit support or other enhancement to a Letter of Credit Issuer acceptable to Agent, which issues a Letter of Credit for the account of the Borrower (any such credit support or enhancement being herein referred to as "Credit Support") in accordance with this <u>Section 2.5</u> from time to time during the term of this Agreement.

(b) <u>Amounts; Outside Expiration Date</u>. The Agent shall not have any obligation to take steps to issue or cause to be issued any Letter of Credit or to provide Credit Support for any Letter of Credit at any time if: (i) the maximum face amount of the requested Letter of Credit is greater than the Unused Letter of Credit Subfacility at such time; (ii) the maximum undrawn amount of the requested Letter of Credit and all commissions, fees, and charges due from the Borrower in connection with the opening thereof exceed the Availability at such time; or (iii) such Letter of Credit has an expiration date later than thirty (30) days prior to the Stated Termination Date or more than twelve (12) months from the date of issuance for standby letters of credit and 180 days for merchandise letters of credit.

(c)  <u>Other Conditions</u>.  In addition to being subject to the satisfaction of the applicable conditions precedent contained in <u>ARTICLE 10</u>, the obligation of the Agent to issue or to cause to be issued any Letter of Credit or to provide Credit Support for any Letter of Credit is subject to the following conditions precedent having been satisfied in a manner reasonably satisfactory to the Agent:

(1)  The Borrower shall have delivered to the Letter of Credit Issuer, at such times and in such manner as such Letter of Credit Issuer may prescribe, an application in form and substance satisfactory to such Letter of Credit Issuer and reasonably satisfactory to the Agent for the issuance of the Letter of Credit and such other documents as may be required pursuant to the terms thereof, and the form and terms of the proposed Letter of Credit shall be reasonably satisfactory to the Agent and the Letter of Credit Issuer; and

(2)  As of the date of issuance, no order of any court, arbitrator or Governmental Authority shall purport by its terms to enjoin or restrain money center banks generally from issuing letters of credit of the type and in the amount of the proposed Letter of Credit, and no law, rule or regulation applicable to money center banks generally and no request or directive (whether or not having the force of law) from any Governmental Authority with jurisdiction over money center banks generally shall prohibit, or request that the proposed Letter of Credit Issuer refrain from, the issuance of letters of credit generally or the issuance of such Letters of Credit.

(d)  <u>Issuance of Letters of Credit</u>.

(1)  <u>Request for Issuance</u>.  The Borrower shall give the Agent three (3) Business Days prior written notice of the Borrower's request for the issuance of a Letter of Credit. Such notice shall be irrevocable and shall specify the original face amount of the Letter of Credit requested, the effective date (which date shall be a Business Day) of issuance of such requested Letter of Credit, whether such Letter of Credit may be drawn in a single or in partial draws, the date on which such requested Letter of Credit is to expire (which date shall be a Business Day), the purpose for which such Letter of Credit is to be issued, and the beneficiary of the requested Letter of Credit. The Borrower shall attach to such notice the proposed form of the Letter of Credit.

(2)  <u>Responsibilities of the Agent; Issuance</u>.  The Agent shall determine, as of the Business Day immediately preceding the requested effective date of issuance of the Letter of Credit set forth in the notice from the Borrower pursuant to <u>Section 2.5(d)(1)</u> (A) the amount of the applicable Unused Letter of Credit Subfacility and (B) the Availability as of such date. If (i) the undrawn amount of the requested Letter of Credit is not greater than the Unused Letter of Credit Subfacility and (ii) the amount of such requested Letter of Credit and all commissions, fees, and charges due from the Borrower in connection with the opening thereof would not exceed the Availability, the Agent shall, so long as the other conditions hereof are met, cause the Letter of Credit Issuer to issue the requested Letter of Credit on such requested effective date of issuance.

(3) <u>Notice of Issuance</u>. On each Settlement Date, the Agent shall give notice to each Lender of the issuance of all Letters of Credit issued since the last Settlement Date.

(4) <u>No Extensions or Amendment</u>. The Agent shall not be obligated to cause the Letter of Credit Issuer to extend or amend any Letter of Credit issued pursuant hereto unless the requirements of this <u>Section 2.5</u> are met as though a new Letter of Credit were being requested and issued. With respect to any Letter of Credit which contains any "evergreen" or automatic renewal provision, each Lender shall be deemed to have consented to any such extension or renewal unless any such Lender shall have provided to the Agent, not less than thirty (30) days prior to the last date on which the applicable issuer can in accordance with the terms of the applicable Letter of Credit decline to extend or renew such Letter of Credit, written notice that it declines to consent to any such extension or renewal; <u>provided</u> that if all of the requirements of this <u>Section 2.5</u> are met and no Default or Event of Default exists, no Lender shall decline to consent to any such extension or renewal.

(e) <u>Payments Pursuant to Letters of Credit</u>.

(1) <u>Payment of Letter of Credit Obligations</u>. The Borrower agrees immediately upon demand to reimburse the Letter of Credit Issuer for any draw under any Letter of Credit and the Agent for the account of the Lenders upon any payment pursuant to any Credit Support, and to pay the Letter of Credit Issuer the amount of all other obligations and other amounts payable to such Letter of Credit Issuer under or in connection with any Letter of Credit immediately when due, irrespective of any claim, setoff, defense or other right which the Borrower may have at any time against such issuer or any other Person.

(2) <u>Revolving Loans to Satisfy Reimbursement Obligations</u>. Each drawing under any Letter of Credit shall constitute a request by the Borrower to the Agent for a Borrowing of a Prime Rate Revolving Loan in the amount of such drawing. The Funding Date with respect to such borrowing shall be the date of such drawing.

(f) <u>Participations</u>.

(1) <u>Purchase of Participations</u>. Immediately upon issuance of any Letter of Credit in accordance with <u>Section 2.5(d)</u>, each Lender shall be deemed to have irrevocably and unconditionally purchased and received without recourse or warranty, an undivided interest and participation equal to such Lender's Pro Rata Share of the face amount of such Letter of Credit or the Credit Support provided through the Agent to the Letter of Credit Issuer, if not the Agent, in connection with the issuance of such Letter of Credit (including all obligations of the Borrower with respect thereto, and any security therefor or guaranty pertaining thereto).

(2) <u>Sharing of Reimbursement Obligation Payments</u>. Whenever the Agent receives a payment from the Borrower on account of reimbursement obligations in respect of a Letter of Credit or Credit Support as to which the Agent has previously received for the account of the Letter of Credit Issuer thereof payment from a Lender pursuant to <u>Section 2.5(e)(2)</u>, the Agent shall promptly pay to such Lender such Lender's Pro Rata Share of

{KAC1124.DOC;10}                           38