UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC., | ) | CASE NO. 04-10427 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |

**EMERGENCY MOTION FOR ORDER (I) AUTHORIZING
DEBTOR TO OBTAIN FINANCING PURSUANT TO 11 U.S.C.
§§ 105, 361, 362, 363, AND 364 AND (II) SCHEDULING
<u>FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)</u>**

Auburn Foundry, Inc., debtor-in-possession herein ("AFI" or the "Debtor"), by counsel, moves this Court for entry of an interim order (I) authorizing Debtor to obtain financing pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and (II) scheduling final hearing pursuant to Bankruptcy Rule 4001(c) (the "Motion"), and in support thereof states:

### Preliminary Statement

1.  By this Motion, the Debtor seeks authority to obtain post-petition financing (the "Post-Petition Financing") to fund the Debtor's normal operating expenses.

### Jurisdiction

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

3.  The relief sought with this Motion is based on sections 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), and 364(c)(3) of Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

## The Chapter 11 Reorganization Proceeding

4. On February 8, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5. The Debtor continues in possession of its property and in management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No trustee or examiner has been appointed herein. To date, no committee has been formed, informally or otherwise. In addition, the Debtors' prepetition senior secured lenders (the "Senior Lenders") and Subordinated Lenders (as defined herein) have been advised of this filing.

7. AFI is headquartered in Auburn, Indiana, and manufactures its products at two facilities in DeKalb County, Indiana. AFI owns each of these facilities.

8. AFI is a QS-9000 certified producer of high-quality iron castings. It provides a variety of gray iron and ductile iron castings for the automotive OEM market and the automotive after market. It also supplies the heavy truck industry as well as light trailer components, appliance parts, and castings for industrial and commercial applications.

9. The assets of AFI are subject to an alleged first priority lien in favor of Bank of America, National Association, acting as collateral agent for itself and GMAC Commercial Finance, LLC (collectively, the "Senior Lenders"). AFI presently is indebted to the Senior Lenders in the approximate amount of $26,253,599.05 (the "Senior Debt").

10. In addition to the debt owed the Senior Lenders, AFI is indebted to certain shareholders or affiliates of the Debtor (the "Subordinated Lenders"), in the approximate amount of $8,000,000 (the "Subordinated Debt"), that is secured, but subordinate.

11. This Court has jurisdiction of this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

12. By this motion, the Debtor seeks an order authorizing it to obtain post-petition line of credit financing (the "Post-Petition Financing") up to a maximum principal amount of $2 million (subject to the terms and conditions of the Interim Order and the Note as defined below) pursuant to §§ 105(a), 361, 362, 363, and 364 of the Bankruptcy Code. The Debtor seeks approval to obtain the Post-Petition Financing from AFI Lending Group, LLC, an Indiana limited liability company (the "DIP Lender"). Debtor understands that certain members of the DIP Lender are among the Subordinated Lenders.

13. It is necessary for the survival of the Debtor's business and to protect its opportunity to reorganize that the Debtor be able to obtain the Post-Petition Financing to fund its operations. If the Debtor is not permitted to obtain such financing, the Debtor will not be able to continue to operate. If the Debtor is unable to operate, some 570 employees will go unpaid and it is highly unlikely that the unsecured creditors will receive a distribution on their claims against the bankruptcy estate.

14. The Debtor requests that it be permitted to obtain the Post-Petition Financing in accordance with the note (the "Note") attached hereto as Exhibit "A" and the terms described more fully herein.

15. The Debtor's request to obtain the Post-Petition Financing should be granted because the Debtor is unable to obtain financing on terms more favorable than those described herein.

**Debtor's Borrowing Needs**

16. The Debtor has an immediate need to obtain the Post-Petition Financing as provided in the Interim Order and the Note in order to permit, among other things, the orderly continuation of the operation of the Debtor's business, to maintain business relationships with vendors and suppliers, and to satisfy other working capital needs. The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor and is integral to a successful reorganization of the Debtor.

**Efforts to Obtain Financing**

17. Having first estimated the Debtor's borrowing needs, the Debtor sought to obtain the necessary financing facility from the Senior Lenders. The Debtor was unable to obtain (i) adequate unsecured credit allowable under §§ 503(b)(1) or 364(c)(1) of the Bankruptcy Code as an administrative expense or (ii) secured credit allowable under §§ 364(c)(2) or (c)(3) on terms more favorable than those described herein.

**Terms of the Post-Petition Facility**

18. The DIP Lender shall be entitled to (i) a commitment fee of $40,000 (the "Commitment Fee") and (ii) payment of its attorneys' fees and reimbursable expenses not to exceed $50,000, in the aggregate, for origination and administration of the Post-Petition Financing (collectively, the "DIP Lender's attorneys' fees"), each of which shall be payable upon termination of the Post-Petition Financing.

19. The Debtor shall be entitled, from time to time, until termination of the Post-Petition Financing, to borrow, repay, and reborrow the principal of the Post-Petition Financing. The Debtor will pay interest to the DIP Lender on the first day of each month beginning March

1, 2004 on the outstanding principal balance of the Note at the rate of the Bank of America prime rate plus three percent (3%) per annum.

20. All principal outstanding on the Note shall be repaid on or before: (i) September 1, 2004; (ii) thirty (30) days after the Effective Date of the Debtor's Plan of Reorganization; or (iii) an Event of Default as defined in the Note, whichever shall first occur.

21. Pursuant to § 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations (defined as the principal and interest balance owing from time to time on the Note, the Commitment Fee, and the DIP Lender's attorneys' fees) shall constitute allowed claims against the Debtor with priority over any and all administrative expenses or other claims now existing, or hereafter existing, of any kind whatsoever, including, without limitation, administrative expenses of the kind specified in or allowed under sections 105, 326, 328, 330, 331, 363, 364, 503(b), 506(b), 507(a), 507(b), 726, or 1114 of the Bankruptcy Code (the "Superpriority Claim"), which superpriority claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and proceeds thereof, subject only to the payment of the Carve-Out. The "Carve-Out" means (i) an amount not to exceed $25,000 in the aggregate for the attorneys' fees and reimbursable expenses incurred by the Unsecured Creditors' Committee and (ii) attorneys' fees and reimbursable expenses incurred by the Debtor to the extent provided in the Governing Cash Flow Budget as defined in the Note, each in respect of allowances of compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court or permitted to be paid under any provisional payment Order.

22. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender will be granted, subject to the Carve-Out, a perfected security interest and lien upon all of the claims and causes of action (and all proceeds thereof) of the Debtor under sections 502(d), 544, 545, 547,

548, 549, 550 and/or 551 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (the "Avoidance Actions").

23. Pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code, the DIP Lender will be granted, subject to the Carve-Out, a perfected security interest in and lien upon all pre- and post-petition property of the Debtor and the proceeds thereof subject only to (i) all valid, perfected and non-avoidable liens in existence on the Petition Date and (ii) replacement liens granted to the Senior Lenders by Order of this Court, all without the necessity of the execution, filing, or recording of any documents required under non-bankruptcy law, or otherwise, for the creation or perfection of security interests or liens. However, upon request by the DIP Lender, the Debtor shall execute and deliver to the DIP Lender all financing statements or other documents or agreements which the DIP Lender may request relating to and/or evidencing the security interests or liens granted hereunder, and the automatic stay is hereby modified to permit the DIP Lender to perfect the foregoing security interests and liens in such collateral.

24. The Debtor believes that, under the circumstances, the terms and conditions of the Post-Petition Financing (including, without limitation, the fees, costs, and expenses to be incurred in connection therewith) are fair and reasonable, reflect the exercise of the Debtor's prudent business judgment consistent with its fiduciary duties, and is supported by reasonable equivalent value and fair consideration. The Post-Petition Financing has been negotiated in good faith and at arms length between the Debtor and the DIP Lender.

**Procedure**

25. The Debtor requests that the Court immediately enter the Interim Order pursuant to Bankruptcy Rule 4001(c)(2). Further, the Debtor requests that the Court schedule a final hearing as soon as the Court's calendar will permit to consider the Debtor's request to obtain the Post-Petition Financing.

26. The Debtor has provided notice of this Motion via electronic filing or first class mail to (i) the Office of United States Trustee for the Northern District of Indiana, (ii) counsel to the Senior Lenders and counsel to the Subordinated Lenders, and (iii) the Debtor's twenty (20) largest creditors. The Debtor submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

27. No prior application for the relief requested herein has been made to this or any other court.

**Conclusion**

28. The Post-Petition Financing described herein is necessary to the operation of the Debtor's business and the Debtor's opportunity for a successful reorganization. Therefore, the Debtor's request to obtain Post-Petition Financing should be granted.

WHEREFORE, the Debtor requests entry of an order of this Court substantially in the form annexed hereto granting it the relief requested by this Motion and such other and further relief as is just and proper.

BAKER & DANIELS

By: /s/ John R Burns, III
    John R Burns, III (#3016-02)
    Mark A. Werling (#20426-02)
    111 East Wayne Street, Suite 800
    Fort Wayne, Indiana 46802
    Telephone: (260) 420-8000
    Facsimile: (260) 460-1700
    john.burns@bakerd.com
    mark.werling@bakerd.com

ATTORNEYS FOR THE DEBTOR,
AUBURN FOUNDRY, INC.