IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Auburn Foundry, Inc., | ) | Case No. 04-10427 |
| | ) | |
| Debtor. | ) | |

**EMERGENCY MOTION OF BANK OF AMERICA, NATIONAL
ASSOCIATION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR,
IN THE ALTERNATIVE, FOR CONVERSION TO CHAPTER 7**

Bank of America, National Association ("BofA"), as agent for the pre-petition secured lenders (the "Lenders"), parties in interest in the chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, pursuant to section 1104(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), hereby requests entry of an order appointing a Chapter 11 Trustee or, in the alternative, converting the Chapter 11 Case to a chapter 7 case.  This case is the quintessential situation in which the appointment of a trustee is advisable, if not required.  The Debtors' management (the "Management") and board of directors (the "Board"), in particular, on information and belief, directors Timothy Borden, Janet Borden, David Fink, William Fink, John Fink and director and officer David Hunter, have exhibited a pattern of incompetence and gross mismanagement in both the pre and post-petition conduct of the Debtor's affairs.  As a result, the Lenders have lost confidence in Management and the Board and the Lenders have an acrimonious relationship with Management and the Board and that prevents the resolution of disputes.  Pre-petition and post-petition, Board members have repeatedly acted in their own interests to the detriment of creditors.  The Management and the Board's actions imperil the Lenders' collateral, including the Lenders' cash collateral, and undermine any claim of providing

adequate protection, but more fundamentally, they call into question the ability of the Management and the Board to meet their fiduciary duties to all creditors.  In support of this motion, the Lenders represent as follows:

## PROCEDURAL BACKGROUND

1. On February 8, 2004 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code.

2. Since that time, the Debtor has continued in possession of its property and has operated and managed its business, as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  No trustee, examiner or official committee of unsecured creditors has been appointed in this Chapter 11 Case.

## SUMMARY OF DEBTOR'S FINANCING

4. Prior to the Petition Date, BofA, as agent, GMAC Business Credit LLC, as co-agent and certain other financial institutions (collectively, the "Lenders") established a loan facility (the "Pre-Petition Credit Facility") with Auburn, as borrower.  The Lenders and Auburn (the "Borrower"), are party to that certain financing and security agreement, dated as of April 10, 2000 (as amended, supplemented or otherwise modified prior to the commencement of this chapter 11 case, the "Pre-Petition Credit Agreement") and all collateral and ancillary documents executed in connection therewith (the "Pre-Petition Loan Documents").  A true and correct copy of the Pre-Petition Credit Agreement is attached as <u>Exhibit A</u> to the Objection of Bank of America, N.A., to Debtor's Emergency Motion Seeking a Preliminary Order Authorizing the Use of Cash Collateral.  <u>See</u> Docket No. 27.  On the Petition Date, approximately $23,622,422.98 in

CH\665089.1

principal amount was outstanding under the Pre-Petition Credit Facility (plus interest, fees, charges, costs and other expenses).

5.  The Debtor is indebted to certain shareholders or affiliates of the Debtor, including, Timothy and Janet Borden and David, William and John Fink (the "Subordinated Lenders"), in the approximate amount of $8,000,000 (the "Subordinated Debt"), that is allegedly secured and is subordinate to the Lenders.[1]

6.  On February 8, 2004, the Debtor filed a motion seeking authority to obtain post-petition financing (the "Post-Petition Financing") from AFI Lending Group, LLC (the "DIP Lender") up to a maximum principal amount of $2 million and the Court granted such relief on an interim basis. The DIP Lender consists of certain of the Subordinated Lenders. On information and belief, the members of the DIP Lender include Board members Timothy and Janet Borden and William and John Fink.

---

[1] The Lenders and the Debtor are party to the following subordination agreements: (i) that certain Subordination Agreement entered into as of December 13, 2001, by and among Auburn, the financial institutions party to that certain Financing and Security Agreement dated April 10, 2000, BofA, as agent for the Lenders (as defined therein), David B. Fink, William E. Fink, John A. Fink, Janet F. Borden, Timothy S. Borden, A.F. Europe, Inc. and William E. Fink, as agent for the Initial Holders (as defined therein); (ii) that certain Amended and Restated Subordination Agreement entered into as of October 22, 2002, by and among Auburn, the financial institutions party to that certain Financing and Security Agreement dated April 10, 2000, BofA as agent for the Lenders (as defined therein), the Initial Holders (as defined therein), the New Holders (as defined therein) and William E. Fink as agent for the Initial Holders and the New Holders; (iii) that certain Subordination Agreement entered as of December 20, 2002, by and among Auburn, the financial institutions party to that certain Financing and Security Agreement dated April 10, 2000, BofA, as agent for the Lenders (as defined therein), David B. Fink, William E. Fink, John A. Fink, Janet F. Borden and Timothy S. Borden, and William E. Fink (the "December 20 Holders"), as agent for the December 20 Holders; and (iv) the Subordination Agreement entered into as of June 26, 2003, by and among Auburn, BofA, as agent for itself and the financial institutions party to that certain financing and security agreement dated April 10, 2000, GMAC Business Credit, LLC, as co-agent and Eleventh Street Capital, LLC (collectively, the "Subordination Agreements").

**FACTUAL BACKGROUND**

7. From the inception of the Pre-Petition Credit Facility on April 10, 2000, the Debtor's have repeatedly failed to meet their projected operating income. On June 15, 2000, the Debtor projected 2000 operating income would be $4,312,312. On January 12, 2001, the Debtor reported the actual 2000 operating income was <$982,216>. On November 9, 2000, the Debtor projected 2001 operating income would be $6,606,000. On January 14, 2002, the Debtor reported 2001 operating income was <$6,252,000>. On January 14, 2002, the Debtor projected 2002 operating income would be $4,849,000. On January 20, 2003, the Debtor reported 2002 operating income was <$745,000>. On January 6, 2003, the Debtor projected 2003 operating income would be $3,876,000. In early 2004, the Debtor reported 2003 operating income was <$8,193,000>.

| Year | Projected Operating Income | Actual Operating Income |
| --- | --- | --- |
| 2000 | $4,312,312 | <$982,216> |
| 2001 | $6,606,000 | <$6,252,000> |
| 2002 | $4,849,000 | <$745,000> |
| 2003 | $3,876,000 | <$8,193,000> |

8. BofA and the Lenders were patient with the Debtor, entering into five agreements forbearing from exercising their rights as a result of numerous events of default under the Pre-Petition Credit Agreement over three years, commencing November, 2000. From November, 2000 through October 21, 2003, the Board and Management told BofA and the Lenders they would turn around the Debtor by growing the Debtor's business. Since October 21, 2003, the Board and Management have told BofA and the Lenders they intend to turn around the Debtor

CH\665089.1

by shrinking the Debtor's business.  The fact is, the Board and Management have no idea what they are doing.

9. The Debtor is now bankruptcy.  Under the stewardship of Management and the Board, the Lenders' collateral has declined and continues to decline in value.  Due to the repeated missed projections and contradictory plans to turn around the Debtor, among other things, BofA and the Lenders have lost confidence in Management and the Board and have run out of patience.

10. To maximize value for creditors, the Debtor must be sold as a going concern or orderly liquidated with the cooperation of its customers.  Because Board members and their families and affiliates have $8 million of subordinated, allegedly secured debt outstanding to the Debtor and have made debtor-in-possession financing loans to the Debtor, they are unable to fulfill their fiduciary duties to secured and unsecured creditors.  For example, these Board members seek to secure their debtor-in-possession financing with a lien on avoidance actions, which is likely the only recovery available to unsecured creditors in this Chapter 11 Case.

11. Finally, two Board members, Tim Borden and David Fink, have been drawing salaries in an aggregate amount of $7,600 per month for years from the Debtor.  It is unclear what value, if any, they have added.

12. BofA and the Lenders believe that these instances of self dealing are likely just the tip of the iceberg.  A Chapter 11 Trustee or chapter 7 trustee can perform a full investigation and sue to recover any inappropriate payments that rightfully belong to the non-insider secured and unsecured creditors.

13. Since the filing of the Chapter 11 Case, the Debtor has refused to provide BofA with copies of checks or other information regarding on what it has been spending the Lenders'

CH\665089.1

cash collateral, in violation of Section 6.6 of the Pre-Petition Credit Agreement. BofA can only assume that the directors and officers are using the Lenders' cash collateral for further improper purposes.

## RELIEF REQUESTED

14. Due to a pattern of incompetence and gross mismanagement by the Board and Management and their failure to meet their fiduciary duties to the creditors (both secured and unsecured) in this case, by this Motion, the Lenders request that a hapter 11 trustee be appointed in the Chapter 11 Case, or in the alternative, that the Chapter 11 Case be converted to chapter 7.

## BASIS FOR RELIEF

II.  A Chapter 11 Trustee Should Be Appointed

15. The Lenders request that the Court appoint a chapter 11 trustee to manage the business and affairs of the Debtor pursuant to section 1104 of the Bankruptcy Code. Section 1104 of the Bankruptcy Code provides, in pertinent part, as follows:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, . . . or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . .

11 U.S.C. § 1104(a). The facts here compel appointment of a trustee under either the objective test set forth in 11 U.S.C. § 1104(a)(1) or the subjective "best interests" test set forth in 11 U.S.C. § 1104(a)(2).

CH\665089.1

### A. Cause Exists for the Appointment of a Chapter 11 Trustee

16.     Section 1104(a) provides for the appointment of a trustee either (1) for "cause" which requires the moving party to establish "*fraud, dishonesty, incompetence or gross mismanagement,*" or similar cause.  11 U.S.C. § 1104(a)(1) (emphasis added).

17.     As set forth in the statute, "cause" includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after commencement of the case…."  In re Oklahoma Refining Co., 838 F.2d 1133, 1136 (10th Cir. 1998).  This statutory list is not exhaustive; the Court may find "cause" for other reasons not specified in the Bankruptcy Code.  See In re Cardinal Indus., Inc., 109 B.R. 755, 765 (Bankr. S.D. Ohio 1990)("[t]he examples of cause enumerated in § 1104(a)(1) are not exhaustive; the Court may find that cause exists for a reason not specifically set forth in the statute."); In re Colorado-Ute Elec. Ass'n., Inc., 120 B.R. 164, 174 (Bankr. D. Colo. 1990).

18.     The particular kinds of conduct that have been found to constitute "cause" to appoint a trustee include where: (a) creditors have lost confidence in the debtor's management (see Cardinal Indus., Inc., 109 B.R. at 765-66; In re Madison Mgmt. Group, Inc., 137 B.R. 275, 281 (Bankr. N.D. Ill. 1992)("lack of confidence in the debtor's management may constitute cause"), (b) deep-seeded conflict and acrimonious relations between the debtor and the interested parties prevents resolution of disputes (see In re Marvel Entertainment Group, Inc., 140 F.3d 463, 472-74 (3d Cir. 1998); In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518, 526 n.11 (Bankr. E.D.N.Y. 1989)), and (c) there are conflicts of interest involving debtor's management and its creditors.  See, e.g., In re Cajun Elec. Power Coop., Inc., 74 F.3d 599, 600 (5th Cir. 1996); Colorado-Ute Elec., 120 B.R. at 174.  "[I]n considering a motion for the appointment of a trustee, a bankruptcy court is not required to conduct a full evidentiary hearing."  In re Ionosphere Clubs, Inc., 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990) (citing In re Casco Bay Lines,

CH\665089.1

Inc., 17 B.R. 946, 950 (1st Cir. B.A.P. 1982)).  Moreover, the Court may appoint a trustee *sua sponte*.  See In re Bibo, Inc., 76 F.3d 256 (9th Cir. 1996); In re Ngan Gung Restaurant, Inc., 195 B.R. 593 (S.D.N.Y. 1996).

19.     The filing of a chapter 11 bankruptcy petition imposes upon a debtor-in-possession a fiduciary duty to all of its creditors to administer the assets and business of the estate in the interest of those creditors.  In re Bellevue Place Assoc., 171 B.R. 615, 623-24 (Bankr. N.D. Ill. 1994) aff'd 1994 U.S. Dist. LEXIS 17409 (N.D. Ill. Dec. 6, 1994).  Such fiduciary obligations include a duty of loyalty which precludes officers and directors from engaging in any self-dealing. Id. at 624.  Conflicting personal interests of officers and directors that interfere with the exercise of their fiduciary duties to all creditors constitute cause to appoint a trustee pursuant to Section 1104(a)(1).  Id.

20.     The circumstances detailed above indisputably demonstrate sufficient cause for the appointment of a trustee.  Directors Timothy Borden, Janet Borden, David Fink, William Fink, John Fink and director and officer David Hunter and the rest of Management and the Board have grossly mismanaged the Debtor's assets since the inception of the Pre-Petition Credit Facility.  Consequently, the Lenders have no confidence in the Board or Management.

21.     Moreover, the conflicting interests of the Subordinated Lenders, with respect to the DIP Financing and the Subordinated Debt makes it impossible for Management and the Board to continue to oversee the debtor-in-possession.  Such an obvious conflict and inability to exercise fully their fiduciary duties to the creditors of the Debtor requires the replacement of the Management and the Board through the appointment of a trustee.  See In re Bellevue Place Assoc., 171 B.R. at 623-25 ("a disinterested trustee was required to unfreeze and facilitate the decision making process.").  See also In re Cajun Elec. Power Coop., Inc., 191 B.R. 659, 662

(Bankr. M.D. La. 1995), vacated by 69 F.3d 746 (5th Cir. 1995), aff'd on reh'g, 74 F.3d 599 (5th Cir. 1996) ("Under the facts of this case, it is impossible for the debtor-in-possession to act as a fiduciary for the estate at the same time it acts as a fiduciary for its members and customers.").

22. On the facts presented here, the mismanagement and conflicting personal interests of the Subordinated Lenders, is more than cause enough to appoint a trustee pursuant to 11 U.S.C. § 1104(a)(1).

23. Once cause is demonstrated, the Bankruptcy Code mandates the appointment of an impartial chapter 11 trustee. See In re Oklahoma Refining Co., 838 F.2d at 1136 ("Once the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee."); In re Bellevue Place Associates, 171 B.R. at 622 ("A bankruptcy court is required to order the appointment of a trustee where "cause" exists"); In re Bonded Mailings, Inc., 20 B.R. 781, 786 (Bankr. E.D.N.Y. 1982) ("[W]here such cause as is enumerated has been shown, the courts have no discretion but must appoint a trustee."); accord In re McCordi Corp., 6 B.R. 172, 176-78 (Bankr. S.D.N.Y. 1980); In re Eichorn, 5 B.R. 755, 757 (Bankr. D. Mass. 1980).

### B. The Appointment of a Chapter 11 Trustee is in the Best Interests of Creditors Pursuant to Section 1104(a)(2)

24. Section 1104(a)(2) of the Bankruptcy Code sets forth a "best interests of creditors" test that emphasizes a court's broad equity powers to engage in a cost-benefit analysis in making the decision whether the appointment of a trustee is appropriate. The factors to be considered under section 1104(a)(2) are:

> (1) the trustworthiness of the debtor;
>
> (2) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation;
>
> (3) the confidence or lack thereof of the business community and of creditors in present management; and

>       (4)    the benefits derived by the appointment of a trustee, balanced against the cost of appointment.

Cajun Electric Power Cooperative, 191 B.R. 661-62.

25.    Numerous courts have appointed a trustee relying solely upon the "best interests" standard. See, e.g., In re Microwave Prod. of Am., Inc., 102 B.R. 666 (Bankr. W.D. Tenn. 1989); In re L.S. Good & Co., 8 B.R. 312 (Bankr. N.D. W.Va. 1980). Indeed, appointment of a trustee may be warranted even where no "cause" exists. In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989); Bellevue Place Associates, 171 B.R. at 623.

26.    In L.S. Good & Co., the debtor was suffering substantial operating losses, its assets were being rapidly depleted, and it was unable to borrow capital. 8 B.R. at 314. The court appointed a trustee under section 1104(a)(2) of the Bankruptcy Code, holding:

>       (a) that the continuation of current management will result in serious potential conflicts of interest; (b) that it would be more economical, beneficial and advantageous to the creditors and equity security holders to have current management replaced by a Chapter 11 trustee; and (c) that the interests of the creditors and equity security holders would be better served by the appointment of an experienced and independent Chapter 11 trustee, whose sole motivation will be to realize the maximum amount of monies possible from a liquidation of . . . [the debtor's] assets including the collection of any and all monies due and owing . . . [the debtor] from all sources.

Id. at 315.

27.    Many of the cases appointing a trustee in the "best interests" of creditors considered the same factors as those considered for a finding of "cause" to appoint a trustee. *See, e.g.,* In re Sharon Steel Corp., 871 F.2d at 1120-21 (appointment of trustee under Section 1104(a) for cause *and* in the best interests of the creditors and the estate); Marvel Entertainment, 140 F.3d at 474 (appointment of trustee under Section 1104(a) for cause *and* in the best interests of the creditors and the estate). However, under this less stringent standard, *the moving party need not show wrongful behavior on the part of management*, as long as a meaningful benefit from the appointment of a trustee is shown and the benefit outweighs the burdens and expenses.

See, e.g., Cardinal Indus., 109 B.R. at 766; In re Microwave Prods., Inc., 102 B.R. at 675; Collier on Bankruptcy, ¶ 1104.02[3][d][I]. The appointment of a trustee would be in the best interests of the Debtor's estate in this case at this time, as a competent trustee could quickly maximize the value of the Debtor's assets for creditors.

28. BofA, as agent for the Lenders, who represent the vast majority of the economic interests in the Debtor's estate, hereby requests the appointment of a chapter 11 trustee in this case. In this case, every factor points to the appointment of a chapter 11 trustee under section 1104(a)(2) of the Bankruptcy Code. BofA and the other secured and unsecured creditors do not trust the Debtor's Board of Directors or Management. The Debtor's performance prior to this chapter 11 case has been dismal and the Debtor has no chance of successfully reorganizing. In fact, the Debtor is likely to lose customers. Omnisource, the Debtor's largest supplier and the largest unsecured creditor in this case, has ceased supplying the Debtor. In January, 2004, Delphi, one of the Debtor's largest customers found another source of supply. The Lenders expect that Delphi is the first of many of the Debtor's customers to find alternative sources of supply absent a change in management. The Debtor's lenders, suppliers and customers appear to all lack confidence in the Debtor's Board of Directors.

29. In light of the history of failing to meet any budget projections, Management and the Board's apathy towards the needs of creditors and the resulting loss of creditor confidence, this Court should appoint a trustee to administer the assets of the Debtor. The appointment of an impartial trustee will benefit the Debtor's estate and creditors because a trustee will have the sole motivation of maximizing the value of the Debtor's estate for creditors. Moreover, the trustee will not have any conflicts of interest and will likely vigorously pursue all actions that are in the Debtor's best interests.

**II.    In the Alternative, if this Court Refuses to Appoint a Chapter 11 Trustee, This Case Should Be Converted to Chapter 7**

30.    Bankruptcy Code § 1112(b) reads as follows:

(b)    Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including - -

(1)    continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2)    inability to effectuate a plan

(3)    unreasonable delay by the debtor that is prejudicial to creditors:

(4)    failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5)    denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6)    revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7)    inability to effectuate substantial consummation of a confirmed plan;

(8)    material default by the debtor with respect to a confirmed plan;

(9)    termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10)    nonpayment of any fees or charges required under chapter 123 of title 28.

31.    Clearly, the Lenders have established cause for converting this case.  There is a continuing loss to or diminution of this estate and there is no likelihood of rehabilitation.  In addition, the Debtor will be unable to effectuate a plan.  "Courts have wide discretion in deciding whether or not to dismiss or convert a case."  In re T.S.P. Industries, Inc., 117 B.R. 375, 376

(Bankr. N.D. Ill. 1990); In re Jartran, Inc., 71 B.R. 938, 943 (Bankr. N.D. Ill. 1987), aff'd., 886 F.2d 859 (7th Cir. 1989).

### NOTICE AND PROPOSED ORDER

32. Notice of this Motion has been provided via electronic filing or first class mail to the persons and entities described in L.B.R. B-9013-2(c).

33. A copy of the proposed Order which the Lenders request be entered is tendered herewith.

**WHEREFORE**, for the foregoing reasons, the Lenders request the entry of an order (i) appointing a Chapter 11 trustee in the Chapter 11 Case, or in the alternative, converting the Chapter 11 Case to Chapter 7 and (ii) granting such other relief as this Court finds just and appropriate under the circumstances.

February 12, 2004                                              Respectfully submitted,


                                                                    /s/ Grant F. Shipley
                                                               Grant Shipley
                                                               SHIPLEY & ASSOCIATES
                                                               233 West Baker Street
                                                               Fort Wayne, Indiana  46802
                                                               (260) 422-2700

                                                               and

                                                               Josef S. Athanas
                                                               Caroline A. Reckler
                                                               LATHAM & WATKINS, LLP
                                                               233 South Wacker Drive
                                                               Sears Tower, Suite 5800
                                                               Chicago, Illinois  60606
                                                               Telephone:  (312) 876-7700
                                                               Facsimile:  (312) 993-9767

                                                               Attorneys of Bank of America, N.A.

CH\665089.1