UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| AUBURN FOUNDRY, INC., ) | Chapter 11 |
| ) | |
| Debtor. ) | BK Case No. 04-10427 |

**JOINT PRE-TRIAL ORDER REGARDING AUBURN FOUNDRY'S
MOTION FOR LIMITED USE OF CASH COLLATERAL
AND THE SENIOR LENDERS' OBJECTION THERETO**

The Debtor, Auburn Foundry, Inc. ("AFI" or "Auburn Foundry" or the "Debtor"), and Bank of America, National Association ("BofA"), acting as collateral agent for itself and GMAC Commercial Finance, LLC (collectively, the "Senior Lenders"), submit this Joint Pre-trial Order ("Pre-Trial Order") with regard to AFI's motion for permission to use cash collateral for a two week period from February 18, 2004 to March 1, 2004 and the Senior Lenders' objection thereto. For their Pre-trial Order, AFI and the Senior Lenders state:

1.      Counsel for the parties have conferred in preparation for submitting this Pre-Trial Order.

### A. Jurisdiction

2.      Jurisdiction was conceded by counsel and found by the Court to be present. This matter is a core proceeding under 28 U.S.C. § 157(b).

### B. Pending Motions

3.      AFI filed an Emergency Motion for Use of Cash Collateral on February 9, 2004 (the "Emergency Motion"), by which it sought permission to use cash collateral for a preliminary, three week period pending a final hearing. The Senior Lenders objected to the Motion the same day. Thereafter, AFI and the Senior Lenders entered into an Agreed Order which this Court approved on February 10, 2004 (the "Agreed Order").

FWIMAN1 324003v1

The Agreed Order permits AFI to use cash collateral in accordance with the terms thereof until February 18, 2004.  At the Senior Lenders' request, the Court set a preliminary hearing on February 13, 2004, to consider their objection to continued cash use beyond the expiration of the Agreed Order.  A final hearing is set for February 27, 2004.

The sole issue for this preliminary hearing is whether AFI should be granted further use of cash collateral, subject to adequate protection provisions contained in the Agreed Order or separate Orders of this Court, for the two week period from February 18, 2004, the expiration of the Agreed Order, to March 1, 2004; i.e., the remaining two weeks subject to the Emergency Motion.  In this Pre-Trial Order, AFI and the Senior Lenders set forth their respective contentions with respect to AFI's use of cash collateral during this two week period.

### C. **Summary of Each Party's Theory of the Case**

**Auburn Foundry's Contentions:**

4. AFI attached a budget (the "Cash Use Budget") to its Emergency Motion which set forth the minimum expenditures it intended to make on an immediate, three week basis to maintain and preserve its business operations.

5. As of February 12, 2004, AFI has operated within the confines of its Cash Use Budget.  Revenues already exceed budget for the first week of cash use.  AFI has not exceeded – and does not expect to exceed -- its expenditure limits for the first week of the Cash Use Budget.

6. AFI met its first-week performance goals despite unwarranted interference with its use of cash collateral by the Senior Lenders.  Contrary to the Agreed Order of this Court, the Senior Lenders withheld access to cash, without justification, while it requested additional details regarding AFI's intended expenditures.  This unjustified requirement delayed, at least

temporarily, AFI's ability to acquire materials necessary to the operation and maintenance of its business.

7.	AFI expects to continue operating within the confines of the Cash Use Budget during the final two weeks subject to the Emergency Motion.

8.	Pursuant to an Interim Order of this Court dated February 10, 2004, AFI received authority to obtain Post-Petition Financing (as further defined therein).  To date, AFI has utilized more than $400,000 in Post-Petition Financing to meet its cash needs, all without affecting the Senior Lenders' alleged security interests in AFI's assets.

9.	No determination has been made by this Court concerning the validity, extent, or priority of the Senior Lenders' alleged liens, although the Senior Lenders bear the burden of proof on each of these issues pursuant to Section 363(o) of the Bankruptcy Code.

10.	AFI contends that it can successfully reorganize its business.  It is preparing a Plan of Reorganization for filing well in advance of the expiration of the exclusivity period.  Based upon its projections for future operations, AFI believes its Plan will be feasible and have a reasonable likelihood of being confirmed.

11.	If AFI is not permitted to use cash collateral beyond February 18, 2004, its business will close, some 570 employees will lose their jobs, and it is highly unlikely that unsecured creditors will receive any distribution on their unsecured claims.  The Indiana Department of Environmental Management ("IDEM") and the County of DeKalb, Indiana are among the unsecured creditors with a substantial stake in the Debtor's ability to reorganize.  Both of these governmental entities will likely receive nothing if AFI is unable to use cash collateral for at least an additional two weeks.

12.	The Senior Lenders are the only parties in interest which could potentially benefit from an immediate closure of AFI.  However, the Senior Lenders would fare no worse if

AFI continued operations for an additional two weeks, given the adequate protections set forth in the Emergency Motion and embodied in the Agreed Order.

13. The Senior Lenders will be adequately protected during the limited, two week period at issue before the Court at the preliminary hearing on February 13, 2004. AFI also has a reasonable likelihood of prevailing at the final hearing two weeks later. AFI should therefore be granted continued use of cash collateral for the limited period from February 18 to March 1, 2004.

**Senior Lenders' Contentions:**

14. The Senior Lenders were owed approximately $23,622,422.98 in principal plus approximately $1 million in accrued interest and fees (collectively, the "Pre-Petition Indebtedness") as of February 8, 2004 (the "Petition Date") under that certain Financing and Security Agreement, dated as of April 10, 2000 (as amended, supplemented or otherwise modified prior to the Petition Date, the "Pre-Petition Credit Agreement").

15. The Pre-Petition Indebtedness is secured by liens and security interests upon all of the Debtor's assets pursuant to the Pre-Petition Credit Agreement and that certain Mortgage, Assignment of Rents and Security Agreement effective as of April 10, 2000.

16. Such liens and security interests are valid, perfected and have priority over all other liens and security interests.

17. The value of the collateral upon which the Senior Lenders have valid, perfected-first priority liens and security interests as of the Petition Date for the benefit of the Senior Lenders exceeds the outstanding Pre-Petition Indebtedness under the Pre-Petition Credit Agreement as of such date.

18. The Senior Lenders are oversecured creditors entitled to post-petition interest, fees and expenses, including, without limitation, attorneys' fees and expenses.

4

19. The value of the Debtor's accounts receivable and inventory will decline in value between the date hereof and February 27, 2004.

20. Replacement liens are insufficient to adequately protect the Senior Lenders for the use of their cash collateral.

21. The Debtor's board of directors and management cannot successfully reorganize the Debtor. Therefore, the Senior Lenders are not adequately protected by the Debtor's assertions that the Senior Lenders' collateral value will be enhanced upon a reorganization.

22. The Senior Lenders have not interfered with AFI's use of cash collateral at all. In only one week, AFI has submitted borrowing base certificates after the deadline for same day funding set forth in the Pre-Petition Credit Agreement, wired DIP funds to the wrong account, insisted that BofA provide the use of cash collateral either without first receiving a borrowing base certificate in accordance with the Agreed Order, or, without verifying that the information contained in the borrowing base certificate is accurate. Nonetheless, the Senior Lenders have fully complied with their obligations under the Agreed Order and the Pre-Petition Credit Agreement and promptly provided the Debtor the use of cash collateral to which it was entitled under the Agreed Order.

### D. Uncontested Facts

23. AFI has access to, and is already utilizing, Court-approved Post-Petition Financing which provides a source of cash for operational needs without affecting the Senior Lenders' alleged security interests.

### E. Contested Issues

24. Whether the Senior Lenders have met their burden of proof as to the validity, priority, and extent of their alleged security interests in AFI's assets.

5

25. Whether the Debtor has met its burden of proof that the Senior Lenders will be adequately protected as required by §§ 363(e) and 361 during the two week period at issue before the Court at this preliminary hearing.

26. Whether AFI has a reasonable likelihood of prevailing at the final hearing on use of cash collateral.

### F. Exhibits

**Auburn Foundry's Exhibits:**

27. The Cash Use Budget and AFI's post-petition operating reports.

28. AFI's pre-petition forecasts and actual operating reports.

29. AFI's internally prepared balance sheets and related reports evidencing AFI's secured and unsecured liabilities, including liabilities to IDEM and the County of DeKalb, Indiana.

30. Vendor letters, including L. Padnos Iron and Metal, Co.

31. AFI's cash use forecasts for periods beyond the Cash Use Budget.

32. Customer letters, including Eaton.

33. E-mail correspondence to and from AFI and the Senior Lenders, or their respective attorneys, regarding AFI's contention that the Senior Lenders unjustifiably interfered with its use of cash collateral.

34. Cash Projections by Alvarez & Marsal for approximately 13 weeks.

35. Schedule of Cash Receipts and Sales from December 2003.

36. List of automotive components for which AFI supplies parts.

37. Updated Cash Flow.

38. AFI Borrowing Base Certificates for February 11, 2004 and prior.

39. AFI daily sales and production reports for February, 2004 and prior.

40. All pleadings and exhibits filed in AFI's Chapter 11 case.

41. All exhibits identified by the Senior Lenders.

**Senior Lenders' Exhibits:**

42. Financing and Security agreement dated as of April 10, 2000 among the financial institutions named therein as Lenders, and Bank of America, N.A., as agent and Auburn Foundry, Inc., as borrower, and all amendments thereto.

43. BofA's UCC financing statement filed against the Debtor with the Indiana secretary of state's office.

44. Open-end Mortgage, assignment of rents and security agreement effective as of April 10, 2000.

45. Machinery and equipment appraisal dated March 7, 2000.

46. Orderly liquidation value report dated April 2, 1999.

47. Detailed orderly liquidation value appraisal dated July 17, 2003.

48. Borrowing base certificate received February 10, 2004.

49. Debtor's income statement projections for fiscal year 2000.

50. Debtor's balance sheet and income statement for November 30, 2000 and the twelve months then ended.

51. Debtor's 2001 operating plan.

52. Debtors' balance sheet, updated operating plan and cash forecast for fiscal years 2001 and 2002.

53. Debtors' balance sheet, updated operating plan and cash forecast for fiscal year 2003 (updated through January 17, 2003).

54. Debtor's balance sheet, updated operating plan and cash forecast for fiscal year 2003 (updated through January 3, 2003).

55.     Debtor's cash forecast for the week through January 23, 2004.

56.     Debtor's October 21, 2003 plan presentation.

57.     Debtor's cash forecast for the week through November 7, 2003.

58.     Debtor's review of cash flow forecast dated January 29, 2004.

59.     The Senior Lenders may also offer into evidence any of the exhibits identified by the Debtor.

60.     That certain Subordination Agreement entered into as of December 13, 2001, by and among Auburn, the financial institutions party to that certain Financing and Security Agreement dated April 10, 2000, BofA, as agent for the Lenders (as defined therein), David B. Fink, William E. Fink, John A. Fink, Janet F. Borden, Timothy S. Borden, A.F. Europe, Inc. and William E. Fink, as agent for the Initial Holders (as defined therein).

61.     That certain Amended and Restated Subordination Agreement entered into as of October 22, 2002, by and among Auburn, the financial institutions party to that certain Financing and Security Agreement dated April 10, 2000, BofA as agent for the Lenders (as defined therein), the Initial Holders (as defined therein), the New Holders (as defined therein) and William E. Fink as agent for the Initial Holders and the New Holders.

62.     That certain Subordination Agreement entered as of December 20, 2002, by and among Auburn, the financial institutions party to that certain Financing and Security Agreement dated April 10, 2000, BofA, as agent for the Lenders (as defined therein), David B. Fink, William E. Fink, John A. Fink, Janet F. Borden and Timothy S. Borden, and William E. Fink (the "December 20 Holders"), as agent for the December 20 Holders.

63.     That certain Subordination Agreement entered into as of June 26, 2003, by and among Auburn, BofA, as agent for itself and the financial institutions party to that certain

financing and security agreement dated April 10, 2000, GMAC Business Credit, LLC, as co-agent and Eleventh Street Capital, LLC.

### G.    Witnesses

**Auburn Foundry's Potential Witnesses**:

64. Dennis Maude, AFI's Director of Finance.

65. Tom Woehlke, President of AFI's North American Operations.

66. Experts, investment advisors and/or outside consultants familiar with AFI's prior cash use and post-petition financial forecasts, including, without limitation, Scott Thompson of Alvarez & Marsal.

67. Norman E. Yoder, Mayor of Auburn, Indiana.

68. The President of AFI's labor union, Matt McCarty.

69. Representatives of potential DIP lenders and/or investors.

70. Representatives of AFI's customers, including Keith White of Eagle Pitcher.

71. Employees of the Senior Lenders knowledgeable about the debt and alleged interference with AFI's initial use of cash collateral, including D. Rathberger, D. Manella, and D. Jelaca.

72. All witnesses identified by the Senior Lenders.

**Senior Lenders' Potential Witnesses:**

73. Debra Rathberger, Senior Vice President and Portfolio Manager at Bank of America Commercial Finance.

74. Daniel Manella, Senior Vice President at GMAC Business Credit.

75. Any of the Debtor's witnesses.

### H. Trial Date

A preliminary hearing on the use of cash collateral is set for February 13, 2004 at 9:00 a.m.

SO ORDERED this ____ day of _____, 2004.

_____
United States Bankruptcy Judge

CONSENTED TO AND ENTRY REQUESTED:

| | |
|---|---|
| s/John R Burns III_____ | /s/ Grant F. Shipley_____ |
| John R Burns III | Grant F. Shipley |
| Mark A. Werling | 233 West Baker Street |
| 111 East Wayne Street, Suite 800 | Fort Wayne, IN  46802-3413 |
| Fort Wayne, IN  46802 | Telephone:  (260) 422-2700 |
| Telephone:  (260) 424-8000 | |
| | |
| ATTORNEYS FOR | ATTORNEYS FOR |
| AUBURN FOUNDRY, INC. | THE SENIOR LENDERS |