UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC., | ) | CASE NO. 04-10427 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |

**INTERIM ORDER (I) AUTHORIZING INTERIM
USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363;
(II) PROVIDING ADEQUATE PROTECTION REGARDING
USE OF CASH COLLATERAL; AND (III) SCHEDULING
FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

Upon consideration of the emergency motion (the "Motion") of Auburn Foundry, Inc., debtor-in-possession ("AFI" or the "Debtor"), for entry of an order pursuant to sections 361 and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") authorizing use of cash collateral of the Senior Lenders as defined in the Motion, providing adequate protection to the Senior Lenders as defined therein, and scheduling a final hearing pursuant to Bankruptcy Rule 4001(b), this Court finds as follows:

A. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 8, 2004 and, since that date, has continued in possession of its property and management of its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. The Debtor possesses "cash collateral" within the definition of section 363(a) of the Bankruptcy Code and the Senior Lenders assert an interest therein.

C. This Court has jurisdiction to consider the Motion.

D. The relief sought in the Motion is in the best interest of creditors and all parties in interest.

FWIMAN1 308033v1

E.  Notice of the Motion has been properly given.

F.  No other or further notice is necessary.

G.  The Debtor will be unable to operate or reorganize without use of the Cash Collateral.

H.  The Senior Lenders are or will be adequately protected (as defined in section 361 of the Bankruptcy Code) as described herein.

NOW, THEREFORE, it is, this _____ day of _____, 2004, HEREBY ORDERED:

1.  The Motion is GRANTED.

2.  The capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

3.  Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to use the Senior Lenders' Cash Collateral through March 4, 2004 according to the budget (the "Budget") attached to this Order as <u>Exhibit A</u> and incorporated herein by reference.

4.  The Cash Collateral may be used by the Debtor in the ordinary course of business and in the amounts and for the purposes specified in the Budget.

5.  The Debtor shall not use any Cash Collateral other than (i) in accordance with this Order, (ii) pursuant to further Order of the Court, or (iii) with the written consent of the Senior Lenders.

6.  The Senior Lenders shall have as adequate protection for the Debtor's use of Cash Collateral, among other things, the following:

   a.  A security interest in and to all prepetition Cash Collateral provided under the credit agreement and related loan documents with the Senior Lenders to the

same extent and with the same priority and effect as the Senior Lenders' interests existed prepetition;

    b. A replacement lien in and to all of the Debtors' postpetition assets, to the same extent and with the same priority and validity as the Senior Lenders' security interest in such assets prepetition, to the extent that use of the Cash Collateral results in a decrease in the value of the Senior Lenders' interest in the Cash Collateral during the period of time that this Order is in effect, provided, however, that the replacement lien on cash shall extend only to the amount by which non-cash Cash Collateral is less than the amount of the prepetition revolving loan debt to the Senior Lenders, all without the necessity of the execution, filing, or recording of any documents required under non-bankruptcy law, or otherwise, for the creation or perfection of security interests, provided that such replacement liens shall be subject to the fees and expenses of the Debtor's professionals, which are payable prior to the Senior Lenders' claims against the Debtor, and such claims shall be imposed against the Senior Lenders' pre- and post-petition claims and collateral; and

    c. The continued obligation of the Debtor to maintain insurance coverage on the tangible assets of the Debtor.

    7. The Debtor shall deliver to the Senior Lenders (i) on the Monday of each week an inventory report and an account receivable aging report as of the end of the previous week and (ii) within twenty (20) days after the end of each month a cash receipts and cash disbursements report.

    8. Nothing contained herein constitutes a finding that any alleged security interest of the Senior Lenders is valid, perfected or unavoidable; this Order is without prejudice to the right of the Debtor, any committee appointed under the Bankruptcy Code and any other

party in interest to contest the validity, perfection, priority, extent or avoidability of the alleged security interest of the Senior Lenders.

      9. This Order shall be without prejudice to the rights of the Debtor or any party in interest, including without limitation the United States Trustee, to apply to the Court for authority to further modify the terms hereof on appropriate notice and motion.

      10. This Court shall retain jurisdiction with respect to all matters arising from or related to the Motion or the implementation of this Order.

      11. The Debtor shall serve Notice of the entry of this Order and the date and time of a final hearing on the use of the Cash Collateral shall be given within three (3) business days from the date on which this Order is entered to parties on whom service is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure and make due proof thereof.

      12. A final hearing on the use of the Cash Collateral shall be held on February 27, 2004 at 9:00 a.m. ~~p.m.~~ in Room 2127, Federal Building, 1300 S. Harrison St., Ft. Wayne, Indiana.

Dated this 17th day of February, 2004.

                                            /s/ Robert E. Grant
                                            HONORABLE ROBERT E. GRANT
                                            UNITED STATES BANKRUPTCY JUDGE

Auburn Foundry
Cash Use Analysis First 3 Weeks of Bankruptcy
As of Feb 6, 2004

| Week ending dates | Week 1 | Week 2 | Week 3 |
|---|---|---|---|
| **Sales for week** | | | |
| Pounds | 4000 | 4000 | 4000 |
| Dollars | $1,360 | $1,360 | $1,360 |
| **Collections** | $1,300 | $1,350 | $1,500 |
| **Mandatory payments** | | | |
| Scrap - COD | 557 | 557 | 557 |
| Hourly payroll | 320 | 275 | 275 |
| Salary payroll | 240 | | 240 |
| Payroll taxes | 100 | | |
| Insurance | 100 | 100 | 100 |
| Utilities | 150 | 150 | 175 |
| Must mails - payroll w/h etc | 40 | 40 | 40 0 |
| **Key Ingredient Supplier - Paid on COD** | | | |
| Miller & Co - Chemicals | 9 | 9 | 9 |
| Dauber - Silicon Carbide | 39 | 39 | 39 |
| Great Lakes Carbon - Carbon | 9 | 9 | 9 |
| Unimin - Bond | 31 | 31 | 31 |
| Elkem - Supercede | | 16 | 0 |
| Fairmont Minerals - Sand | 11 | 11 | 11 |
| Ashland - Chemicals | 8 | 8 | 8 |
| Wheelabrator - Shot | 8 | | 8 |
| Metaltech - Shot | 8 | 8 | 8 |
| CC Metals - FeSI | 12 | | |
| Indiana Refractory - Repair materials | 8 | 8 | 8 |
| Empire Refractory - Repair materials | 4 | 4 | 4 |
| Refco - Repair materials | | 9 | |
| Vesuvius - Stopper rods | | | 6 |
| Midwest Instrument - Temp probes | 3 | 3 | 3 |
| Heraes - Temp probes | | | 2 |
| Estimated new needs for other vendors - freight etc. | 50 | 50 | 50 |
| **Total payments** | 1,707 | 1,327 | 1,583 |
| Net cash proceeds | ($407) | $24 | ($83) |
| Cummulative Cash | ($407) | ($383) | ($466) |

**Impact on borrowing base - normal calculations**

| | | | |
|---|---|---|---|
| Sales | $1,360 | $1,360 | $1,360 |
| Less receipts | ($1,300) | ($1,350) | ($1,500) |
| Net change in A/R | $60 | $10 | ($140) |
| Cummulative change in A/R | $60 | $70 | ($70) |

Assumptions:
1. No deposit yet for utilities
2. Take 80 hourly people out immediately - impact on second week of cash
3. Salary to include severance
4. Benefits ( ie insurance ) to continue - funding for new trust on Workemens Comp not included
5. Scrap costs assumed at $265/ton
6. Assumes no price increase from other vendors

**EXHIBIT A**