*V/ O/*

EXECUTION COPY

FINANCING AND SECURITY AGREEMENT

Dated as of April 10, 2000

Among

THE FINANCIAL INSTITUTIONS NAMED HEREIN

as the Lenders

and

BANK OF AMERICA, NATIONAL ASSOCIATION

as the Agent

and

AUBURN FOUNDRY, INC.

as the Borrower

{KAC1124.DOC;10}

TABLE OF CONTENTS

Section                                                                      Page

ARTICLE 1    1

INTERPRETATION OF THIS AGREEMENT ........................................................... 1
    1.1 Definitions ................................................................................................. 1
    1.2 Accounting Terms ..................................................................................... 26
    1.3 Interpretive Provisions ............................................................................. 27

ARTICLE 2    28

LOANS AND LETTERS OF CREDIT ....................................................................... 28
    2.1 Total Facility .............................................................................................. 28
    2.2 Revolving Loans ........................................................................................ 28
    2.3 Term Loans A ............................................................................................ 34
    2.4 Term Loans B ............................................................................................ 35
    2.5 Letters of Credit ........................................................................................ 36
    2.6 Bank Products ............................................................................................ 42

ARTICLE 3    42

INTEREST AND FEES ............................................................................................. 42
    3.1 Interest ........................................................................................................ 42
    3.2 Conversion and Continuation Elections ................................................... 43
    3.3 Maximum Interest Rate ............................................................................. 45
    3.4 Closing Fee ................................................................................................ 45
    3.5 Unused Line Fee ........................................................................................ 45
    3.6 Letter of Credit Fee ................................................................................... 46
    3.7 Collateral Management Fee ....................................................................... 46

ARTICLE 4    46

PAYMENTS AND PREPAYMENTS ........................................................................ 46
    4.1 Revolving Loans ........................................................................................ 46
    4.2 Termination of Facility .............................................................................. 47
    4.3 Repayment of the Term Loans .................................................................. 47
    4.4 Voluntary Prepayments of the Term Loans .............................................. 48
    4.5 Mandatory Prepayments of the Term Loans ............................................. 48
    4.6 Payments by the Borrower ......................................................................... 48

Section                                                                                                Page

4.7 Payments as Revolving Loans. ..................................................................... 49
4.8 Apportionment, Application and Reversal of Payments............................... 49
4.9 Indemnity for Returned Payments. ............................................................... 50
4.10 Agent's and Lenders' Books and Records; Monthly Statements. ............... 50

ARTICLE 5    51

TAXES, YIELD PROTECTION AND ILLEGALITY................................................. 51

5.1 Taxes. .............................................................................................................. 51
5.2 Illegality. .......................................................................................................... 52
5.3 Increased Costs and Reduction of Return. .................................................... 52
5.4 Funding Losses. ............................................................................................... 53
5.5 Inability to Determine Rates. ......................................................................... 53
5.6 Certificates of Lenders. ................................................................................... 53
5.7 Survival............................................................................................................. 54

ARTICLE 6    54

COLLATERAL ......................................................................................................... 54

6.1 Grant of Security Interest................................................................................ 54
6.2 Perfection and Protection of Security Interest. ............................................. 55
6.3 Location of Collateral. ..................................................................................... 56
6.4 Title to, Liens on, and Sale and Use of Collateral. ....................................... 56
6.5 Appraisals. ........................................................................................................ 56
6.6 Access and Examination; Confidentiality; Consent to Advertising. ............. 57
6.7 Collateral Reporting. ....................................................................................... 58
6.8 Accounts. .......................................................................................................... 58
6.9 Collection of Accounts; Payments................................................................... 59
6.10 Inventory; Perpetual Inventory. .................................................................... 60
6.11 Equipment. ...................................................................................................... 61
6.12 Assigned Contracts. ....................................................................................... 61
6.13 Documents, Instruments, and Chattel Paper. ............................................... 62
6.14 Right to Cure................................................................................................... 62
6.15 Power of Attorney. ......................................................................................... 63
6.16 The Agent's and Lenders' Rights, Duties and Liabilities............................. 63
6.17 Site Visits, Observations and Testing. .......................................................... 63

ARTICLE 7    64

BOOKS AND RECORDS; FINANCIAL INFORMATION; NOTICES ...................... 64

7.1 Books and Records. .......................................................................................... 64
7.2 Financial Information....................................................................................... 64

Section                                                                                          Page

    7.3 Notices to the Lenders. ............................................................................... 67

ARTICLE 8   69


GENERAL WARRANTIES AND REPRESENTATIONS ........................................................ 69

    8.1 Authorization, Validity, and Enforceability of this Agreement and the
        Loan Documents. ....................................................................................... 69
    8.2 Validity and Priority of Security Interest. .......................................................... 69
    8.3 Organization and Qualification. ......................................................................... 69
    8.4 Corporate Name; Prior Transactions. ............................................................... 70
    8.5 Subsidiaries and Affiliates. ................................................................................ 70
    8.6 Financial Statements and Projections. .............................................................. 70
    8.7 Capitalization. .................................................................................................... 70
    8.8 Solvency. ............................................................................................................ 71
    8.9 Debt. .................................................................................................................. 71
    8.10 Distributions. ................................................................................................... 71
    8.11 Title to Property. ............................................................................................. 71
    8.12 Real Estate; Leases. ........................................................................................ 71
    8.13 Proprietary Rights. .......................................................................................... 71
    8.14 Trade Names. .................................................................................................. 72
    8.15 Litigation. ........................................................................................................ 72
    8.16 Restrictive Agreements. .................................................................................. 72
    8.17 Labor Disputes. ............................................................................................... 72
    8.18 Environmental Laws. ....................................................................................... 72
    8.19 No Violation of Law. ....................................................................................... 74
    8.20 No Default. ....................................................................................................... 74
    8.21 ERISA Compliance. ........................................................................................ 74
    8.22 Taxes. .............................................................................................................. 74
    8.23 Regulated Entities. .......................................................................................... 75
    8.24 Use of Proceeds; Margin Regulations. ........................................................... 75
    8.25 Copyrights, Patents, Trademarks and Licenses, etc. ..................................... 75
    8.26 No Material Adverse Change. ......................................................................... 75
    8.27 Full Disclosure. ............................................................................................... 76
    8.28 Material Agreements. ...................................................................................... 76
    8.29 Bank Accounts. ............................................................................................... 76
    8.30 Governmental Authorization. ......................................................................... 76

ARTICLE 9   76


AFFIRMATIVE AND NEGATIVE COVENANTS ............................................................... 76

    9.1 Taxes and Other Obligations. ........................................................................... 76
    9.2 Corporate Existence and Good Standing. .......................................................... 77
    9.3 Compliance with Law and Agreements; Maintenance of Licenses. ............... 77

| Section | Page |
|---|---|
| 9.4 Maintenance of Property. | 77 |
| 9.5 Insurance. | 77 |
| 9.6 Condemnation. | 78 |
| 9.7 Environmental Laws. | 79 |
| 9.8 Compliance with ERISA. | 80 |
| 9.9 Mergers, Consolidations or Sales. | 80 |
| 9.10 Distributions; Capital Change; Restricted Investments. | 80 |
| 9.11 Transactions Affecting Collateral or Obligations. | 81 |
| 9.12 Guaranties. | 81 |
| 9.13 Debt. | 81 |
| 9.14 Prepayment. | 81 |
| 9.15 Transactions with Affiliates. | 81 |
| 9.16 Investment Banking and Finder's Fees. | 81 |
| 9.17 Business Conducted. | 82 |
| 9.18 Liens. | 82 |
| 9.19 Sale and Leaseback Transactions. | 82 |
| 9.20 New Subsidiaries. | 82 |
| 9.21 Fiscal Year. | 82 |
| 9.22 Capital Expenditures. | 82 |
| 9.23 Funded Debt to EBITDA. | 82 |
| 9.24 Fixed Charge Coverage Ratio. | 83 |
| 9.25 Operating Lease Obligations. | 83 |
| 9.26 Use of Proceeds. | 83 |
| 9.27 Further Assurances. | 83 |
| ARTICLE 10 | 84 |
| CONDITIONS OF LENDING | 84 |
| 10.1 Conditions Precedent to Making of Loans on the Closing Date. | 84 |
| 10.2 Conditions Precedent to Each Loan. | 86 |
| ARTICLE 11 | 87 |
| DEFAULT; REMEDIES | 87 |
| 11.1 Events of Default. | 87 |
| 11.2 Remedies. | 89 |
| ARTICLE 12 | 90 |
| TERM AND TERMINATION | 90 |
| 12.1 Term and Termination. | 90 |

Section                                                                                Page

ARTICLE 13  91

AMENDMENTS; WAIVER; PARTICIPATIONS; ASSIGNMENTS; SUCCESSORS ............ 91

    13.1 Amendments and Waivers. ........................................................................ 91
    13.2 Assignments; Participations. ...................................................................... 92

ARTICLE 14  94

THE AGENT  94

    14.1 Appointment and Authorization. ................................................................ 94
    14.2 Delegation of Duties. .............................................................................. 94
    14.3 Liability of Agent. ................................................................................. 95
    14.4 Reliance by Agent. ................................................................................ 95
    14.5 Notice of Default. .................................................................................. 95
    14.6 Credit Decision. .................................................................................... 96
    14.7 Indemnification. .................................................................................... 96
    14.8 Agent in Individual Capacity. ................................................................... 96
    14.9 Successor Agent. ................................................................................... 97
    14.10 Withholding Tax. ................................................................................. 97
    14.11 Collateral Matters. ............................................................................... 98
    14.12 Restrictions on Actions by Lenders; Sharing of Payments. ......................... 99
    14.13 Agency for Perfection. .......................................................................... 100
    14.14 Payments by Agent to Lenders. ............................................................... 100
    14.15 Concerning the Collateral and the Related Loan Documents. ..................... 100
    14.16 Field Audit and Examination Reports; Disclaimer by Lenders. ................... 101
    14.17 Relation Among Lenders. ....................................................................... 101

ARTICLE 15  102

MISCELLANEOUS ............................................................................................... 102

    15.1 No Waivers, Cumulative Remedies; No Prior Recourse to Collateral. ...... 102
    15.2 Severability. ........................................................................................ 102
    15.3 Governing Law; Choice of Forum; Service of Process; Jury Trial
        Waiver. ............................................................................................ 102
    15.4 WAIVER OF JURY TRIAL. ................................................................... 103
    15.5 Survival of Representations and Warranties. ............................................. 103
    15.6 Other Security and Guaranties. ............................................................... 104
    15.7 Fees and Expenses. ............................................................................... 104
    15.8 Notices. .............................................................................................. 104
    15.9 Waiver of Notices. ................................................................................ 106
    15.10 Binding Effect. .................................................................................... 106
    15.11 Indemnity of the Agent and the Lenders by the Borrower. ....................... 106

Section

Page

15.12 Limitation of Liability. ............................................................................. 107
15.13 Final Agreement.................................................................................... 107
15.14 Counterparts. ...................................................................................... 107
15.15 Captions. ............................................................................................ 107
15.16 Right of Setoff..................................................................................... 107

EXHIBITS

EXHIBIT A-1 - FORM OF TERM LOAN NOTE A

EXHIBIT A-2 - FORM OF TERM LOAN NOTE B

EXHIBIT B - FORM OF BORROWING BASE CERTIFICATE

EXHIBIT C - FINANCIAL STATEMENTS

EXHIBIT D - LIST OF CLOSING DOCUMENTS

EXHIBIT E - NOTICE OF BORROWING

EXHIBIT F - NOTICE OF CONTINUATION/CONVERSION

EXHIBIT G - FORM OF ASSIGNMENT AND ACCEPTANCE AGREEMENT

EXHIBIT H-1 - FORM OF LANDLORD WAIVER

EXHIBIT H-2 - FORM OF BAILEE CONSENT

SCHEDULES

Schedule 1.1 -- Assigned Contracts

Schedule 6.3 -- Locations of Collateral

Schedule 8.3 -- Organization and Qualification

Schedule 8.5 -- Subsidiaries and Affiliates

Schedule 8.7 -- Capitalization

Schedule 8.9 -- Debt

Schedule 8.12 -- Real Estate, Leases

Schedule 8.13 -- Proprietary Rights

Schedule 8.14 -- Tradenames

Schedule 8.15 -- Litigation

Schedule 8.17 -- Labor Disputes

Schedule 8.18 -- Environmental Laws

Schedule 8.21 -- ERISA Compliance

Schedule 8.24 -- Family Shareholder Loans

Schedule 8.28 -- Material Agreements

Schedule 8.29 -- Bank Accounts

# FINANCING AND SECURITY AGREEMENT

Financing and Security Agreement, dated as of April 10, 2000, among the financial institutions listed on the signature pages hereof (such financial institutions, together with their respective successors and assigns, are referred to hereinafter each individually as a "Lender" and collectively as the "Lenders"), Bank of America, National Association, a national banking association with an office at 231 South LaSalle Street, Chicago, Illinois 60697, as agent for the Lenders (in its capacity as agent, the "Agent"), and Auburn Foundry, Inc., an Indiana corporation, with offices at 635 West Eleventh Street, Auburn, Indiana 46706 (the "Borrower").

## W I T N E S S E T H

WHEREAS, the Borrower has requested that the Lenders make available to the Borrower a revolving line of credit for loans and letters of credit in an amount not to exceed $20,000,000 and to make term loans to the Borrower in the aggregate principal amount of $28,000,000 which extensions of credit the Borrower will use for its working capital needs and general business purposes; and

WHEREAS, the Lenders have agreed to make available to the Borrower a revolving credit facility and term loans upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Agreement, and for good and valuable consideration, the receipt of which is hereby acknowledged, the Lenders, the Agent, and the Borrower hereby agree as follows.

## ARTICLE 1

## INTERPRETATION OF THIS AGREEMENT

1.1     Definitions.

As used herein:

"Accounts" means all of the Borrower's now owned or hereafter acquired or arising accounts as defined in the UCC, including any rights to payment for the sale or lease of goods or rendition of services, whether or not they have been earned by performance.

"Account Debtor" means each Person obligated in any way on or in connection with an Account.

"ACH Settlement Risk Reserve" means any and all reserves which the Agent from time to time establishes, in its sole discretion, with respect to ACH Transactions.

"ACH Transactions" means any cash management or related services including the automatic clearing house transfer of funds by the Bank for the account of the Borrower pursuant to agreement or overdrafts.

"Adjusted Net Earnings from Operations" means, with respect to any fiscal period of the Borrower, the Borrower's net income after provision for income taxes for such fiscal period, as determined in accordance with GAAP and reported on the Financial Statements for such period, excluding any and all of the following included in such net income:  (a) gain or loss arising from the sale of any capital assets; (b) gain arising from any write-up in the book value of any asset; (c) earnings of any Person, substantially all the assets of which have been acquired by the Borrower in any manner, to the extent realized by such other Person prior to the date of acquisition; (d) earnings of any Person in which the Borrower has an ownership interest unless (and only to the extent) such earnings shall actually have been received by the Borrower in the form of cash distributions; (e) earnings of any Person to which assets of the Borrower shall have been sold, transferred or disposed of, or into which the Borrower shall have been merged, or which has been a party with the Borrower to any consolidation or other form of reorganization, prior to the date of such transaction; (f) gain arising from the acquisition of debt or equity securities of the Borrower or from cancellation or forgiveness of Debt; and (g) gain arising from extraordinary items, as determined in accordance with GAAP, or from any other non-recurring transaction.

"Affiliate" means, as to any Person, any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person or which owns, directly or indirectly, five percent (5%) or more of the outstanding equity interest of such Person. A Person shall be deemed to control another Person if the controlling Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of the other Person, whether through the ownership of voting securities, by contract, or otherwise.

"Agent" means the Bank, solely in its capacity as agent for the Lenders, and any successor agent.

"Agent Advances" has the meaning specified in Section 2.2(i).

"Agent's Liens" means the Liens in the Collateral granted to the Agent, for the benefit of the Lenders, Bank, and Agent pursuant to this Agreement and the other Loan Documents.

"Agent-Related Persons" means the Agent and any successor agent, together with their respective Affiliates, and the officers, directors, employees, agents and attorneys-in-fact of such Affiliates.

"Aggregate Revolver Outstandings" means, at any date of determination, the sum of (a) the unpaid balance of Revolving Loans, (b) the aggregate amount of Pending Revolving Loans, (c) one hundred percent (100%) of the aggregate undrawn face amount of all outstanding Letters of Credit, (d) the aggregate amount of any unpaid reimbursement obligations in respect of Letters of Credit.

"Agreement" means this Financing and Security Agreement, as the same may be amended, amended and restated, supplemented, replaced, renewed or otherwise modified from time to time in accordance with the terms hereof.

"Anniversary Date" means each anniversary of the Closing Date.

"Applicable Margin" means (i) from the Closing Date until the first Applicable Margin Adjustment Date, for each Prime Rate Revolving Loan, a rate equal to 0.25% per annum, for each Prime Rate Term Loan A, a rate equal to 0.50% per annum and for each Prime Rate Term Loan B, a rate equal to 0.75% per annum, (ii) from the Closing Date until the first Applicable Margin Adjustment Date, for each LIBOR Revolving Loan, a rate equal to 2.50% per annum, for each LIBOR Term Loan A, a rate equal to 2.75% per annum and for each LIBOR Term Loan B, a rate equal to 3.00% per annum, and (iii) thereafter, a per annum rate which shall adjust as of each Applicable Margin Adjustment Date based on the ratio of Borrower's Funded Debt to EBITDA for the Margin Adjustment Testing Period ending on the last day of the fiscal quarter immediately preceding such Applicable Margin Adjustment Date, as determined by the Agent, in its sole discretion, from the monthly reports required by Section 7.2(b), in accordance with the following table:

| Funded Debt to EBITDA Ratio | Applicable Margin | | Applicable Margin | | Applicable Margin | |
|---|---|---|---|---|---|---|
| | Prime Rate Revolving Loans | LIBOR Revolving Loans | Prime Rate Term Loans A | LIBOR Term Loans A | Prime Rate Term Loans B | LIBOR Term Loans B |
| Less than 1.5 to 1.0 | 0.0% | 2.00% | 0.25% | 2.25% | 0.50% | 2.50% |
| Greater than or equal to 1.5 to 1.0 but less than 2.0 to 1.0 | 0.0% | 2.25% | 0.25% | 2.50% | 0.50% | 2.75% |
| Greater than or equal to 2.0 to 1.0 but less than 2.5 to 1.0 | 0.25% | 2.50% | 0.50% | 2.75% | 0.75% | 3.00% |
| Greater than or equal to 2.5 to 1.0 | 0.50% | 2.75% | 0.75% | 3.00% | 1.00% | 3.25% |

; provided, however, that the Applicable Margin shall not be adjusted downward if a Default or an Event of Default shall exist on the applicable Applicable Margin Adjustment Date.

"Applicable Margin Adjustment Date" means April 1, July 1, October 1 or January 1 of any calendar year, with the first Applicable Margin Adjustment Date occurring on April 1, 2001.

"Assigned Contracts" means, collectively, all of the Borrower's rights and remedies under, and all moneys and claims for money due or to become due to the Borrower under those contracts set forth on Schedule 1.1, and any other material contracts, and any and all

amendments, supplements, extensions, and renewals thereof including, without limitation, all rights and claims of the Borrower now or hereafter existing: (i) under any insurance, indemnities, warranties, and guarantees provided for or arising out of or in connection with any of the foregoing agreements; (ii) for any damages arising out of or for breach or default under or in connection with any of the foregoing contracts; (iii) to all other amounts from time to time paid or payable under or in connection with any of the foregoing agreements; or (iv) to exercise or enforce any and all covenants, remedies, powers and privileges thereunder.

"Assignee" has the meaning specified in Section 13.2(a)

"Assignment and Acceptance" has the meaning specified in Section 13.2(a).

"Attorney Costs" means and includes all fees, expenses and disbursements of any law firm or other counsel engaged by the Agent, the allocated costs of internal legal services of the Agent and the reasonable expenses of internal counsel to the Agent.

"Availability" means, at any time, (a) the Borrowing Base minus (b) the Aggregate Revolver Outstandings.

"Bank" means Bank of America, National Association, a national banking association, or any successor entity thereto, and any Affiliate thereof.

"Bank Products" means any one or more of the following types of services or facilities extended to the Borrower by the Bank or any affiliate of the Bank in reliance on the Bank's agreement to indemnify such affiliate: (i) credit cards; (ii) ACH Transactions; (iii) Hedge Agreements; and (iv) Swap Transactions.

"Bank Product Reserves" means all reserves which the Agent from time to time establishes in its sole discretion for the Bank Products then provided or outstanding, including but not limited to the ACH Settlement Risk Reserve and Swap Reserve.

"Bankruptcy Code" means Title 11 of the United States Code (11 U.S.C. § 101 et seq.).

"Blocked Account Agreement" means an agreement among the Borrower, the Agent and a Clearing Bank, in form and substance satisfactory to the Agent, concerning the collection of payments which represent the proceeds of Accounts or of any other Collateral.

"Borrowing" means a borrowing hereunder consisting of Revolving Loans or Term Loans made on the same day by the Lenders to the Borrower (or by Bank in the case of a Borrowing funded by Swing-Line Loans) or by the Agent in the case of a Borrowing consisting of an Agent Advance, or the issuance of Letters of Credit hereunder.

"Borrowing Base" means, at any time, an amount equal to (a) the lesser of (i) the Maximum Revolver Amount or (ii) the sum of (A) eighty-five percent (85%) of the Net Amount of Eligible Accounts; plus (B) sixty percent (60%) of the value of Eligible Inventory; minus (b) the sum of (i) reserves for accrued and unpaid interest on the Obligations, (ii) the Environmental Compliance Reserve, if required by Agent in its reasonable discretion (iii) the Bank Product

Reserves, and (iv) all other reserves which the Agent deems necessary in the exercise of its reasonable credit judgment to maintain with respect to the Borrower's account, including reserves for any amounts which the Agent or any Lender may be obligated to pay in the future for the account of the Borrower.

"Borrowing Base Certificate" means a certificate executed by a Responsible Officer of the Borrower, substantially in the form of Exhibit B (or another form acceptable to the Agent) setting forth the calculation of the Borrowing Base and Availability, including a calculation of each component thereof, all in such detail as shall be satisfactory to the Agent. All calculations of the Borrowing Base in connection with the preparation of any Borrowing Base Certificate shall originally be made by the Borrower and certified to the Agent; provided, that the Agent shall have the right to review and adjust, in the exercise of its reasonable credit judgment, any such calculation (1) to reflect its reasonable estimate of declines in value of any of the Collateral described therein, and (2) to the extent that such calculation is not in accordance with this Agreement.

"Business Day" means (a) any day that is not a Saturday, Sunday, or a day on which banks in Chicago, Illinois or Charlotte, North Carolina are required or permitted to be closed, and (b) with respect to all notices, determinations, fundings and payments in connection with the LIBOR Rate or LIBOR Rate Loans, any day that is a Business Day pursuant to clause (a) above and that is also a day on which trading in Dollars is carried on by and between banks in the London interbank market.

"Capital Adequacy Regulation" means any guideline, request or directive of any central bank or other Governmental Authority, or any other law, rule or regulation, whether or not having the force of law, in each case, regarding capital adequacy of any bank or of any corporation controlling a bank.

"Capital Expenditures" means all payments due (whether or not paid) in respect of the cost of any fixed asset or improvement, or replacement, substitution, or addition thereto, which has a useful life of more than one year, including, without limitation, those costs arising in connection with the direct or indirect acquisition of such asset by way of increased product or service charges or in connection with a Capital Lease.

"Capital Lease" means any lease of property by the Borrower which, in accordance with GAAP, should be reflected as a capital lease on the balance sheet of the Borrower.

"Change of Control" means the occurrence of any of the following: (i) the sale, lease, transfer, conveyance or other disposition (other than by way of merger or consolidation), in one or a series of related transactions, of all or substantially all of the assets of the Borrower to any "person" (as such term is used in Section 13(d)(3) of the Exchange Act), (ii) the adoption of a plan relating to the liquidation or dissolution of the Borrower or any of its Subsidiaries, (iii) the first day on which the shareholders of the Borrower as of the Closing Date either (A) sell any shares of the Borrower without using the net proceeds thereof to prepay the Obligations and permanently reduce the Commitments or obtaining the prior consent of the Agent to apply such net proceeds in any other manner; provided, however, that transfers for estate planning purposes

for no consideration and transfers between shareholders existing as of the Closing Date shall not be treated as sales for purposes of this clause (A), or (B) cease to own legally and beneficially at least 90% of the voting stock of the Borrower, (iv) the first day on which a majority of the members of the board of directors of the Borrower are not Continuing Directors, and (v) the consummation of any transaction (including, without limitation, any merger or consolidation) the result of which is that any Subsidiary of Borrower is no longer a wholly-owned subsidiary of the Borrower or any other Subsidiary of Borrower. For purposes of this definition, any transfer of an equity interest of an entity that was formed for the purpose of acquiring voting stock of any entity will be deemed to be a transfer of such portion of such voting stock as corresponds to the portion of the equity of such entity that has been so transferred.

"Clearing Bank" means the Bank or any other banking institution with whom a Payment Account has been established pursuant to a Blocked Account Agreement.

"Closing Date" means the date of this Agreement.

"Closing Documents" means each of the documents referred to on Exhibit D attached hereto and incorporated herein by reference.

"Closing Fee" has the meaning specified in Section 3.4.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute, and regulations promulgated thereunder.

"Collateral" has the meaning specified in Section 6.1.

"Collateral Management Fee" has the meaning specified in Section 3.7.

"Commitment" means, at any time with respect to a Lender, the principal amount set forth beside such Lender's name under the heading "Commitment" on the signature pages of this Agreement or on the signature page of the Assignment and Acceptance pursuant to which such Lender became a Lender hereunder in accordance with the provisions of Section 13.2, as such Commitment may be adjusted from time to time in accordance with the provisions of Section 13.2, and "Commitments" means, collectively, the aggregate amount of the commitments of all of the Lenders.

"Contaminant" means any waste, pollutant, hazardous substance, toxic substance, hazardous waste, special waste, petroleum or petroleum-derived substance or waste, asbestos in any form or condition, polychlorinated biphenyls ("PCBs"), or any constituent of any such substance or waste.

"Continuation/Conversion Date" means the date on which a Loan is converted into or continued as a LIBOR Rate Loan.

"Continuing Directors" means, as of any date of determination, any member of the board of directors of the Borrower who (a) was a member of such board of directors on the Closing Date or (b) was nominated for election or elected to such board of directors with the

approval of a majority of the directors who were members of such board at the time of such nomination or election.

"Credit Support" has the meaning specified in Section 2.5(a).

"Debt" means, without duplication, all liabilities, obligations and indebtedness of the Borrower to any Person, of any kind or nature, now or hereafter owing, arising, due or payable, howsoever evidenced, created, incurred, acquired or owing, whether primary, secondary, direct, contingent, fixed or otherwise, and including, without in any way limiting the generality of the foregoing: (i) the Borrower's liabilities and obligations to trade creditors; (ii) all Obligations; (iii) all obligations and liabilities of any Person secured by any Lien on the Borrower's property, even though the Borrower shall not have assumed or become liable for the payment thereof; provided, however, that all such obligations and liabilities which are limited in recourse to such property shall be included in Debt only to the extent of the book value of such property as would be shown on a balance sheet of the Borrower prepared in accordance with GAAP; (iv) all obligations or liabilities created or arising under any Capital Lease or conditional sale or other title retention agreement with respect to property used or acquired by the Borrower, even if the rights and remedies of the lessor, seller or lender thereunder are limited to repossession of such property; provided, however, that all such obligations and liabilities which are limited in recourse to such property shall be included in Debt only to the extent of the book value of such property as would be shown on a balance sheet of the Borrower prepared in accordance with GAAP; (v) all accrued pension fund and other employee benefit plan obligations and liabilities; (vi) all obligations and liabilities under Guaranties; and (vii) deferred taxes.

"Debt For Borrowed Money" means, as to any Person, (a) Debt for borrowed money or as evidenced by notes, bonds, debentures or similar evidences of any such Debt of such Person, (b) the deferred and unpaid purchase price of any property or business (other than trade accounts payable incurred in the ordinary course of business and constituting current liabilities) and (c) all obligations under Capital Leases or loan agreements.

"Default" means any event or circumstance which, with the giving of notice, the lapse of time, or both, would (if not cured, waived, or otherwise remedied during such time) constitute an Event of Default.

"Defaulting Lender" has the meaning specified in Section 2.2(g)(1).

"Default Rate" means a fluctuating per annum interest rate at all times equal to the sum of (a) the otherwise applicable Interest Rate plus (b) two percent (2.00%). Each Default Rate shall be adjusted simultaneously with any change in the applicable Interest Rate. In addition, with respect to Letters of Credit, the Default Rate shall mean an increase in the Letter of Credit Fee by two (2) percentage points.

"Distribution" means, in respect of any corporation: (A) the payment or making of any dividend or other distribution of property in respect of capital stock (or any options or warrants for or other rights with respect to such stock) of such corporation, other than (i) distributions in capital stock (or any options or warrants for or other rights with respect to such