# EQUITY APPRECIATION RIGHTS AGREEMENT

**THIS EQUITY APPRECIATION RIGHTS AGREEMENT** (this "Agreement") is entered into as of this 26th day of June, 2003, by and among Auburn Foundry, Inc. (the "Borrower"), Bank of America, National Association, as Agent (in such capacity, the "Agent"), and as a Lender under the Credit Agreement (as hereinafter defined), and GMAC Business Credit, LLC, as Co-Agent (in such capacity, the "Co-Agent"), and as a Lender under the Credit Agreement.

## PRELIMINARY STATEMENT

A.  Borrower, Agent, Co-Agent and the Lenders are parties to that certain Financing and Security Agreement, dated as of April 10, 2000 (as amended, restated or otherwise modified from time to time, the "Credit Agreement");

B.  As of the date hereof, certain Events of Default have occurred and are continuing under the Credit Agreement;

C.  Concurrently with the execution and delivery hereof, Borrower, Agent, Co-Agent and the Lenders have entered into that certain Fourth Forbearance and Fifth Amendment Agreement (the "Fourth Forbearance"), pursuant to which, among other things, the Lenders have agreed to forbear and continue to advance funds to Borrower in accordance with the terms and conditions set forth in the Fourth Forbearance; and

D.  A condition precedent to the Agent's, Co-Agent's and the Lenders' execution and delivery of the Fourth Forbearance is that Borrower execute and deliver this Agreement.

**NOW THEREFORE,** in consideration of the mutual execution hereof and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I.
## DEFINITIONS AND DETERMINATIONS

1.1  **Credit Agreement**. All capitalized terms used as defined terms herein which are not defined in Section 1.2 below but which are defined in the Credit Agreement shall have the meanings ascribed to them in the Credit Agreement, the applicable provisions of which are incorporated herein by this reference.

1.2  **Additional Definitions**. As used in this Agreement, unless otherwise expressly indicated herein, the following terms shall have the following meanings (such meanings to be applicable equally both to the singular and plural terms defined):

**Applicable Buy-Out Fee**: The fee that Borrower is required to pay to Agent for the benefit of the Lenders pursuant to Section 3.4 hereof, the amount of which is set forth below based on the date on which the Other Obligations are fully and indefeasibly repaid to the Lenders in cash:

CH\612683.6

| Date of Full and Indefeasible Repayment of Other Obligations | Applicable Buy-Out Fee |
|---|---|
| On or before December 31, 2003 | $200,000 |
| Between January 1, 2004 and January 31, 2004 | $300,000 |
| Between February 1, 2004 and February 28, 2004 | $400,000 |
| Between March 1, 2004 and March 31, 2004 | $500,000 |

**Appraiser or Appraisers**: the appraiser or appraisers selected pursuant to subsection 2.5.2.

**Asset Value**: as determined pursuant to Section 2.3.

**Bona Fide Sale**: either (i) a Sale which is a bona fide sale in an arms-length transaction to a Person who is not an Affiliate of Borrower or any employee, officer, director, stockholder or other equity owner of Borrower or (ii) with the prior written consent of the Lenders in their sole discretion, any other Sale.

**Call**: the right of Borrower, if any, to require Agent and the Lenders to accept the Equity Appreciation Payment.

**Cash Equivalents**: Borrower's (i) cash and cash items in any bank or trust company, on hand and in transit, (ii) monies on deposit in any money market account, and (iii) treasury bills, certificates of deposit, commercial paper and readily marketable securities at current market value.

**Current Market Price**: as to any security on any date specified herein, the average of the daily closing prices for the 30 consecutive trading days before such date excluding any trades which are not bona fide arm's length transactions. The closing price for each day shall be (a) if any such security is listed or admitted for trading on any national securities exchange or the National Association of Securities Dealers, Inc. Automated Quotation System ("NASDAQ"), the last bid price of any such security, in each case as officially reported on the principal securities exchange on which any such security is listed or NASDAQ, as applicable, or (b) if clause (a) does not apply, the mean between the closing high bid and low asked quotations of any such security in the over-the-counter market as shown by any system of automated dissemination of quotations of securities prices then in common use, if so quoted, as reported by any member firm of the New York Stock Exchange selected by Agent and Borrower. If any such security is quoted on a national securities or central market system in lieu of a market or quotation system

2

CH\612683.6

described above, the closing price shall be determined in the manner set forth in clause (b) of the preceding sentence if bid and asked quotations are reported but actual transactions are not, and in the manner set forth in clause (a) of the preceding sentence if actual transactions are reported.

**Deferred Amortization**: the aggregate principal payment amount of Term Loan Notes A that Borrower must immediately pay based on the date Borrower exercises the 75% Equity Appreciation Rights Buy-Out:

| Date Borrower Exercises 75% Equity Appreciation Rights Buy-Out | Deferred Amortization |
| --- | --- |
| Between June 1, 2003 and June 30, 2003 | $463,869.46 |
| Between July 1, 2003 and July 31, 2003 | $927,738.92 |
| Between August 1, 2003 and August 31, 2003 | $1,391,608.38 |
| Between September 1, 2003 and September 30, 2003 | $1,755,477.84 |
| Between October 1, 2003 and October 31, 2003 | $2,119,347.30 |
| Between November 1, 2003 and November 30, 2003 | $2,483,216.76 |
| Between December 1, 2003 and December 31, 2003 | $2,847,086.22 |
| Between January 1, 2004 and January 31, 2004 | $3,210,955.68 |
| Between February 1, 2004 and February 29, 2004 | $3,574,825.14 |
| Between March 1, 2004 and March 31, 2004 | $3,838,694.60 |

**Equity Appreciation Payment**: as determined pursuant to Section 2.2 hereof.

**Evaluation Components**: the Non-Liquid Property Value, the Liquid Assets Value, the Postponed Payments Value, the Non-Cash Consideration Value, the Transferred Property Value,

CH\612683.6

3

the Liabilities and the Permitted Liabilities, to the extent any such item must be determined to determine the Asset Value.

**Lenders**: the "Lenders" as defined in the Credit Agreement and any successor to any Lender's right to receive all or any portion of the Equity Appreciation Payment hereunder.

**Liabilities**: the aggregate of all Indebtedness of Borrower, exclusive of liabilities relating to leases (other than Capital Leases), rental agreements and other agreements relating to the use of Property, which agreements must be utilized by any purchaser of the operating assets and operating properties or the capital stock of the user in order for such purchaser to continue, uninterrupted, the business operations of such user upon such purchase in the same manner as theretofore conducted by such user and for which no adjustment to the purchase price would be made.

**Liquid Assets**: the aggregate of Borrower's (i) Cash Equivalents, (ii) customer accounts, bills and notes receivable, less such reserves as may be required by GAAP, and (iii) prepaid insurance, rent and other similar items.

**Liquid Assets Value**: the value of the Liquid Assets as determined pursuant to Section 2.4 and/or Section 2.6.

**Non-Cash Consideration**: any consideration, other than cash, paid to Borrower, any Affiliate of Borrower, any Person (whether as an employee, officer, director, stockholder or other equity interest owner or in any other capacity) who holds any equity interest in Borrower or any Affiliate of such Person, in each case in connection with a Bona Fide Sale.

**Non-Cash Consideration Value**: the value of Non-Cash Consideration as determined pursuant to subsection 2.4.3 or Section 2.5.

**Non-Liquid Property**: all the Property of Borrower, except Liquid Assets.

**Non-Liquid Property Value**: the fair market going concern value of the Non-Liquid Property, as determined pursuant to Section 2.5.

**Other Obligations**: all present and future Obligations (as defined in the Credit Agreement) except for the obligation to pay the Equity Appreciation Payment.

**Parties Determination Period**: as defined in subsection 2.5.1.

**Payment Date**: the relevant Payment Date shall be (i) in the case of the exercise of the Put in connection with a Bona Fide Sale, concurrently with the consummation thereof, (ii) in all other cases, five days after the date of determination of the applicable Equity Appreciation Payment.

**Permitted Liabilities**: without duplication, all Liabilities of Borrower, the incurrence of which are not prohibited by the Credit Agreement, excluding the Equity Appreciation Payment.

CH\612683.6

**Postponed Payments**: all payments payable to Borrower, any Affiliate of Borrower, any Person (whether as an employee, officer, director, stockholder or other equity interest owner or in any other capacity) who holds any equity interest in Borrower or any Affiliate of such Person, by the purchaser or any Affiliate of the purchaser in connection with a Bona Fide Sale, which payments are contingent upon the occurrence or satisfaction after the closing of such Bona Fide Sale of conditions or events other than the passage of time.

**Postponed Payments Value**: the present value of the amount which it is estimated will be paid with respect to all Postponed Payments, after considering the likelihood that the conditions precedent to such payments will be satisfied, as determined pursuant to subsections 2.5.1 and/or 2.5.2.

**Property**: all types of real, personal or mixed property and all types of tangible or intangible property, including, but not limited to, the Liquid Assets.

**Put**: the right of Agent (for the benefit of the Lenders) to require Borrower to pay the Equity Appreciation Payment on or before the Payment Date.

**Put Notice**: a notice delivered by Agent to Borrower of the exercise of the Put.

**Put Period**: Any time on or after the earliest date on which at least one of the following occurs: (i) the consummation of a Sale; or (ii) the occurrence of a Forbearance Default, as such term is defined in the Fourth Forbearance.

**Sale**: Except for the enforcement by Subordinated Lender (as such term is defined in the Credit Agreement) of its default-related rights against certain stockholders of Borrower under that certain Pledge Agreement, dated as of the date hereof, by and between Borrower and such stockholders, each of (i) the sale of all or substantially all of the Property of Borrower or 50% or more of the Securities (whether such sale is by Borrower, any stockholder or other equity owner of the Borrower or a combination thereof) in a single transaction or a series of related transactions and (ii) the merger or consolidation of Borrower with or into any Person; provided, however, that the term "Sale" shall not include any judicial or nonjudicial foreclosure sale of any Property of or Securities in Borrower.

**Sale Notice**: a notice by Borrower to Agent that Borrower, an officer of Borrower or stockholder or other equity interest owner of Borrower has executed an agreement which provides for a Sale.

**Sale Price:** as determined pursuant to the applicable provisions of Section 2.4 hereof.

**Securities**: the outstanding voting capital stock of Borrower.

**Securities Act**: the Securities Act of 1933, as amended, or any similar federal statute and the rules and regulations of the Securities and Exchange Commission thereunder, as in effect from time to time.

**Transferred Property**: any Property of Borrower which is transferred to a Person other than Borrower in violation of the terms of the Credit Agreement.

CH\612683.6

5

**Transferred Property Value**: the value of any Transferred Property, as determined pursuant to Section 2.5, minus (i) any cash consideration actually paid to Borrower for such Transferred Property, and (ii) any Permitted Liabilities which are assumed by the transferee of such Transferred Property or to which the transferee takes subject.

**75% Buy-Out Fee**: The fee that Borrower is required to pay to Agent for the benefit of the Lenders in addition to the Deferred Amortization to effectuate the 75% Equity Appreciation Rights Buy-Out pursuant to Section 3.5 hereof, the amount of which is set forth below based on the date on which Borrower exercises the 75% Equity Appreciation Rights Buy-Out by paying the Deferred Amortization plus such fees:

| Date Borrower Exercises 75% Equity Appreciation Rights Buy-Out | 75% Buy-Out Fee |
| --- | --- |
| On or before November 30, 2003 | $100,000 |
| Between December 1, 2003 and December 31, 2003 | $150,000 |
| Between January 1, 2004 and January 31, 2004 | $200,000 |
| Between February 1, 2004 and February 28, 2004 | $250,000 |
| Between March 1, 2004 and March 31, 2004 | $300,000 |

**75% Equity Appreciation Rights Buy-Out**: as set forth in Section 3.5 hereof.

1.3    **Accounting Terms and Determinations**. Unless otherwise specified in this Agreement, all accounting terms used herein shall be construed, all accounting determinations hereunder shall be made and all financial statements required to be delivered pursuant hereto shall be prepared in accordance with GAAP consistently applied.

1.4    **References**. All references in this Agreement to an "Article," "Section," "subsection," "subparagraph" or "clause," unless otherwise indicated, shall be deemed to refer to an Article, Section, subsection, subparagraph or clause, as applicable, of this Agreement.

1.5    **Dates for Certain Determinations**.

(a)    The Postponed Payments Value, the items referred to in subsections 2.4.1(a)(ii) and 2.4.1(a)(iii) and the Non-Cash Consideration Value shall be

CH\612683.6

6

determined as of the date of the closing of the Bona Fide Sale in connection with which such item is to be paid.

(b)  The Transferred Property Value, including any Permitted Liabilities which are assumed by the transferee thereof or to which such transferee takes subject, shall be determined as of the date of the transfer of such Property.

(c)  The Liquid Assets Value, the Non-Liquid Property Value, the Liabilities and the Permitted Liabilities (except as provided in subparagraph (b) above) shall be determined as of the date of a Sale or if there is not a Sale, as of the last day of the month immediately preceding the month in which the Put Notice is given.

1.6  **Limited Survival of Credit Agreement Terms and Conditions**. Solely for purposes of determining Permitted Liabilities, Transferred Property or any other component of Asset Value hereunder, the terms and provisions of the Credit Agreement shall be deemed to survive payment in full of the Other Obligations, termination of the Commitments and termination of the Credit Agreement itself.

## ARTICLE II.
## EQUITY APPRECIATION PAYMENT OBLIGATION

2.1  **Obligation for Payment**. Borrower agrees to pay to Agent for the benefit of the Lenders the Equity Appreciation Payment on the applicable Payment Date upon the exercise of the Put.

2.2  **Calculation of Equity Appreciation Payment**. The Equity Appreciation Payment shall be equal to forty percent (40%) of the Asset Value.

2.3  **Calculation of Asset Value**. The Asset Value shall be, without duplication, the sum of the following:

(a)  The applicable amounts determined pursuant to clauses (i), (ii) or (iii) below:

(i)  If any of the Securities in Borrower are the subject of a Bona Fide Sale, the Sale Price of such Securities as determined pursuant to subsection 2.4.1 or 2.4.2; or

(ii)  If the Property of Borrower is the subject of a Bona Fide Sale, the sum of (A) the Sale Price, as determined pursuant to subsection 2.4.1, of the Property of Borrower which is sold in such Bona Fide Sale; (B) the Non-Liquid Property Value of Non-Liquid Property which is not the subject of such Bona Fide Sale; and (C) the Liquid Assets Value of Liquid Assets which are not the subject of such Bona Fide Sale; or

(iii)  If neither clause (i) or (ii) is applicable, then the sum of (A) the Non-Liquid Property Value of Non-Liquid Property and (B) the Liquid Assets Value of Liquid Assets;

plus

(b)     The Transferred Property Value, except to the extent included in determining the Sale Price pursuant to subsection 2.4.2;

minus

(c)     Permitted Liabilities other than those Permitted Liabilities which are assumed by a buyer or to which a buyer takes subject in connection with a Bona Fide Sale.

2.4     **Determination of Sale Price**.

2.4.1    **Sale Price, Except Bona Fide Sale of Less Than All Securities**. Except for a Bona Fide Sale of less than all of the Securities, in the event of a Bona Fide Sale, the Sale Price shall be deemed to be, without duplication, the sum of:

(i)     the cash consideration payable on or before the closing for the Property (including the Securities) sold in such Bona Fide Sale,

(ii)    the present value of the cash consideration payable after the closing for the Property (including Securities) which is sold in such Bona Fide Sale, whether evidenced by notes, debentures or other instruments, excluding Postponed Payments,

(iii)   the present value of any cash consideration payable at any time, directly or indirectly, in connection with such Bona Fide Sale to Borrower or any employee, officer, director, stockholder or other equity owner of Borrower or any Affiliate of Borrower or any employee, officer, director, stockholder or other equity owner of Borrower by the purchaser or any Affiliate of the purchaser, including, without limitation, any amounts paid pursuant to non-competition or consulting agreements,

(iv)    the Postponed Payments Value,

(v)     the Non-Cash Consideration Value, minus any Liabilities assumed by Borrower in connection with the transfer to Borrower of such Non-Cash Consideration or to which Borrower takes such Non-Cash Consideration subject, and

(vi)    the Liabilities of Borrower which are not Permitted Liabilities, to the extent the buyer of the Property or Securities assumes or takes subject to such Liabilities.

2.4.2    **Sale Price - Bona Fide Sale of a Portion of Securities**. Upon a Bona Fide Sale of less than all of the Securities occurring, the Sale Price shall be deemed to be, without duplication, the product of (A) the sum of (I) the items set forth in subsection 2.4.1(a)(i)-(vi) above and (II) the Transferred Property Value, multiplied by (B) a fraction, the numerator of

CH\612683.6

8

which is 1.00 and the denominator of which is the numerical decimal equivalent of the percentage of the Securities which are the subject of such Bona Fide Sale.

       2.4.3  **Non-Cash Consideration Value - Securities**. The Non-Cash Consideration Value of any Non-Cash Consideration which consists of securities listed or admitted for trading on any national securities exchange shall be the Current Market Price of such securities.

  2.5  **Determination of Evaluation Components other than Liquid Assets Value, Liabilities and Permitted Liabilities**. Any Evaluation Component which is not determined pursuant to Sections 2.4 or 2.6 shall be determined as set forth below.

       2.5.1  **Determination by Borrower and Agent**. Borrower and Agent shall attempt to determine each such undetermined Evaluation Component during the period of 15 days following the date a Put Notice is given (the "Parties Determination Period").

       2.5.2  **Determination by Appraisers**. If all Evaluation Components have not been determined by agreement of Borrower and Agent within the Parties Determination Period, any remaining undetermined Evaluation Component, except the Liquid Assets Value, the Liabilities and the Permitted Liabilities, shall be determined by the Appraisers who shall be appointed and shall act as follows:

          (a)  Within 15 days after the expiration of the Parties Determination Period, Borrower on the one hand and Agent on the other hand shall each select an Appraiser, and within 5 days after their selection, the two Appraisers shall select a third Appraiser. If the first two Appraisers selected fail to agree upon and appoint a third Appraiser within the time period provided in the preceding sentence, then such Appraisers shall be discharged and within five days after the expiration of such period, Borrower and Agent shall each select a new Appraiser, and within five days after their selection, such new Appraisers shall appoint a third Appraiser. All Appraisers who are selected shall have knowledge and experience in valuing businesses such as that conducted by Borrower.

          (b)  If Borrower or Agent fails to select an Appraiser within the time periods set forth in subparagraph (a), the Appraiser appointed by the other party shall make all determinations to be made pursuant to this subsection 2.5.2.

          (c)  Each Appraiser selected pursuant to subparagraph (a) above (except those who are discharged) shall deliver to Borrower and Agent within 30 days after the appointment of such Appraiser, (i) written notice of the determination by such Appraiser of each Evaluation Component which is to be determined pursuant to this subsection 2.5.2 and (ii) the written appraisals upon which such determinations are based.

          (d)  Except as provided in subparagraph (b) above, each Evaluation Component which is to be determined pursuant to this subsection 2.5.2 shall be the average of the amounts determined for such Evaluation Component by the three Appraisers.

CH\612683.6

2.6     **Determinations by Accountants**. Accountants approved in advance by Agent (the "Accountants") shall determine the Liquid Assets Value, the Liabilities and the Permitted Liabilities which have not been determined pursuant to subsection 2.5.1. The Accountants shall also determine the Postponed Payments Value and any cash consideration referred to in subsections 2.4.1(a)(ii) and 2.4.1(a)(iii), using a discount rate of four percent (4%). Within 10 days after the expiration of the Parties Determination Period, Borrower shall submit to the Accountants all information which is necessary to enable the accountants to make such determinations. The Accountants shall make such determinations within 30 days following such delivery and shall deliver to Borrower and Agent written notice of such determinations. The amounts so determined by the Accountants shall be conclusive and binding for purposes hereof.

2.7     **Fees and Expenses of Appraisers and Accountants**. Borrower shall pay the fees and expenses of the Accountants and the Appraisers incurred in connection with the determination of the Asset Value.

## ARTICLE III.
## EXERCISE OF PUT; BORROWER BUYOUT OPTIONS

3.1     **No Call Rights**. Borrower shall have no right to exercise a Call, either in whole or in part.

3.2     **Exercise of Put**. Agent (on behalf of the Lenders) shall have the right to exercise the Put in whole, but not in part, at any time during a Put Period by delivery of the Put Notice to Borrower.

3.3     **Effective Date of Exercise of Put**. The Put shall be deemed to have been exercised as of the date the Put Notice is given.

3.4     **Option To Buy-Out All Equity Appreciation Rights**: Notwithstanding anything herein to the contrary, this Agreement shall immediately terminate and Borrower shall have no further obligations to Agent or the Lenders hereunder if, but only if, Borrower (i) pays Agent (for the benefit of the Lenders) the Applicable Buy-Out Fee, and (ii) fully and indefeasibly repays the Other Obligations in cash on or before March 31, 2004.

3.5     **75% Equity Appreciation Rights Buy-Out Option**: Notwithstanding anything herein to the contrary, Borrower shall have the right to reduce by seventy-five percent (75%) the amount of the Equity Appreciation Payment otherwise due and payable to Agent (for the benefit of the Lenders) if, but only if, Borrower (i) pays Agent (for the benefit of the Lenders) the 75% Buy-Out Fee, and (ii) repays in whole, but not in part, the Deferred Amortization.