## ARTICLE IV.
## TRANSFER OF EQUITY APPRECIATION PAYMENT;
## RESTRICTIONS ON TRANSFER

4.1    **Transfer of Equity Appreciation Payment; Issuance of New Certificate**. Subject to the restrictions set forth in Section 4.2, the right to receive payment of the Equity Appreciation Payment shall be transferable by any Lender or any subsequent owner thereof, in whole or in part, by the execution of an assignment in the form of Exhibit A. Upon receipt of such assignment and compliance with the conditions of Sections 4.2 and 4.3, Borrower shall register such transfer on its books and records.

4.2    **Restrictions on Transfer**. Agent and each Lender agrees that any transfer of the right to receive payment of the Equity Appreciation Payment may be made solely upon compliance with the terms and conditions of Section 4.3, which terms and conditions are intended to insure compliance with the provisions of the Securities Act with respect to such transfer.

4.3    **Notice of Proposed Transfer; Opinions of Counsel Concerning Transfer Without Registration**. Prior to the transfer by any Lender to a third-party (each, a "Transferee") of the right to receive payment of the Equity Appreciation Payment, or any portion thereof, Agent shall give written notice to Borrower of such Lender's intention to make such transfer, which notice shall describe briefly the manner and circumstances of the proposed transfer. Promptly after receiving such written notice, Borrower shall present copies thereof to its counsel and to counsel designated by Agent for an opinion as to whether the proposed transfer may be effected without registration or qualification under any Federal or state law. If in the opinion of each such counsel the proposed transfer may be effected without registration or qualification under any Federal or state law, Borrower, as promptly as practicable, shall notify Agent of such opinions and of the terms and conditions, if any, to be observed with respect to such transfer, whereupon such Lender shall be entitled to effectuate the transfer described in such notice, all in accordance with the terms thereof. If in the opinion of either counsel referred to above the proposed transfer may not be effected without registration or qualification of the right to receive payment of the Equity Appreciation Payment under applicable Federal or state law, or without compliance with the conditions of an exemptive regulation of the Securities and Exchange Commission (the "Commission") and/or applicable state law, Borrower promptly shall notify Agent of the reasons why such transfer cannot be made, it being understood that the right to receive payment of the Equity Appreciation Payment may not be transferred in the manner proposed if registration or qualification thereof would be required in the opinion of either counsel mentioned above; provided, however, that if in the opinion of counsel designated by Agent the proposed transfer may be effected without registration under the Securities Act and/or applicable state law, and counsel for Borrower shall not concur in such opinion, Agent's counsel, at its option, may submit the question to the staff (the "Staff") of the Commission and/or the appropriate state authority for an advisory opinion and, in the event the Staff and/or the appropriate state authority shall issue a "no action" letter with respect to the proposed transfer, Agent's counsel promptly shall furnish a copy thereof to Borrower and its counsel and thereupon such Lender shall be entitled to effect the transfer of the right to receive payment of the Equity Appreciation Payment which is covered by such "no action" letter in reliance upon and in accordance with the terms thereof. The fees and expenses of all counsel employed in connection

with any transfer of the right to receive payment of the Equity Appreciation Payment pursuant to the terms of this Section 4.3 shall be paid by Borrower.

4.4    **Limitation of Agent Liability**.  Agent owes no duties whatsoever to any Transferee or any Lender except to pay such Transferee or Lender its share of the Equity Appreciation Payment received by Agent pursuant to this Agreement.  Each Transferee and Lender shall independently and without reliance upon Agent, and based on such documents and information as it deems appropriate, conduct its own due diligence and make its own independent investigation of Borrower's financial status and financial prospects.  Agent shall at no time be deemed to have made any representation or warranty, express or implied, with respect to (i) the due execution, authenticity, legality, accuracy, completeness, sufficiency, validity or enforceability of this Agreement or any of the Loan Documents; (ii) the financial condition, solvency or creditworthiness of Borrower or any other Person which may have liability for the Other Obligations, or the collectibility of the Other Obligations; (iii) the validity, perfection, enforceability, value or sufficiency of, or title to any security for the Other Obligations, or the filing, or recording or taking of any other actions with respect to the Loan Documents, or the security for the Other Obligations; (iv) any representation or warranty made by, or the accuracy, completeness or sufficiency of any information provided (directly or indirectly through Agent, Co-Agent or any Lender) by Borrower, any guarantor, or any other Person; (v) the performance or observance by Borrower, any guarantor, or any other Person of any of the provisions of the Credit Agreement or any related Loan Document (or any of their other obligations in connection therewith); or (vi) any other matter having any relation to this Agreement, the Other Obligations or the Loan Documents.

## ARTICLE V.
## CERTIFICATE CONCERNING THE PUT

5.1    **Certificate Concerning the Put**.

(a)    Borrower shall deliver to Agent within five (5) days after Agent delivers a Put Notice, and also immediately prior to the time the Equity Appreciation Payment with respect to such Put would otherwise be made, either (A) a certificate executed by an officer of Borrower certifying that neither the Borrower nor, to its knowledge, any of the stockholders of Borrower, is then participating, or within the previous one hundred twenty (120) days has participated, in any discussions or negotiations, or has had any contact, with any Person concerning a potential Sale or (B) the certificate referenced in Section 5.1(b) below.

(b)    If Borrower or any stockholder of Borrower has participated in such discussions or negotiations or had such contact as described in Section 5.1(a) above, Borrower shall deliver to Agent a certificate identifying all Persons with whom Borrower or any stockholder of Borrower has had such discussions, negotiations or contact and describing the nature and substance thereof.  Upon delivery of such certificate and such additional information about the proposed Sale as Agent may reasonably request, at Agent's option exercised by written notice to Borrower, at any time prior to the consummation of the Put (which consummation shall, at Agent's option, be delayed for up to seven (7) days after its receipt of a certificate described in this subsection (b)

CH\612683.6

immediately prior to the time the Equity Appreciation Payment would otherwise be made), the Put Notice shall be deemed to be cancelled and Agent may exercise the Put at any time during the Put Period thereafter.

(c)    Agent and the Lenders shall be deemed to have materially relied upon the certificate(s) referenced above in connection with the effectuation of any Put and Borrower shall be liable in damages to Agent and the Lenders with respect to any misstatement or omission in such certificate(s).  If such misstatement or omission becomes apparent prior to the consummation of the Put in question, Agent shall also have the right to rescind the applicable Put Notice.

## ARTICLE VI.
## MISCELLANEOUS

6.1    **Sale Notice**.  Concurrently with the execution of any agreement which provides for any Sale, and in any event not less than 30 days prior to the contemplated closing of any such Sale, Borrower shall send a Sale Notice to Agent and each Lender.  Such Sale Notice shall (i) contain a general description of the proposed Sale, including the purchase price, the identity of the purchaser and whether the purchaser is an Affiliate of Borrower or any employee, officer, director, stockholder or other equity owner of Borrower, the closing date and the terms of any agreements to be entered into with any Affiliate of either Borrower or any employee, officer, director, stockholder or other equity owner of Borrower in connection with such Sale and (ii) be accompanied by copies of the contract for such Sale together with copies of any other documents pertaining to the proposed Sale which are available as of the date of delivery of the Sale Notice.

6.2    **Notices**.  All notices and communications under this Agreement shall be in writing and shall be (i) delivered in person, (ii) sent by telecopy, or (iii) mailed, either by registered or certified mail, postage prepaid, return receipt requested, or by overnight express carrier, addressed in each case as follows:

If to Agent:

Bank of America, National Association
231 South La Salle Street, 16th Floor
Mail Code IL 1-231-16-26
Chicago, Illinois  60697
Attention: Account Executive responsible for
Auburn Foundry, Inc.
Telecopy No.: (312) 974-8760

With a copy to:

Latham & Watkins Illinois, LLC
233 South Wacker Drive, Suite 5800
Chicago, IL  60606
Attn:  Josef S. Athanas, Esq.
Telecopy No.:  (312) 993-9767

13

CH\612683.6

If to Co-Agent:

> GMAC Business Credit, LLC
> 500 West Madison Street, Suite 3130
> Chicago, Illinois  60661
> Attn:  Daniel Manella, Account Officer
> Telecopy: (312) 775-6006

With a copy to:

> Honigman Miller Schwartz and Cohn LLP
> 2290 First National Building
> 660 Woodward Avenue
> Detroit, Michigan  48226
> Attn:  Donald F. Baty, Jr.
> Telecopy: (313) 465-8000

If to Borrower:

> Auburn Foundry, Inc.
> 635 West Eleventh Street
> Auburn, Indiana  46706
> Attention: Dennis Maude,
>     Chief Financial Officer
> Telecopy No.: (260) 925-7944

With a copy to:

> Baker & Daniels
> 111 East Wayne Street, Suite 800
> Fort Wayne, Indiana  46802
> Attention: David A. Scott, Esq.
> Telecopy No.: (260) 460-1700

or to any other address or telecopy number, as to either of the parties hereto, as such party shall designate in a written notice to the other party hereto.  All notices sent pursuant to the terms of this Section 6.2 shall be deemed received (i) if sent by telecopy before 2:00 p.m. Chicago time, on the day sent if a Business Day or if such day is not a Business Day or if sent after 2:00 p.m. Chicago time, then on the next Business Day, (ii) if sent by overnight, express carrier, on the next Business Day following the day sent, or (iii) if sent by registered or certified mail, on the third Business Day following the day sent.

6.3    **No Rights as Partner; Limitation of Liability**.  The right to receive payment of the Equity Appreciation Payment shall not entitle Agent or any Lender to any of the rights of a stockholder or other equity owner of Borrower.  No provision hereof, and no enumeration herein of the rights or privileges of Agent or any Lender, shall give rise to any liability of Agent or any

14

Lender as a stockholder or other equity owner of Borrower, whether such liability is asserted by Borrower or by any creditors of Borrower or otherwise.

6.4     **Payment or Prepayment - No Termination**.  Except as set forth in Section 3.4 hereof, the payment or prepayment, in whole or in part, of any or all of Borrower's Other Obligations shall not affect, terminate or modify this Agreement or any of the terms or provisions hereof unless the Equity Appreciation Payment is paid in accordance with the terms of this Agreement concurrently with such payment or prepayment.

6.5     **Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of any and all successors and assigns of the parties hereto.

6.6     **Counterparts; Facsimile Signatures**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall be deemed to be one and the same instrument.  Facsimile signatures hereon shall be deemed originals for all purposes.

6.7     **Severability**.  If any provision of this Agreement is held to be unenforceable under applicable law, such provision shall be ineffective to the extent of such unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Agreement, each of which shall remain in full force and effect in accordance with their respective terms.

6.8     **Amendment of Agreement**.  This Agreement may be amended only by a written instrument signed by the party with respect to which such amendment is sought to be enforced.

6.9     **Legal Fees and Expenses**.  Borrower agrees to reimburse Agent, on demand, for the reasonable fees and expenses, including reasonable fees of Agent's counsel, incurred by Agent in connection with the enforcement of any its respective rights hereunder.

6.10     **Unsecured Obligation**.  The obligation of Borrower to pay the Equity Appreciation Payment to Agent for the benefit of the Lenders is not part of the Obligations (as defined in the Credit Agreement), and is thus not secured by the security interests in the Collateral granted in the Credit Agreement and other Loan Documents.

6.11     **APPLICABLE LAW**.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (AND NOT THE CONFLICT OF LAWS RULES) OF THE STATE OF ILLINOIS GOVERNING CONTRACTS TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.12     **TIME OF ESSENCE**.  TIME IS OF THE ESSENCE IN THE PERFORMANCE OF BORROWER'S OBLIGATIONS UNDER THIS AGREEMENT.

CH\612683.6

IN WITNESS WHEREOF, this Equity Appreciation Rights Agreement has been executed by the parties hereto on the date first set forth above.

**AUBURN FOUNDRY, INC.,**
as Borrower

By: _David D. Nanter_

Title: _PRESIDENT & CEO_

**BANK OF AMERICA, NATIONAL ASSOCIATION,**
as Agent and as a Lender

By: _____

Title: _____

**GMAC BUSINESS CREDIT, LLC,**
as Co-Agent and as a Lender

By: _____

Title: _____

IN WITNESS WHEREOF, this Equity Appreciation Rights Agreement has been executed by the parties hereto on the date first set forth above.

**AUBURN FOUNDRY, INC.,**
as Borrower

By: _____

Title: _____

**BANK OF AMERICA, NATIONAL ASSOCIATION,**
as Agent and as a Lender

By: _Dan Glac_____

Title: _Vice President_____

**GMAC BUSINESS CREDIT, LLC,**
as Co-Agent and as a Lender

By: _____

Title: _____

CH\612683.6

IN WITNESS WHEREOF, this Equity Appreciation Rights Agreement has been executed by the parties hereto on the date first set forth above.

**AUBURN FOUNDRY, INC.,**
as Borrower

By: _____

Title: _____

**BANK OF AMERICA, NATIONAL ASSOCIATION,**
as Agent and as a Lender

By: _____

Title: _____

**GMAC BUSINESS CREDIT, LLC,**
as Co-Agent and as a Lender

By: _____

Title: Senior Vice President

CH\612683.6

## EXHIBIT A

### ASSIGNMENT OF EQUITY APPRECIATION PAYMENT

For Value Received, _____ ("_____"), pursuant to Article IV of that certain Equity Appreciation Rights Agreement (the "EAR Agreement"), dated as of June ____, 2003, by and among Auburn Foundry, Inc. ("Borrower"), Bank of America, National Association, as Agent and a Lender under that certain Financing and Security Agreement, dated as of April 10, 2000 (as amended, restated or otherwise modified, the "Credit Agreement") and GMAC Business Credit, LLC, as Co-Agent and a Lender under the Credit Agreement, hereby assigns to _____ the right to receive from Borrower the Equity Appreciation Payment (as defined in the EAR Agreement).

_____,
as a Lender

By: _____

Name: _____

Its: _____

### ACKNOWLEDGMENT

The undersigned hereby acknowledges the foregoing Assignment of the Equity Appreciation Payment.

Auburn Foundry, Inc.,
an Indiana corporation

By:_____

Name:_____

Its:_____

A-1

CH\612683.6