# SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "Agreement") is entered into as of June 26, 2003, by and among Auburn Foundry, Inc., an Indiana corporation ("Borrower"), Bank of America, National Association, as Agent (in such capacity, "Agent") for itself and the other financial institutions party to the Senior Loan Agreement (defined below) from time to time as lenders (collectively, "Lenders"), GMAC Business Credit, LLC, as Co-Agent for itself and the Lenders (in such capacity, "Co-Agent") and Eleventh Street Capital, LLC, an Indiana limited liability company ("Subordinated Creditor"). Unless otherwise specified, capitalized terms used herein shall have the meanings ascribed to them in the Senior Loan Agreement.

## RECITALS

A.  WHEREAS, Agent, Co-Agent, Lenders and Borrower are parties to that certain Financing and Security Agreement, dated as of April 10, 2000 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Senior Loan Agreement"), pursuant to which Lenders have extended loans to Borrower;

B.  WHEREAS, Borrower and Subordinated Creditor are parties to that certain Credit Facility and Security Agreement, dated as of the date hereof (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Subordinated Credit Facility"), pursuant to which Subordinated Creditor has agreed to extend additional subordinated loans to Borrower;

C.  WHEREAS, the indebtedness incurred by Borrower pursuant to the Subordinated Credit Facility is evidenced by that certain Term Loan Note, dated as of the date hereof, in the aggregate principal amount of $2,000,000 (the "Subordinated Note"); and

D.  WHEREAS, the issuance of the Subordinated Note, the incurring by Borrower of the indebtedness evidenced thereby and the granting by Borrower of any liens or security interests to or for the benefit of Subordinated Creditor are all prohibited by the Senior Loan Agreement. As a condition precedent to Agent's, Co-Agent's and Lenders' consent to the foregoing (the "Required Consent"), Agent, Co-Agent and Lenders required the execution and delivery of this Agreement by Borrower and Subordinated Creditor.

**NOW, THEREFORE**, to induce Lenders to provide the Required Consent, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. **Definitions**. The following terms shall have the following meanings in this Agreement:

"**Collection Action**" shall mean (a) to demand, sue for, take or receive from or on behalf of any Obligor (including, without limitation, by set-off, counterclaim or in any other manner) the whole or any part of any moneys which may now or hereafter be owing by such Obligor with respect to the Subordinated Debt (including, without limitation, any and all fees and expenses that Borrower

is, or shall be obligated to pay to Subordinated Creditor under the terms of the Subordinated Credit Facility or any other Subordinated Debt Document), (b) to initiate or participate with others in any suit, action or proceeding against any Obligor, to (i) enforce payment of or to collect the whole or any part of the Subordinated Debt or (ii) commence enforcement of any of the rights and remedies under the Subordinated Debt Documents or applicable law with respect to the Subordinated Debt or the Subordinated Debt Documents, (c) to foreclose or attempt to foreclose any Subordinated Liens (as hereinafter defined) or (d) to accelerate any Subordinated Debt.

"**Equity Appreciation Rights Agreement**" shall mean that certain Equity Appreciation Rights Agreement, dated as of the date hereof, by and among Agent, Co-Agent, the other Senior Creditors and Borrower.

"**Obligor**" shall mean Borrower and each other entity which is a direct obligor or a guarantor with respect to the Senior Debt or the Subordinated Debt.

"**Proceeding**" shall mean any voluntary or involuntary insolvency, bankruptcy, receivership, custodianship, liquidation, dissolution, reorganization, assignment for the benefit of creditors, appointment of a custodian, receiver, trustee or other officer with similar powers or any other proceeding for the liquidation, dissolution or other winding up of any Obligor.

"**Senior Creditors**" shall mean the Lenders under the Senior Loan Agreement, all successors, assigns and participants thereof, and any other lender from time to time holding Senior Debt.

"**Senior Debt**" shall mean all loans, advances, debts, liabilities and obligations for payment of monetary amounts (whether or not such amounts are contingent, liquidated or determinable) owing by any Obligor to any Senior Creditor, of any kind or nature, present or future, arising under the Senior Debt Documents, except the obligation of Borrower to pay the Senior Creditors the Equity Appreciation Payment as defined in and pursuant to the Equity Appreciation Rights Agreement. Senior Debt includes all principal, interest, fees, expenses, attorneys' fees and any other sum chargeable to Borrower or any other Obligor under the Senior Debt Documents. Senior Debt also includes (a) all complete or partial renewals, refundings or refinancings of the Senior Debt, (b) all amendments, restatements, modifications, renewals or extensions of any of the foregoing and (c) all interest accruing on the principal of Senior Debt after the commencement of a Proceeding, without regard to whether or not such interest accrues in any such Proceeding or is allowed as a claim in any such Proceeding.

"**Senior Debt Documents**" shall mean the Senior Loan Agreement and all other agreements, documents and instruments now or hereafter evidencing, securing or otherwise pertaining to all or any portion of the Senior Debt, including any amendment, modification, restatement, extension or renewal of the Senior

Loan Agreement and successive refinancings or refundings of the Senior Loan Agreement evidenced thereby.

"**Senior Default**" shall mean any "Forbearance Default," as such term is defined in that certain Fourth Forbearance and Fifth Amendment Agreement, dated as of the date hereof, by and among Agent, Co-Agent, the Lenders and Borrower.

"**Senior Default Notice**" shall mean a written notice from any Senior Creditor to Subordinated Creditor, with a copy to Borrower, pursuant to which Subordinated Creditor is notified of the occurrence of a Senior Default.

"**Subordinated Creditor**" shall mean Eleventh Street Capital, LLC and all subsequent holders of the Subordinated Debt.

"**Subordinated Debt**" shall mean all of the obligations of Borrower evidenced by the Subordinated Note, all other amounts now or hereafter owed by any Obligor to Subordinated Creditor under the Subordinated Note or any other Subordinated Debt Document, and all other obligations of any Obligor to Subordinated Creditor now or hereafter arising in respect of the Subordinated Debt Documents.

"**Subordinated Debt Documents**" shall mean the Subordinated Credit Facility, the Subordinated Note and all other documents and instruments securing or otherwise pertaining to such documents, as the same may be amended, restated, modified, renewed or extended.

"**Subordinated Note**" shall mean the initial Term Loan Note as defined in the recitals and all Subordinated Notes issued in exchange or substitution for the initial Subordinated Note or evidencing indebtedness originally evidenced by the initial Subordinated Note.

"**Subordinated Default**" shall mean a default in the payment of the Subordinated Debt or the performance of any term, covenant, agreement or condition contained in the Subordinated Debt Documents or any other occurrence permitting Subordinated Creditor to accelerate the payment of all or any portion of the Subordinated Debt.

"**Subordinated Default Notice**" shall mean written notice from Subordinated Creditor to Agent, with a copy to Borrower, pursuant to which Agent is notified of the occurrence of a Subordinated Default, which notice incorporates a reasonably detailed description of such Subordinated Default.

2. **Subordination**.

    2.1    **Subordination of Subordinated Debt to Senior Debt**. Borrower and Subordinated Creditor each agrees that the payment of any and all of the Subordinated Debt shall be subordinate and subject, in right of payment, to the prior payment in full in cash of the Senior

Debt, and that each holder of Senior Debt, whether now outstanding or hereafter created, incurred, assumed or guaranteed, shall be deemed to have acquired, maintained or advanced such Senior Debt in reliance upon the provisions contained in this Agreement.

2.2     **Proceedings**. In the event of any Proceeding involving any Obligor, (a) all Senior Debt first shall be paid in full in cash before any payment of or with respect to Subordinated Debt shall be made; (b) any payment or distribution, whether in cash, property or securities which, but for the terms hereof, otherwise would be payable or deliverable in respect of the Subordinated Debt, shall be paid or delivered directly to Agent or its successors (to be held and/or applied in accordance with the terms of the Senior Debt Documents) until all Senior Debt is paid in full in cash, and Subordinated Creditor irrevocably authorizes, empowers and directs all receivers, trustees, debtors in possession, liquidators, custodians, conservators and others having authority in the premises to effect all such payments and distributions, and Subordinated Creditor also irrevocably authorizes, empowers and directs Agent or its successors to demand, sue for, collect and receive every such payment or distribution; (c) Subordinated Creditor agrees to execute and deliver to Agent or its successors all such further reasonable instruments confirming the irrevocable authorizations referred to in the foregoing clause (b) as Agent may reasonably request at any time; (d) Subordinated Creditor agrees not to initiate or prosecute or encourage any other entity to initiate or prosecute any claim, objection, action or proceeding (or vote any claim in a Proceeding which would have the effect of) challenging or objecting to the enforceability of the Senior Debt, any liens or security interests securing the Senior Debt, any claim or adequate protection rights granted or allowed by a bankruptcy court in favor of the Senior Creditors, the terms of any proposed orders authorizing the use of cash collateral to which the holders of a majority in principal amount of the Senior Debt consent, or the terms of any proposed debtor-in-possession financing to be provided by any Senior Creditor or otherwise supported by the holders of a majority in principal amount of the Senior Debt in such Proceeding, including, without limitation, any claim or objection based on lack of adequate protection with respect to the Subordinated Debt; and (e) Subordinated Creditor agrees to execute, verify, deliver and file any proofs of claim in respect of the Subordinated Debt requested by Agent or its successors in connection with any such Proceeding and irrevocably authorizes, empowers and appoints Agent or its successors as Subordinated Creditor's agent and attorney-in-fact to execute, verify, deliver and file such proofs of claim if Subordinated Creditor fails to do so prior to fifteen (15) days before the expiration of the time to file any such proof of claim. In the event that Agent or any such successor votes any claim in accordance with the authority granted hereby, Subordinated Creditor shall not be entitled to change or withdraw such vote. The Senior Debt shall continue to be treated as Senior Debt and the provisions of this Agreement shall continue to govern the relative rights and priorities of Senior Creditors and Subordinated Creditor even if all or part of the Senior Debt or the security interests securing the Senior Debt are subordinated, set aside, avoided or disallowed in connection with any such Proceeding and this Agreement shall be reinstated if at any time any payment of any of the Senior Debt is rescinded or must otherwise be returned by any holder of Senior Debt or any representative of such holder.

2.3     **Restriction on Payments**. Notwithstanding any provision of any Subordinated Debt Document to the contrary, no Obligor may make, and Subordinated Creditor may not receive, accept or retain any payment of principal, interest or any other amount with respect to the Subordinated Debt until the Senior Debt is paid in full in cash and the Senior Debt

CH\612335.5

4

Documents are terminated; provided, however, that scheduled monthly payments of interest which are or have become due and payable on or after the date hereof (each, an "Interest Payment" and, collectively, the "Interest Payments") may be made, under and pursuant to the terms of the Subordinated Credit Facility and the Subordinated Note, provided that no Default or Event of Default has occurred and is continuing under Section 11.1(a) of the Senior Loan Agreement.

2.4   **Restriction on Action by Subordinated Creditor.**

(a)   Until the Senior Debt is paid in full in cash, Subordinated Creditor shall not, without the prior written consent of holders of two-thirds or more in principal amount of the Senior Debt, take any Collection Action with respect to the Subordinated Debt, except that Subordinated Creditor may (i) demand payment of the Subordinated Debt after a demand for payment of the Senior Debt has been made; or (ii) enforce any rights that Subordinated Creditor has or may have against certain stockholders of Borrower under that certain Stock Pledge Agreement, dated as of the date hereof, by and between Borrower and such stockholders.

(b)   Until the Senior Debt is paid in full cash, Subordinated Creditor shall not, without the prior written consent of holders of two-thirds or more in principal amount of the Senior Debt, agree to any amendment, modification or supplement to any of the Subordinated Debt Documents, the effect of which is to (i) increase the principal amount of the Subordinated Debt or rate of interest on any of the Subordinated Debt, (ii) change the maturity date or other dates upon which payments of principal or interest with respect to the Subordinated Debt are due to any earlier date or dates, (iii) change or add any event of default with respect to the Subordinated Debt, (iv) change the redemption or prepayment provisions of the Subordinated Debt, or (v) alter the subordination provisions with respect to the Subordinated Debt, including, without limitation, subordinating the Subordinated Debt to any other debt, provided that Subordinated Creditor may subordinate to the Subordinated Debt all or any portion of the indebtedness described in Schedule 8.9 of the Senior Loan Agreement.

2.5   **Incorrect Payments.** If any payment or distribution on account of the Subordinated Debt not permitted to be made by any Obligor or received by Subordinated Creditor under this Agreement is received by Subordinated Creditor before all Senior Debt is paid in full in cash, such payment or distribution shall not be commingled with any assets of Subordinated Creditor, shall be held in trust by Subordinated Creditor for the benefit of the Senior Creditors and shall be promptly paid over to Agent or its successors for application (in accordance with the Senior Debt Documents) to the payment of the Senior Debt then remaining unpaid, until all of the Senior Debt is paid in full in cash.

2.6   **Sale, Transfer, etc.** Subordinated Creditor shall not sell, assign, pledge, dispose of or otherwise transfer all or any portion of the Subordinated Debt unless (a) prior written consent to such action is given by Agent, (b) prior to the consummation of any such action, the transferee thereof shall execute and deliver to Agent or its successors an agreement substantially identical to this Agreement, providing for the continued subordination and forbearance of such Subordinated Debt to the Senior Debt as provided herein and for the

continued effectiveness of all of the rights of Senior Creditors arising under this Agreement, and (c) following such sale, assignment, pledge, disposition or other transfer, there shall be no more than one (1) Subordinated Creditor. Notwithstanding the failure to execute or deliver any such agreement, the subordination effected hereby shall survive any sale, assignment, pledge, disposition or other transfer of all or any portion of the Subordinated Debt, and the terms of this Agreement shall be binding upon the successors and assigns of Subordinated Creditor, as provided in Section 12 below.

2.7  **Legends.**  Until the Senior Debt is paid in full in cash, the Subordinated Note at all times shall contain in a conspicuous manner the following legend:

THE OBLIGATIONS OF THE COMPANY UNDER THIS NOTE ARE SUBORDINATED TO THE PAYMENT OF CERTAIN SENIOR DEBT IN THE MANNER SET FORTH IN THE SUBORDINATION AGREEMENT, DATED AS OF THE DATE HEREOF, AMONG BANK OF AMERICA, NATIONAL ASSOCIATION, FOR ITSELF AND AS AGENT, GMAC BUSINESS CREDIT, LLC., FOR ITSELF AND AS CO-AGENT, THE HOLDER OF THIS NOTE FROM TIME TO TIME AND THE COMPANY, AND THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.

3.  **Modifications to Senior Debt.**  The Senior Creditors may at any time and from time to time without the consent of or notice to Subordinated Creditor, without incurring liability to Subordinated Creditor and without impairing or releasing the obligations of Subordinated Creditor under this Agreement, increase the amount of the Senior Debt, change the manner or place of payment or extend the time of payment of or renew or alter any Senior Debt, or amend in any manner any agreement, note, guaranty or other instrument evidencing or securing or otherwise relating to any Senior Debt.

4.  **Continued Effectiveness of this Agreement.**  The terms of this Agreement, the subordination effected hereby, and the rights and obligations of Subordinated Creditor or Senior Creditors arising hereunder, shall not be affected, modified or impaired in any manner by: (a) any amendment or modification of or supplement to the Senior Debt Documents or the Subordinated Debt Documents; (b) the validity or enforceability of any of such documents; (c) the enforcement (or lack of enforcement) or release of security interests securing payment of the Senior Debt; or (d) any exercise or non-exercise of any right, power or remedy under or in respect of the Senior Debt or the Subordinated Debt or any of the instruments or documents referred to in clause (a) above. Subordinated Creditor acknowledges that the provisions of this Agreement are intended to be enforceable at all times, whether before the commencement of, after the commencement of, in connection with or premised on the occurrence of a Proceeding.

5.  **Representations and Warranties.**  Subordinate Creditor hereby represents and warrants to Senior Creditors that it is the current and sole owner and holder of the Subordinated Note and Subordinated Debt as of the date hereof.

6.  **Subordinated Default Notice.**  Subordinated Creditor shall provide Agent or its successors with a Subordinated Default Notice upon the occurrence of each Subordinated

CH\612335.5

6

Default, and Subordinated Creditor shall notify Agent or its successors in the event such Subordinated Default is cured or waived.

7. **Cumulative Rights, No Waivers, Specific Performance.** Each and every right and remedy granted to the parties hereunder shall be cumulative and in addition to any other right, remedy or power specifically granted herein, in the Senior Debt Documents or the Subordinated Debt Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise, and may be exercised by Senior Creditors, or Subordinated Creditor, as applicable, from time to time, concurrently or independently and as often and in such order as they may deem expedient. Any failure or delay on the part of any party in exercising any such right, remedy or power, or abandonment or discontinuance of steps to enforce the same, shall not operate as a waiver thereof or affect the rights of the affected party thereafter to exercise the same. The parties acknowledge and agree that the other parties hereto may have no adequate remedy at law for a breach of this Agreement and agree that, in addition to all other remedies hereunder, the parties hereto shall have the right to specific performance.

8. **Modification.** Any modification or waiver of any provision of this Agreement, or any consent to any departure by any party therefrom, shall not be effective in any event unless the same is in writing and signed by Borrower, Agent or its successors, Co-Agent or its successors, each Senior Creditor or its representative, and Subordinated Creditor or its successors, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given.

9. **Priority of Liens.** Notwithstanding the date, manner or order in which liens or security interests securing the Subordinated Debt or the Senior Debt are granted or perfected, the liens and security interests securing payment of the Senior Debt shall have priority over the liens and security interests securing payment of the Subordinated Debt (the "Subordinated Liens"). If (i) a Senior Default shall have occurred and be continuing under the Senior Debt Documents, (ii) the Senior Debt shall have been accelerated or revolving credit advances with respect thereto shall have been suspended, restricted or terminated, (iii) no Proceeding shall have been filed or pending with respect to any Obligor whose collateral is to be sold, and (iv) Senior Creditors desire to sell all or part of the collateral securing payment of the Senior Debt in a consensual sale, Subordinated Creditor shall, immediately upon request of Agent or its successors, release or otherwise terminate some or all of Subordinated Creditor's security interests or liens upon some or all of assets of the Obligors to permit the sale of such assets by Senior Creditors or by the Obligors with Senior Creditors' consent; provided that such release or termination by Subordinated Creditor shall not extend to or affect the rights of Subordinated Creditor, if any, to receive the proceeds of those assets following payment in full in cash of the Senior Debt. In furtherance of the foregoing, Subordinated Creditor shall within five (5) days after the date of any written request by Agent or its successors deliver to Agent or its successors signed UCC-3 termination or release statements with respect to each financing statement filed to perfect a security interest securing payment of the Subordinated Debt. Subordinated Creditor hereby appoints Agent, or its successors, as such person's attorney-in-fact to execute and file such releases or termination (or release) statements on such person's behalf, provided that such releases and termination (or release) statements shall be filed only under the circumstances described above. Subordinated Creditor shall not accept any security interest or lien upon any assets to secure payment of any Subordinated Debt or any guaranty of payment of any

CH\612335.5

7

Subordinated Debt, except for the security interests as in effect on the date hereof. Subordinated Creditor shall not accept any security interest or lien upon any assets of Borrower to secure any indebtedness or other obligation owing by Borrower except for the Subordinated Debt. Subordinated Creditor hereby irrevocably acknowledges and agrees that the financing statements currently filed by Subordinated Creditor against Borrower shall be deemed to relate solely to the liens and security interests securing payment of the Subordinated Debt and shall not be deemed to relate to or perfect any other liens or security interests now or hereafter granted to any Subordinated Creditor and/or Subordinated Creditor.

10. **Notices.** Unless otherwise specifically provided herein, any notice or other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served, telecopied or sent by overnight courier service or United States mail certified or registered and shall be deemed to have been given (a) if delivered in person, when delivered; (b) if delivered by telecopy, on the date of transmission if transmitted on a business day before 2:00 p.m. (Chicago time) or, if not, on the next succeeding business day; (c) if delivered by overnight courier, one business day after delivery to such courier properly addressed; or (d) if by United States mail, four business days after deposit in the United States mail, postage, prepaid and properly addressed.

Notices shall be addressed as follows:

(a)     If to Agent to:

Bank of America, National Association
231 South LaSalle Street
16th Floor
Mail Code IL 1-231-16-26
Chicago, IL 60697
Attn: Account Executive responsible for
Auburn Foundry, Inc.
Telecopy: (312) 974-8760

with a copy to:

Latham & Watkins Illinois LLC
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606-6401
Attn: Josef S. Athanas
Telecopy: (312) 993-9767

CH\612335.5

8