UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Auburn Foundry, Inc., | ) | Case No. 04-10427 |
| | ) | |
| Debtor. | ) | |

**OBJECTION OF BANK OF AMERICA, N.A., TO THE ENTRY OF A FINAL ORDER
APPROVING THE USE OF THE LENDERS' CASH COLLATERAL**

Bank of America, National Association ("BofA"), as agent for the pre-petition secured lenders (the "Lenders"), parties in interest in the chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, pursuant to section 1104(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), hereby file this objection (the "Objection") to the entry of a final order approving the Debtor's use of the Lenders' cash collateral because the protection offered by the Debtor in the Cash Collateral Motion (defined below) falls woefully short of protecting the Lenders' interest in the Debtor's property. At the Preliminary Hearing (defined below) this Court held that the Debtor's standard of proof to provide adequate protection was a preponderance of the evidence. The Lenders respectfully disagree. Applying any standard, the Cash Collateral Motion does not, and the evidence provided by the Debtor to date has not, provided sufficient evidence that the Cash Collateral Motion provides the Lenders adequate protection for the use of the cash proceeds of the Debtor's pre-petition assets. In opposition to the Debtor's Emergency Motion For Order (I) Pursuant to 11 U.S.C. § 363; (II) Providing Adequate Protection Regarding Use of Cash Collateral; and (III) Scheduling Preliminary And

CH\666579.2

Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Cash Collateral Motion"),[1] the Lenders respectfully represent as follows:

## INTRODUCTION

1.　On February 8, 2004 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code.

2.　Since that time, the Debtor has continued in possession of its property and has operated and managed its business, as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  On February 12, 2004, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in this case.  No trustee or examiner have been appointed in this Chapter 11 Case.

## RELEVANT FACTUAL BACKGROUND

4.　On February 8, 2004 (the "Petition Date"), Auburn Foundry, Inc. ("Auburn") commenced its bankruptcy case by filing a voluntary petition in the Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division (the "Bankruptcy Court").  On February 9, 2004, Auburn filed the Cash Collateral Motion and the Lenders filed a preliminary objection to the Cash Collateral Objection (the "Preliminary Objection").  On February 9, 2004, the Bankruptcy Court entered an Agreed Interim Order (I) Authorizing Interim Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Providing Adequate Protection Regarding Use of Cash Collateral; and (III) Scheduling Preliminary and Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Agreed Interim Order") and set the Cash Collateral Motion for a preliminary

---

[1]　Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

2

hearing on February 13, 2004 (the "Preliminary Hearing") and a final hearing on February 27, 2004 (the "Final Hearing").  On February 17, 2004, the Bankruptcy Court entered an order granting the Cash Collateral Motion on a preliminary basis through March 4, 2004 (the "Interim Cash Collateral Order").

5.  Prior to the Petition Date, the Lenders established a loan facility (the "Pre-Petition Credit Facility") with Auburn, as borrower.  The Lenders and Auburn (the "Borrower"), are party to that certain financing and security agreement, dated as of April 10, 2000 (as amended, supplemented or otherwise modified prior to the commencement of this chapter 11 case, the "Pre-Petition Credit Agreement") and all collateral and ancillary documents executed in connection therewith (the "Pre-Petition Loan Documents").  A true and correct copy of the Pre-Petition Credit Agreement is attached as Exhibit A to the Preliminary Objection.  On the Petition Date, approximately $23,622,422.98 in principal amount was outstanding under the Pre-Petition Credit Facility (plus interest, fees, charges, costs and other expenses).

## ARGUMENT

**I.  THE DEBTOR'S BURDEN TO PROVE ADEQUATE PROTECTION IS HIGHER THAN BY A PREPONDERANCE OF THE EVIDENCE**

6.  A debtor-in-possession may not use cash collateral without the consent of a secured creditor absent bankruptcy court approval, and the bankruptcy court cannot approve the use of cash collateral unless the Debtor proves that the interests of the secured creditor are adequately protected.  Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor is prohibited from using cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use … in accordance with the provisions of this section."  See 11 U.S.C. § 363(c)(2).  See In re Cross

3

Baking Co, 818 F.2d 1027, (1st Cir. 1987); In re Zeeway Corp., 71 B.R. 210, 211 (B.A.P. 9th Cir. 1987); In re Safeguard Self-Storage Trust, 2 F.3d 967, 969 (9th Cir. 1993); In re Colonial Center, Inc., 156 B.R. 452, 463 (Bankr. E.D. Pa. 1993).  Further, Section 363 of the Bankruptcy Code mandates that the bankruptcy court condition the use of cash collateral "as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  The Debtor bears the burden of proof on the issue of adequate protection.  11 U.S.C. § 363(o)(1).

7. The Bankruptcy Code does not explicitly define "adequate protection."  In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984); Sun Bank v. Earth Lite, Inc., 9 B.R. 440, 443, (Bankr. M.D. Fla. 1981).  Rather, Section 361 of the Bankruptcy Code sets forth examples of adequate protection and establishes that adequate protection results when a secured creditor is provided with the "indubitable equivalent" of its interest in the estate's property:

> When adequate protection is required… such adequate protection may be provided by … a cash payment or periodic cash payments … an additional or replacement lien … or granting such other relief … as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361; In re Glasstream Boats, Inc., 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990)("the test is . . . whether or not the Debtor carries its burden to show that its use of the cash collateral will not reduce the value of the Creditor's interest in the property without providing adequate protection – the indubitable equivalent of the Creditor's interest in the property").  Thus, in order to prevail on the Cash Collateral Motion at the Final Hearing, the Debtor must demonstrate that its proposed adequate protection will provide the Lenders with the "indubitable equivalent" of their interests in the bankruptcy estate as of the Petition Date for the remainder of this chapter 11 case.

8. Courts addressing the meaning of "indubitable equivalent" have found the debtor's burden of proof to be stringent and exacting:

> Not only must the Court conclude that the equivalent will be "realized," but that conclusion must be "indubitable." One is impressed with the burden that such a test involves when one considers that "indubitable" connotes a conclusion more certain than proof by a preponderance of the evidence and even beyond "a reasonable doubt"; the conclusion must be *in* dubitable.

In re Sandy Ridge Development Corp., 77 B.R. 69, 73 (Bankr. M.D. La. 1987); In Re Future Energy Corp., 83 B.R. 470, 495 (Bankr. S.D. Ohio 1988); In re Wallat Farms, 70 B.R. 330 (Bankr. E.D. Mich. 1987)("Indubitable" means "too evident to be doubted.").

9. The only court in the Seventh Circuit to decide the Debtor's burden of proof of adequate protection in the context of a motion to use cash collateral in a reported case was the extremely pro-debtor Bankruptcy Court for the Southern District of Illinois. Even that court held that the Bankruptcy Code "places a high burden of proof on the party requesting the use of cash collateral." In re Leavell, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985); In re Sheehan, 38 B.R. 859, 868 (Bankr. S.D. 1984). Bankruptcy Judge Trabue concluded "[w]hen requesting Court authorization for expenditure of cash collateral, a debtor must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case." In re Leavell, 56 B.R. at 13. See also In re Sheehan, 38 B.R. at 868 (adopting clear and convincing evidence standard under Section 363); In re O.P. Held, Inc., 74 B.R. at 784 (Bankr. N.D. N.Y. 1987)(same).

10. Both Congress (through the inclusion of the "indubitable equivalent" standard in 11 U.S.C. §361) and the courts have held that the Debtor's burden to prove adequate protection is a heightened one. A high burden of proof is warranted because the Lenders' right to adequate protection derives from their property rights under the Constitution. Id. at 865; In re Townley,

256 B.R. 697, 700 (Bankr. D.N.J. 2000)("The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment"); In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d at 1019 ("[s]ecurity interests are "property rights" protected by the Fifth Amendment from public taking without just compensation"); In re Milleson, 83 B.R. 696, 700 (Bankr. D.Neb.1988)(Adequate protection is "a mechanism ensuring that there will not be a taking of a constitutionally protected property interest without providing an adequate substitute.").

      11.      Moreover, the property right at issue, the Lenders' interest in cash collateral deserves heightened protection because it may be "rapidly dissipated." In re O.P. Held, Inc. 74 B.R. at 782; In re Mickeler, 9 B.R. 121, 123 (Bankr. M.D. Fl. 1981)("Congress in enacting § 363 of the Code gave a special treatment to "cash collateral" for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to ensure that a holder of a lien on "cash collateral" is not deprived of its collateral through unprotected use by the Debtor"); In re Kloubec, WL 150837, *3 –4 (Bankr. N.D. Iowa, 2000)(same); In re Williams, 61 B.R. 567, 575 (Bankr. N.D.Tex., 1986) ("The difference in treatment afforded to unencumbered pre-petition cash and that afforded to "cash collateral" arises not from any inherent limitation of bankruptcy law but from the risk that a debtor may quickly dissipate a creditor's cash collateral in a bankruptcy reorganization.").

## II. REGARDLESS OF THE EVIDENTIARY STANDARD, THE CASH COLLATERAL MOTION DOES NOT PROVIDE THE LENDERS ADEQUATE PROTECTION

      12.      Even if one were to ignore the plain words of section 361 of the Bankruptcy Code and applicable case law and apply a preponderance of the evidence standard, the protection

6

offered by the Debtor in the Cash Collateral Motion and the Interim Cash Collateral Order falls woefully short of protecting the Lenders' interest in the Debtor's property.

*The Replacement Liens Supposedly Provided in the Cash Collateral Motion and This Court's Interim Cash Collateral Order Are Illusory*

13.   Paragraph 22 of the Cash Collateral Motion and Paragraph 6(b) of the Interim Cash Collateral Order provide replacement liens on the Debtor's assets only for the decline in value of the Lenders' interest in cash collateral, not for the decline in value of the Debtor's accounts receivable, inventory and other assets occasioned by the Debtor's use of the cash proceeds thereof.  The Lenders held little or no cash collateral as of the Petition Date.  Thus, the Cash Collateral Motion requests, and the Interim Cash Collateral Order granted on a preliminary basis, free reign to the Debtor to use the cash proceeds of the Lender's pre-petition collateral without any replacement liens being granted to the Lenders whatsoever for the decline in value of their pre-petition collateral.

14.   The United States Senate report delivered in connection with the enactment of Section 363(a) of the Bankruptcy Code stated that the definition of cash collateral "is not restricted to property of the estate that is cash collateral on the date of the filing of the petition. Thus, if non-cash collateral is disposed of . . . the proceeds would be cash collateral as long as they remain subject to the original lien on the "non-cash" collateral under Section 552(b)." Senate Report No. 95-989.

15.   Based on the Debtor's budget attached to the Cash Collateral Motion as Exhibit A thereto, the Debtor intended to collect and use $4,150,000 of pre-petition accounts receivable during the first three weeks of this chapter 11 case.  If the Debtor did, in fact, collect and use that amount, the Lenders lost $4,150,000 of pre-petition collateral in the first three weeks of this case and received no replacement liens or other protection in exchange.  The Debtor's Cash Collateral

7

Motion and this Court's Interim Cash Collateral Order has already severely jeopardized the Lenders' collateral position, and granting the Cash Collateral Motion on a final basis will erode the Lenders' collateral position even more. Therefore, this Court should either deny the Cash Collateral Motion or permit the Lenders to submit an order which would provide the Lenders with replacement liens for the decrease in value of their pre-petition collateral occasioned by the use of the cash proceeds thereof.

*The Cash Collateral Motion* Does *Not Request the Use of Cash Collateral Past February 27, 2004*

16. Even if the replacement liens set forth in the Cash Collateral Motion and the Interim Cash Collateral Order were not illusory, Paragraph 14 of the Cash Collateral Motion makes clear that the Debtor requests only that it be permitted to use cash collateral in accordance with the three week budget attached to the Cash Collateral Motion which expires on February 27, 2004. Moreover, although the Interim Cash Collateral Order runs through March 4, 2004, it permits the use of cash collateral only in accordance with a budget that expires on February 27, 2004. The Debtor has provided no projections of expenditures or the Lenders' collateral position beyond February 27, 2004 in the Cash Collateral Motion or otherwise.

17. The evidence at the Preliminary Hearing was that Alvarez & Marsal, a recognized turnaround and reorganization expert, in a report provided to the Lenders by the Debtor on February 5, 2004, reported that the Lender's inventory and accounts receivable collateral will decline in value by $1.7 million by May 2004. The Cash Collateral Motion does not, and the evidence provided by the Debtor at the Preliminary Hearing did not, provide any evidence or assertion to the contrary. The Debtor's only defense to this report is the statement of the Debtor's counsel that, although the report was provided to the Lenders just two business days prior to the

8

Petition Date, the information it contained was stale.  In light of the uncontroverted evidence that the Lenders' inventory and accounts receivable collateral will decline in value by $1.7 million by May 2004, the Debtor has not met its burden of proving that the Lenders will be adequately protected for the remainder of this case.

18.     In fact, Mr. Maude, the Debtor's Chief Financial Officer, testified at the Preliminary Hearing that the Debtor's business plan was to decrease the business in size and decrease the amount of outstanding accounts receivable.  However, the Cash Collateral Motion does not provide for paydowns of the Lenders' indebtedness or the provision to the Lender of any collateral to account for this diminution in value of its accounts receivable and inventory.

19.     Even if the Debtor were to produce projections that ran past February 27, 2004 at the hearing on February 27, 2004, if such projections are inconsistent with the projections of Alvarez & Marsal and the testimony of Mr. Maude, this Court should view them with skepticism.  Although a debtor is entitled to a "fresh start," this Court should not turn a blind eye to all prior projections of the Debtor's current management team when deciding whether such projections should be given more weight than the projections of turnaround and reorganization experts in a report provided to the Lenders by the Debtor just two business days prior to the Debtor's chapter 11 filing.  The uncontroverted evidence at the Preliminary Hearing showed that the Debtor failed to meet its projections for years and the Debtor's current management team consistently failed to meet their projections, including in October, November and December of 2003.

*The Use of Cash Collateral is Not Tied to a Borrowing Base or Other Measure that Ensures Maintenance of the Lenders' Collateral*

20. The Cash Collateral Motion provides that the Debtor's use of cash collateral is tied only to a budget, not to a borrowing base or any other measure that shows maintenance of the Lenders' collateral. Thus, the Debtor could sell the Lenders' inventory collateral at fire sale prices and collect the Lenders' accounts receivable collateral by offering customers large discounts. This would enable the Debtor to meet the cash receipts requirement of the its cash budget, notwithstanding a substantial decrease in production and the value of the Lenders' collateral. Such decrease in production would also substantially decrease expenses in the Debtor's cash budget. Thus, the Cash Collateral Motion, approved by the Court on a preliminary basis in the Interim Cash Collateral Order, gives the Debtor free reign to engineer budget meeting results, by permitting a substantial diminution in the value of the Lenders' collateral. Therefore, the Cash Collateral Motion should be denied or this Court should permit the Lenders to submit an order requiring that the Debtor may only use cash collateral so long as the Availability (as defined in the Lenders' Prepetition Credit Agreement) is not less than the Borrowing Base (as defined in the Lender's Prepetition Credit Agreement) as of the Petition Date.

*The Cash Collateral Motion* and *Interim Cash Collateral Order Contain an Inappropriate Unlimited Carve-Out For Professional Fees*

21. Even if the replacement liens proposed to be granted to the Lenders in the Cash Collateral Motion and granted to the Lenders on a preliminary basis in the Interim Cash Collateral Order were not illusory, they would not adequately protect the Lenders for the use of their cash collateral because such replacement liens are subject to a professional fee carve-out unlimited in dollar amount. Essentially, the Debtor is requesting that the Lenders pay the Debtor's professionals to litigate with them.

10

22. Not only does the Cash Collateral Motion seek an unlimited professional fee carve-out from the Lenders' purported replacement liens, the Cash Collateral Motion seeks an unlimited professional fee carve-out from the Lenders' pre-petition liens. The only provision of the Bankruptcy Code that would permit this Court to grant a non-consensual carve-out on the Lenders' pre-petition collateral is section 506(c). Section 506(c) of the Bankruptcy Code allows the collateral securing a claim to be invaded for the "reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit the holder of such claim." See 11 U.S.C. 506(c); In re S & S Indus., Inc., 30 B.R. 395, 399 (Bankr. E.D. Mich. 1983) ("A secured creditor, unless he consents, cannot be compelled to finance a chapter 11 proceeding except to the limited extent provided for in section 506(c)").

23. The Debtor cannot obtain an unlimited section 506(c) claim against the Lenders' pre-petition collateral in the context of the Cash Collateral Motion. Bankruptcy Rule 7001 proscribes that a section 506(c) claim must be brought through an adversary proceeding, which the Debtor has not done. In such adversary proceeding, the Debtor would need to show that fighting the Lenders benefits the Lenders and the Lenders' collateral. The Lenders believe that such a showing would be near impossible.

24. Therefore, the Cash Collateral Motion should be denied or the Court should permit the Lenders to submit an order eliminating the unlimited professional fee carve-out from the Lenders' pre-petition and post-petition liens and claims.

CH\666579.2

*The Cash Collateral Motion Does Not Provide for the Payment of Postpetition Interest and Fees*

25.     As stated above, as of the Petition Date, approximately $23,622,422.98 in principal amount was outstanding under the Pre-Petition Credit Facility (plus interest, fees, charges, costs and other expenses).  The uncontroverted evidence offered by the Lenders at the Preliminary Hearing was that the orderly liquidation value, not the going concern sale value, of the Debtor's assets as of the Petition Date was $27 to $27.5 million.  Therefore, the Lenders are entitled to post-petition interest and professional fees.  Despite the fact that the orderly liquidation value of the Debtor's assets exceeds the Lenders' pre-petition debt, the Debtor has made no provision for the payment of post-petition interest or fees to which the Lenders are entitled.

26.     Judge Rodibaugh of the Northern District of Indiana, Fort Wayne Division, wrote "as a general rule the accrual of postpetition interest is not allowed for the period from the filing of the bankruptcy petition to the confirmation of the plan…. However, there are exceptions to the rule, including that provided by 11 U.S.C.A. § 506(b), which allows for the accrual of postpetition interest when the value of the collateral exceeds the amount of the allowed secured claim." See In re Langley, 30 B.R. 595 (Bankr. N.D. Ind. 1983); United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989); In re Delta Resources, Inc., 54 F.3d 722 (11th Cir. 1995)("it seems beyond peradventure that a creditor's right to recover postpetition interest on its oversecured claim pursuant to 11 U.S.C. § 506(b) is virtually 'unqualified'").  Therefore, the Cash Collateral Motion should be denied, or the Lenders should be permitted to submit an order providing for payment in cash of post-petition interest, fees and expenses, including attorneys fees.

*The Debtor Has Done Nothing to Protect the Lenders From the Decrease in Value of their Cash Collateral Resulting from Customers Leaving*

27.     The Lenders believe that within 90 to 120 days after the Petition Date, many of the Debtor's customers will leave, greatly damaging the value of the Lenders' collateral. At the Preliminary Hearing, a representative of BofA testified that this was her experience in other cases where automotive suppliers like the Debtor failed to obtain "no offset/no resource" agreements with their key customers. Accordingly, even if the replacement lien provided to the Lenders in the Cash Collateral Motion was not illusory, it would be insufficient to adequately protect the Lenders for the use of their cash collateral. The Lenders therefore request that the Cash Collateral Motion be denied or that the Lenders be permitted to submit an order requiring the Debtor to obtain "no offset/no resource" agreements from its customers as a condition precedent to the use of cash collateral.

*The Debtor-in-Possession Financing Must Not Be Illusory and the Use of Cash Collateral Must Cease Upon Any Default Thereunder*

28.     The Debtor's three-week budget and Alvarez & Marsal's February through May budget delivered by the Debtor to the Lenders both show substantial cash losses by the Debtor. For the reasons set forth in the Objection of Bank of America, National Association, to Debtor's Emergency Motion to Obtain Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(c) filed on February 20, 2004 (the "DIP Loan Objection"), the proposed debtor-in-possession financing, although critical to the Debtor's continued existence, is not truly committed and is not truly subordinate to the Lenders' pre-petition and post-petition claims and liens. Without the debtor-in-possession financing, the Debtor's own budget shows the Lenders' cash collateral will be used to fund losses as the Debtor continues its four-year downward spiral. Moreover, the Alvarez & Marsal budget shows that

13

even with the debtor-in-possession financing, the Lenders' cash collateral will be used to fund losses. Under such circumstances, even if the replacement liens proposed in the Cash Collateral Motion were not illusory, they would be insufficient.

29. If the Debtor's debtor-in-possession financing is not truly committed or truly subordinate, or if a default occurs thereunder, the Debtor, which is teetering on the edge even with the debtor-in-possession financing, will run completely out of money and collapse. At that point, the further use of the Lenders' cash collateral to fund losses would be pointless.

30. Therefore, the Cash Collateral Motion should be denied or (a) the debtor-in-possession financing should be amended to address the concerns in the DIP Loan Objection and (b) the Lenders should be permitted to submit an order terminating the use of cash collateral upon a default under the debtor-in-possession financing.

*The Cash Collateral Motion and the Interim Cash Collateral Order Contain a Nonsensical Provision That Could Be* Deemed *to Limit or Eliminate the Lenders Replacement Liens*

31. Paragraph 22 of the Cash Collateral Motion and Paragraph 6(b) of the Interim Cash Collateral Order provide that "the replacement lien on cash shall extend only to the amount by which non-cash Cash Collateral is less than the amount of the prepetition revolving loan debt to the [Lenders]." This provision does not make sense. Moreover, the Lenders are entitled under section 361 of the Bankruptcy Code to adequate protection of their interest in the Debtor's property. The Pre-Petition Loan Documents granted BofA, as agent for the Lenders, a security interest on all of the Debtor's assets to secure all of the indebtedness due under the Pre-Petition Loan Documents, not solely to secure the revolving loan debt. This provision, if any sense can be made of it, is directly contradictory to the express terms of section 361 of the Bankruptcy

14

Code. The Cash Collateral Motion should therefore be denied or this Court should permit the Lenders to submit an order excluding this provision.

*The Cash Collateral Motion and the Interim Cash Collateral Order Deny the Lenders the Right to Monitor Their Collateral*

      32.     Section 6.6(a) of the Pre-Petition Credit Agreement provides:

> The Agent, accompanied by any Lender which so elects, may at all reasonable times during regular business hours (and at any time when a Default or Event of Default exists and is continuing) have access to, examine, audit, make extracts from or copies of and inspect any or all of the Borrower's records, files and books of account and the Collateral, and discuss the Borrower's affairs with the Borrower's officers and management. The Borrower will deliver to the Agent any instrument necessary for the Agent to obtain records from any service bureau maintaining records for the Borrower. The Agent may, and at the direction of the Majority Lenders shall, at any time when a Default or Event of Default exists, and at the Borrower's expense, make copies of all of the Borrower's books and records, or require the Borrower to deliver such copies to the Agent. The Agent may, without expense to the Agent, use such of the Borrower's respective personnel, supplies, and Real Estate as may be reasonably necessary for maintaining or enforcing the Agent's Liens. The Agent shall have the right, at any time, in the Agent's name or in the name of a nominee of the Agent, to verify the validity, amount or any other matter relating to the Accounts, Inventory, or other Collateral, by mail, telephone, or otherwise.

Thus, the plain language of the Pre-Petition Credit Agreement mandates that the Debtor provide the Lenders with information regarding its financial status and transactions, including copies of the Debtor's checks, wires or other disbursement information.

      33.     Either the Cash Collateral Motion should be denied or, at a minimum, the Debtor must be required to provide (a) a weekly cash budget through the proposed September 1, 2004 expiration of the debtor-in-possession financing loan, (b) a daily signed borrowing base certificate, (c) weekly comparisons of actual receipts and expenditures to budgeted receipts and

15

expenditures, and (d) access to sufficient information for the Lenders to verify the information provided.

## CONCLUSION

In summary, the replacement liens and other protection proposed by the Debtor in the Cash Collateral Motion and approved by this Court on a preliminary basis in the Interim Cash Collateral Order are woefully inadequate because (i) they fail to protect the Lenders for the use of the cash proceeds of their pre-petition collateral at all, (ii) they fail to protect the Lenders for the projected $1.7 million decline in inventory and accounts receivable collateral through May, (iii) they fail to tie the Debtor's use of cash collateral to a borrowing base and thus enable the Debtor to manipulate results to meet budgets by compromising the Lenders' collateral, (iv) they fail to protect the Lenders for the post-petition interest to which Lenders have proved they are entitled, (v) they fail to protect the Lenders for the unlimited professional fee carve out proposed by the Debtor and approved by this Court on a preliminary basis in the Interim Cash Collateral Order, (vi) they fail to protect the Lenders for their fees and expenses, (vii) they fail to protect the Lenders from the decrease in the value of their collateral due to customers leaving, (ix) they fail to protect the Lenders if there is a default under the debtor-in-possession financing, (x) they contain a nonsensical limitation that is inconsistent with section 361 of the Bankruptcy Code, and (xi) they deny the Lenders all of their rights to monitor their collateral and receive reporting set forth in the Pre-Petition Credit Agreement.

**WHEREFORE**, for the foregoing reasons, the Lenders request that the Court (i) either (a) deny the Cash Collateral Motion or (b) permit the Lenders to submit an order correcting all of the infirmities set forth herein and grant the Cash Collateral Motion only pursuant to the Lenders' order, and (ii) grant such other relief as this Court finds just and appropriate under the circumstances.

February ___, 2004                                    Respectfully submitted,


                                                      _____/s/ Grant F. Shipley_____
                                                      Grant F. Shipley
                                                      SHIPLEY & ASSOCIATES
                                                      233 West Baker Street
                                                      Fort Wayne, Indiana  46802
                                                      (260) 422-2700

                                                      and

                                                      Josef S. Athanas
                                                      Caroline A. Reckler
                                                      LATHAM & WATKINS, LLP
                                                      233 South Wacker Drive
                                                      Sears Tower, Suite 5800
                                                      Chicago, Illinois  60606
                                                      Telephone:  (312) 876-7700
                                                      Facsimile:  (312) 993-9767

                                                      Attorneys of Bank of America, N.A.

**CERTIFICATE OF SERVICE**

I certify that on the 20th day of February, 2004, service of a true and exact copy of the above and foregoing pleading was served electronically through the Court's ECF system to:

Office of US Trustee
    Ellen Triebold
    John R. Burns
    Mark Werling
    Marlene Reich
    Nancy Gargula

And b y depositing same in the United States Mail in envelopes properly addressed and with sufficient first class postage affixed to:

Omnisource Corp - Tusco
2453 Hill Avenue
Toledo, OH 43607

Auburn City Utilities
P.O. Box 506
Auburn, IN 46706

GMAC Commercial Finance
3000 Town Center, Ste. 280
Southfield, MI 48075

A.F. Europe, Inc.
635 W. Eleventh St.
Auburn, IN 46706

DeKalb County, Indiana
DeKalb County Assessor, Courthouse
100 South Main St.
Auburn, IN 46706

Citizens Gas & Coke Utilities
2020 N. Meridian St.
Indianapolis, IN 46202

Dauber Company, Inc.
577 N. 18th Rd.
Tonica, IL 61370

CH\666579.2

UNIMIN Corporation
809 Myers Road
Archbold, OH 43502

DISA Industries, Inc.
80 Kendall Point Drive
Oswego, IL 60543

Miller and Company
6400 Shafer Court, Ste. 500
Rosemont, IL 60018

RI Lampus Co.
816 Railroad St.
Springdale, PA 15144

XRI Testing – Troy
MobileX, LLC
1961 Thunderbird
Troy, MI 48084

Fairmount Minerals
P.O. Box 400
Bridgeman, MI 49106

MP Steel Indiana, LLC
P.O. Box 876
Kendallville, IN 46755

Ashland Chemical Company
P.O. Box 395
Columbus, OH 43216-0395

Complete Drives Inc.
1542 W. Auburn Drive
Auburn, IN 46706

Fire Protection Company
750 W. North St., Ste. C
Auburn, IN 46706

Motion Industries, Inc.
3333 E. Washington Blvd.
Fort Wayne, IN 46862-2149

Inductotherm Corp
10 Indel Ave.
Rancocas, NJ 08073
Richard J. Swanson
445 N. Pennsylvania Street
Suite 401
Indianapolis, IN 46204_1800

Henry A. Efroymson
Ice Miller
One American Square, Box 82001
Indianapolis, IN 46282-0002

      /s/ Grant F. Shipley
Grant F. Shipley
SHIPLEY & ASSOCIATES
233 West Baker Street
Fort Wayne, Indiana  46802
(260) 422-2700

and

Josef S. Athanas
Caroline A. Reckler
LATHAM & WATKINS, LLP
233 South Wacker Drive
Sears Tower, Suite 5800
Chicago, Illinois  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Attorneys of Bank of America, N.A.