IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

**AUBURN FOUNDRY'S RESPONSE TO LENDERS'
OBJECTION TO ENTRY OF A FINAL ORDER
<u>APPROVING THE USE OF CASH COLLATERAL</u>**

Auburn Foundry, Inc., debtor-in-possession herein ("AFI" or the "Debtor"), by counsel, hereby responds to the objection of Bank of America, N.A., as agent for certain pre-petition lenders (the "Lenders") to the entry of an order approving long-term use of cash collateral.

Since its Chapter 11 filing, AFI has exceeded its performance projections by more than $450,000. It is retaining key customers and obtaining new supplies from its vendors. It is also working promptly toward a Plan of Reorganization. AFI has obtained preliminary use of cash collateral through March 4, 2004 and now seeks a final order for long-term cash use. There is no basis to restrict its access to cash collateral.

The Lenders took the unusual step of contesting cash use in the very early stages of this case. The Court itself expressed surprise at their approach. The Lenders did so, in part, on the mistaken assumption that AFI was required to prove its right to use cash collateral by more than a reasonable doubt, rather than by a simple preponderance of the evidence.

The Court rejected the Lenders' view on the standard of proof at the preliminary hearing, yet they persist in attempting to re-litigate the issue in their latest objection. Remarkably, the case that supports the Lenders' position was reversed on appeal by the Fifth

Circuit Court of Appeals (a fact not mentioned in their objection) and the Lenders' did not disclose the reversal – or the later Fifth Circuit Court case that confirmed the preponderance standard.  Four years later, the Fifth Circuit expressly held that the standard of proof is a preponderance of the evidence.  These decisions agree with most other courts that have considered the issue.

The Lenders made clear at the preliminary hearing that their true intention is to force an immediate sale of the Debtor.  That course of action would only benefit secured creditors, although the Court pointed out that terminating cash use likely would hurt the entire creditor body, including the Lenders.  Unsecured creditors would likely receive nothing from a premature sale.  AFI prefers instead to pursue a Plan of Reorganization which provides the best opportunity for repayment of the Lenders, as well as a meaningful recovery for unsecured creditors.

## I. INTRODUCTION

1. AFI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code") on February 8, 2004 (the "Petition Date").

2. On February 9, 2004, AFI filed an Emergency Motion seeking approval for interim use of cash collateral, providing adequate protection, and scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) (the "Motion").

3. The Lenders objected to the Motion and a hearing was held thereon on February 9, 2004.  At the first-day hearing, the Court scheduled a preliminary hearing on February 13, 2004 to consider interim use of cash collateral (the "Preliminary Hearing") and a final hearing on February 27, 2004 (the "Final Hearing").

4.      On or about February 10, 2004, the Court entered an Interim Order which permitted AFI to use cash collateral for a three week period in accordance with a budget (the "Budget") attached thereto.  AFI and the Lenders, by their respective counsel, agreed to the form of the Interim Order.

5.      The Preliminary Hearing was held on February 13, 2004.  The Court denied the Lenders' objection to preliminary cash use and granted AFI's Motion regarding same.

6.      The Court made the following statements in its Ruling:

(i)     "It's been a long time since we've had a contested cash collateral fight in the opening days of a Chapter 11 case.  But, given the legal standard that the Bank is advocating, I certainly see how we came to this pass." Transcript of Ruling, p. 4.

(ii)    "[I]f the standard is too evident to be doubted, no doubt about it, Debtor hasn't proved it.  Indeed, I doubt that anybody anywhere could prove adequate protection for the use of cash collateral against so high a standard, which, as Counsel said, is even higher than beyond a reasonable doubt.  Rather, I think the appropriate standard of evidence here is a simple preponderance." Transcript of Ruling, p. 5.

(iii)   ". . . . I have no doubt that if I sustain the objection and deny the motion, you can probably rip ten million dollars' worth of collateral right off that bottom line. . . . [T]he Bank ought to be making out like a bandit here to perpetuate . . . some life in the Debtor." Transcript of Ruling, pp. 5-6.

(iv)    "Everybody here, from my point of view, is writing on a completely clean slate, untainted by any skepticism, unencumbered by any baggage. . . .  I look at it with fresh eyes. . . . And Debtors have different options, different tools, different resources available to them which are not available either in State Court or in pre-petition negotiations and work-out deals." Transcript of Ruling, p. 7.

(v)     "I have no reason, been given no reason today, other than don't believe them, Judge, to doubt the accuracy of Debtor's projections." Transcript of Ruling, p. 7.

(vi)    "Now, to the extent I have to peer beyond March 4th in terms of predicting whether or not the Debtor is going to be given long-term access to cash collateral, I think it's more likely than not they will. . . . I think it's more likely than not that the Debtor will be given access to cash collateral

so that it can maintain its operations, because *I've heard nothing of seriousness that leads me to believe the Bank's position, either long term or short term, is going to be jeopardized . . . .*"  Transcript of Ruling, p. 8 (emphasis added).

7. The Lenders filed an additional objection to cash use on or about February 20, 2004 (the "Objection") in advance of the Final Hearing.  AFI hereby responds to that Objection.

## II.  SUMMARY OF ARGUMENT

8. The Lenders make several baseless objections to AFI's continued use of cash collateral.  Their Objection should be denied – and AFI's Motion granted – for the following reasons:  (a) the proper burden of proof for approving use of cash collateral is a preponderance of the evidence; (b) AFI met that burden at the Preliminary Hearing and will satisfy it again at the Final Hearing; (c) the Lenders are adequately protected by the measures set forth in AFI's Motion; (d) AFI obtained DIP financing to redress any post-petition cash deficiencies it might experience, all without affecting the Lenders' alleged security interests; (e) AFI has met or exceeded its preliminary cash use projections (i.e., improving its cash position) since the Petition Date; and (f) AFI expects to meet its long-term cash use projections.

9. AFI prevailed at the Preliminary Hearing, in part, because it met or exceeded its performance projections for the first week of post-petition operations, and the Lenders offered no evidence to challenge AFI's preliminary Budget.  As shown by the updated budget attached hereto as Exhibit A, the Debtor also exceeded projections for its second week.  AFI also expects to meet its long-term projections, thus entitling it to additional cash use as it seeks approval for a Plan of Reorganization.  AFI is now performing ahead of budget by more than $450,000.

10. AFI also prevailed at the Preliminary Hearing because the Court rejected the Lenders' argument that the proper standard of proof is even higher than a reasonable doubt. To support this proposition, the Lenders cited a case which was subsequently reversed on appeal. The Lenders did not mention this reversal in their Objection or explain its impact on their analysis, although it now seems clear that much of the preliminary litigation over cash use could have been avoided through a proper understanding of the legal standard.

11. The Debtor, through a forthcoming Plan of Reorganization, seeks to repay the Lenders and provide a recovery, at least in part, for unsecured creditors. The Lenders, by contrast, effectively seek to close the Debtor's doors to facilitate an immediate liquidation. The Lenders' intentions are inconsistent with the policies and purposes of Chapter 11 of the Bankruptcy Code, which helps explain why their efforts to deny cash use have thus far been denied.

### III.  ARGUMENT

**A.     AFI Must Prove Adequate Protection by a Preponderance of the Evidence.**

12. The Lenders erroneously state that AFI must prove adequate protection by something more than a preponderance of the evidence. *See* Objection, ¶¶ 6-11. In fact, they contend, as they did at the Preliminary Hearing, that the standard is even higher than a reasonable doubt. *See* Objection, ¶ 8; *cf.* Transcript of Ruling, p. 5 (rejecting this argument).

13. "[T]he debtor must show that the creditor will receive the indubitable equivalent of its claims *by a preponderance of the evidence*. The level of proof to show indubitability is not raised merely by the use of the word 'indubitable.'" *In re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165 n. 26 (5th Cir. 1993) (emphasis added). Thus, it is "incumbent on the Debtor . . . to prove *by a preponderance of the evidence*, as a prerequisite to

its use of . . . cash collateral," that the secured creditor's interests are "adequately protected." *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tx. 1999) (emphasis added); *see also In re Ernst Home Center, Inc.*, 209 B.R. 955, 965 (Bankr. W.D. Wash. 1997) (debtor "has the burden of proving *by a preponderance of the evidence* that the [secured creditors] are adequately protected" under § 363(o) of the Code); *In re Wabash Valley Power Associates, Inc.*, 114 B.R. 613, 619 (S.D. Ind. 1989) (describing the type of evidence which would satisfy this test without suggesting that the burden was higher than a simple preponderance).

14. It is similarly well established that a preponderance standard is appropriate for "cram down" determinations under § 1129(b) of the Code, which also implicate indubitable equivalence. *See In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 653 (9th Cir. 1993); *Corestates Bank, N.A. v. United Chemical Technologies, Inc.*, 202 B.R. 33, 45 (E.D. Pa. 1996). Courts in the Seventh Circuit, citing *Briscoe, supra*, have agreed. *See In re 203 North LaSalle Street Ltd. Partnership*, 190 B.R. 567 (Bankr. N.D. Ill. 1995), *aff'd*, 195 B.R. 692 (N.D. Ill. 1992), *aff'd*, 126 F.3d 955 (7th Cir. 1997), *rev'd on other grounds*, 526 U.S. 434 (U.S. 1999) ("Although the matter has been debated, it is now well established that the burden of proof is by a preponderance of the evidence.")

15. The Lenders place their principal reliance on *In re Sandy Ridge Development Corp.*, 77 B.R. 69, 73 (Bankr. M.D. La. 1987), **a case reversed on appeal** at 881 F.2d 1346 (5th Cir. 1989). In *Sandy Ridge*, the bankruptcy court refused to confirm a Plan which provided for in-kind distributions of property, holding that a single appraisal on the property was too speculative to constitute "indubitable" equivalence. The Fifth Circuit reversed and confirmed the Plan, finding the test readily satisfied. The bankruptcy court ruling in *Sandy Ridge* appears to be aberrant, even within the Fifth Circuit. *Cf. Briscoe, supra* (establishing preponderance as the

controlling Fifth Circuit standard in a decision four years later). The Lenders' failed to advise this Court that the Fifth Circuit Court of Appeals reversed the bankruptcy court decision. Their Objection does not cite the Fifth Circuit decision, nor explain what impact it might have on their analysis.

16. The Lenders also cite *In re Leavell*, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985), one of the few courts to have held that the standard of proof is clear and convincing evidence. Even so, the Lenders disparage this decision as the product of an "extremely pro-debtor Bankruptcy Court," suggesting it should have applied an even higher standard of proof. *See* Objection, ¶ 9. The Lenders' position is simply wrong.

17. AFI's evidence at the Final Hearing will satisfy either the preponderance standard or the clear and convincing standard, although the preponderance test is clearly the appropriate standard.

18. In its ruling at the close of the Preliminary Hearing, this Court identified "preponderance of the evidence" as the proper standard of proof under § 363(o). In doing so, it expressly rejected the Lenders' arguments for a higher standard.

19. The Lenders contend that the Court would effectively "ignore the plain words of Section 361 of the Bankruptcy Code and applicable case law" if it applies the preponderance standard *again* at the Final Hearing. *See* Objection ¶ 12. AFI respectfully disagrees. This is, in fact, the appropriate standard of proof.

**B. The Lenders are Adequately Protected by Auburn Foundry's Proposed use of Cash Collateral.**

20. AFI's Motion should be granted because (a) the Lenders misapprehend the nature of the adequate protection being offered; (b) AFI intends to prove its entitlement to cash use beyond February 27, 2004 at the Final Hearing; (c) the professional fee provision contained

in the Motion is appropriate, or, alternatively, can be removed from the final order without affecting the remaining merits of the Motion; (d) the Lenders are not entitled to adequate protection of their right, if any, to post-petition interest and fees; (e) there is no evidence that AFI is losing customers; (f) the Lenders mischaracterize the Debtor's need for post-petition DIP financing; (g) AFI does not seek to eliminate the Lenders' replacement liens; and (h) AFI does not seek to deny the Lenders' right to monitor their alleged collateral.

        a.    *The Lenders Misapprehend the Nature of the Adequate Protection Being Offered.*

21.    The Lenders mistakenly contend that AFI seeks "free reign" to expend the cash proceeds of pre-petition collateral (principally, inventory and receivables) "without any replacement liens being granted . . . whatsoever for the decline in value" of such collateral. *See* Objection, ¶ 13. This is simply untrue.

22.    Cash collateral is defined in Section 363(a) of the Code as consisting, *inter alia*, of cash, securities, and the proceeds of property, including proceeds of pre-petition inventory and receivables. The Motion does nothing to change that definition. In fact, it expressly states that the Lenders will receive "replacement liens on the Debtor's post-petition assets, to the same extent, and with the same priority and validity, as their security interests in such assets prepetition, to the extent that use of Cash Collateral results in a decrease in the value of the Senior Lenders' interest in the Cash Collateral during the period of time that this Order is in effect." *See* Motion, ¶ 22.

23.    The Motion simply follows the statute. The Lenders' objection to this provision is without merit.

> b. *AFI intends to prove its entitlement to cash use beyond February 27, 2004 at the Final Hearing.*

24. The Lenders object to cash use beyond February 27, 2004 on grounds that AFI has not yet furnished a long-term budget. *See* Objection, ¶ 16. AFI intends to submit – and substantiate – such a budget at the Final Hearing .

25. The Lenders rely heavily on a report by Alvarez & Marsal (the "A&M Report"), one of the exhibits at the Preliminary Hearing, in their Objection to further cash use. *See* Objection, ¶ 17. In so doing, they contend that the A&M Report shows a $1.7 million cash deficiency during the initial weeks of a Chapter 11 case.

26. The Lenders tell only part of the story from the A&M Report. First, the report contains both "base" and "favorable" scenarios. The Lenders mention only the former. AFI intends to prove at the Final Hearing that it is more likely to achieve the "favorable" result. Second, the A&M Report includes certain assumptions regarding expenditures – e.g., post-petition professional fees – which have not been, and will not be, incurred during the preliminary weeks of the case (i.e., the time the alleged shortfall would occur). AFI will thus demonstrate that both the "base" and "favorable" scenarios involve even less reliance on DIP financing than previously expected and that the impact on collateral is even less than projected.

27. AFI has obtained a $2.0 million DIP facility for the express purpose of redressing such cash deficiencies, if any. Nowhere in the Objection do the Lenders suggest that $2.0 million is insufficient to meet the Debtor's needs, nor do they contend that access to DIP financing impairs their alleged security interests in any way. AFI will demonstrate complete independence of the Lenders in its long-term budget through its use, if necessary, of the DIP facility.

      c.    *The professional fee provision contained in the Motion is appropriate, or, alternatively, can be removed from the final order without affecting the remaining merits of the Motion.*

28. AFI agrees that a "carve-out" of cash collateral must be consented to by the alleged secured creditor or ordered by the Court if adequate protection is provided. The Lenders do not agree to such a carve-out here. Nonetheless, AFI is entitled to pay post-petition professional fees as an administrative expense, to the extent allowable by the Court, in accordance with its long-term cash use budget. The final order requested herein would recognize that right.

29. If and to the extent the Court determines that the professional fee provision should be modified or excluded, AFI respectfully requests that the final order be conditioned accordingly, all without affecting its right to pay post-petition fees as administrative expenses or to surcharge the Lenders' alleged collateral under § 506(c) of the Code.

      d.    *The Lenders are not entitled to adequate protection for their right, if any, to post-petition interest and fees.*

30. The Lenders assert that they are oversecured and therefore entitled to post-petition fees and interest. *See* Objection, ¶¶ 25-26. However, they offer no support for the proposition that their right to such charges, if any, is entitled to adequate protection.

31. "The claim of an oversecured creditor will generally increase over time as it accrues interest under section 506(b) . . . . Nevertheless, adequate protection is not intended to protect the creditor's right to continue to accrue interest . . . . An oversecured creditor is not entitled to . . . cash payments for accruing post-petition interest as part of that creditor's adequate protection . . . . It is the decline in the value of the collateral against which protection is provided, not the perpetration of the ratio of collateral to debt." COLLIER ON BANKRUPTCY, ¶ 361. 02[2][a] (15th Ed. 2001).

32. It is black letter law that the Lenders are not entitled to adequate protection for post-petition fees and interest.  Their objection on this basis has no merit.

   e. *There is no evidence that AFI is losing customers.*

33. The Lenders state, erroneously, that AFI "has done nothing to protect the Lender . . . from customers leaving."  *See* Objection, ¶ 27.  They also assert a "belief" that "many" of AFI's customers will leave in the 90-120 day period following the Petition Date.  Both of these statements are unfounded.

34. The evidence presented at the Preliminary Hearing strongly established that (i) AFI is retaining, not losing, its primary customers, in some cases by negotiating long-term agreements and (ii) AFI has *voluntarily* ceased doing business with certain unprofitable customers pursuant to its own recovery plan.

35. The Lenders offered scant evidence at the Preliminary Hearing to show that AFI was likely to lose customers.  This Court implicitly dismissed such testimony, noting that "nothing of seriousness" would suggest the Lenders' collateral "either long term or short term, is going to be jeopardized."  *See* Transcript of Ruling, p. 8.

36. The Court should not deny AFI access to cash collateral based on unfounded speculation regarding possible customer departures.

   f. *The Lenders mischaracterize AFI's need for DIP financing.*

37. Contrary to the Lenders' assertion, AFI's cash use projections show no cash deficiency which cannot be satisfied through existing DIP financing.  *Cf.* Objection, ¶¶ 28-30.  AFI intends to submit – and substantiate – a long-term cash use budget by which it can operate comfortably with its existing DIP facility.

    g. *AFI does not seek to eliminate the Lenders' replacement liens.*

  38. The Lenders assert that both the Motion and the Interim Order – the latter of which they actively negotiated – contain a "nonsensical" provision that "the replacement lien on cash shall extend only to the amount by which non-cash Cash Collateral is less than the amount of the prepetition revolving loan debt to the [Lenders]."

  39. The above-referenced provision simply embodies the proposition that the Lenders are not entitled to liens on accumulations of cash in excess of their pre-petition liens (*i.e.*, their replacement liens are strictly limited to those minimally required under the Code).  If and to the extent the Court determines that this proposition can best be expressed in some other manner, AFI respectfully requests that the Court condition the final order accordingly.

    h. *AFI does not seek to deny the Lenders any right to monitor their alleged collateral.*

  40. The Lenders cite, at some length, certain loan agreement provisions which purportedly have some bearing on their post-petition rights in the bankruptcy case.  *See* Objection, ¶ 32.  However, the Court has not incorporated such provisions into any prior order, nor has it been asked to do so.

  41. AFI's Motion proposes, as part of its adequate protection, that the Debtor provide the Lenders with weekly borrowing base certificates and monthly cash receipts and disbursement reports.  *See* Motion, ¶ 28.  These provisions are sufficient to meet the Lenders' reporting needs.  If and to the extent the Court determines that additional reporting requirements are necessary to provide adequate protection, AFI respectfully requests that the final order be conditioned accordingly.

## IV. CONCLUSION

The Lenders recycle a number of arguments in their Objection which the Court heard – and rejected – at the Preliminary Hearing. None provide a basis for terminating the Debtor's access to cash. AFI intends to demonstrate both its entitlement to long-term use of cash collateral and its adequate protection of the Lenders at the Final Hearing. Its Motion should therefore be granted.

WHEREFORE, Auburn Foundry, Inc. respectfully requests that its Motion for use of cash collateral be granted, and for all other just and proper relief.

BAKER & DANIELS


By: /s/ John R Burns
    John R Burns (#3016-02)
    Mark A. Werling (#20426-02)
    111 East Wayne Street, Suite 800
    Fort Wayne, Indiana 46802
    Telephone: (260) 420-8000
    Facsimile: (260) 460-1700

ATTORNEYS FOR THE DEBTOR,
AUBURN FOUNDRY, INC.


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Auburn Foundry's Response to Lenders' Objection to Entry of a Final Order Approving the Use of Cash Collateral was served by electronic mail or by first-class United States mail, postage prepaid, the 25th day of February, 2004, upon the following persons or counsel:

| | |
|---|---|
| Josef S. Athanas | Donald F. Baty, Jr. |
| Latham & Watkins | Honigman, Miller, Schwartz & Cohn, LLP |
| Sears Tower, Suite 5800 | 2290 First National Building |
| 233 South Wacker Drive | 660 Woodward Avenue |
| Chicago, IL 60606 | Detroit, MI 48226 |

Jerald I. Ancel
Sommer & Barnard, PC
111 Monument Square, Suite 4000
Indianapolis, IN 46204-5198

Nancy J. Gargula
United States Trustee's Office
One Michiana Square, 5th Floor
100 East Wayne Street
South Bend, IN 46601

OmniSource Corp-Tusco
2453 Hill Avenue
Toledo, OH 43607

Auburn City Utilities
P.O. Box 506
Auburn, IN 46706

Bank of America
231 S. LaSalle Street, 16th Floor
Chicago, IL 60697

GMAC Business Credit, LLC
300 Galleria Officentre, Suite 110
Southfield, MI 48034

A.F. Europe, Inc.
635 W. Eleventh Street
Auburn, IN 46706

DeKalb County, Indiana
DeKalb County Assessor, Court House
100 South Main Street
Auburn, IN 46706

Citizens Gas & Coke Utilities
2020 North Meridian Street
Indianapolis, IN 46202

Dauber Company, Inc.
577 North 18th Road
Tonica, IL 61370

UNIMIN Corporation
258 Elm Street
New Canaan, CT 06840

DISA Industries, Inc.
80 Kendall Point Drive
Oswego, IL 60543

Miller and Company
6400 Shafer Court, Suite 500
Rosemont, IL 60018

R I Lampus Co.
816 Railroad Street
Springdale, PA 15144

XRI Testing – Troy
MobileX, LLC
1961 Thunderbird
Troy, MI 48084

Fairmount Minerals
P.O. Box 400
Bridgman, MI 49106

MP Steel Indiana, LLC
P.O. Box 876
Kendallville, IN 46755

Ashland Chemical Co.
P.O. Box 395
Columbus, OH 43216-0395

Complete Drives, Inc.
1542 W. Auburn Drive
Auburn, IN 46706

Fire Protection, Inc.
750 W. North Street., Suite C
Auburn, IN 46706

```
```
---
---

| | |
|---|---|
| Motion Industries, Inc.<br>3333 East Washington Blvd.<br>Fort Wayne, IN 46862-2149 | Inductotherm Corp.<br>10 Indel Avenue<br>Rancocas, NJ 08073 |
| Grant F. Shipley<br>230 West Main Street<br>Fort Wayne, IN 46802 | Henry A. Efroymson<br>Ice Miller<br>One American Square<br>Box 82001<br>Indianapolis, IN 46282-0002 |

/**s**/ John R Burns