UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Auburn Foundry, Inc., | ) | Case No. 04-10427 |
| | ) | |
| Debtor. | ) | |

**REPLY OF BANK OF AMERICA, N.A., TO AUBURN FOUNDRY'S
RESPONSE TO LENDERS' OBJECTION TO THE ENTRY OF A
<u>FINAL ORDER APPROVING THE USE OF CASH COLLATERAL</u>**

Bank of America, National Association ("BofA"), as agent for the pre-petition secured lenders (the "Lenders"), parties in interest in the chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby files this reply (the "Reply") to Auburn Foundry's Response to Lenders' Objection to Entry of a Final Order Approving the Use of Cash Collateral (the "Response").[1] In support hereof, BofA represent as follows:

**PROCEDURAL POSTURE**

1.  On February 8, 2004 (the "Petition Date"), Auburn Foundry, Inc. ("Auburn") commenced its bankruptcy case (the "Chapter 11 Case") by filing a voluntary petition in the Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division (the "Bankruptcy Court"). On February 9, 2004, Auburn filed an Emergency Motion For Order (I) Pursuant to 11 U.S.C. § 363; (II) Providing Adequate Protection Regarding Use of Cash Collateral; and (III) Scheduling Preliminary And Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Cash Collateral Motion") and the Lenders filed a preliminary objection to the Cash Collateral Motion (the "Preliminary Objection"). On

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Response.

CH\668698.2

February 9, 2004, the Bankruptcy Court entered an Agreed Interim Order (I) Authorizing Interim Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Providing Adequate Protection Regarding Use of Cash Collateral; and (III) Scheduling Preliminary and Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Agreed Interim Order") and set the Cash Collateral Motion for a preliminary hearing on February 13, 2004 (the "Preliminary Hearing") and a final hearing on February 27, 2004 (the "Final Hearing").  On February 17, 2004, the Bankruptcy Court entered an order granting the Cash Collateral Motion on a preliminary basis (the "Interim Cash Collateral Order").  On February 20, 2004, BofA filed an Objection to the Entry of a Final Order Approving the Use of the Lenders' Cash Collateral and on February 25, 2004, the Debtor filed the Response.

## ARGUMENT

**A.   BofA Did Not Mischaracterize Sandy Ridge in the Objection
and the Debtor's Burden to Prove Adequate Protection
is Higher than by a Preponderance of the Evidence**

2.   BofA does not contest that the District Court's affirmation of In Sandy Ridge Development Corp., 77 B.R. 69 (Bankr. M.D. La. 1987), *rev'd on other grounds*, 881 F.2d 1346, 1350 (5th Cir. 1989), *reh'ing denied,* 889 F.2d 663 (5th Cir. 1989)("Sandy Ridge") was reversed by the Fifth Circuit on grounds other than those for which BofA cited Sandy Ridge and BofA erred by not listing the subsequent history when citing Sandy Ridge in the Objection.  See In re Sandy Ridge, 881 F.2d 1346, 1350 (5th Cir. 1989), *reh'ing denied by,* 889 F.2d 663 (5th Cir. 1989).  The error was unintentional.

3.   BofA cited Sandy Ridge (and several other cases) for the proposition that the "indubitable equivalence" standard of proof is higher than a preponderance of the evidence.  The Fifth Circuit reversed the District Court's decision affirming Sandy Ridge because, among other things, the proposed plan in Sandy Ridge met the indubitable equivalence standard by providing a secured lender with title to the real property securing its claim, noting that "property is the indubitable equivalent of

2

itself. " In re Sandy Ridge, 881 F.2d 1346, 1350 (5th Cir. 1989).  Contrary to the statement of the Debtor in the Response that "the Fifth Circuit reversed and confirmed the Plan" in question, the Fifth Circuit shared the bankruptcy court's concern with the workability of the plan and with Sandy Ridge's apparent lack of good faith and remanded the matter to the bankruptcy court for reconsideration.  See In re Sandy Ridge, 881 F.2d 1346, 1355 (5th Cir. 1989).  The Fifth Circuit did not reverse the Bankruptcy Court's holding that the indubitable equivalent standard of proof was "too evident to be doubted."

    4.    Not only did the Fifth Circuit NOT reverse the bankruptcy court's holding in Sandy Ridge that the indubitable equivalent standard of proof was "too evident to be doubted," the Fifth Circuit discussed the development of the term indubitable equivalence and traced its origin to the language of In re Murel Holding Corp., 75 F.2d 941 (2d Cir. 1935) ("Murel").  In Murel, the court stated that:

> a creditor who fears the safety of his principal will scarcely be content with…[interest payments alone]; he wishes to get his money or at least the property.  We see no reason to suppose that the statute was intended to deprive him or that…unless by a *substitute* of the most indubitable equivalence.

Murel, 75 F.2d at 942.  In Murel, the reorganization plan proposed to pay the secured creditor interest on the collateral for ten years, with full payment of the principal due at the end of that time.  However, the plan made no provision for amortization of principal or for maintenance of the collateral over the ten-year term.  The Murel court refused to confirm a "wholly speculative" plan, since the creditor would receive neither money nor property, nor would he receive an equivalent substitute.  Here, the Debtor is not paying interest, not making adequate protection payments, not surrendering the property upon which the Lenders have a lien and not providing "a substitute of the most indubitable equivalence."  For all of the reasons set forth in the Objection, the protection which the Debtor is offering the Lenders is insufficient.

CH\668698.2

B. **BofA Does Not Mischaracterize the Debtor's Need for DIP Financing**

5. The Debtor states in the Response that it will supply the Lenders with a long-term cash use budget to substantiate that it can operate comfortably with its existing debtor-in-possession financing facility. To date, the Debtor has not provided the Lenders or this Court with a budget for any period of time after February 27, 2004 except for the Alvarez & Marsal budget, which shows a substantial cash need between now and May.

6. Further, the Debtor's assertion that the Lenders' do not contend that the "DIP financing impairs their alleged security interests in any way" is patently incorrect. See Response at ¶ 27. To the contrary, on February 20, 2004, BofA filed an objection to the Debtor's motion for debtor-in-possession financing on numerous grounds, including, without limitation, that the proposed financing possibly primes the Senior Lenders' pre and post-petition liens and claims.

C. **The Debtor Seeks to Eliminate or Limit the Lenders' Replacement Liens**

7. In his opening remarks at the Preliminary Hearing, Mr. Burns, the Debtor's counsel, informed the Court that the Lenders would be adequately protected because "we are offering to give them replacement liens in all categories of collateral to the extent and in the amounts existing prior to the petition." See Transcript at ¶ 8. Similarly, Dennis Maude, the Debtor's assistant treasurer, when testifying about the replacement liens being given to the Lenders stated that "there'll be the cash position, but in addition to that, they'll have current receivables, they'll have currently produced inventory." See Transcript at p. 73. Remarkably, neither Mr. Burns nor Mr. Maude's representation of the replacement liens the Debtor proposed to grant the Lenders is reflected in the Interim Cash Collateral Order. Specifically, paragraph 22 of the Cash Collateral Motion and Paragraph 6(b) of the Interim Cash Collateral Order provide that the Lenders only have replacement liens to the extent their cash collateral decreases in value. Because the Lenders held little or no cash collateral as of the Petition Date, this provision essentially provides the Lenders with no replacement liens whatsoever.

4

CH\668698.2

8.      In addition, Paragraph 22 of the Cash Collateral Motion and Paragraph 6(b) of the Interim Cash Collateral Order provide that "the replacement lien on cash shall extend only to the amount by which non-cash Cash Collateral is less than the amount of the prepetition revolving loan debt to the [Lenders]."  See Cash Collateral Motion at ¶ 22; Interim Cash Collateral Order at ¶ 6(b).  Contrary to the Debtor's assertion in the Response, the Lenders did not "actively negotiate" the Interim Cash Collateral Order which was entered by the Court on February 17, 2004.  See Response at ¶ 38.  In fact, the Lenders tried to explain to the Court at the conclusion of the Preliminary Hearing that the Interim Cash Collateral Order contained the above-referenced nonsensical provision and numerous other serious flaws.

9.      The Debtor states in the Response that "the above-referenced provision simply embodies the proposition that the Lenders are not entitled to liens on accumulations of cash in excess of their pre-petition liens…."  See Response at ¶ 39.  Yet, what the provision really attempts to do, if any sense can be made of it at all, is to replace pre-petition liens on all of the Debtor's assets that support a revolving loan and a term loan totaling approximately $24.6 million, with replacement liens limited to the amount of the revolving loan only, approximately $11.3 million.  BofA submits that any order granting replacement liens as protection for the use of cash collateral should not be so limited.

   D.   **No Carve-Out or Payment of Fees as Administrative Claims Should be Permitted**

10.     In In re CD Electric Co., 146 B.R. 786 (Bankr. N.D. Ind. 1992), the Bankruptcy Court for the Northern District of Indiana, South Bend Division, denied the attorneys' applications for interim compensation, finding that the applicants failed to demonstrate that: (1) unencumbered assets exist from which their fees and expenses may be paid, (2) the debtor's secured creditors consented to the charge of administrative fees and expenses against their collateral, or (3) their services fall within the meaning of 11 U.S.C. § 506(c).

11. Following the criteria set forth in <u>In re CD Electric Co.</u>, the Debtor's professionals will not be entitled to compensation because in this Chapter 11 Case: (1) the Lenders do not consent to the use of their collateral to pay the Debtor's professional fees, (2) the uncontroverted evidence at the Preliminary Hearing showed that, taking into account the senior and the junior secured debt, the Debtor has no unencumbered assets from which to pay the Debtor's professionals, and (3) the Debtor's professionals will be unable to make the requisite showing under section 506(c) of the Bankruptcy Code that their actions have been for the reasonable, necessary costs and expenses of preserving, or disposing of, the Lenders' collateral for the any benefit of the Lenders.

WHEREFORE, for the reasons set forth in the Objection and herein, the Lenders respectfully request that the Court deny the Debtor's Cash Collateral Motion and grant such other relief as is just and proper.

February 26 , 2004                                          Respectfully submitted,


                                                      /s/ Grant F. Shipley
Grant F. Shipley
SHIPLEY & ASSOCIATES
233 West Baker Street
Fort Wayne, Indiana  46802
(260) 422-2700

and

Josef S. Athanas
Caroline A. Reckler
LATHAM & WATKINS, LLP
233 South Wacker Drive
Sears Tower, Suite 5800
Chicago, Illinois  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Attorneys of Bank of America, N.A.

CH\668698.2

## CERTIFICATE OF SERVICE

I certify that on the 26TH day of February, 2004, service of a true and exact copy of the above and foregoing pleading was served electronically through the Court's ECF system to:

| | |
|---|---|
| John R. Burns | Ellen Triebold |
| Mark Werling | Henry A. Efroymson |

And by depositing same in the United States Mail in envelopes properly addressed and with sufficient first class postage affixed to:

Auburn Foundry, Inc.
635 W. Eleventh St.
Auburn, IN 46706

                                                           /s/ Grant F. Shipley
                                                           Grant F. Shipley