## Auburn Foundry, Inc., D.I.P. and General Motors Corporation Agreement

I. **Rejection of existing Purchase Orders**

(a) Auburn Foundry, Inc., as Debtor-In-Possession ("Auburn Foundry") and General Motors Corporation ("GM") agree that Auburn Foundry will promptly file a notice of rejection of existing contracts with GM effective as of April 1, 2004 and acknowledge that the rejection will create a pre-petition, unsecured claim in favor of GM for rejection damages equal to the cost differentials to GM between the remaining life of the existing contract prices and the contract prices of the post-petition contract described below.

(b) In part satisfaction of its rejection damages, GM will be permitted to exercise a set-off under § 533 as of April 1, 2004 in the amount of $150,000.00, which amount is a compromise of a dispute as to the amount of GM's pre-petition debt to Auburn Foundry, subject, however, to GM making the loan described below.

II. **Post-Petition Contract**

(a) GM and Auburn Foundry will enter into a post-petition contract, incorporating the terms and conditions set forth in the existing contracts between GM and Auburn Foundry except as modified in this Section II(a) only, whereby Auburn Foundry will supply the same parts post-petition that it is supplying pre-petition during the term of the post-petition contract. Subject to confirming that the increase in raw scrap price equals or exceeds twenty percent (20%) and that the increase is necessary to allow Auburn Foundry to break even regarding the GM production, pricing of the post-petition contract parts will be twenty percent (20%) higher than existing contract prices for such parts through the term of this contract (the "April 1 Contract Price"). In the event the published Chicago market price for #1 bushling for the first full week of a given

FWIMAN1 326741v1

month between May and July, 2004 as reported in the *Iron Age Scrap Bulletin* increases by ten percent (10%) or more above the Iron Age Scrap Bulletin price for the first week of April, 2004 (the "Reference Price"), then Auburn Foundry will be entitled to an additional two percent (2%) price increase above the April 1 Contract Price for the remaining term of the post-petition contract. For clarity, at no time during the period April 1, 2004 through August 1, 2004, shall the purchase price exceed the April 1 Contract Price, plus 2%. For the period after August 1, 2004 through December 23, 2004, Auburn Foundry shall be entitled to an increase of 4% above the April 1 Contract Price, if the published Chicago market price for #1 bushling for the first full week in any given month between September and December, 2004 as reported in the *Iron Age Scrap Bulletin* increases by 16% or more above the Reference Price prior to the termination of the agreement on December 23, 2004. For clarity, at no time during the period August 1, 2004 through December 23, 2004 shall the purchase price exceed the April 1 Contract Price, plus 4%. Any adjustment in accordance with the above shall be effective on the fifteenth (15th) day of the month in which the respective percentage increase is determined. Notwithstanding the foregoing, if GM should propose a scrap purchase program to Auburn Foundry that provides it an equivalent economic benefit to the alternative set forth in this Section II(a), the Auburn Foundry agrees to evaluate, in good faith, any such proposals by GM.

(b) The term of the post-petition contract shall be April 1, 2004 through December 23, 2004.

(c) Auburn Foundry will build inventory banks upon GM's request subject to capacity constraints, availability of financing and ramp-up requirements. Commencing in the first full week of April, 2004, Auburn Foundry will meet GM increases in product release requests in excess of present levels by more than fifteen percent (15%) if firm release requests are given to

2

FWIMAN1 326741v1

Auburn Foundry by GM four weeks in advance of actual requirements. If GM increases its release requests by more than twenty percent (20%) over present levels, such increases shall be by separate purchase orders and such purchase orders shall be payable thirty (30) days after GM's receipt of such parts. GM will make an advance payment of $50,000.00 on amounts otherwise payable to Auburn Foundry in May, 2004 on or about the date of the set-off described in 1(b) and shall make an advance payment of $50,000.00 on amounts otherwise payable to Auburn Foundry in June, 2004 on or about May 2, 2004.

(d) Auburn Foundry will acknowledge GM's ownership of its tools and its right of possession of such tools and tooling, subject to Auburn Foundry's possessory lien rights pursuant to applicable law, if any, until fully paid for post-petition charges to GM.

(e) If there is equipment owned by Auburn Foundry that is dedicated solely to the production of GM product and not otherwise useable by Auburn Foundry, then Auburn Foundry will grant GM the first opportunity to purchase that equipment at an mutually agreeable price before selling such equipment to others.

(f) Provide GM and its representatives access to information and Auburn Foundry's operations at reasonable times and upon reasonable notice so as not to unduly interfere with Auburn Foundry's operations. In order to receive non-public information, GM will sign a Confidentiality Agreement if requested by Auburn Foundry, and Auburn Foundry reserves the right not to disclose proprietary information, or information that it deems confidential to its business operations.

(g) Auburn Foundry will cooperate with GM's reasonable resourcing consistent with the provisions of this agreement, in the event of a default by Auburn Foundry or upon expiration of the post-petition contract.

3

FWIMAN1 326741v1

### III. Payment of Pre-Petition Payable

a. In anticipation of execution of this agreement, GM wire transferred $402,011.00 in payment for pre-petition products sold by Auburn Foundry to GM.

b. On or before March 15, 2004, GM and Auburn Foundry will file a joint motion seeking court approval of the terms of this agreement, including approving a set-off by GM under § 553 of the Bankruptcy Code in the amount of $150,000.00 in favor of GM. The set-off, when approved by the Bankruptcy Court, shall be immediately effective as payment in part of the rejection damages that will be incurred by GM based upon the differential between the existing contract price of the post-petition contract price.

### IV. Post-Petition Loan

(a) GM will make a post-petition unsecured loan to Auburn Foundry in the amount of $100,000.00 contemporaneously with the set-off described above.

(b) The interest rate on such loan will be adjustable at the Bank of America Prime Rate Plus 1%.

(c) The loan and all accrued interest shall have super-priority administrative expense status pursuant to 11 U.S.C. § 364(c)(1) and shall be repaid in one installment of $25,000.00 and the balance, ratably thereafter, in twelve equal monthly installments with the first $25,000 installment being due thirty (30) days after the effective date of the Auburn Foundry's Plan of Reorganization or September 1, 2004, whichever shall first occur.

(d) Unless contradicted by the terms of this agreement, the post-petition unsecured loan shall be approved as post-petition DIP financing, and incorporate the non-contradicted provisions of the existing DIP facility, contain all of the customary provisions and will be cross-defaulted to the DIP existing facility.

FWIMAN1 326741v1

General Motors Corporation

By: _/s/ Nancy H. Shilling_

its: _PURCHASING MANAGER_

Auburn Foundry, Inc., Debtor-In-Possession

By: _____

its: _____

DET_C\609313.4