UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

**JOINT PRE-TRIAL ORDER REGARDING AUBURN FOUNDRY'S
MOTION FOR POST-PETITION FINANCING
<u>AND THE SENIOR LENDERS' OBJECTION THERETO</u>**

The Debtor, Auburn Foundry, Inc. ("AFI" or "Auburn Foundry" or the "Debtor"), and Bank of America, National Association ("BofA"), acting as collateral agent for itself and GMAC Commercial Finance, LLC (collectively, the "Senior Lenders"), submit this Joint Pre-trial Order ("Pre-Trial Order") with regard to AFI's motion for permission to obtain post-petition financing and the Senior Lenders' objection thereto. For their Pre-trial Order, AFI and the Senior Lenders state:

1. Counsel for the parties have conferred in preparation for submitting this Pre-Trial Order.

### A. <u>Jurisdiction</u>

2. Jurisdiction was conceded by counsel and found by the Court to be present. This matter is a core proceeding under 28 U.S.C. § 157(b).

### B. <u>Pending Motions</u>

3. AFI filed an Emergency Motion for Post-Petition Financing on February 9, 2004 (the "Emergency Motion" or the "DIP Motion"), by which it sought permission to obtain financing to fund its normal operating expenses (hereinafter, the "Post-Petition Financing" or the "DIP Facility"). On February 20, 2004, the Senior Lenders filed an objection to the DIP Facility

(the "DIP Objection").[1] Thereafter, AFI and the Senior Lenders entered into an Agreed Order which this Court approved on February 10, 2004 (the "Agreed Order"), an Amended Interim Order dated March 8, 2004, and a Second Interim Order dated March 30, 2004.

4. The issue for the final hearing is whether AFI should be granted access to Post-Petition Financing beyond April 23, 2004, the expiration date of the Second Interim Order. In this Pre-Trial Order, AFI and the Senior Lenders set forth their respective contentions with respect to Post-Petition Financing.

### C. Summary of Each Party's Theory of the Case

**Auburn Foundry's Contentions:**

5. The Post-Petition Financing is essential to the survival of the Debtor's business and its opportunity to reorganize.

6. The Debtor is unable to obtain financing on terms more favorable than those contained in the Post-Petition Financing.

7. The terms and conditions of the Post-Petition Financing are fair and reasonable, reflect the exercise of the Debtor's prudent business judgment consistent with its fiduciary duties, and is supported by equivalent value and fair consideration. The Post-Petition Financing has been negotiated in good faith and at arms length between the Debtor and the DIP Lender.

8. AFI's present utilization of Court-approved Post-Petition Financing provides a source of cash for operational needs without affecting the Senior Lenders' alleged security interests.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the DIP Objection.

**Senior Lenders' Contentions**:

9. The Debtor has not met its burden under section 364(c) of demonstrating that it was unable to obtain financing on less onerous terms.

10. The fees and charges requested under the DIP Facility are excessive, especially considering that the loan was inadequately shopped and is virtually risk free.

11. The Debtor has not negotiated the DIP Facility at arms' length. It is, of course, impossible for the Debtor to credibly assert that the negotiation with the DIP Lender was arm's length given the Debtor's financial situation, the overreaching terms which the DIP Lender ultimately negotiated and the fact that, on information and belief, certain of the members of the DIP Lender are board members, affiliates or shareholders of the Debtor. The Debtor states that it "understands that certain members of the DIP Lender are among the Subordinated Lenders." See DIP Motion at ¶ 12. The Senior Lenders find it difficult to believe and troubling that the Debtor cannot state with certainty who the members of the DIP Lender are and whether or not they are board members, affiliates or shareholders of the Debtor. Without full disclosure regarding the members of the DIP Lender, the Senior Lenders, this Court and all other constituents in this Chapter 11 Case cannot conclude that the DIP Facility is the product of good faith, arms' length negotiations.

12. The Debtor has not met its burden of establishing that the DIP Facility is in the best interest of the estate.

13. The DIP Facility is, at best, an attempt by the DIP Lender to take advantage of a captive borrower by charging exorbitant fees for a short-term, risk free loan and obtain undue "discretionary control" over the Debtor.

14. The DIP Lender seeks to use this leverage to possibly prime the Senior Lenders' pre and post-petition liens and restrict the unsecured creditors' ability to recover avoidance actions.

15. The DIP Facility is styled as a $2 million line of credit, however, advances which would cause the unpaid principal balance of the DIP Facility to exceed $800,000 or which are requested after the principal balance of the DIP Facility exceeds $800,000 are at the sole discretion of the DIP Lender. No evidence has been provided that the DIP Lender has $2 million to lend.

16. The discretionary nature of the DIP Facility gives the DIP Lender, some of the members of which appear to be board members, affiliates or shareholders of the Debtor, increased leverage over the Debtor at times when the Debtor is particularly vulnerable.

17. The DIP Motion fails to provide a budget which would shed meaningful light on the cost of the Debtor's operations and the need for the DIP Facility. Since the filing of the DIP Motion, the Debtor has provided the Senior Lenders with multiple draft budgets. Until the Debtor is able to provide the Senior Lenders with a final budget, however, the Senior Lenders cannot evaluate whether or not the DIP Facility is practical, feasible or a sound business decision.

18. The proposed order approving the DIP Motion does not make clear that the DIP Obligations (defined in the DIP Motion as principal and interest on the Note, the Commitment Fee, and the DIP Lender's Attorneys' Fees) are subject to the Senior Lenders' pre and post-petition secured claims and liens. It appears that the Debtor intends to use the Senior Lenders' cash collateral to pay fees, interest and principal payments under the DIP Facility. If the DIP Facility is truly subordinate to the pre-petition and post-petition claims and liens of the Senior Lenders, none of these amounts should be paid until the pre-petition and post-petition

claims of the Senior Lenders are paid in full. The Senior Lenders object to any attempt, either intentional or otherwise, to prime their liens or subordinate their claims and request that any final order approving the DIP Motion be clarified to reflect that the Senior Lenders' pre and post-petition liens and claims are superior to any of the DIP Lenders' liens and claims.

19. The Senior Lenders object to any claim or lien being granted to the DIP Lender under section 364 of the Bankruptcy Code absent an appropriate carve-out of all avoidance actions arising under chapter 5 of the Bankruptcy Code. Given the potentially significant preference and fraudulent conveyance recoveries which may exist, including against the Subordinated Lenders, some of whom are also members of the DIP Lender, and the Congressional intent to preserve avoidance action recoveries for the benefit of all creditors, the Court should mandate such a carve-out from all claims and liens granted under any final DIP Financing Order.

### D. Uncontested Facts

20. None.

### E. Contested Issues

21. Whether the Debtor has met its burden under section 364(c) of demonstrating that it was unable to obtain financing on less onerous terms.

22. Whether the Post-Petition Financing is in the best interests of the estate.

23. Whether the Debtor negotiated the DIP Facility at arms' length and in good faith.

24. If and to the extent the Debtor and/or the DIP Lender seek liens on avoidance actions under Chapter 5 of the Bankruptcy Code, whether the DIP Lender should be granted such liens.

### F. **Exhibits**

25. The parties incorporate by reference as part of the record of this proceeding the record of the preliminary hearing on the Debtor's motion for the use of Cash Collateral held on February 13, 2004, including the transcript of the testimony, all exhibits admitted into evidence, and the ruling of the Court. The parties also jointly identify all transcripts, pleadings, orders, or other documents of record filed in this Chapter 11 case.

**Auburn Foundry's Exhibits:**

26. The Cash Use Budgets and AFI's post-petition operating reports.

27. AFI's pre-petition forecasts and actual operating reports.

28. AFI's internally prepared balance sheets and related reports evidencing AFI's secured and unsecured liabilities.

29. AFI's cash use forecasts for periods beyond the Cash Use Budgets.

30. The complete trial transcript, including exhibits, from the first contested cash use hearing in this Chapter 11 case.

31. All pleadings and exhibits filed in AFI's Chapter 11 case, including those which evidence or relate to the Post-Petition Financing.

32. All exhibits identified by the Senior Lenders.

**Senior Lenders' Exhibits:**

33. Any reports prepared by the Senior Lenders' experts, investment advisors and/or outside consultants familiar with AFI's prior cash use, post-petition financial forecasts, business operations and asset valuations and any documents used or reviewed in preparation of such reports.

34. All pleadings and exhibits filed by any party in AFI's Chapter 11 case or admitted into evidence at any prior hearing in AFI's Chapter 11 case.

  35. All exhibits identified by the Debtor.

### G. Witnesses

**Auburn Foundry's Potential Witnesses**:

  36. Dennis Maude.

  37. Tom Woehlke.

  38. Experts, investment advisors and/or outside consultants familiar with post-petition financing.

  39. Employees of the Senior Lenders knowledgeable about post-petition financing, including Debra Rathberger.

  40. Representatives of potential DIP lenders and/or investors.

  41. All witnesses identified by the Senior Lenders.

**Senior Lenders' Potential Witnesses:**

  42. Debra Rathberger, Senior Vice President and Portfolio Manager at Bank of America, N.A.

  43. Any experts retained by the Senior Lenders for the purpose of evaluating the Debtor's operations, cash use, budgets and the Senior Lenders' collateral.

  44. All witnesses identified or called by Debtor.

### H. Trial Date

A final hearing on Post-Petition Financing is set for April 19, 2004 at 9:00 a.m.

SO ORDERED this ____ day of _____, 2004.

                _____
                United States Bankruptcy Judge

CONSENTED TO AND ENTRY REQUESTED:

| | |
|---|---|
| /s/John R Burns III | /s/Grant F. Shipley |
| John R Burns III | Grant F. Shipley |
| Mark A. Werling | 233 West Baker Street |
| 111 East Wayne Street, Suite 800 | Fort Wayne, IN  46802-3413 |
| Fort Wayne, IN  46802 | Telephone:  (260) 422-2700 |
| Telephone:  (260) 424-8000 | |
| | |
| ATTORNEYS FOR | ATTORNEYS FOR |
| AUBURN FOUNDRY, INC. | THE SENIOR LENDERS |

FWIMAN1 332871v1