UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

**JOINT PRE-TRIAL ORDER REGARDING AUBURN FOUNDRY'S
MOTION FOR USE OF CASH COLLATERAL
AND THE SENIOR LENDERS' OBJECTION THERETO**

The Debtor, Auburn Foundry, Inc. ("AFI" or "Auburn Foundry" or the "Debtor"), and Bank of America, National Association ("BofA"), acting as collateral agent for itself and GMAC Commercial Finance, LLC (collectively, the "Senior Lenders"), submit this Joint Pre-trial Order ("Pre-Trial Order") with regard to AFI's motion for permission to use cash collateral and the Senior Lenders' objection thereto. For their Pre-trial Order, AFI and the Senior Lenders state:

1. Counsel for the parties have conferred in preparation for submitting this Pre-Trial Order.

**A. Jurisdiction**

2. Jurisdiction was conceded by counsel and found by the Court to be present. This matter is a core proceeding under 28 U.S.C. § 157(b).

**B. Pending Motions**

3. AFI filed an Emergency Motion for Use of Cash Collateral on February 9, 2004 (the "Emergency Motion"), by which it sought permission to use cash collateral for a preliminary, three week period pending a final hearing. The Senior Lenders objected to the Motion the same day (the "Preliminary Objection"). Thereafter, AFI and the Senior Lenders

entered into an Interim Order which this Court approved on February 10, 2004 (the "Agreed Order").

4.  The Agreed Order permitted AFI to use cash collateral in accordance with the terms thereof until February 18, 2004. The Court set a preliminary hearing for February 13, 2004 to consider the Preliminary Objection and whether the Debtor would be able to use cash collateral beyond the expiration of the Agreed Order. At the preliminary hearing, the Court granted AFI's request to use cash collateral on an interim basis until March 4, 2004. On February 17, 2004, the Court entered an Interim Order (the "Preliminary Cash Use Order").

5.  On February 20, 2004, BofA filed an Objection to the Entry of a Final Order Approving the Use of the Lenders' Cash Collateral (the "Objection to the Entry of a Final Order"), and AFI filed a response thereto on February 25, 2004 (the "Response"). On February 26, 2004, BofA filed a Reply to Auburn Foundry's Response to Lenders' Objection to the Entry of a Final Order Approving the Use of Cash Collateral (the "Reply").

6.  The issue for the final hearing is whether AFI should be granted further use of cash collateral, subject to adequate protection provisions contained in the Preliminary Cash Use Order, proposed orders or other separate orders of this Court. In this Pre-Trial Order, AFI and the Senior Lenders set forth their respective contentions with respect to AFI's long-term use of cash collateral.

### C. Summary of Each Party's Theory of the Case

**Auburn Foundry's Contentions:**

7.  AFI attached budgets (the "Cash Use Budgets") to each of the cash use orders which set forth the expenditures it intended to make to maintain and preserve its business operations.

8. AFI has consistently operated within the confines of its Cash Use Budgets.

9. AFI expects to continue operating within the confines of its cash use projections, thereby adequately protecting the Senior Lenders' alleged security interests.

10. No determination has been made by this Court concerning the validity, extent, or priority of the Senior Lenders' alleged liens, although the Senior Lenders bear the burden of proof on each of these issues pursuant to Section 363(o) of the Bankruptcy Code.

11. AFI contends that it can successfully reorganize its business. It is preparing a Plan of Reorganization for filing in advance of the expiration of the exclusivity period. Based upon its projections for future operations, AFI believes its Plan will be feasible and have a reasonable likelihood of being confirmed.

12. AFI has access to, and is already utilizing, Court-approved Post-Petition Financing which provides a source of cash for operational needs without affecting the Senior Lenders' alleged security interests.

**Senior Lenders' Contentions:**

13. The Senior Lenders' contentions are more fully set forth in the Preliminary Objection, the Objection to the Entry of a Final Order and the Reply.

14. The only proper legal inquiry for the Court to consider at this final hearing is whether the Senior Lenders' interest in the Debtor's property as of the Petition Date is adequately protected. Any speculation regarding what might happen if the use of cash collateral is denied is irrelevant.

15. The Senior Lenders were owed approximately $23,622,422.98 in principal plus approximately $1 million in accrued interest and fees (collectively, the "Pre-Petition Indebtedness") as of February 8, 2004 (the "Petition Date") under that certain Financing and

Security Agreement, dated as of April 10, 2000 (as amended, supplemented or otherwise modified prior to the Petition Date, the "Pre-Petition Credit Agreement").

16. The Pre-Petition Indebtedness is secured by liens and security interests upon all of the Debtor's assets pursuant to the Pre-Petition Credit Agreement and that certain Mortgage, Assignment of Rents and Security Agreement effective as of April 10, 2000.

17. Such liens and security interests are valid, perfected and have priority over all other liens and security interests.

18. The value of the collateral upon which the Senior Lenders have valid, perfected-first priority liens and security interests as of the Petition Date for the benefit of the Senior Lenders exceeds the outstanding Pre-Petition Indebtedness under the Pre-Petition Credit Agreement as of such date.

19. The Senior Lenders are oversecured creditors entitled to post-petition interest, fees and expenses, including, without limitation, attorneys' fees and expenses.

20. The Debtor's accounts receivable and inventory will continue to decline in value after the date hereof.

21. Replacement liens are insufficient to adequately protect the Senior Lenders for the use of their cash collateral.

22. The Debtor's board of directors and management cannot successfully reorganize the Debtor. Therefore, the Senior Lenders are not adequately protected by the Debtor's assertions that the Senior Lenders' collateral value will be enhanced upon a reorganization.

23. The replacement liens supposedly provided in the Emergency Motion and the Preliminary Cash Use Order are illusory. Paragraph 22 of the Cash Collateral Motion and

Paragraph 6(b) of the Interim Cash Collateral Order provide replacement liens on the Debtor's assets only for the decline in value of the Senior Lenders' interest in cash collateral, not for the decline in value of the Debtor's accounts receivable, inventory and other assets occasioned by the Debtor's use of the cash proceeds thereof.  The Senior Lenders held little or no cash collateral as of the Petition Date.  Thus, the Emergency Motion requests free reign to the Debtor to use the cash proceeds of the Senior Lender's pre-petition collateral without any replacement liens being granted to the Senior Lenders whatsoever for the decline in value of their pre-petition collateral.  This Court should either deny the Emergency Motion or permit the Senior Lenders to submit an order which would provide the Senior Lenders with replacement liens for the decrease in value of their pre-petition collateral occasioned by the use of the cash proceeds thereof.

24.     The Emergency Motion provides that the Debtor's use of cash collateral is tied only to a budget, not to a borrowing base or any other measure that shows maintenance of the Senior Lenders' collateral.  Thus, the Debtor could sell the Senior Lenders' inventory collateral at fire sale prices and collect the Senior Lenders' accounts receivable collateral by offering customers large discounts.  This would enable the Debtor to meet the cash receipts requirement of the its cash budget, notwithstanding a substantial decrease in production and the value of the Senior Lenders' collateral.  Such decrease in production would also substantially decrease expenses in the Debtor's cash budget.  Thus, the Emergency Motion gives the Debtor free reign to engineer budget meeting results, by permitting a substantial diminution in the value of the Senior Lenders' collateral.  The Emergency Motion should be denied or this Court should permit the Lenders to submit an order requiring that the Debtor may only use cash collateral so long as the Availability (as defined in the Senior Lenders' Prepetition Credit Agreement) is not

less than the Borrowing Base (as defined in the Senior Lender's Prepetition Credit Agreement) as of the Petition Date.

25. Not only does the Emergency Motion seek an unlimited professional fee carve-out from the Senior Lenders' purported replacement liens, the Emergency Motion seeks an unlimited professional fee carve-out from the Senior Lenders' pre-petition liens. The only provision of the Bankruptcy Code that would permit this Court to grant a non-consensual carve-out on the Senior Lenders' pre-petition collateral is section 506(c). Section 506(c) of the Bankruptcy Code allows the collateral securing a claim to be invaded for the "reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit the holder of such claim." See 11 U.S.C. 506(c); In re S & S Indus., Inc., 30 B.R. 395, 399 (Bankr. E.D. Mich. 1983) ("A secured creditor, unless he consents, cannot be compelled to finance a chapter 11 proceeding except to the limited extent provided for in section 506(c)").

26. The Debtor cannot obtain an unlimited section 506(c) claim against the Senior Lenders' pre-petition collateral in the context of the Emergency Motion. Bankruptcy Rule 7001 proscribes that a section 506(c) claim must be brought through an adversary proceeding, which the Debtor has not done. In such adversary proceeding, the Debtor would need to show that fighting the Senior Lenders benefits the Senior Lenders and the Senior Lenders' collateral. The Senior Lenders believe that such a showing would be near impossible. Therefore, the Emergency Motion should be denied or the Court should permit the Senior Lenders to submit an order eliminating the unlimited professional fee carve-out from the Senior Lenders' pre-petition and post-petition liens and claims.

27. The Emergency Motion and the Proposed Cash Use Order contain a nonsensical provision that could be deemed to limit or eliminate the Senior Lenders' replacement

liens. Paragraph 22 of the Emergency Motion and Paragraph 6(b) of the Proposed Cash Use Order provide that "the replacement lien on cash shall extend only to the amount by which non-cash Cash Collateral is less than the amount of the prepetition revolving loan debt to the [Senior Lenders]." This provision does not make sense. Moreover, the Senior Lenders are entitled under section 361 of the Bankruptcy Code to adequate protection of their interest in the Debtor's property. The Pre-Petition Loan Documents granted BofA, as agent for the Senior Lenders, a security interest on all of the Debtor's assets to secure ***all*** of the indebtedness due under the Pre-Petition Loan Documents, not solely to secure the revolving loan debt. This provision, if any sense can be made of it, is directly contradictory to the express terms of section 361 of the Bankruptcy Code.

28. The Senior Lenders are concerned that many of the Debtor's customers will leave, greatly damaging the value of the Senior Lenders' collateral. At the Preliminary Hearing, a representative of BofA testified that this was her experience in other cases where automotive suppliers like the Debtor failed to obtain "no offset/no resource" agreements with their key customers. Accordingly, even if the replacement lien provided to the Senior Lenders in the Emergency Motion was not illusory, it would be insufficient to adequately protect the Senior Lenders for the use of their cash collateral. The Senior Lenders therefore request that the Emergency Motion be denied or that the Senior Lenders be permitted to submit an order requiring the Debtor to obtain "no offset/no resource" agreements from its customers as a condition precedent to the use of cash collateral.

29. The Emergency Motion and the Proposed Cash Use Order deny the Senior Lenders the right to monitor their collateral. At a minimum, the Debtor must be required to provide the Senior Lenders (a) a weekly cash budget through the proposed September 1, 2004

expiration of the debtor-in-possession financing loan, (b) a daily signed borrowing base certificate, (c) weekly comparisons of actual receipts and expenditures to budgeted receipts and expenditures, and (d) access to sufficient information for the Senior Lenders to verify the information provided.

### D.  Uncontested Facts

30.  None.

### E. Contested Issues

31.  Whether the Senior Lenders have met their burden of proof as to the validity, priority, and extent of their alleged security interests in AFI's assets.

32.  Whether the Debtor has met its burden of proof that the Senior Lenders are adequately protected as required by §§363(e) and 361.

### F.  Exhibits

33.  The parties incorporate by reference as part of the record of this proceeding the record of the preliminary hearing on the Debtor's motion for the use of Cash Collateral held on February 13, 2004, including the transcript of the testimony, all exhibits admitted into evidence, and the ruling of the Court.  The parties also jointly identify all transcripts, pleadings, orders, or other documents of record filed in this Chapter 11 case.

**Auburn Foundry's Exhibits:**

34.  The Cash Use Budgets and AFI's post-petition operating reports.

35.  AFI's pre-petition forecasts and actual operating reports.

36.  AFI's internally prepared balance sheets and related reports evidencing AFI's secured and unsecured liabilities.

37.  AFI's cash use forecasts for periods beyond the Cash Use Budgets.

38. The complete trial transcript, including exhibits, from the first contested cash use hearing in this Chapter 11 case.

39. All pleadings and exhibits filed in AFI's Chapter 11 case.

40. All exhibits identified by the Senior Lenders.

**Senior Lenders' Exhibits:**

41. Any reports prepared by the Senior Lenders' experts, investment advisors and/or outside consultants familiar with AFI's prior cash use, post-petition financial forecasts, business operations and asset valuations and any documents used or reviewed in preparation of such reports.

42. AFI's post-petition borrowing base certificates.

43. All pleadings and exhibits filed by any party in AFI's Chapter 11 case or admitted into evidence at any prior hearing in AFI's Chapter 11 case.

44. All exhibits identified by the Debtor.

### G.    Witnesses

**Auburn Foundry's Potential Witnesses**:

45. Dennis Maude.

46. Tom Woehlke.

47. Experts, investment advisors and/or outside consultants familiar with AFI's prior cash use and post-petition financial forecasts.

48. Employees of the Senior Lenders knowledgeable about the Debtor's pre- and post-petition financial performance.

49. Representatives of potential DIP lenders and/or investors.

50. All witnesses identified by the Senior Lenders.

**Senior Lenders' Potential Witnesses:**

51. Debra Rathberger, Senior Vice President and Portfolio Manager at Bank of America, N.A.

52. Any experts retained by the Senior Lenders for the purpose of evaluating the Debtor's operations, cash use, budgets and the Senior Lenders' collateral.

53. All witnesses identified or called by Debtor.

### H.  Trial Date

A final hearing on the use of cash collateral is set for April 19, 2004 at 9:00 a.m.

SO ORDERED this ____ day of _____, 2004.

_____
United States Bankruptcy Judge


CONSENTED TO AND ENTRY REQUESTED:


/s/John R Burns III_____  _____          /s/Grant F. Shipley_____
John R Burns III                                  Grant F. Shipley
Mark A. Werling                                   233 West Baker Street
111 East Wayne Street, Suite 800                  Fort Wayne, IN  46802-3413
Fort Wayne, IN  46802                             Telephone:  (260) 422-2700
Telephone:  (260) 424-8000

ATTORNEYS FOR                                     ATTORNEYS FOR
AUBURN FOUNDRY, INC.                              THE SENIOR LENDERS

FWIMAN1 332869v1