IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

|  |  |  |
|---|---|---|
| In the Matter of: | ) | Case No. 04-10427 |
|  | ) |  |
| Auburn Foundry, Inc., | ) | Chapter 11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**INTERIM ORDER APPROVING JOINT MOTION PURSUANT TO RULE 4001(C) TO APPROVE AGREEMENT CONCERNING SENIOR DIP FINANCING**

Upon the Joint Motion of Auburn Foundry, Inc. ("Auburn" or the "Debtor") and the Senior Lenders to Approve Agreement Concerning Senior DIP Financing (the "DIP Motion"), for a preliminary order and final order (a) authorizing the Debtor to obtain post-petition financing pursuant to section 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 4001(c) of the Federal Rules of Bankruptcy Procedures upon the terms and conditions set forth in this Order and the Agreement attached as Exhibit A hereto and incorporated herein by reference (the "Agreement")[1] and (b) scheduling a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") with respect thereto; due and sufficient notice of the Motion and the preliminary hearing thereon (the "Preliminary Hearing") having been given under the circumstances; the Preliminary Hearing on the Motion having been held on April 19, 2004; and upon the entire record made at the Preliminary Hearing; and the Court having found good and sufficient cause appearing therefor;

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

The Court hereby makes the following FINDINGS:

A. On February 8, 2004 (the "Filing Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing in possession of its property, and operating and managing its business, as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C. The Debtor is unable to obtain unsecured credit on terms more favorable than those described herein.

D. The Debtor, AFI Lending and the Lenders have agreed that as of the Filing Date, the Debtor was liable to the Lenders in the aggregate principal amount of approximately $23,312,638.40 in respect of loans made by the Lenders to the Debtor pursuant to the Pre-Petition Credit Agreement (plus attorneys' fees, costs and interest accrued and unpaid thereon, to the extent allowed) (the "Pre-Petition Indebtedness"). The Pre-Petition Indebtedness includes $10,901,915.66 of Revolving Loans (including undrawn Letters of Credit) and $12,410,722.74 of Term Loans. The Pre-Petition Indebtedness consisting of Revolving Loans (including all undrawn Letters of Credit) plus attorneys' fees, costs and interest accrued and unpaid thereon, to the extent allowed, is referred to herein as the "Pre-Petition Revolver Indebtedness."

E. Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the official committee of unsecured creditors (the "Committee"), (iii) known holders of pre-petition liens against the Debtor's property, and (iv) other parties in interest who have filed requests for notice in this

Chapter 11 Case with the Court. This Preliminary Hearing is being held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

       F.      Based on the record presented to this Court by the Debtor, it appears (and the Debtor and the Lenders have stipulated) that the Post-Petition Financing has been negotiated in good faith and at arm's-length between the Debtor and the Lenders, and any credit extended and loans made to the Debtor pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

       G.      Based on the record before this Court, it appears (and the Debtor and the Lenders have stipulated) that the terms of this Order, including, without limitation, the terms of the Post-Petition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

       H.      The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c). The permission granted herein to enter into post-petition financing is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

       1.      <u>Motion Granted</u>. The Motion is granted, subject to the terms and conditions set forth in this Order and the Agreement.

       2.      <u>Agreement Approved</u>. The Agreement is hereby approved in all respects.

3. <u>Authorization</u>.  Upon the terms and conditions set forth in the Agreement, the Debtor is expressly authorized and empowered to borrow money, and enter into and perform its obligations under the Agreement and the other DIP Loan Documents.

4. <u>Security for DIP Indebtedness</u>.  The Lenders are hereby granted as security for the repayment of all DIP Indebtedness, pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a valid and perfected lien and security interest in the DIP Collateral with the priority set forth in paragraph 9 of the Agreement.  Other than the liens and security interests in favor of the Lenders pursuant to the Agreement, the DIP Loan Documents and this Order, the Prior Claims and the claims of First Insurance Funding Corp., as described more fully in the Motion filed herein on April 7, 2004, no other claims, liens or security interests prior to or <u>pari passu</u> with the claims, liens or security interests of the Lenders shall attach to the DIP Collateral in this or any superceding or subsequent chapter 11 or chapter 7 case (collectively, the "<u>Successor Case</u>") without the express prior written consent of the Lenders.

5. <u>Perfection of New Liens</u>.  All liens and security interests on or in the DIP Collateral granted to the Lenders by the Agreement and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection.  The Lenders may (in their discretion) but shall not be required to, file a certified copy of the Agreement in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Lenders' interests in the DIP Collateral.

FWIMAN1 332976v1

6. <u>Modification of Automatic Stay</u>. The automatic stay pursuant to § 362 of the Bankruptcy Code is hereby modified on the limited basis described in paragraph 12 of the Agreement. Upon the occurrence of a Termination Date, the Lenders shall be entitled to, among other things, (i) immediately cease making loans or extensions of credit, (ii) file an emergency motion for relief from the automatic stay for the purpose of foreclosing or otherwise enforcing their liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the Agreement, the DIP Loan Documents, this Order or applicable law, and (iii) to obtain an expedited hearing on such motion upon four (4) days' notice to counsel for the Debtor, counsel for any Committee, counsel for AFI Lending and the U.S. Trustee. The Lenders shall be entitled to such relief from the automatic stay upon a showing that a Termination Date has occurred and is continuing; provided, however, that if the Debtor pays the DIP Indebtedness in full and the Debtor proves that notwithstanding the occurrence of a Termination Date, the Lenders are and will continue to be adequately protected through August 31, 2004, the Debtor shall be entitled to seek an order of the Court to continue to use Cash Collateral limited to the Borrowing Base through August 31, 2004.

7. <u>Priority Claims</u>. Subject to the Carve-Out described in paragraph 14 of the Agreement, the DIP Indebtedness shall have the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any Successor Case), and shall, to the extent permitted by the Bankruptcy Code, at all times be senior to the rights of the Debtor, any successor trustee or estate representative in this Chapter 11 Case or any Successor Case.

FWIMAN1 332976v1

8.      <u>Subordinated DIP</u>.  All advances by AFI Lending to the Debtor on and after the Filing Date (the "Subordinated DIP") shall be subject and subordinate to the DIP Indebtedness and the amount (up to $1,050,000), if any, by which the value of the Lenders' Pre-Petition Collateral, including, without limitation, Cash Collateral, has been reduced, charged, or is subject to future reduction or charge, by the incurrence of any allowable and unpaid administrative expenses, surcharges (arising under § 506(c) of the Bankruptcy Code or otherwise), liens, wage claims, taxes (including, without limitation, real estate taxes) or other items or amounts arising on or after the Filing Date (the "Priming Diminution") and the amount (up to $1,300,000 less the Priming Diminution), if any, by which the Pre-Petition Collateral consisting of cash, the collectible amount of accounts receivable and inventory has not been replaced by DIP Collateral consisting of cash, the collectible amount of accounts receivable and inventory (the "Collateral Diminution"), and, once advanced, shall not be repaid in whole or in part by the Debtor until the DIP Indebtedness has been indefeasibly paid in full, the Priming Diminution and the Collateral Diminution have been determined by the Court in a final, non-appealable order (the "Subordinated DIP Repayment Date").  On the Subordinated DIP Repayment Date, the Debtor shall repay to AFI Lending only the amount by which the Subordinated DIP exceeds the Priming Diminution and the Collateral Diminution (after taking into account payment of the Subordinated DIP).  The remainder of the Subordinated DIP shall only be repaid by the Debtor after indefeasible payment in full of all of the Indebtedness.

9.      <u>Binding on Successors</u>.  The provisions of this Order and the Agreement shall be binding upon and inure to the benefit of the Lenders, the Debtor, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtor's estate or of any estate in any Successor Case).  Except as

FWIMAN1 332976v1

otherwise explicitly set forth in this Order or the Agreement, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order, the Agreement or the DIP Loan Documents.

        10.     <u>Effect of Dismissal or Conversion</u>.  If the Chapter 11 Case is dismissed, converted, otherwise superseded, the Lenders' rights and remedies under this Order, the Agreement and the DIP Loan Documents shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded.  Furthermore, notwithstanding any such dismissal, conversion, supercission, all of the terms and conditions of this Order and the Agreement, including, without limitation, the liens and the priorities granted hereunder and thereunder, shall remain in full force and effect, to the extent permitted by applicable law.

        11.     <u>Lenders' Relationship with Debtor</u>.  In making decisions to advance any Loans or other extensions of credit to the Debtor, in administering any Loans or other extensions of credit, or in taking any other actions reasonably related to this Order or the Indebtedness or the DIP Loan Documents (including, without limitation, the exercise of their approval rights with respect to any budget), the Lenders shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the Lenders' relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Lenders and the Debtor.

FWIMAN1 332976v1

12. <u>Effect of Modification</u>.  Except as permitted hereby, the Debtor shall not, without the Lenders' prior written consent, seek to modify, vacate or amend this Order, the Agreement or any DIP Loan Documents.  If any of the provisions of this Order or the Agreement are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Indebtedness.

13. <u>Safe Harbor</u>.  The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the Lenders have agreed.  Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

14. <u>Subsequent Hearing; Procedure for Objections and Entry of Final Order</u>.  The Motion is set for a Final Hearing before this Court at ___ _.m. on _____, 2004 (such date or such later date to which the Final Hearing is adjourned or continued with the Lenders' prior consent, the "<u>Final Hearing Date</u>"), at which time any party in interest may present any timely filed objections to the entry of a Final Order.  The Debtor shall promptly serve a notice of entry of this Order and the Final Hearing, together with a copy of this Order, by regular mail upon (i) the parties identified in finding paragraph E hereof, and (ii) any other party which theretofore has filed in the Chapter 11 Case a request for special notice with this Court and served such request upon Debtor's counsel.  The notice of the entry of this Order and the Final

Hearing shall state that objections to the entry of a Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Indiana no later than _____, 2004, which objections shall be served so that the same are received on or before 4:00 p.m. (Eastern time) of such date by (i) John Burns, Baker & Daniels, 111 East Wayne Street, Suite 800, Fort Wayne, Indiana 46802, counsel to the Debtor, (ii) Josef Athanas, Latham & Watkins LLP, 5800 Sears Tower, 233 South Wacker Drive, Chicago, Illinois 60606, counsel to the Lenders and (iii) the United States Trustee.  Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph.  This Order shall expire upon the earlier of the entry of a Final Order or three (3) Business Days after the Final Hearing Date (the "Expiration Date").

       15.    <u>No Marshalling</u>.  The Lenders shall not be under any obligation to marshal any assets in favor of the Debtor or any other party or against or in payment of any or all of the Indebtedness.

       16.    <u>Effect of Failure of Final Order to be Entered</u>.  If a Final Order substantially identical to this Order is not entered or a Final Cash Collateral Order substantially identical to the Interim Cash Collateral Order entered contemporaneously herewith is not entered on or prior to the Expiration Date, all DIP Indebtedness shall be immediately due and payable, the Lenders' consent to the use of Cash Collateral shall terminate and the Agreement shall terminate.  The Lenders shall be entitled to the benefits of the Agreement for the period prior to the Expiration Date, but on and after the Expiration Date, the parties shall no longer be bound by the Agreement and the Debtor shall be free to seek the use of Cash Collateral from the Court (and the Lenders shall be free to object thereto).

17. <u>Objections Overruled or Withdrawn</u>.  All objections to the entry of this Order have been withdrawn or overruled.

18. <u>Controlling Effect</u>.  To the extent any provisions in this Order or the Agreement conflict with any provisions of the Motion, any Pre-Petition Loan Documents, any DIP Loan Documents, any prior cash collateral order or any prior debtor-in-possession financing order, the provisions of this Order and the Agreement shall control.

19. <u>Order Effective</u>.  This Order shall be effective as of the date of signature by the Court.

IT IS SO ORDERED.

DATED this _____ day of April, 2004.

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

Agreement