**AUBURN FOUNDRY, INC., D.I.P. AND GENERAL MOTORS CORPORATION AGREEMENT**

I.     REJECTION OF EXISTING PURCHASE ORDERS; SETOFFS

     a.     Auburn Foundry, Inc., as Debtor-In-Possession ("Auburn Foundry") and General Motors Corporation ("GM") agree that Auburn Foundry will promptly file a notice of rejection of existing contracts with GM effective as of April 1, 2004 and acknowledge that the rejection will create a pre-petition, unsecured claim in favor of GM for rejection damages equal to the cost differentials to GM between the remaining life of the existing contract prices and the contract prices of the post-petition contract described below.

     b.     In part satisfaction of its rejection damages, GM will be permitted to exercise a set-off under §533 as of April 1, 2004 in the amount of $150,000.00 (the "Pre-Petition Setoff"), which amount is a compromise of a dispute as to the amount of GM's pre-petition debt to Auburn Foundry.

     c.     Subject to Auburn Foundry using its best efforts to obtain setoff limitations from each customer comprising five percent or more of Auburn's annual sales, GM agrees, for the benefit of Bank of America, N.A., as agent (the "Agent") for Auburn Foundry's senior lenders (the "Senior Lenders") and the Senior Lenders only, to suspend and not to assert any defenses, rights and claims for set offs and/or recoupment, including in connection with any prior, existing or future defaults under any purchase orders or contracts or arising under otherwise applicable law, other than Allowed Setoffs.  "Allowed Setoffs" shall mean:

         1.     setoffs or recoupments, whether for defective or nonconforming products, quality problems, unordered or unreleased parts returned to Auburn Foundry, short

shipments, misshipments, improper invoices, mispricing, duplicate payments, billing errors, premium freight (to the extent necessary to avoid product interruption charges and not caused by GM) or professional fees and costs incurred by GM related to Auburn Foundry;

2.  the Pre-Petition Setoff; and

3.  payments made by GM to Auburn Foundry's vendors or the cost of raw materials or other inventory GM supplies or causes to be supplied to Auburn Foundry (provided that GM may only assert setoffs for such payments against accounts payable arising more than 3 business days after the Senior Lenders' receipt of written notice from GM advising that payments have been made to Auburn Foundry's vendors or inventory supplied and the amount of such payments or the cost of such inventory).

d.  Except for the Pre-Petition Setoff, Allowed Setoffs specifically include any consequential or special damages, provided, however, under no circumstances shall Allowed Setoffs exceed ten percent (10%) of its aggregate accounts payable to Auburn Foundry, <u>provided further</u>, that once Allowed Setoffs are asserted against a particular invoice(s) or account(s) receivable, no further Allowed Setoffs may be taken against such invoice(s) or account(s) receivable. For further clarification, with respect to vendor payments made by GM, if GM has made such payments to Auburn Foundry's vendors because Auburn Foundry's vendors refuse to ship to Auburn Foundry, GM must give the Senior Lenders written notice of or claimed setoff and such setoff can only be asserted against accounts payable arising more than 3 business days after Senior Lenders' receipt of such written notice. Any Allowed Setoffs that cannot be used by GM because of the 10% limitation provided for above may be carried forward and used against future accounts (but in all cases subject to the foregoing 10% limitation of the aggregate amount of GM's post-petition payables to Auburn Foundry).

e.	Subject to the agreements which are intended for the sole benefit of Senior Lenders, GM reserves and does not waive any rights and interests it may have, but for this Agreement, including the right to assert affirmative claims against Auburn Foundry, the right to assert setoffs for defensive purposes (than to defend against claims for payment of accounts) and the right to cancel or terminate purchase orders or other contracts in accordance with their respective terms and conditions.

f.	In consideration of GM's agreement set forth at sub-section (c) above, each of the Senior Lenders and Auburn Foundry agree that to the extent at any time insufficient financing exists to fund all of the raw material and other related requirements for Auburn Foundry's production for its customers, the available financing will be used first to fund those expenses associated with production for GM under the post-petition contract referenced at section II below and other customers who have signed agreements substantially similar to this agreement.

II.	POST-PETITION CONTRACT

a.	GM and Auburn Foundry will enter into a post-petition contract, incorporating the terms and conditions set forth in the existing contracts between GM and Auburn Foundry except as modified in this Section II(a) only, whereby Auburn Foundry will supply the same parts post-petition that it is supplying pre-petition during the term of the post-petition contract.  Subject to confirming that the increase in raw scrap price equals or exceeds twenty percent (20%) and that the increase is necessary to allow Auburn Foundry to break even regarding the GM production, pricing of the post-petition contract parts will be twenty percent (20%) higher than existing contract prices for such parts through the term of this contract (the "April 1 Contract Price").  In the event the published Chicago market price for #1 bushling for the first full week of a given

month between May and July, 2004 as reported in the *Iron Age Scrap Bulletin* increases by ten percent (10%) or more above the Iron Age Scrap Bulletin price for the first week of April, 2004 (the "Reference Price"), then Auburn Foundry will be entitled to an additional two percent (2%) price increase above the April 1 Contract Price for the remaining term of the post-petition contract.  For clarity, at no time during the period April 1, 2004 through August 1, 2004, shall the purchase price exceed the April 1 Contract Price, plus 2%.  For the period after August 1, 2004 through December 23, 2004, Auburn Foundry shall be entitled to an increase of 4% above the April 1 Contract Price, if the published Chicago market price for #1 bushling for the first full week in any given month between September and December, 2004 as reported in the *Iron Age Scrap Bulletin* increases by 16% or more above the Reference Price prior to the termination of the agreement on December 23, 2004.  For clarity, at no time during the period August 1, 2004 through December 23, 2004 shall the purchase price exceed the April 1, Contract price, plus 4%.  Any adjustment in accordance with the above shall be effective on the fifteenth (15th) day of the month in which the respective percentage increase is terminated.  Notwithstanding the foregoing, if GM should propose a scrap purchase program to Auburn Foundry that provides it an equivalent economic benefit to the alternative set forth in this Section II(a), the Auburn Foundry agrees to evaluate, in good faith, any such proposals by GM.

      b.     The term of the post-petition contract shall be April 1, 2004 through December 23, 2004.

      c.     Auburn Foundry will build inventory banks upon GM's request subject to capacity constraints, availability of financing and ramp-up requirements.  Commencing in the first full week of April, 2004, Auburn Foundry will meet GM increases in product release requests in excess of present levels by more than fifteen percent (15%) if firm release requests

are given to Auburn Foundry by GM four weeks in advance of actual requirements. If GM increases its release requests by more than twenty percent (20%) over present levels, such increases shall be by separate purchase orders and such purchase orders shall be payable thirty (30) days after GM's receipt of such parts. GM will make an advance payment of $50,000.00 on amounts otherwise payable to Auburn Foundry in May, 2004 on or about the date of the set-off described in I(b) and shall make an advance payment of $50,000.00 on amounts otherwise payable to Auburn Foundry in June, 2004 on or about May 2, 2004.

      d.     If there is equipment owned by Auburn Foundry that is dedicated solely to the production of GM product and not otherwise useable by Auburn Foundry, Auburn Foundry will grant GM the first opportunity to purchase that equipment at a mutually agreeable price before selling such equipment to others; provided, however, that Auburn Foundry shall not sell any such equipment without either (1) the prior written consent of the Agent, or (2) an order of the Bankruptcy Court of the Northern District of Indiana after notice and a hearing at which the Agent shall have the right to object.

      e.     Provide GM and its representatives access to information and Auburn Foundry's operations at reasonable times and upon reasonable notice so as not to unduly interfere with Auburn Foundry's operations. In order to receive non-public information, GM will sign a Confidentiality Agreement if requested by Auburn Foundry, and Auburn Foundry reserves the right not to disclose proprietary information, or information that it deems confidential to its business operations.

      f.     Auburn Foundry will cooperate with GM's reasonable resourcing consistent with the provisions of this agreement in the event of a default by Auburn Foundry under the post-

5

petition contract with GM (if any such contract is entered into) after expiration of any notice or cure periods in such contract, if any, or upon expiration of such contract.

  g.  Upon payment in full of all post-petition invoices owed to Auburn Foundry without setoffs or defenses, other than Allowed Setoffs, or entry of an order by the Bankruptcy Court for the Northern District of Indiana that Auburn Foundry does not have a possessory lien on the GM owned tooling, GM shall have the right to possession of the GM owned tooling.

**III.    TOOLING ACKNOWLEDGMENT**

    a.    Auburn Foundry acknowledges and agrees that, exclusive of Auburn Owned Tooling (as defined below), all tooling, dies, test and assembly fixtures, jigs, gauges, patterns, casting patterns, cavities, molds, and documentation, including engineering specifications and test reports, together with any accessions, attachments, parts, accessories, substitutions, replacements, and appurtenances thereto used by Auburn Foundry in connection with its manufacture of the component parts for GM (collectively "GM Tooling") are owned by GM and are being held by Auburn Foundry or, to the extent Auburn Foundry has transferred GM's Tooling to third parties, by such third parties, as bailees at will.  For purposes of this Agreement, the term "Auburn Owned Tooling" means all tooling, dies, tests and assembly fixtures, jigs, gauges, patters, casting patterns, cavities, molds, and documentation, including engineering specifications and test reports, together with any accessions, attachments, parts, accessories, substitutions, replacements and appurtenances thereto, for which GM has not made full payment of the applicable purchase order price or which is not subject to a purchase order.  Each item of Auburn Owned Tooling will become and be considered GM Tooling under the terms of this Agreement once it has been paid for in full in accordance with the terms of the applicable purchase order related thereto, without setoff or recoupment by GM.  Additionally, GM Tooling does not include any tooling manufactured by Auburn Foundry on or after the date of the execution of this agreement under a purchase order for GM unless and until such tooling has been fully paid for by GM without setoff or recoupment.

    b.    On or before May 31, 2004, Auburn Foundry will supply to GM and the Agent a list of Auburn Owned Tooling.  Any tooling utilized to manufacture component parts for GM not included on the list of Auburn Owned Tooling shall be deemed GM Tooling unless the Agent

7

objects in writing within ten (10) days thereafter. Auburn Foundry will cooperate with GM in determining which of Auburn Foundry's tooling is Auburn Owned Tooling or GM Tooling. If a party objects to the tooling list, GM and the Agent shall each select an independent accountant (whose fees and costs shall be paid by the respective party) who shall determine the status of any tooling in dispute. If the two independent accountants cannot agree, the dispute will be referred to binding arbitration with all costs and expenses shared equally. Should either the Agent or GM fail to appoint an accountant within ten (10) days after a timely objection by either party, the status of any disputed tooling shall be determined by the independent accountant selected by GM or the Agent, as the case may be, acting alone.

      c.     No person or entity other than GM has any right, title or interest in GM Tooling. Upon payment in full of all post-petition invoices owed to Auburn Foundry without setoffs or defenses, other than Allowed Setoffs, or entry of an order by the Bankruptcy Court for the Northern District of Indiana that Auburn Foundry does not have a possessory lien on the GM Tooling, GM shall have the right to possession of the GM Tooling.

### IV.    PAYMENT OF PRE-PETITION PAYABLE

      a.     In anticipation of execution of this agreement, GM wire transferred $402,011.00 in payment for pre-petition products sold by Auburn Foundry to GM.

      b.     On or before March 15, 2004, GM and Auburn Foundry will file a joint motion seeking court approval of the terms of this agreement, including approving the Pre-Petition Setoff by GM under §533 of the Bankruptcy Code in the amount of $150,000.00 in favor of GM. The Pre-Petition Setoff, when approved by the Bankruptcy Court, shall be immediately effective

8

as payment in part of the rejection damages that will be incurred by GM based upon the differential between the existing contract price of the post-petition contract price.

V.  **THIRD PARTY BENEFICIARIES**

The Agent and the Senior Lenders are intended third party beneficiaries of this agreement and this agreement cannot be amended without the express written consent of all parties hereto.

General Motors Corporation

By:_____

Its:_____

Auburn Foundry, Inc., Debtor-In-Possession

By:_____

Its:_____