## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| In re: | ) Case No. 04-10427 |
| | ) |
| AUBURN FOUNDRY, INC., *et al.* | ) Chapter 11 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hon. Grant |
| | ) |
| | ) |

## AFFIDAVIT AND DISCLOSURE STATEMENT OF ERNST & YOUNG LLP IN SUPPORT OF APPLICATION FOR EMPLOYMENT AND RETENTION OF ERNST & YOUNG LLP AS TAX SERVICES PROVIDERS TO THE DEBTORS *NUNC PRO TUNC* TO FEBRUARY 8, 2004

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Ronald U. Kaufman, being duly sworn, deposes and says:

1. I am a partner of Ernst & Young LLP ("E&Y"), a professional services firm that maintains numerous offices, including an office located at Suite 2300, 110 West Berry Street, Fort Wayne, Indiana 46802 and I make this affidavit on behalf of E&Y (the "Affidavit"). I submit this Affidavit in support of the Application of the Debtors in the above-captioned Chapter 11 cases for an Order authorizing the employment and retention of E&Y as tax services providers to provide the services outlined below for Auburn Foundry, Inc., and its affiliated debtors ("Auburn Foundry" or the "Debtors") *nunc pro tunc*, to February 8, 2004 (the "Application"), in these Chapter 11 cases pursuant to the terms and conditions set forth in the agreements between Auburn Foundry and E&Y (collectively the "Engagement Letters"), copies of which are attached to this Affidavit as Exhibits A-1, A-2 and A-3 and are submitted for approval herewith.

2.      The facts set forth in this Affidavit are based upon my personal knowledge, upon information and belief and upon client matter records kept in the ordinary course of business that were reviewed by me or other employees of E&Y under my supervision and direction. The procedures pursuant to which E&Y determined whether there are any connections between E&Y and a party-in-interest is described in paragraphs 8 through 11 below. The results of that investigation are set forth in Exhibit B appended hereto.

3.      As set forth in further detail in the Engagement Letters, E&Y has agreed to provide tax services to the Debtors, including but not limited to the preparing and reviewing of certain tax filings and providing other tax consultation therewith, as requested by the Debtors (the "Tax Services"), in connection with these Chapter 11 cases upon approval of the Court.

4.      E&Y services in connection with the Chapter 11 case will be primarily:

(i)      To prepare the Company's annual U.S. federal and state income tax returns beginning with the return for the year ended December 31, 2003, subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter attached hereto as Exhibit A-1 (the "Federal and State Income Tax Compliance Engagement Letter").

(ii)     To provide the Company property tax review and recovery services, subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter attached hereto as Exhibit A-2 (the "Property Tax Engagement Letter").

(iii)    To prepare the Company's five Form 5500 benefit plan tax returns, subject to the Court's approval and pursuant to the terms and conditions of the

Engagement Letter attached hereto as Exhibit A-3 (the "5500 Tax Engagement Letter").

5.    Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letters, E&Y intends to charge for the professional services rendered to the Debtors in these Chapter 11 cases as follows:

(a)    Pursuant to the Federal and State Income Tax Compliance Engagement Letter, $7,000, plus actual expenses;

(b)    Pursuant to the Property Tax Engagement Letter, 40% of the recovery amounts finally secured, plus actual expenses; and

(c)    Pursuant to the 5500 Tax Engagement Letter, $2,250 per 2003 Form 5500 prepared.

Any additional services requested by the Debtors pursuant to each of the Tax Engagement Letter and the 5500 Tax Engagement Letter will be charged by reference to hourly rates, which are as follows:

| | |
|---|---|
| Partners and Principals | $450 - $650 |
| Senior Managers | $400 - $600 |
| Manager | $290 - $425 |
| Seniors | $215 - $320 |
| Staff | $130 - $180 |

The rates are revised periodically. We shall advise the Debtors of our new rates once they are established if a rate change is effective during the course of the engagement.

6.    The Debtors or E&Y may terminate the Engagement Letters at any time, but in any event the Engagement Letters will terminate upon the effective date of a plan of reorganization

of the Debtors under Chapter 11 of the Bankruptcy Code.  Upon termination of the Engagement

Letters by the Debtors, however, the Debtors will remain obligated to pay any accrued fees as of

the effective date of the termination.

7.      A copy of the each of the Engagement Letters is submitted for approval herewith.

E&Y provision of services to the Debtor is contingent upon the Court's approval of each term

and condition set forth in the Engagement Letters. Included among the terms and conditions set

forth in the Engagement Letters is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with, arising out
> of, or in any way related to this Agreement or the services provided
> hereunder (including any such matter involving any parent, subsidiary,
> affiliate, successor in interest or agent of the Company or of Ernst &
> Young) shall be brought in the Bankruptcy Court or the District Court if
> such District Court withdraws the reference and the parties to this
> Agreement, and any and all successors and assigns thereof, consent to the
> jurisdiction and venue of such court as the sole and exclusive forum
> (unless such court does not have or retain jurisdiction over such claims or
> controversies) for the resolution of such claims, causes of action or
> lawsuits.  The parties to this Agreement, and any and all successors and
> assigns t hereof, h ereby waive t rail b y j ury, s uch w aiver b eing i nformed
> and freely made.  If the Bankruptcy Court or the District Court upon
> withdrawal of the reference does not have or retain jurisdiction over the
> foregoing claims or controversies, the parties to this Agreement and any
> and all successors and assigns thereof, agree to submit first to nonbonding
> mediation; and, if mediation is not successful, then to binding arbitration,
> in accordance with the dispute resolution procedures set forth in the
> Addendum to Engagement Letter.  Judgment on any arbitration award
> may be entered in any court having proper jurisdiction.  The foregoing is
> binding u pon t he C ompany, E rnst & Y oung and a ny a nd all s uccessors
> and assigns thereof.

8.      In connection with E&Y's proposed retention by the Debtors, E&Y has requested

and, unless otherwise noted, obtained from counsel to the Debtors the names, as applicable, of

the following entities:

(i)      Debtors;

(ii)     Attorneys for Debtors (general counsel and special bankruptcy counsel);

(iii)     Other professionals of the Debtors retained in connection with the Chapter 11 proceeding;

(iv)     Debtors' non-debtor affiliates;

(v)      Attorneys for Debtors' non-debtor affiliates, if different from above;

(vi)     Other professionals of Debtors' non-debtor affiliates retained in connection with the Chapter 11 proceeding if different from above;

(vii)    Debtors' officers;

(viii)   Attorneys for Debtors' officers retained in connection with the Chapter 11 proceeding, if different from above;

(ix)     Other business affiliations of Debtors' officers;

(x)      Debtors' directors;

(xi)     Attorneys for Debtors' directors retained in connection with the Chapter 11 proceeding;

(xii)    Other business affiliations of Debtors' directors;

(xiii)   Debtors' major shareholders (5% or more);

(xiv)    Attorneys for Debtors' major shareholders retained in connection with the Chapter 11 proceeding;

(xv)     Other professionals retained by the Debtors' major shareholders in connection with the Chapter 11 proceeding;

(xvi)    Secured lenders and/or debtor-in-possession lenders;

(xvii)   Other secured creditors

(xviii)  Attorneys for secured lenders retained in connection with the Chapter 11 proceeding;

(xix)    Other professionals retained by the secured lenders in connection with the Chapter 11 proceeding;

(xx)     Substantial unsecured bondholders or lenders;

(xxi)    Attorneys for substantial unsecured bondholders or lenders retained in connection with the Chapter 11 proceeding;

(xxii)   Other professionals retained by the substantial unsecured bondholders or lenders in connection with the Chapter 11 proceeding;

(xxiii)   Indenture trustees;

(xxiv)    Attorneys for indenture trustees retained in connection with the Chapter 11 proceeding;

(xxv)     Other professionals retained by the indenture trustees in connection with the Chapter 11 proceeding;

(xxvi)    Twenty largest unsecured creditors as of the date of filing;

(xxvii)   Attorneys for the twenty largest unsecured creditors retained in connection with the Chapter 11 proceeding;

(xxviii)  Other professionals retained by the twenty largest unsecured creditors retained in connection with the Chatper 11 proceeding;

(xxix)    Other significant parties in interest including parties in material litigation against the Debtors, and/or parties to potential significant transactions with the Debtors;

(xxx)     Attorneys for other parties in interest retained in connection with the Chapter 11 proceeding;

(xxxi)    Parties to significant executory contracts and leases of the Debtors;

(xxxii)   Attorneys for the parties to significant executory contracts and leases retained in connection with the Chapter 11 proceeding;

(xxxiii)  Official statutory committees members (all committees);

(xxxiv)   Official statutory committees attorneys (for each official committee);

(xxxv)    Official statutory committees other professionals; and

(xxxvi)   Attorneys for the official statutory committees members.

The identities of the interested parties are set forth on Exhibit B to this Affidavit.

9.     Debtors and/or Debtors' counsel stated that as of this point in time, they were unaware of any persons or entities that would fall into categories (iv), (v), (vi), (viii), (ix), (xi), (xii), (xiv), (xv), (xix), (xxi), (xxii), (xxv), (xxviii), (xxxii) and (xxxvi) set forth above. As to those persons or entities identified in the remaining categories set forth in paragraph 9 above, E&Y searched certain databases of Ernst & Young Corporate Finance LLC ("EYCF") and E&Y

to determine whether either entity has provided in the recent past or is currently providing services to the parties-in-interest listed in Exhibit B attached hereto. To the extent that E&Y's research of relationships with the interested parties indicated that E&Y or EYCF have provided in the recent past or are currently providing services to any of these entities in matters unrelated to these Chapter 11 cases, E&Y has so indicated in the attached Exhibit B to this Affidavit. Should additional relationships with parties in interest become known to E&Y, a supplemental affidavit will be filed with the Court.

10.    The U.S. firm of Ernst & Young LLP and the Canadian firm of Ernst & Young LLP ("E&Y (Canada)") are separate legal entities which, through various agreements, have a close operational relationship, that, inter alia, provides for certain shared costs and services and mutual financial support and, in certain circumstances, calls for compensation payments as between the two firms.

11.    E&Y has conducted research with respect to services provided by E&Y (Canada) to the parties listed in Exhibit B attached hereto. To the extent that E&Y's research of relationships with the interested parties indicated that E&Y (Canada) has provided in the recent past or is currently providing services to any of these entities in matters unrelated to these Chapter 11 cases, E&Y has so indicated in the attached Exhibit B to this Affidavit. Should additional relationships with parties in interest become known to E&Y, a supplemental affidavit will be filed with the Court.

12.    E&Y and E&Y (Canada) are members of Ernst & Young Global Limited ("EYGL"), a company limited by guarantee incorporated under the laws of England and Wales that has no shareholders and no capital. The members of EYGL have formed an operationally integrated practice, but remain separate legal entities. EYGL is a member of E&Y International

("EYI"), a company limited by guarantee, incorporated in the Cayman Islands, that has no

shareholders and no capital. EYI is a network of correspondent accountant firms that have agreed

to conduct their individual practices in accordance with EYI's Articles of Association.

13.    Prior to the Petition Date, E&Y performed certain professional services for the

Debtors or their affiliates.  To the best of my knowledge, information and belief, no services

have been provided by E&Y after the Petition Date.  A summary of the prepetition services is as

follows:

(a) E&Y performed audit and related work of the annual financial statements;

(b) E&Y performed audit and related work of the annual benefit plans;

(c) E&Y performed services related to annual income tax return preparation and review; and

(d) E&Y performed services related to benefit plan tax return preparation and review.

14.    As of the Debtors' petition date of February 8, 2004, the Debtors owe E&Y $0 for

services rendered prior to the petition date.

15.    As part of their  practices, EYCF and E&Y appear in cases, proceedings and

transactions involving many different attorneys, financial advisors and creditors, some of which

may represent or be claimants and/or parties in interest in these cases.  Neither EYCF nor E&Y

will have any relationship with such entity, attorney or financial advisor that would be materially

adverse to the Debtors. Included among the list of potentially interested parties in these cases that

is attached hereto as Exhibit B are certain professional service firms that are involved in these

Chapter 11 cases and that are currently providing or have in the recent past provided services to

E&Y.  More specifically, the following professionals whom we believe to be closely associated

with the Debtors' Chapter 11 cases have, in the past and/or are currently providing services to

E&Y:  Baker & Daniels, Honigman, Miller, Schwartz & Cohn LLP and Latham & Watkins LLP.

Latham & Watkins LLP, inter alia, provides advice to E&Y in connection with the provision of services by E&Y and EYCF to their clients in bankruptcy proceedings. Latham & Watkins LLP is not, however, assisting or advising E&Y in connection with these chapter 11 cases.

16. A certain bank that is a party in interest herein, Bank of America, participates in E&Y's Revolving Credit Program.

17. E&Y has thousands of professional employees. It is possible that certain employees of E&Y have business associations with parties in interest in these cases or hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.

18. To the best of my knowledge, information and belief formed after reasonable inquiry, but for services provided to the Debtors prior to the Petition Date as set forth above, none of the services rendered by E&Y or E&Y (Canada) to the entities as set forth in Exhibit B hereto and herein, have been in connection with Debtors or these Chapter 11 cases. E&Y believes that these relationships will not impair E&Y's ability to objectively perform professional services on behalf of the Debtors. E&Y will not accept any engagement that would require E&Y to represent an interest materially adverse to the Debtors.

19. To the best of my knowledge, information and belief, neither the undersigned nor the professionals anticipated to assist the Debtors in these matters are connected to the judge, U.S. Trustee or assistant U.S. Trustee assigned to this matter.

20. Despite the efforts described above to identify and disclose connections with parties in interest in these cases, because the Debtors are a large enterprise with thousands of creditors and other relationships, E&Y is unable to state with certainty that every client representation or other connection of EYCF, E&Y and E&Y (Canada) have been disclosed. In this regard, if E&Y

discovers additional information that requires disclosure, E&Y will file supplemental disclosures with the Court as promptly as possible.

21.    To the best of my knowledge, information and belief formed after reasonable inquiry, E&Y does not hold nor represent any interest adverse to the Debtor in the matters for which E&Y is proposed to be retained. The proposed employment of E&Y is not prohibited by or improper under Bankruptcy Rule 5002. Accordingly, I believe that E&Y is eligible for retention by the Debtors under the Bankruptcy Code.

22.    During the ninety days immediately preceding the Petition Date, the Debtors paid fees totaling $5,062 to E&Y.

23.    E&Y and the professionals that it employs, are qualified to represent the Debtor in the matters for which E&Y is proposed to be employed.

24.    E&Y has not shared or agreed to share any of its compensation in connection with this matter with any other person.

25.    E&Y intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.

26.    At the request of the Debtor and its counsel, E&Y commenced performing services related to these cases on February 8, 2004. It is therefore requested that the retention of E&Y as accountants providers be approved *nunc pro tunc* to February 8, 2004.

BY: _____
Ronald U. Kaufman
Partner

Subscribed and sworn before me
This 24th day of June _____, 2004

Victoria Snudder  expiration
Notary Public                12/11/08

**⊒⌶ ERNST & YOUNG**

■ Ernst & Young LLP
National City Center
Suite 2300
110 West Berry Street
Fort Wayne, Indiana 46802

■ Phone: (260) 424-2233
Fax:    (260) 425-4899
www.ey.com

**EXHIBIT A-1**

June 24, 2004

Mr. Dennis Maude
Auburn Foundry, Inc.
635 west Eleventh Street
Auburn, IN  46706

Dear Dennis:

This letter agreement (the "Agreement") sets forth the terms and conditions of the engagement of
Ernst & Young LLP ("Ernst & Young" or "E&Y") by Auburn Foundry, Inc. (the "Company" or
the "Debtor") to prepare the Company's U.S. federal and State income tax returns for the year
ended December 31, 2003 subsequent to the Company's filing of a Chapter 11 petition in the
United States Bankruptcy Court for the Northern District of Indiana (the "Bankruptcy Court") on
February 8, 2004.

We have agreed to provide such services, contingent upon the Bankruptcy Court approving our
retention in accordance with the terms and conditions which are set forth in the Agreement.

*Scope of Services*

The specific services we will provide as part of this engagement include:
- Preparation of the U.S. Corporate Income Tax Return for Auburn Foundry, Inc.
- Preparation of all state income tax returns for Auburn Foundry, Inc.

This engagement does not include (1) an analysis of any shift in ownership of the Company
stock, (2) the preparation of statements required by IRC §§ 382 and 383, or (3) a determination
of whether such code sections limit the amount of taxable income or tax that can be offset by net
operating loss carryforwards, certain recognized built-in losses, certain excess credits, or net
capital loss carryovers.  The limitations under these provisions may have a material adverse
impact on the tax liability of the company.  We will not prepare a return on which taxable income
(or tax) is offset by such attributes unless an analysis is performed.  If you would like E&Y to
perform such an analysis, those services would be covered under a separate engagement letter.
This engagement also does not include additional forms or analysis that may be required because
of the bankruptcy filing.

The income tax returns described above ("the subject returns") will be prepared in accordance
with professional s tandards. W e w ill p repare t he s ubject r eturns f rom i nformation d eveloped
from the Company's records, as well as information furnished by Company personnel.  We are
relying upon Company personnel for the accuracy and completeness of its records, as well as all
other information supplied to us.  Our procedures do not include independent verification of

**ΞII ERNST & YOUNG**　　　　　　　　■ Ernst & Young LLP

source data beyond that which is necessary for us to sign the returns. Therefore, we will not review or retain and will be returning to you data which is not necessary for us to complete your tax returns.

Because the work we perform will not constitute an attest engagement in accordance with generally accepted auditing standards or advice and/or documentation related to the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act, the tax returns and other data are prepared solely for submission to taxing authorities and are to be used for no other purpose. We assume no responsibility to keep the Company apprised of developments in the tax law relative to this engagement after it has been completed.

Treasury regulations require corporations to file disclosure statements relating to certain tax strategies/transactions that the Internal Revenue Service ("IRS") has identified as Listed Transactions, any transaction that is substantially similar to a Listed Transaction, and Other Reportable Transactions. The disclosure statements must be attached to the proper tax return and also sent separately to the IRS. Failure to properly disclose any of these transactions/strategies in which the Company directly or indirectly participated may result in the imposition of penalties. During the process of gathering data to prepare the Company's tax return(s), we require Company personnel to complete a questionnaire regarding Listed Transactions and Other Reportable Transactions, which is Attachment 1 to this letter. If there is a particular person in the Company, other than you, who should be responding to these questions, please immediately provide that person's name, position and telephone number to Randy Warner at E&Y. E&Y will not be liable for any penalties resulting from the Company's failure to accurately and timely respond to these questions or to timely file the required disclosure statements.

*Fees*

Our fee for preparation of the tax returns indicated above will be $7,000, plus actual expenses and we will bill you according to the following schedule:

| Progress bill No. | Amount | Due Date |
|---|---|---|
| #1 | $ 3,800 | July 2004 |
| #2 | $ 3,200 | August 2004 |

Our fee assumes that Company personnel will provide appropriate assistance on a timely basis and that the scope and complexity of the return are consistent with our prior discussions. Any additional tax services requested by the Company will be billed on actual time incurred at hourly rates in effect for the Ernst & Young professionals assigned to provide the category of services set forth in the Agreement. Our rates are revised annually, effective May 1. The actual time required will depend upon the extent and nature of available information, modifications to the scope of our engagement and other developments that may occur as work progresses.

**ΞII ERNST & YOUNG**                    ■ Ernst & Young LLP

Effective May 1, 2004, those hourly rates are as follows:

> Partners and Principals............................. $450-$650
>
> Senior Manager ............................................ 400-600
>
> Manager ....................................................... 290-425
>
> Senior ........................................................... 215-320
>
> Staff.............................................................. 130-180

We will request payment of our fees in accordance with local bankruptcy rules for the District of Northern Indiana and any relevant administrative orders.

*Staffing*

Ron Kaufman, Partner, and Randy Warner, Senior Manager, will lead our team in providing tax services. Nancy Lefever, Tax Compliance Manager, will work closely with management in providing tax services. If any of these individuals ceases to provide tax services to the Company pursuant to this Agreement, Ernst & Young will so advise the Company and, if that professional is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in the most efficient manner possible.

*Other Matters*

This letter is our contract with you for rendering services and will be governed by the following terms:

- All advice and other services we provide pursuant to this engagement are intended solely for the benefit of the Company and not for the benefit of anyone else. Accordingly, our advice may not be relied upon by any other person or persons, used in connection with any other transaction, or used for any other purpose without our prior written consent.

- Information relating to federal tax advice we provide to you, including communications between us and material we create in the course of providing that advice may be privileged and protected from disclosure to the Internal Revenue Service. Should the Internal Revenue Service seek disclosure from you or us of written or oral communications relating to such advice, we will discuss with you whether and how you assert, or waive, the privilege.

**⧎Ⅱ ERNST & YOUNG**                 ■ Ernst & Young LLP

- Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of Ernst & Young) shall be brought in the Bankruptcy Court or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, caused of action or lawsuits. The parties to this Agreement, and any all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Attachment 2 to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Company, Ernst & Young and any all successors and assigns thereof.

- We consider all nonpublic information about our clients to be confidential. This includes personal and financial information provided by you or by others, as well as information we generate on your behalf. It is our policy not to disclose client information to our affiliates except in connection with the rendering of tax preparation services to you. It is our policy not to disclose client information to nonaffiliated third parties except as required by law, without client consent. E&Y personnel and contractors working under the firm's supervision must observe the firm's policies concerning confidential client information, and we employ security systems designed to protect against unauthorized access and use of confidential information.

- Except as expressly stated in this letter, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services that were agreed to prior to the date noted below.

- If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this letter shall remain in effect.

- Ernst & Young receives volume-based rebates from certain contractors, such as a credit card company. These rebates are used to reduce the firm's overhead charges that would otherwise be passed on to the firms' clients.

- Generally, the subject tax returns will not be delivered until after this engagement letter is signed and returned to E&Y.

  ■ Ernst & Young LLP

Page 5

### *Miscellaneous*

The benefits of this Agreement shall inure to the respective successors and assigns of the parties hereto and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns.

We understand that our Agreement may be terminated at any time by the Company or Ernst & Young. The alternative dispute resolution provision contained in the Agreement will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy proceedings whether through a confirmed plan of reorganization, liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise.

As set forth herein, the Company has requested that Ernst & Young provide tax compliance services, the scope of which is set forth in the Agreement. The Company recognizes and acknowledges that by performing the services set forth in the Agreement, Ernst & Young is not acting in any Company management capacity and that the Company has not asked Ernst & Young to make, nor has Ernst & Young agreed to make, any business decisions on behalf of the Company. All decisions about the business or operations of the Company remain the sole responsibility of the Company's management and its board of directors.

By agreement to the provision of the services set forth in the Agreement, Ernst & Young is not providing a guarantee to the Company that Ernst & Young's performance of those services pursuant to the terms and conditions set forth in the Agreement will guarantee the Company's successful reorganization under Chapter 11 of Title 11 of the United States Code.

If these arrangements are acceptable, please sign one copy of this letter and return it to Randy Warner.

If you have any questions concerning our engagement, please call Randy Warner or Nancy Lefever at 260/424-2233.

We very much appreciate the opportunity to perform these tax services for the Company.

Very truly yours,

*Ernst + Young LLP*

Attachments

Consented and Agreed:

By    _____
      Dennis Maude
      Auburn Foundry, Inc.

**ĒΙ ERNST & YOUNG**                            ■ Ernst & Young LLP

Attachment 1

## FAILURE TO READ THIS CAREFULLY AND TIMELY PROVIDE AN ACCURATE RESPONSE COULD RESULT IN THE IMPOSITION OF PENALTIES BY THE IRS FOR WHICH ERNST & YOUNG WILL NOT BE LIABLE

Treasury regulations require individuals, partnerships, trusts, and other entities to file disclosure statements regarding certain tax strategies/transactions that the IRS identifies as Listed Transactions, any transaction that is substantially similar to a Listed Transaction, and Other Reportable Transactions. The disclosure statements must be filed with the proper tax return and also sent separately to the IRS. Failure to properly disclose any of these transactions may result in the imposition of penalties. Below is a summary of the current Listed Transactions and several questions. You must answer the questions below for us to properly prepare your tax return. We may also need to contact you to determine whether you have participated in any additional Listed Transactions identified before your tax return is filed.

Please read each of these Listed Transaction summaries. If you want to receive a copy of the relevant published guidance (see the underlined reference at the end of each description) or have any questions regarding a specific transaction, please contact Randy Warner or Nancy Lefever at 260/424-2233. After answering each of the questions, sign and return this entire document via mail to Nancy Lefever, Ernst & Young LLP, 110 West Berry Street, Suite 2300, Fort Wayne, IN 46802. When answering the questions below, use the underlined term to identify that Listed Transaction. Ernst and Young LLP ("E&Y") shall not be liable for any penalties resulting from your failure to accurately and timely respond to these questions or to timely file the required disclosure statements.

The summaries of the Listed Transactions identified by the IRS as of this date are as follows:

(1)   Lease Strips and Other Stripping Transactions: Transactions that allow one participant to realize rental or other income from property or service contracts and another participant or the same participant in a different tax year reports deductions related to that income. Identified in Notice 95-53 and Notice 2003-55.

(2)   401K Accelerator: Transactions in which taxpayers claim deductions for contributions to a qualified cash or deferred arrangement or matching contributions to a defined contribution plan where the contributions are attributable to compensation earned by plan participants after the end of the taxable year. Identified in Rev. Rul. 90-105.

(3)   Multiple Employer Plans: Trust arrangements purported to qualify as multiple employer welfare benefit funds exempt from the limits of §§419 and 419A of the Internal Revenue Code. Identified in Notice 95-34. (See item #23 below regarding collectively-bargained welfare benefit funds.)

(4)   Foreign Tax Credit Generators: Transactions in which the reasonably expected economic profit is insubstantial in comparison to the value of the expected foreign tax credits. Identified in Part II of Notice 98-5. Does not apply to returns due after

**ΞIJ ERNST & YOUNG**                    ■ Ernst & Young LLP

February 17, 2004; see Notice 2004-19.  (See item #30 below regarding foreign tax credit intermediary transactions.)

(5)    Contingent Installment Sales:  Transactions involving contingent installment sales of securities by partnerships in order to accelerate and allocate income to a tax-indifferent partner, such as a tax-exempt entity or foreign person, and to allocate later losses to another partner.  Identified as <u>ACM Transactions</u>.

(6)    Distributions from Charitable Remainder Trusts:  Transactions involving distributions described in Treas. Reg. §1.643(a)-8 from charitable remainder trusts.  This transaction uses a §664 charitable remainder trust to convert appreciated assets into cash, while avoiding the gain on the disposition of the assets.  Identified in <u>Treas. Reg. §1.643(a)-8</u>.

(7)    LILOs:  Transactions in which a taxpayer purports to lease property and then purports to immediately sublease it back to the lessor (that is, lease-in/lease-out or LILO transactions).  Identified in <u>Rev. Rul. 99-14</u>.

(8)    Distribution of Encumbered Property:  Transactions involving the distribution of encumbered property in which taxpayers claim tax losses for capital outlays that they have in fact recovered.  Identified in <u>Notice 99-59</u>.

(9)    Fast-pay Arrangements:  Transactions involving fast-pay arrangements as defined in Treas. Reg. §1.7701(l)-3(b) in which a corporation's outstanding stock is structured (in whole or in part) to return the stockholder's investment by distributions treated as dividends.  Identified as <u>Fast-pay Arrangements</u>.

(10)   Counterbalancing Debt Instruments:  Transactions involving the acquisition of two debt instruments the values of which are expected to change significantly at about the same time in opposite directions.  Identified in <u>Rev. Rul. 2000-12</u>.

(11)   Artificially Inflated Tax Basis:  Transactions generating losses resulting from artificially inflating the tax basis of partnership interests.  Identified in <u>Notice 2000-44</u>.

(12)   Employee Stock Transfer:  Transactions involving the purchase of a parent corporation's stock by a subsidiary, a subsequent transfer of the purchased parent stock from the subsidiary to the parent's employees, and the eventual liquidation or sale of the subsidiary.  Identified in <u>Notice 2000-60</u>.

(13)   Guamanian Trusts:  Transactions purporting to apply §935 to Guamanian trusts.  Identified in <u>Notice 2000-61</u>.

(14)   Midco Transactions:  Transactions where a taxpayer desires to sell stock of a corporation and a buyer desires to purchase the assets.  These parties conduct the transaction through an intermediary, with the taxpayer selling the stock to the intermediary and the buyer then purchases the assets from it.  The intermediary usually receives compensation for participating in the transaction.  Identified in <u>Notice 2001-16</u>.

**≡∬ ERNST & YOUNG**　　　　　■ Ernst & Young LLP

(15) Contingent Liability Transactions: Transactions involving a loss on the sale of stock acquired in a purported §351 transfer of a high basis asset to a corporation and the corporation's assumption of a liability that the transferor has not yet taken into account for federal income tax purposes. Identified in Notice 2001-17.

(16) Basis Shifting on Stock Redemptions: Redemptions of stock in transactions not subject to U.S. tax in which the basis of the redeemed stock is purported to shift to a U.S. taxpayer. Identified in Notice 2001-45.

(17) Inflated Tax Basis: Transactions in which the taxpayer as part of an acquisition of assets also assumes debt exceeding their fair market value. The taxpayer claims a higher basis due to the debt assumption. Upon sale of the assets, the taxpayer claims a loss for basis in excess of the fair market value of the assets. Identified in Notice 2002-21.

(18) Notional Principal Contract: Transactions using a notional principal contract to claim deductions for periodic payments made by the taxpayer while disregarding the accrual of a right to receive offsetting payments in the future. Identified in Notice 2002-35.

(19) Allocation of Straddle Gain or Loss: Transactions involving the creation of straddles in a common trust fund or pass-thru entity (i.e., partnership, S corporation, or grantor trust), with the allocation of gain to one party and loss to another party. Identified in Notice 2002-50, Notice 2002-65, and Notice 2003-54.

(20) Certain Reinsurance Arrangements: Transactions in which, as agent for an insurance company (Insurer), the taxpayer, generally in connection with providing services or products, sells customers insurance for repair, replacement costs, loss or theft, or in case the customer dies, is disabled or unemployed. The taxpayer receives a commission of a percentage of the premium paid by the customer, and the Insurer reinsures the risk with a foreign subsidiary of the taxpayer. The participants claim the benefits of §§501(c)(15), 806, or 831(b). Identified in Notice 2002-70.

(21) Prohibited Ownership of S-Corp Securities by ESOP: Transaction in which an S corporation and an associated ESOP, which was formed on or before March 14, 2001, is subsequently transferred and the ESOP claims the benefit of a delayed effective date under IRC §409(p). As a result of the delayed effective date, the earnings of the S corporation are not currently taxed. Identified in Rev. Rul. 2003-6. (See item #28 below regarding S corporation ESOPs involving synthetic equity.)

(22) Offshore Deferred Compensation Arrangements: Transactions involving an individual taxpayer who purportedly resigns from his or her current employer or professional corporation and enters an employment contract with an offshore employment leasing company. The offshore leasing company leases the individual's services back to the original employer, typically using one or more intermediaries. The participants claim tax benefits in the form of reduced or avoided individual and corporate income and employment taxes. Identified in Notice 2003-22.

**Ξ‖ ERNST & YOUNG**                ▪ Ernst & Young LLP

(23) Collectively-Bargained Welfare Benefit Funds: Trust arrangements purporting to qualify as collectively-bargained welfare benefit funds exempt from the limits of §§419 and 419A of the Internal Revenue Code. Identified in <u>Notice 2003-24</u>. (See item #3 above regarding multiple employer plans.)

(24) Transfers of Compensatory Stock Options to Related Persons: Transactions involving an individual, generally an employee, who has been granted a nonstatutory compensatory stock option, and transfers that option to a related person. The individual does not claim compensation income when the related person exercises the stock option or, in cases where the related person pays for the option with a note or other deferred payment, the individual does not claim compensation income until receiving the deferred payments. Identified in <u>Notice 2003-47</u>.

(25) Contested Liability Trusts: Transactions involving transfers to a trust to provide for the satisfaction of contested liabilities in an attempt to accelerate deductions for the contested liabilities under §461(f) of the Internal Revenue Code. Identified in <u>Notice 2003-77</u>.

(26) Offsetting Foreign Currency Option Contracts: Transactions in which a taxpayer claims a loss upon the assignment of a §1256 foreign currency option contract to a charity but fails to report the recognition of gain when the taxpayer's obligation under an offsetting non-section 1256 foreign currency option contract terminates. Identified in <u>Notice 2003-81</u>.

(27) Roth IRA Contributions: Transactions designed to avoid the statutory limits on contributions to a Roth IRA contained in §408A using a corporation, substantially all the shares of which are owned or acquired by the Roth IRA. Identified in <u>Notice 2004-8</u>.

(28) S corporation ESOP Involving Synthetic Equity: Transaction involving an S corporation that is at least 50% owned by an ESOP, designed to avoid current taxation of the S corporation's profits generated by the business activities of a specific individual or individuals. The profits are accumulated and held for the benefit of the individual(s) in a qualified subchapter S subsidiary (QSub) or similar entity (such as a limited liability company), the profits are not paid to the individual(s) as compensation within 2½ months after the end of the year in which earned, and the individual or individuals have rights to acquire stock or similar interests equal to 50% or more of the fair market value of the QSub. Identified in <u>Rev. Rul. 2004-4</u>. (See item #21 above, also involving S corporation ESOPs.)

(29) Pension Plans Involving Excessive Life Insurance: Transactions involving a qualified pension plan that includes life insurance contracts on the life of a participant in the plan with a face amount that exceeds the participant's death benefit under the plan by more than $100,000. Upon the death of the covered employee, the life insurance contract proceeds exceeding the death benefit are applied to the premiums under the plan for other participants. Identified in Rev. Rul. 2004-20.

**⩘ ERNST & YOUNG**　　　　　■ Ernst & Young LLP

(30) Foreign Tax Credit Intermediary Transactions:  Transactions in which, pursuant to a prearranged plan, a domestic corporation purports to acquire stock in a foreign target corporation and makes an election under §338 before selling all or substantially all of the target corporation's assets in a transaction that triggers foreign tax on built-in gains that are not subject to U.S. tax.  The domestic corporation claims foreign tax credits generated with respect to the foreign income tax imposed on the asset sale. Identified in Notice 2004-20.

(31) S Corporation Nonvoting Stock Issued to Tax Exempt Organization:  Transactions in which S corporation shareholders attempt to transfer the incidence of taxation on S corporation income by donating S corporation nonvoting stock to an exempt organization, while retaining the economic benefits associated with that stock (through warrants issued to the S corporation shareholders that would dilute the shares of nonvoting stock held by the exempt organization or agreements to repurchase the nonvoting stock from the exempt organization at a value that is substantially reduced by reason of the warrants).  Identified in Notice 2004-30.

(32) Intercompany Financing Through Partnerships Using Guaranteed Payments: Transactions in which a corporation that is exempt from US federal income tax, such as a foreign corporation, provides financing to a domestic subsidiary by investing in the preferred stock of the subsidiary through a partnership in an attempt to convert interest payments that would not be currently deductible under §163(j) into deductible payments.  The foreign corporation's return on investment is structured as a guaranteed payment by the partnership, most of which is allocated to, and deducted by, another domestic subsidiary that is a partner in the partnership.  In some cases, the guaranteed payments are made to a partner that is unrelated to the foreign corporation and the partnership's obligations to make the guaranteed payments are assured by the foreign corporation or a related party.  Identified in Notice 2004-31.


Answer the following questions with regard to advice provided by or transactions recommended by anyone other than E&Y.

Taxpayer:  Auburn Foundry, Inc. ("the Company")


1) Have you ever received any advice, either oral or written, as to whether any transaction you entered into since February 28, 2000 was a Listed Transaction and/or had to be disclosed when you filed your tax return?

No_____    Yes_____

**ΞIJ ERNST & YOUNG**                    ■ Ernst & Young LLP

If yes, please provide copies of all written advice you received regarding the transaction along with your response to this questionnaire.  If any part of the advice was not written, please provide the name(s), address(es) and telephone number(s) of the person(s) providing the advice, and a brief description of the transaction.

2)  Since February 28, 2000, have you participated in any transaction that might be considered similar in any way to any of the strategies/transactions summarized above?

No_____    Yes_____    I am not certain, please provide me more detail about the transactions identified as _____

If yes, identify the strategies/transactions above that may be similar to the one you participated in._____

3)  After December 31, 2002, did the Company enter into a transaction or receive tax advice regarding a tax position or transaction from *anyone* that made a statement or provided information regarding tax consequences (including statements indicating the transaction was tax-free or had no tax consequences) and who asked the Company to enter into a confidentiality agreement or in any other way attempted to limit the Company's ability to disclose information regarding the structure or tax aspects of the transaction or the tax advice?

No_____    Yes_____

4)  After December 31, 2002, did the Company enter into a transaction or receive tax advice regarding a tax position or transaction for which the Company (or a related party) has some form of contractual protection against the possibility that part or all of the intended tax consequences will not be sustained (e.g., a fee that is contingent on the tax benefits realized from the transaction or position, or an agreement to get back fees or receive payments if the tax benefits are not sustained)?

No_____    Yes_____

**≡ℓℓ ERNST & YOUNG**          ■ Ernst & Young LLP

Page 12

5) For this question, check the type of "entity" which the Company is characterized as for tax purposes (C corporation, S corporation, partnership, or trust) and answer the question(s) that follows the status:

a. _____Corporation (other than an S corporation) and Partnerships that have only C corporations as partners:  After December 31, 2002, has the Company directly or indirectly entered into a transaction that results in or is reasonably expected to result in a tax loss under §165 (other than from casualty or involuntary conversion) of at least $10 million in any single taxable year or $20 million in any combination of taxable years?

No_____    Yes_____

b. _____Individuals, Trusts, S corporations, and all other Partnerships:  After December 31, 2002, has the Company directly or indirectly entered into a transaction that results in or is reasonably expected to result in a tax loss under §165 (other than from casualty or involuntary conversion) of at least $2 million in any single taxable year or $4 million in any combination of taxable years?

No_____    Yes_____

Or $50,000 in any single year for Individuals or Trusts if the loss arises with respect to a §988 foreign currency transaction?

No_____    Yes_____

6) After December 31, 2002, did the Company enter into any transaction in which it held an asset for 45 days or less and that generated a tax credit exceeding $250,000?

No_____    Yes_____

7) Is the Company an 1) SEC registrant, 2) a business enterprise related to an SEC registrant, or 3) a business enterprise with $250 million or more in gross assets?

No_____    Yes_____

If yes, answer 8.  If no, skip 8.

**ᴣ⫶ ERNST & YOUNG**                        ■ Ernst & Young LLP

8) After December 31, 2002, did the Company enter into any transaction that results in or is reasonably expected to result in a book-tax difference on a gross basis exceeding $10 million for any taxable year?

No_____    Yes_____

If you answered "yes" to any of the questions listed above, please describe in detail each item and/or transaction that lead to the "yes" response.  Please be sure to include names of all promoters, advisors and other parties to any transaction, the tax years it affects, and the amount and tax effect expected each year.

**Auburn Foundry, Inc.**

_____

Your Signature                    Title (if applicable)                    Date

**≡Ⅱ ERNST & YOUNG**                    ■ Ernst & Young LLP

**Attachment 2**

## Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of June 24, 2004.  If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

### Mediation

A dispute shall be submitted to mediation by written notice to the other party or parties.  The mediator shall be selected by agreement of the parties.  If the parties cannot agree on a mediator, a mediator shall be designated by the CPR Institute for Dispute Resolution at the request of a party.  Any mediator so designated must be acceptable to all parties.

The mediation shall be conducted as specified by the mediator and agreed upon by the parties.  The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach an amicable resolution of the dispute.  The mediation shall be treated as a settlement discussion and therefore shall be confidential.  The mediator may not testify for either party in any later proceeding relating to the dispute.  No recording or transcript shall be made of the mediation proceedings.

Each party shall bear its own costs in the mediation.  The fees and expenses of the mediator shall be shared equally by the parties.

### Arbitration

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration.  The arbitration will be conducted in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("Rules") as in effect on the date of the engagement letter, or such other rules and procedures as the parties may designate by mutual agreement.  In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom are to be designated by the parties from the CPR Panels of Distinguished Neutrals using the screened selection process provided in the Rules.  Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.  No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

**Ξ!/** *ERNST & YOUNG*                                                      ■ Ernst & Young LLP

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award (a) damages inconsistent with any applicable agreement between the parties or (b) punitive damages or any other damages not measured by the prevailing party's actual damages; and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The result of the arbitration will be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**ΞIΙ ERNST & YOUNG**

■ Ernst & Young LLP
National City Center
Suite 2300
110 West Berry Street
Fort Wayne, Indiana 46802

■ Phone: (260) 424-2233
Fax:    (260) 425-4899
www.ey.com

**EXHIBIT A-2**

June 24, 2004

Mr. Dennis Maude
Chief Financial Officer
Auburn Foundry, Inc.
635 West 11th Street
Auburn, Indiana 46706

**Property Tax Review and Recovery Project**

Dear Dennis:

This letter agreement (the "Agreement") sets forth the terms and conditions of the engagement of Ernst & Young LLP ("Ernst & Young" or "E&Y") by Auburn Foundry, Inc. ("the Company") to provide Property Tax Review and Recovery Services subsequent to the Company filing a Chapter 11 of the United States Code ("Chapter 11") petition in the United States Bankruptcy Court (the "Bankruptcy Court").

We have agreed to provide such services contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions which are set forth in this Agreement.

**Objectives**

A Property Tax Review and Recovery Study will be performed to determine whether Recovery opportunities are available. Our objective is to identify Recovery opportunities as supported by the Bankruptcy Code ("the Code") pursuant to the Company's books and records. If Recovery opportunities exist, steps will be taken and completed to secure those Recoveries for the Company.

**Scope**

This engagement is for the Company's Dekalb County, Indiana properties ("the Properties") and is for all assessment years open under either Indiana Law and Regulations or Bankruptcy Court Rules. Subject to the provisions in this Agreement, including the Dispute Resolution Procedures, which are set forth in Exhibit A hereto, E&Y will provide the Company with the following Property Tax Review and Recovery Services described below. These services may be modified from time to time by our mutual written agreement and approval by the Bankruptcy Court.

**≣⫼ ERNST & YOUNG**                    ■ Ernst & Young LLP

Page 2
Auburn Foundry, Inc.                                          June 24, 2004

E&Y will review relevant company information that may include the following:

- Physical inspection of facilities
- Location and format of property tax records (possibly from other third party providers)
- Original personal property tax returns
- Historical procedures for self-reporting personal property tax on assets and inventory
- Company records and general ledger accounts which support returns and deductions
- Original real and personal property assessment notices
- Historical property tax appeal and settlement information (summaries and detailed copies of appeals)
- Original real and personal property tax bills
- Pre- and post-petition property tax payment records for owned and leased properties
- Historical and recent third party real or personal property appraisals
- Documentation of property sale proceeds from independent sales or bankruptcy auctions
- Copies of leases and/or lease summaries of leased equipment
- Real and personal property bankruptcy claims received from Tax Jurisdictions ("Jurisdictions")
- Bankruptcy claims received from Lessors

We will conduct a limited review of these company records to determine if Recovery opportunities exist, and will communicate significant savings opportunities identified through this process to the Company management. E&Y and the Company will mutually agree on which opportunities to pursue.

Upon identification of specific Recovery opportunities for specific facilities that E&Y and the Company mutually agree to pursue, E&Y will perform the following, if warranted and/or necessary:

- Detailed examination of source documents (i.e. property sales records, tax bills, assessment notices, appraisals, etc.)
- Detailed examination of general ledger accounts
- Detailed examination of historical sale and auction records
- Information requests and/or discussions with Jurisdictions or Lessees
- Facility tours
- Additional interviews with key personnel in the real estate area and/or previous third party property tax service providers
- Detailed review of leases, as warranted
- Development of overpayment review schedules
- Scanning of documents that support schedules
- Discussions with Debtor's Counsel to agree on necessary processes and motions
- Discussions with Debtor's Counsel to determine if Special Counsel should be appointed to file and manage property tax Recovery motions

**ᴣᴜ** *ERNST & YOUNG*          ▪ Ernst & Young LLP

Auburn Foundry, Inc.

Page 3
June 24, 2004

E&Y will also prepare the necessary filing information and documentation required to secure the identified tax Recoveries.  E&Y may perform the following as warranted and or necessary:

- Finalize Recovery schedules
- Prepare documents for submission to Debtor's Counsel or Special Counsel in support of any necessary Recovery motions
- File Recovery claims and/or notifications with the appropriate Jurisdictions and/or incorporate Recovery claims into the bankruptcy tax claims review and resolution process, as applicable
- Communicate with Jurisdictions, as necessary, in order to initiate or expedite processing and resolution of Recovery or bankruptcy claims
- Communicate with Lessors, as necessary, in order to garner approval of proposed motions and/or to resolve claims that are subject to a property tax Recovery claim
- Represent the Company at any meetings, conferences, or hearings, to the extent permitted by law, in connection with the Recovery claims

Throughout the review, E&Y will provide status reports of the outstanding Recovery claims. E&Y will also continue to communicate with the Jurisdictions in an effort to expedite the Recoveries.  As it relates to a specific claim, E&Y's services will culminate when one of the following occurs:

- The Jurisdiction approves and pays the Recovery claim to the Company
- The Jurisdiction approves and documents the Recovery as a reduction to an outstanding bankruptcy tax claim
- A Lessor approves the payment of a Recovery amount to the Company
- A Lessor agrees to a Recovery claim offset against a bankruptcy claim filed with the Company
- A Jurisdiction or Lessor claim is reduced in order to correct for a duplicative assessment or to support any other reduction driven by a corrective action that E&Y has identified
- A bankruptcy claim objection in support of the Recovery amount is not timely responded to by the Jurisdiction such that a reduced bankruptcy claim amount is established and enforceable as the revised liability amount
- The Jurisdiction executes a settlement agreement in response to a Recovery claim
- A Lessor executes a settlement agreement in response to a Recovery claim
- The Bankruptcy Court rules in favor of the Company on a Jurisdiction or Lessor Recovery claim, or a Court order is entered in support of such a Recovery claim or motion

**≣Ⅱ ERNST & YOUNG**                    ■ Ernst & Young LLP

Page 4
Auburn Foundry, Inc.                                    June 24, 2004

In the event that a Recovery strategy to be deployed above requires the attention or intervention of the Bankruptcy Court, E&Y and the Company will confer with, and obtain the assistance of, Debtor's Counsel. In the event that a Recovery claim requires an attending or complementary motion or request to be filed with the Bankruptcy Court, the Company agrees to request that such services be performed by Debtor's Counsel at no cost to E&Y. To the extent required, E&Y will also prepare and submit separate pre- and post-petition Recovery claims in any circumstance where the Recovery claim period spans the Company's Chapter 11 petition date.

In the event property tax legal counsel separate from Debtor's Counsel (to be referred to as "Special Counsel") is required in this engagement, E&Y may assist the Company by recommending Special Counsel for the Company's consideration. The approval or retention of Special Counsel shall not be unreasonably withheld by the Company or Debtor's Counsel. The Company has sole authority to retain, direct, and compensate Special Counsel. If Special Counsel is retained, the terms and conditions of this Addendum will remain in effect. If E&Y determines that it would be reasonable or appropriate to retain other professionals, including but not limited to appraisers, to assist in this engagement, E&Y will assist the Company by recommending the retention of such professionals. The Company will be responsible for retaining any such professional and for payment of fees and expenses of any such professional. However, any Special Counsel or professional fees incurred by the Company may be offset against the Recoveries achieved by E&Y as detailed below.

### Professional Fees

Our fee for the services herein described shall equal 40% (forty percent) of the Recovery amounts finally secured (including tax, interest, penalties and credits or offset of other liabilities) by the Company pursuant to an E&Y Recovery claim or associated Recovery motion or a protest or appeal. For purposes of this engagement, the term "Recovery" shall include all cash Refunds as well as all measurable non-cash Recoveries from Jurisdictions and/or Lessors that have the effect of financially benefiting the Company or the Company's Bankruptcy Estate ("the Estate"). Such non-cash Recoveries will include (but are not necessarily limited to): Reduction in the amount of a priority or secured bankruptcy tax claim, offset or Reduction of a tax liability (whether claimed or unclaimed) that is scheduled to be paid with the equivalent of priority or greater status, a change of tax claim status that has the effect of reducing the net cash impact of the claim payout (in such case the Recovery amount will be determined as the original cash value of the claim less the resulting cash value of the claim), and any reduction or offset to a tax audit assessment that results in a reduced liability or a reduced bankruptcy tax claim amount. Please note that any estimated or identified potential tax underpayments of the Company will not be netted against or otherwise included in our fee calculations, and will not reduce the fees owed.

**ᛃ ERNST & YOUNG**                    ■ Ernst & Young LLP

Page 5

Auburn Foundry, Inc.                                                        June 24, 2004

Our fee assumes that the Company and any of their personnel or third party providers will
provide all appropriate information and assistance on a complete and timely basis, and that the
scope and complexity of this Property Tax Review and Recovery Project is consistent with our
prior discussions.

Any fees for Special Counsel or professionals as noted above which are incurred specifically for
this engagement, pursuant to the mutual consent of both parties, may be offset against the
Recovery amounts that form the basis of the fees payable by the Company to E&Y upon
successful completion of this project. This offset of fees does not pertain to, and will not be
allowed for, any fees paid by the Company relative to this engagement to Debtor's Counsel.

Fees will be due and payable to E&Y by the Company within 30 days of documented Recovery.
In cases of cash Recoveries, E&Y shall be paid within 30 days of the Company's receipt of the
cash. In cases of non-cash Recovery, or of a cash Recovery restructured by a creditor, Lessor or
Jurisdiction as a non-cash Recovery, E&Y shall be paid within 30 days of documentation of the
non-cash Recovery amount. Such documentation could take many forms, some of which might
include (but are not be limited to): entry by the Bankruptcy Court of a reduce-and-allow order
reflective of the non-cash contribution, entry by written agreement or order of the Bankruptcy
Court of a revised claim amount reflective of the non-cash contribution, acknowledgement by
written agreement or order of the Bankruptcy Court of an otherwise revised liability amount, or a
credit memo as issued by a Lessor or Jurisdiction. The Company agrees to notify E&Y of all tax-
related motions, responses and orders that are filed in its Chapter 11 case, and the Company
additionally agrees to request that it's Debtor's counsel do likewise.

E&Y will also be reimbursed for its actual out-of-pocket expenses that may include, but not
limited to: airfares, car rentals, lodging, meals, and reasonable out-of-pocket expenses. Invoices
for any such qualifying out-of-pocket expenses will be due and payable by the Debtor upon
receipt.

We will request payment of our fees in accordance with the local bankruptcy rules and any
relevant administrative orders. In addition, as outlined above, we will request reimbursement of
our actual expenses related to this Agreement, as well as fees for any time (including any time or
reasonable expenses of legal counsel) we may incur in considering or responding to discovery
requests or participating as a witness or otherwise in any legal regulatory, or other proceeding as
a result of our performance of these services.

In the event that any amount of the refund received as a result of our review is later required to be
repaid to a Jurisdiction or Lessor because of a final determination that the basis of the original
refund was in error, a proportional fee adjustment will be made. However, we reserve the right
to defend the issues related to any fee adjustments. The Company is responsible for maintaining
records and documentation in support of the claims. Any work performed outside the scope of
services contained herein will require a separate Agreement/Addendum.

**≡ℓ ERNST & YOUNG**          ■ Ernst & Young LLP

Page 6

Auburn Foundry, Inc.                                        June 24, 2004

### Engagement Team

Nancy Flagg, Senior Manager and Director of E&Y's Bankruptcy Tax Services, will lead our team in providing these bankruptcy tax services and will work closely with Company management in providing such tax services. Rich Archer, Senior Manager in E&Y's Lake Michigan State and Local Tax Practice and Randy Warner, Senior Manager in E&Y's Fort Wayne Tax Practice will direct the appropriate local resources to be provided in connection with the services outlined in this agreement. In the event any of these individuals ceases to provide tax services to the Company pursuant to this Agreement, Ernst & Young will so advise the Company and, if that person is replaced, provide the Company with the name of that professional's replacement. Other staff and subject matter specialists and/or experts, not identified herein, may be utilized as required to conduct our work in the most efficient manner possible.

### Other Matters

In this Agreement, we will be using information developed from the Company's records, and information furnished by Company personnel. We are relying upon Company personnel for the accuracy and completeness of the Company's records, as well as all other information supplied.

The Company consents to Ernst & Young LLP and or their partners and employees, disclosing any and all of the Company's tax return information to each other for the purpose of rendering tax and accounting services to clients. It is understood that they will not disclose or otherwise use this information for any purpose other than those described in this letter or as allowed under the laws of the applicable jurisdictions.

None of the work that we will perform under this engagement will constitute an attest engagement in accordance with generally accepted auditing standards or advice and/or documentation related to of the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act. The advice and services provided hereunder are solely for management or for submission to taxing authorities, and are to be used for no other purpose. We assume no responsibility to keep the Company apprised of developments in the tax law relative to this engagement after it has been completed.

Our advice and services are only applicable to the specific facts and circumstances presented to us. This agreement expressly authorizes the Company to disclose every aspect of our advice and services with any and all persons, without limitation. However, because our advice is solely for the benefit of the Company and is not to be relied upon by any other persons, as part of any such disclosure the Company must inform all such persons that they may not rely upon our advice without our written consent.

**ᴟ ERNST & YOUNG**          ■ Ernst & Young LLP

Auburn Foundry, Inc.

Page 7
June 24, 2004

The IRS has issued regulations increasing the disclosures that taxpayers and tax advisors may have to make and records they may have to retain in connection with transactions that have federal income tax reduction as a significant purpose. Upon your request, we will be pleased to discuss these disclosure and record retention requirements and their possible application to transactions arising out of this or any other engagement. Our fee for such services may be contained in a separate Project Addendum if the work to be performed is significant.

Information relating to federal tax advice we provide to you, including communications between us and material we create in the course of providing that advice, may be privileged and protected from disclosure to the Internal Revenue Service. Should the Internal Revenue Service seek disclosure from you or us of written or oral communications relating to such advice, we will discuss with you whether and how you assert, or waive, the privilege.

From time to time, and depending on the circumstances, non-CPA personnel may participate in the services we provide to you.

We consider all nonpublic information about our clients to be confidential. This includes personal and financial information provided by you or by others, as well as information we generate on your behalf. It is our policy not to disclose client information to nonaffiliated third parties or affiliates, except as required by law, without client consent. Ernst & Young LLP personnel working under the firm's supervision must observe the firm's policies concerning confidential client information, and we employ security systems designed to protect against unauthorized access and use of confidential information.

Ernst & Young receives volume-based rebates from certain contractors, such as a credit card company. These rebates are used to reduce the firm's cost structure that would otherwise be passed on to the firm's clients.

In the event we are requested or authorized by the Company or are required by government regulation, summons, subpoena or other legal process to produce our documents or personnel as witnesses with respect to our engagements for the Company, the Company will, so long as we are not a subject of the investigation or proceeding in which the information is sought, reimburse us at our standard billing rates for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such requests.

**ΞU** *ERNST & YOUNG*          ■ Ernst & Young LLP

Auburn Foundry, Inc.

Page 8
June 24, 2004

Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of Ernst & Young) shall be brought in the Bankruptcy Court or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, caused of action or lawsuits. The parties to this Agreement, and any all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Attachment 1 to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Company, Ernst & Young and any all successors and assigns thereof.

Neither of us will, in any event, be liable to the other, for any reason, for any consequential, incidental, special, punitive or indirect damages, including loss of profits, revenue, data, use of money or business opportunities, regardless of whether notice has been given or there is an awareness that such damages have been or may be incurred.

*Miscellaneous*

The benefits of this Agreement shall inure to the respective successors and assigns of the parties hereto and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns. In furtherance of this provision, the Bankruptcy Court order approving this Agreement shall provide, among other things, that the Agreement shall be binding upon any trustee or successor trustee appointed or elected in these cases, whether under Chapter 11 or Chapter 7 of the United States Code. The Company also agrees that in the event its right to receive the tax benefits described herein is assigned to or otherwise acquired by any other entity, including without limitation the reorganized debtor, a committee or trust, under any Chapter 11 plan of reorganization, or a purchaser under a section 363 sale of assets, this Agreement shall be assumed by the Company and assigned to such entity as shall succeed to the Company's right to receive the tax benefits described herein.

We understand that this engagement may be terminated at any time by the Company or Ernst & Young. However, in the event the Company (or any successors and assigns, as provided above) elects to terminate this engagement prior to completion but after electing to proceed with Phase II or any subsequent phases, then the Company agrees to compensate E&Y for time and expenses incurred to the point of termination at standard hourly rates. Additionally, should the Company opt not to pursue any one of the opportunities identified by E&Y pursuant to this engagement,

**ERNST & YOUNG**                    ■ Ernst & Young LLP

Page 9
Auburn Foundry, Inc.                                                    June 24, 2004

but subsequently pursue implementation of the same opportunity(s) within two years of the date of this engagement letter either independently or with the assistance of another provider, then Company shall pay E&Y in accordance with the fee provisions set forth herein.

Should a circumstance arise as detailed above wherein a billing at our standard hourly rates becomes applicable, then the following fee schedule will apply. Our standard hourly rates, which are revised annually on May 1, presently range as follows by level of tax professional:

Partners, Principals and Directors ............ $450-$650

Senior Manager ........................................... 400-600

Manager ....................................................... 290-425

Senior ........................................................... 215-320

Staff ............................................................. 130-180

The alternative dispute resolution provision contained in the Agreement will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy proceedings whether through a confirmed plan of reorganization, liquidation of the Company's assets under Chapter 11 or Chapter 7 of the United States Code, or otherwise.

As set forth herein, the Company has requested that E&Y provide project assistance services, the scope of which is set forth in the Agreement. The Company recognizes and acknowledges that by performing the services set forth in the Agreement, E&Y is not acting in any Company management capacity and that the Company has not asked E&Y to make, nor has E&Y agreed to make, any business decisions on behalf of the Company. All decisions about the business or operations of the Company remain the sole responsibility of the Company's management and its board of directors.

By agreement to the provision of the services set forth in the Agreement, Ernst & Young is not providing a guarantee to the Company that Ernst & Young's performance of those services pursuant to the terms and conditions set forth in the Agreement will guarantee the Company's successful reorganization under Chapter 11. Nor is E&Y guaranteeing or making any representation herein regarding the successfulness of any of the strategies or methodologies to be deployed during the course of this engagement.

**ᴣᴫ ERNST & YOUNG**                    ■ Ernst & Young LLP

Auburn Foundry, Inc.

Page 10
June 24, 2004

Except as expressly provided herein, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services which were agreed to prior to the date noted below.

If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this letter shall remain in effect.

If these arrangements are acceptable, please sign one copy of this letter and return it to Randy Warner.

If you have any questions concerning our engagement, please call Randy Warner at 260-425-4821 or Nancy Flagg at 414-223-7145.

We very much appreciate the opportunity to perform these tax services for Auburn Foundry.

Very truly yours,

*Ernst & Young LLP*

Ernst & Young LLP

**Auburn Foundry, Inc.**

By: _____
      Dennis Maude, Chief Financial Officer                              Date

Attachment

Cc:    Nancy Flagg
        Rich Archer

**ᴇᴜ ERNST & YOUNG**          ■ Ernst & Young LLP

Auburn Foundry, Inc.

Page 11
June 24, 2004

Attachment 1

### Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of June 24, 2004. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*

A dispute shall be submitted to mediation by written notice to the other party or parties. The mediator shall be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by the CPR Institute for Dispute Resolution at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation shall be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and therefore shall be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party shall bear its own costs in the mediation. The fees and expenses of the mediator shall be shared equally by the parties.

*Arbitration*

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("Rules") as in effect on the date of the engagement letter, or such other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom are to be designated by the parties from the CPR Panels of Distinguished Neutrals using the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

**⫟ ERNST & YOUNG**　　　　　　　■ Ernst & Young LLP

Page 12

Auburn Foundry, Inc.　　　　　　　　　　　　　　　　　June 24, 2004

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award (a) damages inconsistent with any applicable agreement between the parties or (b) punitive damages or any other damages not measured by the prevailing party's actual damages; and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The result of the arbitration will be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**≡Il ERNST & YOUNG**

■ **Ernst & Young LLP**
National City Center
Suite 2300
110 West Berry Street
Fort Wayne, Indiana 46802

■ Phone: (260) 424-2233
Fax:    (260) 425-4899
www.ey.com

**EXHIBIT A-3**

June 24, 2004

Mr. Dennis Maude
Auburn Foundry, Inc.
635 west Eleventh Street
Auburn, IN 46706

Dear Dennis:

This letter agreement (the "Agreement") sets forth the terms and conditions of the engagement of Ernst & Young LLP ("Ernst & Young" or "E&Y") by Auburn Foundry, Inc. (the "Company" or the "Debtor") to prepare the *Form 5500, Annual Return/Report of Employee Benefit Plan*, for the Company's five benefit plans, as listed in Attachment 1 to this letter ("the Plans") for the years ended as indicated in Attachment 1. This engagement will include the preparation of extensions related to these returns. All of the Plans to which this engagement letter applies are collectively referred to herein as "the Plans." You will advise us in writing if you want to engage us to prepare any other returns for the foregoing Plan(s) or for any other plans.

We have agreed to provide such services, contingent upon the Bankruptcy Court approving our retention in accordance with the terms and conditions which are set forth in the Agreement.

The returns described above, will be prepared by us from information submitted by you on the Ernst & Young Client Assistance Checklists provided under separate cover. This information is to be completed by you and returned to Rick Maethner no later than 60 days prior to the due dates of those returns. You may request an electronic version of these Checklists by contacting Rick Maethner, at his telephone number listed below.

The subject returns will be prepared by us in accordance with professional standards from information developed from the Company's records, as well as information furnished by Company personnel. We are relying upon Company personnel for the accuracy and completeness of its records, as well as all other information supplied to us. Our procedures do not include independent verification of source data beyond that which is necessary for us to complete the subject returns. Therefore, we will not review or retain and will be returning to you data which is not necessary for us to complete your tax returns.

Because the work we perform will not constitute an attest engagement in accordance with generally accepted auditing standards or advice and/or documentation related to the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act, the returns and other data are prepared solely for submission to the Internal Revenue Service ("IRS") and the Department of Labor, and are to be used for no other purpose. We assume no responsibility to keep the Company apprised of developments in the tax law relative to this engagement after it has been completed.

**ΞII ERNST & YOUNG**                        ■ Ernst & Young LLP

In addition to the preparation of the subject returns, we also are prepared to advise the Company regarding specific tax or reporting issues it may encounter with respect to its employee benefit plans, as well as planning issues. The scope of such engagements and our fees for such services may be contained in separate engagement letters if the work to be performed is significant. Unless our advice is specifically requested, we cannot assume responsibility for advising the Company or any of its employee benefit plans with respect to the consequences of any transactions entered into, or the impact on the Company or its employee benefit plans of developments in the law. We will be pleased to be engaged to provide such services upon the Company's request. To be of greatest assistance, we should be advised in advance of any major transactions that the Company or its employee benefit plans propose to undertake.

Should the Plans be selected for examination by the Department of Labor, Internal Revenue Service or other government authority, upon your request we also will be pleased to represent the Company or to assist you in discussions with these authorities. The scope of such engagement and our fee for such services may be contained in a separate engagement letter if the work to be performed is significant.

*Fees*

Our fee for the preparation of these returns will be $2,250 per Form 5500. Our fees for the preparation of the 2003 Form 5500 filings will be billed after the completion of each Form 5500 for the plans covered by this letter.

Our fee assumes that appropriate information and assistance will be provided by Company personnel on a complete and timely basis, and that the scope and complexity of the subject returns are consistent with our prior discussions. Any additional Form 5500 tax services requested by the Company will be billed on actual time incurred at hourly rates in effect for the Ernst & Young professionals assigned to provide the category of services set forth in the Agreement. Our rates are revised annually, effective May 1. The actual time required will depend upon the extent and nature of available information, modifications to the scope of our engagement and other developments that may occur as work progresses.

Effective May 1, 2004, those hourly rates are as follows:

| | |
|---|---|
| Partners and Principals | $450-$650 |
| Senior Manager | 400-600 |
| Manager | 290-425 |
| Senior | 215-320 |
| Staff | 130-180 |

**≡ll ERNST & YOUNG**                    ■ Ernst & Young LLP

We will request payment of our fees in accordance with local bankruptcy rules for the District of Northern Indiana and any relevant administrative orders.

### Staffing

Ron Kaufman, Partner, and Rick Maethner, Tax Compliance Manager, will lead our team in providing Form 5500 tax services. Rick Maethner will work closely with management in providing Form 5500 tax services. If any of these individuals ceases to provide Form 5500 tax services to the Company pursuant to this Agreement, Ernst & Young will so advise the Company and, if that professional is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in the most efficient manner possible.

### Other Matters

All advice and other services we provide pursuant to this engagement are intended to be solely for the benefit of the Company and are not for the benefit of anyone else. Accordingly, our advice may not be relied upon by any other person or persons, used in connection with any other transaction, or used for any other purpose without our prior written consent.

Information relating to federal tax advice we provide to you, including communications between us and material we create in the course of providing that advice, may be privileged and protected from disclosure to the Internal Revenue Service. Should the Internal Revenue Service seek disclosure f r o m y o u o r u s o f w ritten o r o ral c ommunications r elating to such advice, we will discuss with you whether and how you assert, or waive, the privilege.

Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of Ernst & Young) shall be brought in the Bankruptcy Court or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, caused of action or lawsuits. The parties to this Agreement, and any all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Attachment 2 to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Company, Ernst & Young and any all successors and assigns thereof.

**EΙΙ** *ERNST & YOUNG*                                           ■ Ernst & Young LLP

In the event we are requested or authorized by the Company or are required by government regulation, subpoena or other legal process to produce our documents or personnel as witnesses with respect to our engagements for the Company, the Company will, so long as we are not a subject of the investigation or proceeding in which the information is sought, reimburse us at our standard billing rates for our professional time and expenses, as well as the fees and expenses of our counsel, incurred in responding to such requests.

Ernst & Young receives volume-based rebates from certain contractors, such as a credit card company. These rebates are used to reduce the firm's overhead charges that would otherwise be passed on to the firm's clients.

Generally, the subject tax returns will not be delivered until after this engagement letter is signed by the Company and returned to Ernst & Young.

Except as expressly provided herein, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services which were agreed to prior to the date noted below.

If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this letter shall remain in effect.

### Miscellaneous

The benefits of this Agreement shall inure to the respective successors and assigns of the parties hereto and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns.

We understand that our Agreement may be terminated at any time by the Company or Ernst & Young. The alternative dispute resolution provision contained in the Agreement will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy proceedings whether through a confirmed plan of reorganization, liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise.

As set forth herein, the Company has requested that Ernst & Young provide tax compliance services, the scope of which is set forth in the Agreement. The Company recognizes and acknowledges that by performing the services set forth in the Agreement, Ernst & Young is not acting in any Company management capacity and that the Company has not asked Ernst & Young to make, nor has Ernst & Young agreed to make, any business decisions on behalf of the Company. All decisions about the business or operations of the Company remain the sole responsibility of the Company's management and its board of directors.

By agreement to the provision of the services set forth in the Agreement, Ernst & Young is not providing a guarantee to the Company that Ernst & Young's performance of those services

4

 *ERNST & YOUNG*                    ■ Ernst & Young LLP

Page 5

pursuant to the terms and conditions set forth in the Agreement will guarantee the Company's successful reorganization under Chapter 11 of Title 11 of the United States Code.

If these arrangements are acceptable, please sign one copy of this letter and return it to Rick Maethner.

If you have any questions concerning our engagement, please call Rick Maethner at (317) 280-3457.

We very much appreciate the opportunity to perform these Form 5500 tax services for the Company.

Very truly yours,

*Ernst & Young LLP*

Attachments

Consented and Agreed:

By    _____
         Dennis Maude
         Auburn Foundry, Inc.

**EY ERNST & YOUNG**                          ■ Ernst & Young LLP

Page 6

**Attachment 1**

| Plan Name | Plan Number | Plan Year End | Original Due Date |
|---|---|---|---|
| Group Insured Plan for Employees-Auburn Foundry, Inc. | 501 | 12/31/03 | 08/02/04 |
| Auburn Foundry, Inc. Salaried Long Term Disability Income Plan | 502 | 08/31/03 | 03/31/04 |
| Auburn Foundry, Inc. Salaried Long-Term Care Plan | 503 | 01/31/04 | 08/31/04 |
| Salaried-Keyman Life Insurance * | 504 | 12/31/03 | 08/02/04 |
| Group Medical Plan for Salaried Employees-Auburn Foundry, Inc (initial return) | 508 | 12/31/03 | 08/02/04 |

* if required

**℥ ERNST & YOUNG**                    ■ Ernst & Young LLP

**Attachment 2**

## Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of June 24, 2004. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

### *Mediation*

A dispute shall be submitted to mediation by written notice to the other party or parties. The mediator shall be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by the CPR Institute for Dispute Resolution at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation shall be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach an amicable resolution of the dispute. The mediation shall b e treated as a settlement discussion and therefore shall be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party shall bear its own costs in the mediation. The fees and expenses of the mediator shall be shared equally by the parties.

### *Arbitration*

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("Rules") as in effect on the date of the engagement letter, or such other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom are to be designated by the parties from the CPR Panels of Distinguished Neutrals using the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

**ЭJJ** *ERNST & YOUNG*                    ■ Ernst & Young LLP

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award (a) damages inconsistent with any applicable agreement between the parties or (b) punitive damages or any other damages not measured by the prevailing party's actual damages; and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The result of the arbitration will be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**≣Ⅱ ERNST&YOUNG**                     ■ Ernst & Young LLP                    **EXHIBIT B**

**AUBURN FOUNDRY, INC.**
**Connections Check**

| Category | Name | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors | Auburn Foundry, Inc. | | | X |
| Debtor's Attorneys | Baker & Daniels (bankruptcy counsel) | | | X |
| | Rotherberg Logan & Warsco (local counsel) | X | | |
| Debtor's Other Professionals retained in connection with Chp. 11 | Mellon Consultants, Inc. (actuarial consultants) | X | | |
| | Baden Property Tax Management (property tax consultants) | X | | |
| Debtor's Officers | Michael L. Polich | X | | |
| | Dennis Maude | X | | |
| | David K. Weber | X | | |
| | Thomas Woehike | X | | |
| Debtor's Directors | David D. Hunter | X | | |
| | William E. Fink (also a 20.3% shareholder) | X | | |
| | David B. Fink (also a 20.3% shareholder) | X | | |
| | John A. Fink (also a 20.3% shareholder) | X | | |
| | Tim Borden (husband to Janet Borden, 20.3% shareholder) | X | | |
| Debtor's Major Shareholders (5% or more) | Janet Borden (20.3%) | X | | |
| | William E. Fink (20.3%) | X | | |
| | David B. Fink (20.3%) | X | | |
| | John A. Fink (20.3%) | X | | |
| All Secured Lenders, including DIP lenders | Bank of America (prepetition agent) | | | X |
| | GMAC Commercial Finance, LLC | X | | |
| | AFI Lending Group, LLC (Prepetition Subordinated Lender and DIP Lender) | X | | |
| | First Insurance Funding Corp (insurance financing arrangement that includes security interest) | X | | |
| Other Secured Creditors | A.F. Europe, Inc. | | | X |
| | Anne Meeks Davis Trust | X | | |
| | Christy Davis Trust | X | | |

**ᴇ⃥ ERNST & YOUNG**                    ▪ Ernst & Young LLP                    **EXHIBIT B**

| | | | | |
|---|---|---|---|---|
| | David B. Fink | X | | |
| | David M. Meeks, Jr. Trust | X | | |
| | DISA Industries, Inc. | X | | |
| | GMAC Busines Credit, LLC | | | X |
| | IBM Credit Corporation | X | | |
| | IBM Credit LLC | X | | |
| | Janet F. Borden | X | | |
| | John A. Fink | X | | |
| | John A. Urbaska Revocable Trust | X | | |
| | Katie Urbaska Revocable Trust | X | | |
| | Key Equipment Finance | | | X |
| | KMH Systems, Inc. | X | | |
| | Malle M. Urbaska Revocable Trust | X | | |
| | Malia Davis Mergorden Trust | X | | |
| | Marlin Leasing Corp. | X | | |
| | National City Leasing Corp. | | | X |
| | NMHG Financial Services Inc. | X | | |
| | Rudd Equipment Company | X | | |
| | Sheela B. Davis Trust | X | | |
| | Timothy S. Borden | X | | |
| | Trevor Meeks Agency | X | | |
| | William E. Fink | X | | |
| Attorneys retained in connection with Chp. 11 by all Secured Lenders | Shipley & Associates | X | | |
| | Latham & Watkins (counsel to Bank of America) | | | X |
| | Sommer & Barnard PC (counsel to AFI Lending) | X | | |
| All Substantial Unsecured Bondholders or Lenders | A.F. Europe, Inc. (subordinated debt holder) | | | X |
| Official Statutory Committees Members (All Committees) | Citizens Gas & Coke Utility | | X | |
| | DISA Industries, Inc. | X | | |
| | Fire Protection, Inc. | X | | |
| | Fairmount Minerals | X | | |
| | Miller and Company LLC | X | | |
| Official Statutory Committees Attorneys (for each Official Committee) | Ice Miller | | X | |
| Twenty Largest Unsecured Creditors (as of the date of filing) | Omnisource Corp-Tusco | | | X |
| | Auburn City Utilities | X | | |
| | Bank of America | | | X |
| | GMAC Business Credit, LLC | | | X |

**EXHIBIT B**

**ΞΙΙ ERNST & YOUNG**          ■ Ernst & Young LLP

| | | | | |
|---|---|---|---|---|
| | A.F. Europe, Inc. | | | X |
| | DeKalb County, Indiana | X | | |
| | Citizens Gas & Coke Utilities | | X | |
| | Dauber Company Inc. | X | | |
| | UNIMIN Corporation | X | | |
| | DISA Industries Inc. | X | | |
| | Miller and Company | X | | |
| | R I Lampus Co. | X | | |
| | XRI Testing - Troy | X | | |
| | Fairmont Minerals | X | | |
| | MP Steel Indiana, LLC | X | | |
| | Ashland Chemical Co | | X | |
| | Complete Drivers Inc | X | | |
| | Fire Protection Inc | X | | |
| | Motion Industries Inc | | X | |
| | Inductotherm Corp | X | | |
| Parties to the Debtor's Significant Executory Contracts and Leases | Copelco Capital, Inc. | X | | |
| | IBM Credit Corporation | X | | |
| | IBM Credit LLL | X | | |
| | Key Equipment Finance | | | X |
| | Marlin Leasing Corp. | X | | |
| | National City Leasing Corp. | | | X |
| | NMHG Financial Services Inc. | X | | |
| | Rudd Equipment Company | X | | |
| | Dell Financial Services, L.P. | X | | |
| | KMH Systems, Inc. | X | | |
| | ALFA Financial Corporation | X | | |
| | Bobcat Financial Services | X | | |
| | DISA Industries, Inc. | X | | |
| | Garrett Warehouse | X | | |
| | Adirondack Leasing Associates, Ltd. | X | | |
| | Lake Union Leasing | X | | |
| | Bohren-Mercer Warehouse and Distribution | X | | |
| Other Significant Parties-in-Interest | General Motors Corporation | | | X |
| Attorneys retained in connection with Chp. 11 by Other Significant Parties-in-Interest | Honigman, Miller, Schwartz & Cohn, LLP (counsel to General Motors) | | X | |
| | Macey Swanson and Allman (Union counsel) | X | | |