



# LEASE AGREEMENT

Lease No. 4120494                                                                                           Lease Date: MAY 8, 2001

| Lessor: KMH Systems, Inc.<br>Address: 6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee: Auburn Foundry Inc<br>Address: 635 West Eleventh St<br>Auburn, IN  46706 |
|---|---|

## TERMS AND CONDITIONS

**I. LEASING:**

(a) Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment ("**Equipment**") described in any schedule hereto ("**Schedule**"). Terms defined in a Schedule and not otherwise defined herein shall have the meanings ascribed to them in such Schedule.

(b) The obligation of Lessor to purchase Equipment from the manufacturer or supplier thereof ("**Supplier**") and to lease the same to Lessee under any Schedule shall be subject to receipt by Lessor, prior to the Lease Commencement Date (with respect to such Equipment), of each of the following documents in form and substance satisfactory to Lessor: (i) a Schedule relating to the Equipment then to be leased hereunder, (ii) evidence of insurance which complies with the requirements of Section VIII, and (iii) such other documents as Lessor may reasonably request. As a further condition to such obligations of Lessor, Lessee shall, upon delivery of such Equipment execute and deliver to Lessor a Certificate of Acceptance (which can be either, at Lessor's discretion, incorporated into the applicable Schedule or in a seperate form acceptable to the Lessor) covering such Equipment, and deliver to Lessor a document which passes title to such Equipment (in form and substance satisfactory to Lessor). Lessor hereby appoints Lessee its agent for inspection and acceptance of the Equipment from the Supplier. Upon execution by Lessee of any Certificate of Acceptance, the Equipment described thereon shall be deemed to have been delivered to, and irrevocably accepted by, Lessee for lease hereunder.

**II. TERM, RENT AND PAYMENT:**

(a) The rent payable hereunder and Lessee's right to use the Equipment shall commence on the date of execution by Lessee of the Certificate of Acceptance for such Equipment ("**Lease Commencement Date**"). The term of this Agreement shall be the period specified in the applicable Schedule. If any term is extended, the word "term" shall be deemed to refer to all extended terms, and all provisions of this Agreement shall apply during any extended terms, except as may be otherwise specifically provided in writing.

(b) Rent shall be paid to Lessor at its address stated above, except as otherwise directed by Lessor. For the period from and including the Lease Commencement Date to the first day of the month following the Lease Commencement Date ("**Basic Term Commencement Date**"), Lessee shall pay as rent ("**Interim Rent**") for the Equipment, a pro-rata portion of the Basic Term Rent for any such interim period. Interim Rent shall be due on Basic Term Commencement Date. Commencing on the Basic Term Commencement Date and on the same day of each month thereafter during the Basic Term, Lessee shall pay as rent the Basic Term Rent. If one or more Advance Rentals are payable, such Advance Rental shall be (i) set forth on the applicable Schedule, (ii) due upon acceptance by Lessor of such Schedule, and (iii) when received by Lessor, applied to the first rent payment and the balance, if any, to the final rental payment(s) under such Schedule. In no event shall any Advance Rental or any other rent payments be refunded to Lessee. If rent is not paid within ten days of its due date, Lessee agrees to pay a late charge of five cents (5¢) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any.

(c) For any Schedule, Lessee hereby acknowledges that the Basic Term Rent has been calculated on the assumption that each unit of Equipment will be operated annually during the term of the Schedule for the number of hours listed as the Annual Operating Hours listed on said Schedule, and that the condition of the Equipment upon return to the Lessor, pursuant to Section IX of this Agreement, shall comply with such assumption. In the event that it should be determined that the actual number of operating hours per any unit of Equipment exceeds the applicable Annual Operating Hours, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the applicable Schedule: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

**III. TAXES:** Except as provided in Section XIII(b), Lessee shall have no liability for taxes imposed by the United States of America or any State or political subdivision thereof which are on or measured by the net income of Lessor. Lessee shall report (to the extent that it is legally permissible) and pay promptly all other taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or the purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rentals or receipts hereunder), any Schedule, Lessor or Lessee by any foreign, federal, state or local government or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (all hereinafter called "**Taxes**"). Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, (ii) on request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports or returns show the ownership of the Equipment by Lessor, and (iv) send a copy thereof to Lessor. TO THE EXTENT ALLOWED BY APPLICABLE LAW AND UNLESS AND UNTIL LESSOR NOTIFIES LESSEE IN WRITING TO THE CONTRARY, LESSOR WILL FILE ALL PERSONAL PROPERTY TAX RETURNS COVERING THE EQUIPMENT AND WILL PAY THE PERSONAL PROPERTY TAXES LEVIED OR ASSESSED THEREON. LESSEE, UPON RECEIPT OF INVOICE, WILL PROMPTLY PAY TO LESSOR, AS SUPPLEMENTAL RENT, AN AMOUNT EQUAL TO THE PROPERTY TAXES SO PAID BY LESSOR. IF APPLICABLE LAW REQUIRES THAT THE LESSEE FILE PERSONAL PROPERTY TAX RETURNS, LESSEE SHALL DO SO AND PAY ANY APPLICABLE TAXES AND PROVIDE LESSOR WITH COPIES OF ALL SUCH PERSONAL PROPERTY TAX RETURNS, TOGETHER WITH EVIDENCE OF PAYMENT THEREFOR, NOT LATER THAN FIFTEEN DAYS FOLLOWING SUCH PAYMENT.

**IV. REPORTS:**

(a) Lessee will notify Lessor in writing, within ten days after any tax or other lien shall attach to any Equipment, of the full particulars thereof and of the location of such Equipment on the date of such notification.

(b) Lessee will permit Lessor to inspect any Equipment during normal business hours.

EXHIBIT "A" (1 of 7)

(c) Lessee will keep the Equipment at the Equipment Location (specified in the applicable Schedule) and will promptly notify Lessor prior to any relocation of Equipment. Upon the written request of Lessor, Lessee will notify Lessor forthwith in writing of the location of any Equipment as of the date of such notification.

(d) Lessee will promptly and fully report to Lessor in writing if any Equipment is lost or damaged (where the estimated repair costs would exceed 10% of its then fair market value), or is otherwise involved in an accident causing personal injury or property damage.

**V. DELIVERY, USE AND OPERATION:**

(a) All Equipment shall be shipped directly from the Supplier to Lessee.

(b) Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable federal, state, and local laws and regulations.

(c) LESSEE SHALL NOT, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, ASSIGN, MORTGAGE, SUBLET OR HYPOTHECATE ANY EQUIPMENT, OR THE INTEREST OF LESSEE HEREUNDER, NOR SHALL LESSEE REMOVE ANY EQUIPMENT FROM THE CONTINENTAL UNITED STATES.

(d) Lessee will keep the Equipment free and clear of all liens and encumbrances other than those which result from acts of Lessor.

**VI. SERVICE; REPAIRS; MAINTENANCE; USE; ALTERATIONS:** Lessee, at its sole expense, shall keep all Equipment in good repair, condition and working order in accordance with manufacturer's recommendations and furnish all labor, parts, and supplies required therefor. Lessee's obligations hereunder shall not be abrogated irregardless of any third-party maintenance contracts covering the Equipment. Lessee agrees to maintain accurate and complete records of all repairs and maintenance to the Equipment and allow Lessor to inspect such records at any time during business hours of Lessee. Any modifications or additions to the Equipment required by any governmental edict shall be promptly made by Lessee at its own expense. Without the prior written consent of Lessor, Lessee shall not make any alterations, additions or improvements to the Equipment which are permanent or which detract from its economic value or functional utility, except as may be required pursuant to the preceding sentence of this Section VI. All additions and improvements to the Equipment shall belong to and immediately become the property of Lessor and shall be returned to Lessor with the Equipment upon the expiration or earlier termination of this Agreement unless Lessor notifies Lessee to restore such Equipment to its original state.

**VII. LOSS, DAMAGE AND STIPULATED LOSS VALUE:** Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever. Lessee shall promptly and fully notify Lessor in writing if any unit of Equipment shall be or become worn out, lost, stolen, destroyed, irreparably damaged in the reasonable determination of Lessee, or permanently rendered unfit for use from any cause whatsoever (each such occurrence being hereinafter called a "Casualty Occurrence"). On the Rent Payment next succeeding a Casualty Occurrence (the "Payment Date"), Lessee shall pay Lessor the sum of (a) the Stipulated Loss Value of such unit calculated as of the Rent Payment Date next preceding such Casualty Occurrence; and (b) all Rent and other amounts which are due or accrued hereunder on or as of the Payment Date. Stipulated Loss Value as used herein shall be the sum of (i) all Rent due and accrued as of the Payment Date; plus (ii) the remaining Rent payable during the Term, present valued from each Rent Payment Date to the Payment Date using a simple interest rate equal to four percent (4 %); plus (iii) the estimated Fair Market Value (as that term is defined in the proceeding sentence) of the Equipment at the end of the term of the applicable Schedule. Fair Market Value shall be determined by Lessor at the time that the Stipulated Loss Value for the Equipment is calculated. For the purposes of this Agreement, the term "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement; (ii) in the case of any installed Equipment, that Equipment shall be valued on an installed basis; and (iii) costs of removal from current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value at least 45 days before lease expiration, Lessor shall appoint an independant appraiser (reasonably acceptable to Lessee) to determine Fair Market Value, and that determination shall be final, binding and conclusive. Lessee shall bear all costs associated with any such appraisal. Upon payment of all sums due hereunder, the Term of this Lease as to the unit of Equipment which has suffered the Casualty Occurrence shall terminate, and Lessor shall be entitled to retain possession of such unit.

**VIII. INSURANCE:** Lessee agrees, at its own expense, to keep all Equipment insured for such amounts and against such hazards as Lessor may require, including, but not limited to, insurance for damage to, or loss of, such Equipment and liability coverage for personal injuries, death or property damage. Public liability insurance shall be in the amounts set forth in the Schedule and Casualty and Property Damage shall be in an amount equal to the higher of the Stipulated Loss Value or the full replacement cost of the Equipment. All insurance policies shall name Lessor as additional insured and with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. All such policies shall be with companies, and on terms, satisfactory to Lessor. Lessee agrees to deliver to Lessor evidence of insurance satisfactory to Lessor. No insurance shall be subject to any co-insurance clause. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made as a result of such insurance policies. Any expense of Lessor in adjusting or collecting insurance shall be borne by Lessee. Said policies shall provide that the insurance may not be altered or cancelled by the insurer until after thirty (30) days written notice to Lessor. Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Equipment or any portion thereof, or (ii) satisfy any obligation of Lessee to Lessor hereunder.

**IX. RETURN OF EQUIPMENT:**

(a) Upon any expiration or termination of this Agreement or any Schedule, Lessee shall promptly, at its own cost and expense: (i) perform any testing and repairs required to place the affected units of Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for their originally intended purpose; (ii) have the Equipment inspected by an authorized dealer (or other authorized agent) for the Equipment; and (iii) return such units to a location within the continental United States that is mutually acceptable to both Lessor and Lessee. Lessee agrees to pay for all damages to Equipment, as evidenced by the Return Inspection Report, other than that attributable to ordinary wear and tear from usage in accordance with the terms of this Agreement.

(b) For any Equipment which is a lift truck, in addition to the conditions set forth in IX(a) above, at the end of the term, the Equipment will be returned with frame and major components (including, without limitation, all forks, overhead guards, load backrests and sheet metal) structurally sound, without breaks, cracks or excessive rust and corrosion. Drive motors, engines, hydraulic systems, and transmissions will operate properly at fully rated loads in all gear ranges, both forward and reverse. Smoking engines deemed excessive by the Inspector must be repaired prior to return. Water, oil and hydraulic leaks shall not be in excess of one drop per minute. Mechanical drive train will be in good condition and operate quietly without vibrations. Service and parking brakes must be able to stop Equipment within a safe distance, both forward and reverse. Steering will operate normally stop-to-stop without excessive play in linkage, or axle components such as king pins. Tires will not exhibit chunking and will have at least 40% of the original thickness remaining. All cabs, lights and other accessories will be in good operating condition and appearance. All components will have been recently serviced following manufacturer's operating and maintenance procedures. Equipment will be complete with all components, accessories, attachments, parts and pieces as when originally delivered.

(c) Until Lessee has fully complied with the requirements of Section IX (a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate such continued leasehold interest upon ten (10) days notice to Lessee.

**X. DEFAULT:**

EXHIBIT "A" (2 of 7)

(a) Lessor may in writing declare this Agreement in default if: Lessee breaches its obligation to pay rent or any other sum when due and fails to cure that breach within ten (10) days; Lessee breaches any of its insurance obligations under Section VIII; Lessee breaches any of its other obligations and fails to cure that breach within thirty (30) days after written notice thereof; any representation or warranty made by Lessee in connection with this Agreement shall be false or misleading in any material respect; Lessee becomes insolvent or ceases to do business as a going concern; any Equipment is illegally used; or a petition is filed by or against Lessee under any bankruptcy or insolvency laws. Such declaration shall apply to all Schedules except as specifically excepted by Lessor.

(b) After default, at the request of Lessor, Lessee shall comply with the provisions of Section IX (a). Lessee hereby authorizes Lessor to enter, with or without legal process, any premises where any Equipment is believed to be and take possession thereof. Lessee shall, without further demand, forthwith pay to Lessor (i) as liquidated damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment (calculated as of the rental next preceding the declaration of default), and (ii) all rentals and other sums then due hereunder. Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale; or Lessor may, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Equipment, and Lessor may use Lessee's premises for any or all of the foregoing without liability for rent, costs, damages or otherwise. The proceeds of sale, lease or other disposition, if any, shall be applied in the following order of priorities: (1) to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (3) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor. Lessee shall pay any deficiency in (1) and (2) forthwith.

(c) The foregoing remedies are cumulative, and any or all thereof may be exercised in lieu of or in addition to each other or any remedies at law, in equity, or under statute. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Lessee shall pay, in addition to any and all amounts due hereunder, any and all costs or expenses incurred by Lessor related to any default hereunder, including but not limited to reasonable attorney's fees. Waiver of any default shall not be a waiver of any other or subsequent default.

(d) Any default under the terms of this or any other agreement between Lessor and Lessee may be declared by Lessor a default under this and any such other agreement.

XI. ASSIGNMENT: Lessor may assign this Agreement or any Schedule. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

XII. NET LEASE; NO SET-OFF, ETC: This Agreement is a net lease. Lessee shall not be entitled to any abatement or reductions of, or set-offs against, said rent or other amounts, including, without limitation, those arising or allegedly arising out of claims (present or future, alleged or actual, and including claims arising out of strict tort or negligence of Lessor) of Lessee against Lessor under this Agreement or otherwise. Nor shall this Agreement terminate or the obligations of Lessee be affected by reason of any defect in or damage to, or loss of possession, use or destruction of, any Equipment from whatsoever cause. It is the intention of the parties that rents and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless the obligation to do so shall have been terminated pursuant to the express terms hereof.

XIII. INDEMNIFICATION:
(a) Lessee hereby agrees to indemnify, save and keep harmless Lessor, its agents, employees, successors and assigns from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature, in contract or tort, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result solely from Lessor's gross negligence or willful misconduct. This indemnity shall include, but not be limited to, Lessor's strict liability in tort, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing.

(b) [SUBPARAGRAPHS (b) (c) AND (d) OF THIS SECTION XIII DO NOT APPLY TO ANY SCHEDULE DESIGNATED TO BE A LEASE/PURCHASE; OTHERWISE THESE SUBPARAGRAPHS SHALL BE IN FULL FORCE AND EFFECT.] Lessee hereby acknowledges that the periodic Rent payments herein have been calculated on the assumption (which, as between Lessor and Lessee, is mutual) that the statutory maximum corporate federal income tax rate ("Tax Rate"), exclusive of any minimum tax, for calendar year taxpayers shall be as set forth in Section C of the applicable Schedule.

(c) Lessee hereby represents, warrants and covenants ("Tax Benefits") in the hands of Lessor (all references to Lessor in this Section XIII include Lessor and the consolidated taxpayer group of which Lessor is a member), and (ii) at no time during the Term of this Lease will Lessee take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or the deduction and credit specified in Section C of the Schedule ("Tax Benefits") in the hands of Lessor (all references to Lessor in this Section XIII include Lessor and the consolidated taxpayer group of which Lessor is a member), and (ii) at no time during the Term of this Lease will Lessee take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or the nor will it permit any sublessee or assignee to take or omit to take, any action for, or recapture of, all or any portion of such Tax Benefits, including the items of terms of this Lease), which will result in the disqualification of any Equipment for, or recapture of, all or any portion of such Tax Benefits.

(d) If, solely as a result of any amendment, change or modification of any law, including, without limitation, any modification (as noted on the applicable Schedule) such that addition to the Internal Revenue Code of 1986 ("Code"), the Tax Rate is higher than the Tax Rate assumption (as noted on the applicable Schedule) such that Lessor's after tax economic yields and cash flows are negatively impacted (such yields and cash flows being hereinafter referred to as "Net Economic Return"; such increase in Tax Rate, hereinafter the "TRI") or if, as a result of a breach of any representation, warranty or covenant of the Lessee contained in this Lease (i) tax counsel of Lessor shall determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, (ii) any of the Tax Benefits claimed on the Federal income tax return of Lessor are disallowed or adjusted by the Internal Revenue Service; or (iii) any of the Tax Benefits are recomputed or recaptured (any such determination, disallowance, adjustment, recomputation, or recapture hereinafter called a "Loss"), then Lessee shall pay to Lessor, as an indemnity and as additional Rent, such amount as shall, in the reasonable opinion of Lessor, cause Lessor's Net Economic Return, computed on the same assumptions (including, but not limited to, the original Tax Rate assumption), as were utilized by Lessor in originally evaluating the transaction to equal the Net Economic Return that would have been realized by Lessor if such Loss or TRI had not occurred. Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such TRI or Loss and the computation of the amount of the indemnity.

(e) All of Lessor's rights, privileges and indemnities contained in this Section XIII shall survive the expiration or other termination of this Lease or the Term hereof as it relates to any item of Equipment and the rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by, Lessor, its successors and assigns.

XIV. DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following, regardless of any negligence of Lessor (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy

EXHIBIT "A" (3 of 7)

thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment. If, and so long as, no default exists under this Lease, Lessee shall be, and hereby is, authorized during the term of this Lease to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessor and/or Lessee, as their interests may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

XV. REPRESENTATIONS AND WARRANTIES OF LESSEE: Lessee hereby represents and warrants to Lessor that on the date hereof and on the date of execution of each Schedule:

(a) Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b) The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c) No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d) The entry into and performance by Lessee of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's Certificate of Incorporation or By-Laws; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(f) The Equipment accepted under any Certificate of Acceptance is and will remain tangible personal property.

(g) Lessee is and will be at all times validly existing and in good standing under the laws of the State of its incorporation (specified in the first sentence of this Agreement).

(h) The Equipment will at all times be used for commercial or business purposes.

XVI. RENEWAL OF LEASE TERM: If an event of default has not occurred and is not continuing hereunder, Lessee, by giving Lessor not less than ninety (90) days' written notice prior to the expiration of the Basic Term of any Schedule, may elect to renew any such Schedule with reference to all, but not less than all, of the Equipment leased thereunder for the period(s) and for the renewal rental(s) (payable in advance) as may be determined by Lessor in its sole discretion. Renewal rental shall be based upon the Fair Market Rental Value of the Equipment at Schedule expiration. Fair Market Rental Value shall be determined in the same manner as Fair Market Value pursuant to Section VII above.

XVII. MISCELLANEOUS:

(a) Unless and until Lessee exercises its rights under Section XVI above, nothing herein contained shall give or convey to Lessee any right, title or interest in and to any Equipment except as a lessee. Any cancellation or termination by Lessor, pursuant to the provision of this Agreement, any Schedule, supplement or amendment hereto, or the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property become a part thereof.

(b) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith. Lessee agrees, upon Lessor's request, to execute any instrument necessary or expedient for filing, recording or perfecting the interest of Lessor. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedule and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(c) THE PARTIES TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THEM. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(d) In case of a failure of Lessee to comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated to, effect such compliance, in whole or in part; and all moneys spent and expenses and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor within five days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e) Any rent or other amount not paid to Lessor when due hereunder shall bear interest, both before and after any judgment or termination hereof, at the lesser of eighteen percent per annum or the maximum rate allowed by law. Any provisions in this Agreement and any Schedule which are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

XVIII. POWER OF ATTORNEY: LESSEE HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS LESSOR OR ITS ASSIGNEE, AS ITS AGENT AND ATTORNEY IN FACT TO EXECUTE AND FILE ON LESSEES BEHALF ANY UCC FINANCING STATEMENTS (OR THEIR EQUIVALENT), INCLUDING AMENDMENTS THERETO, WHICH LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) DEEMS ADVISABLE IN ITS DISCRETION TO SECURE THE INTERESTS OF LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) AND LESSEE FURTHER AUTHORIZES LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) TO FILE SAME WITH OR WITHOUT LESSEES SIGNATURE APPEARING THEREON.

THIS AGREEMENT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY LESSOR.

EXHIBIT "A" (4 of 7)

| LESSOR: | LESSEE: |
|---|---|
| KMH Systems, Inc. | Auburn Foundry Inc |
| By: _[signature]_ | By: _Thomas [signature]_ |
| Title: Controller | Title: VP. Finance |
| | Federal Tax Id Number: 469513695 |

EXHIBIT "A" (5 of 7)

 

## ASSIGNMENT BY DEALER

To: NMHG Financial Services, Inc. ("Assignee")
44 Old Ridgebury Road
Danbury, CT 06810

Re: Contract: **Lease Agreement**      (Schedule No. 4120494)
Contract Date: **May 8, 2001**
Seller/Lessor ("Assignor"): KMH Systems, Inc.
Buyer/Lessee/Customer: Auburn Foundry Inc
Customer Address: 635 West Eleventh St  Auburn, IN  46706

FOR VALUE RECEIVED, the undersigned Assignor hereby sells, transfers and assigns to the above Assignee, its successors and assigns, WITHOUT RECOURSE OR WARRANTY EXCEPT AS EXPRESSLY PROVIDED HEREIN, all of Assignor's right, title and interest in and to the above-described contract and all related guaranties, documents and other instruments ("Account Documents"), all equipment, collateral and other property described therein ( "Account Property"), and all rights and remedies thereunder (all of the foregoing being referred to as the "Account"). To induce Assignee to purchase the Account (but without obligating Assignee to do so) and any Schedules thereto in the future, Assignor represents and warrants that on the date hereof and as of the date of any subsequent assignment of a Schedule that refers to this Assignment:

(a) the Account is genuine and represents a valid obligation of each borrower, buyer, lessee, guarantor or other party named in any of the Account Documents (each an "Account Party");

(b) each Account Party is bona fide and in good standing;

(c) the Account Documents delivered by Assignor to Assignee correctly reflect the entire agreement between Assignor and each Account Party with respect to the Account;

(d) Assignor has delivered to Assignee all originals of the Account Documents except for those in the possession or control of an Account Party;

(e) all names, addresses, amounts, dates, signatures and other statements and facts contained in the Account Document (including, without limitation all periodic rentals or installments) are genuine, true and correct;

(f) no rental, installment or other amount on the Account that has a due date after the date of this Assignment (or, in the case of a subsequent assignment of a Schedule, the date of any such assignment) has been prepaid to Assignor;

(g) Assignor is not holding any advance rent, security deposits, or other credit supports given by any Account Party in connection with the Account and any such credit supports have been fully transferred to Assignee hereunder;

(h) each Account Document has been duly authorized, executed and delivered by each Account Party thereto and represents the legal, valid and binding obligation of such Account Party, enforceable under all applicable laws against such Account Party in accordance with its terms, except to the extent that enforcement of remedies may be limited by applicable bankruptcy, insolvency or similar laws;

(i) the Account is not in default and is free from any liens, setoffs, counterclaims and any and all other defenses;

(j) there are no claims pending or threatened by any Account Party against Assignor in connection with the Account or otherwise;

(k) any down payment, advance rental or security deposit that may be required on the Account Property has been fully paid in cash, and no part thereof has been loaned, directly or indirectly, by Assignor;

(l) all Account Property has been delivered to, and unconditionally and irrevocably accepted by, the Account Party, and is in good and working condition;

(m) the Account Documents evidence a valid reservation of title to, or first lien on, the Account Property that is effective against all persons;

(n) in circumstances where the Assignor filed, or was required to file by Assignee or by law, the Account Documents, Assignor has properly and timely filed or recorded any Account Documents or instruments as may be required under all applicable filing and recording statutes, and has done all other acts necessary to ensure that Assignor's lien or other interest in the Account Property is and will be superior to that of all other persons;

(o) in circumstances where Assignee has elected to file the Account Documents, Assignor has properly and timely supplied to Assignee any Account Documents or instruments as may be required for filing under all applicable filing and recording statutes, and has done all other acts necessary to ensure that Assignor's lien or other interest in the Account Property is and will be superior to that of all other persons;

(p) Assignor has the right to assign the Account to Assignee and this Assignment conveys to Assignee good and valid title, at law and in equity, to the Account and to the Account Property, free and clear of any and all liens, claims and encumbrances of any kind or nature whatsoever.

EXHIBIT "A" (6 of 7)

For the purposes of any future assignments which are made pursuant to the terms and conditions of this Assignment, the terms "Account Documents" and "Account Property" as used herein shall refer in such cases to the specific contracts and the related property being assigned by such future assignment.

In the event of breach of any of the foregoing representations or warranties, Assignor will upon demand repurchase the Account (including, without limitation, the Account Property) and pay Assignee in cash or its equivalent the sum of (i) the amount remaining to be paid thereon by any Account Party, less Assignee's unearned finance charges, plus (ii) the amount (if any) which was paid to Assignee by Assignor as a part of the purchase price for the Account based on the expected residual value of the Account Property at the expiration of the Account. Any such repurchase obligation shall arise without first requiring Assignee to proceed against any Account Party or other person, or the Account Property or any other security. After such payment by Assignor, and provided that Assignor has performed all of its other obligations under this Assignment, Assignee shall reassign the Account (including, without limitation, any and all of Assignor's interest in the Account Property) upon request of Assignor without recourse to or warranty of any kind whatsoever by Assignee. If Assignor fails to pay any amount that may come due to Assignee hereunder on its due date, then (i) interest shall accrue thereon from the due date until paid in full (both before and after any judgment) at a rate equal to the lesser of eighteen percent (18%) per annum or the maximum rate not prohibited by law, and (ii) Assignor shall reimburse Assignee upon demand for any and all collection and enforcement costs (including, without limitation, reasonable attorneys' fees). Assignor agrees that Assignee may audit its books and records relating to the Account upon any default by Assignor.

Any amount retained by Assignee as a reserve or holdback, as indicated on the voucher of Assignee's draft in payment of the purchase price for the Account, shall be held by Assignee as security for, but not in lieu of, performance of Assignor's obligations under this Assignment or any other agreement with Assignee. If Assignor fails to perform any of such obligations, then Assignee may apply said reserve or holdback, or so much thereof as may be necessary, or any other property of Assignor in Assignee's possession, to satisfy such obligations of Assignor. Such reserve or holdback need not be kept separate from Assignee's funds and shall not bear any interest or other income. When the Account has been paid in full and all obligations of Assignor to Assignee have been performed, under this Assignment or otherwise, Assignee shall return to Assignor any amounts remaining in the reserve.

THIS ASSIGNMENT CONSTITUTES A SALE OF 100% OWNERSHIP INTEREST IN THE ACCOUNT AND SHALL IN NO WAY BE CONSTRUED AS AN EXTENSION OF CREDIT BY ASSIGNEE TO ASSIGNOR. Assignor agrees to promptly deliver to Assignee the full amount of any security deposit required by any of the Account Documents. Except as otherwise expressly provided herein, Assignor shall remain liable to perform all of its obligations in connection with the Account (including, without limitation, any obligation to provide maintenance or other services for any of the Account Property) and Assignee shall not be liable for any of the obligations of Assignor. Assignor irrevocably authorizes Assignee, in the name of Assignee or Assignor, to notify any Account Party of this Assignment, to collect and retain any and all rentals, installments and/or other sums on the Account, and to take any other action with respect to the Account which Assignor might otherwise take. Assignor agrees that Assignee may sign and endorse Assignor's name upon any remittances received from any Account Party on the Account or any notices of assignment of the Account. Assignee may (without notice to Assignor and without affecting Assignor's liability hereunder), but Assignor may not, enter into any settlement, extension, forbearance or other variation in terms in connection with the Account, or discharge or release the obligations of any Account Party or any other person, by operation of law or otherwise. Assignor shall not make any collections or repossessions on the Account, nor accept returns or make substitutions for Account Property, except with Assignee's prior written consent. Assignor waives and releases any right, title or interest that it may have (whether pursuant to a "cross-collateralization" provision or otherwise) in and to any of the Account Property. Assignor agrees to take such further action, and to execute such further documents, which may be reasonably requested by Assignee to give effect to the transactions contemplated by this Assignment.

If by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, Assignee shall be prohibited from exercising any of its rights or remedies against any Account Party, then as between Assignee and Assignor such prohibition shall be of no force and effect. The obligations of Assignor hereunder shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of the Account is rescinded, reduced or otherwise restored or returned by Assignee, all as though such payment or performance had not been made.

This Assignment incorporates all terms and conditions relating to purchase of the Account by Assignee, supersedes all prior agreements (whether written, verbal, implied or otherwise) with respect thereto, and may not be modified except by a duly executed written agreement. This Assignment relates only to the Account identified above, and shall in no way affect, modify, or supersede any written agreement between Assignor and Assignee which does not relate to the Account. Assignor waives notice of acceptance. Assignee's failure or delay in exercising any right or remedy shall not constitute a waiver. Waiver by Assignee of any default shall not constitute a waiver of any other default or of any of the provisions hereof.

ASSIGNOR HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS ASSIGNMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN ASSIGNOR AND ASSIGNEE RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THEM. The scope of this waiver is intended to be all encompassing of any and all disputes that may be filed in any court (including, without limitation, contract claims, tort claims, breach of duty claims, and all other common law and statutory claims). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS ASSIGNMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. In the event of litigation, this Assignment may be filed as a written consent to a trial by the court.

ASSIGNOR:

KMH Systems, Inc.

By: _William Fry_ (signature)

Title: _Controller_

Date: _8/21/01_

Witness: _(signature)_

EXHIBIT "A" (7 of 7)