## SEVENTH AMENDMENT

This Seventh Amendment (this "Amendment") is dated as of October 7, 2004 and is made by and among Auburn Foundry, Inc. ("Auburn" or the "Debtor"), Bank of America, N.A. ("BofA"), GMAC Commercial Finance, LLC successor by merger to GMAC Business Credit LLC ("GMAC" and, together with BofA, the "Lenders") and AFI Lending Group, LLC ("AFI Lending").

## W I T N E S S E T H:

WHEREAS, the Debtor, the Lenders and AFI Lending entered into that certain Agreement for Long-Term Cash Use and Senior Debtor-In-Possession Financing, dated as of April 19, 2004 (as the same may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced, the "Cash Use Agreement");

WHEREAS, on May 12, 2004, the Bankruptcy Court for the Northern District of Indiana (the "Court") entered the (i) Final Order Approving Joint Motion Pursuant to Rule 4001(B) to Approve Agreement Concerning Use of Cash Collateral (the "Final Cash Collateral Order") and (ii) Final Order Approving Joint Motion Pursuant to Rule 4001(C) to Approve Agreement Concerning Senior DIP Financing;

WHEREAS, pursuant to Section 18 of the Cash Use Agreement, no later than May 20, 2004, the Debtor was required to file with the Court (i) the Plan and Disclosure Statement and (ii) a motion to approve the Disclosure Statement (the "Filing Date Requirements");

WHEREAS, pursuant to Section 8 of the Cash Use Agreement, the Lenders' willingness to make loans under the Cash Use Agreement and the Lenders' consent to the Debtor's use of cash collateral immediately and automatically terminates and all DIP Indebtedness is immediately due and payable in cash upon the earliest to occur of certain specified events (the "Termination Date");

WHEREAS, on or about May 25, 2004, the Debtor and the Lenders executed a Waiver and Amendment whereby they amended the Cash Use Agreement to extend the Filing Date Requirements to June 8, 2004;

WHEREAS, on or about June 8, 2004, the Debtor and the Lenders executed a Second Waiver and Amendment whereby they amended the Cash Use Agreement to extend the Filing Date Requirements to July 7, 2004;

WHEREAS, on or about July 8, 2004, the Debtor and the Lenders executed a Third Waiver and Amendment whereby they amended the Cash Use Agreement, effective as of July 7, 2004, to extend the Filing Date requirements to July 12, 2004;

WHEREAS, on or about August 31, 2004, the Debtor and the Lenders executed a Fourth Amendment (the "Fourth Amendment") whereby they amended the Cash Use Agreement, effective as of August 31, 2004, to extend the Termination Date to September 15, 2004;

WHEREAS, on or about September 15, 2004, the Debtor and the Lenders executed a Fifth Waiver and Amendment whereby they amended the Cash Use Agreement, effective as of September 15, 2004, to extend the Termination Date to September 30, 2004;

WHEREAS, on or about September 30, 2004, the Debtor and the Lenders executed a Sixth Waiver and Amendment whereby they amended the Cash Use Agreement, effective as of September 30, 2004, to extend the Termination Date to October 7, 2004;

WHEREAS, Section 16 of the Cash Use Agreement states that the Initial Approved Budget, as defined therein, for the period from April 9, 2004 through September 3, 2004 may be modified or supplemented from time to time by additional budgets to which the Lenders and the Debtor agree;

WHEREAS, Section 27 of the Cash Use Agreement permits the Debtor and the Lenders to seek to modify or amend, *inter alia*, the Cash Use Agreement and the Final Cash Collateral Order.

WHEREAS, the Debtor, the Lenders and AFI Lending have agreed to further amend the Cash Use Agreement, in each case subject to the terms and conditions specified herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree, covenant and warrant as follows:

**SECTION 1. Definitions**. All capitalized terms used herein (including the recitals hereto) shall have the respective meanings assigned thereto in the Cash Use Agreement unless otherwise defined herein.

**SECTION 2. No Waivers; Reservation of Rights.**

(a) The Lenders have not waived, nor by this Amendment are waiving, or have any intention of waiving, any violations of the Cash Use Agreement which may be continuing on the date hereof or any violations which may occur after the date hereof.

(b) The Lenders and the Debtor reserve the right, in their sole respective discretion, to exercise any or all of their respective rights and remedies under the Cash Use Agreement as a result of any violation of the Cash Use Agreement which may be continuing on the date hereof or any violation of the Cash Use Agreement which may occur after the date hereof, and the Lenders and the Debtor have not waived any of such rights or remedies, and nothing in this Amendment, and no delay on their part in exercising any such rights or remedies, should be construed as a waiver of any such rights or remedies.

**SECTION 3. Amendment to Cash Use Agreement.** The Cash Use Agreement is hereby amended as follows:

Section 8(i) of the Cash Use Agreement is hereby amended and restated by deleting "October 7, 2004" and replacing it with "November 5, 2004." Provided, however, that such section

FWIMAN1 357824v1
CH\719474.2

shall be further amended by deleting "November 5, 2004" and replacing it with "December 31, 2004" at such time as the Debtor, Lenders and AFI Lending shall in writing agree that Debtor has submitted, and Lenders and AFI Lending have each approved in their sole and absolute discretion, a budget and financial projections for Debtor's operations through December 31, 2005.

Section 12(b) of the Cash Use Agreement is hereby amended and restated by deleting "October 7, 2004" each of the two times it appears therein and replacing it with November 5, 2004." Provided, however, that such section shall be further amended by deleting "November 5, 2004" and replacing it with "December 31, 2004" at such time as the Debtor, Lenders and AFI Lending shall in writing agree that Debtor has submitted, and Lenders and AFI Lending have each approved in their sole and absolute discretion, a budget and financial projections for Debtor's operations through December 31, 2005.

Section 18 (a) and (b) shall be amended by substituting the dates "November 5, 2004" and "November 15, 2004", respectively, as the dates by which Debtor shall tender a draft Amended Disclosure Statement and Plan of Reorganization to Lenders and thereafter file Debtor's Amended Disclosure Statement and Plan of Reorganization.

Section 18(d) shall be amended by deleting "1,300,000" and replacing it with "$1,800,000." Provided, however, that such section shall be further amended by deleting "$1,800,000" and replacing it with "$3,300,000" at such time as the Debtor, Lenders and AFI Lending shall in writing agree that Debtor has submitted, and Lenders and AFI Lending have each approved in their sole and absolute discretion, a budget and financial projections for Debtor's operations through December 31, 2005.

Section 20 of the Cash Use Agreement is hereby amended and restated in its entirety by inserting the following provision:

> 20. <u>Subordinated DIP</u>. All advances by AFI Lending to the Debtor on and after the Filing Date up to $1,800,000 (the "<u>Subordinated DIP</u>") shall be subject and subordinate to the DIP Indebtedness and the amount (up to $1,050,000), if any, by which the value of the Lenders' Pre-Petition Collateral, including, without limitation, Cash Collateral, has been reduced, charged, or is subject to future reduction or charge, by the incurrence of any allowable and unpaid administrative expenses, surcharges (arising under § 506(c) of the Bankruptcy Code or otherwise), liens, wage claims, taxes (including, without limitation, real estate taxes) or other items or amounts arising on or after the Filing Date (the "<u>Priming Diminution</u>") and the amount (up to $1,800,000 less the Priming Diminution), if any, by which the Pre-Petition Collateral consisting of cash, the collectible amount of accounts receivable and inventory has not been replaced by DIP Collateral consisting of cash, the collectible amount of accounts receivable and inventory (the "<u>Collateral Diminution</u>"), and, once advanced, shall not be repaid in whole or in part by the Debtor until the DIP

Indebtedness has been indefeasibly paid in full, and the Priming Diminution and the Collateral Diminution have been determined by the Court in a final, non-appealable order (the "<u>Subordinated DIP Repayment Date</u>"). Upon the extension of the Termination Date to December 31, 2004, each reference in this Section to "$1,800,000" shall automatically, and without further written amendment, be changed to "$3,300,000." On the Subordinated DIP Repayment Date, the Debtor shall repay to AFI Lending only the amount by which the Subordinated DIP outstanding at such time exceeds the Priming Diminution and the Collateral Diminution. The remainder of the Subordinated DIP shall only be repaid by the Debtor after indefeasible payment in full of all of the Indebtedness. For example, if, after the increase in the amount of the Subordinated DIP to $3,300,000, the amount of the Subordinated DIP was $2,000,000 and the Priming Diminution and the Collateral Diminution were determined to be $500,000 and $700,000, respectively, then on the Subordinated DIP Repayment Date, AFI Lending would receive payment on the Subordinated DIP of $800,000. The balance of the Subordinated DIP in the amount of $1,200,000 would remain outstanding until full indefeasible payment to the Lenders of the Indebtedness.

**SECTION 4.** <u>**Additional Agreements**</u>.

The Lenders and the Debtor agree that the budget attached as Exhibit A hereto (the "<u>Budget</u>") shall constitute an agreed-upon supplement to the Initial Approved Budget for the period ending November 5, 2004 within the meaning of Section 16 of the Cash Use Agreement. Upon the further amendment of the Termination Date from "November 5, 2004" to "December 31, 2004," the budget and financial projections provided by Debtor for its operations through December 31, 2005 shall constitute an agreed-upon supplement to the Initial Approved Budget for the period ending December 31, 2004 within the meaning of Section 16 of the Cash Use Agreement.

Any loan advances hereafter made to Debtor by AFI Lending in excess of the $1,300,000 presently advanced shall be credited against any obligation of AFI Lending to make a capital contribution to New AFI upon the Effective Date of a confirmed Plan of Reorganization, if such obligation hereafter exists by agreement with Lenders, or otherwise.

**SECTION 5.** <u>**Conditions to Effectiveness of This Amendment**</u>. This Amendment shall become effective upon full execution of this Amendment and delivery by each party to this Amendment to each other party to this Amendment a copy of this Amendment executed by such party.

**SECTION 6.** <u>**Provisions of General Application**</u>.

(a) **Effect of this Amendment.** Except as expressly set forth herein, no other changes or modifications to the Cash Use Agreement are intended or implied and in all other

-4-

respects the Cash Use Agreement is hereby specifically ratified, restated and confirmed by all parties hereto as of the date hereof. To the extent of conflict between the terms of this Amendment and the Cash Use Agreement, the terms of this Amendment shall control. The Cash Use Agreement and this Amendment shall be read and construed as one agreement.

(b) **Binding Effect.** This Amendment shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

(c) **Survival of Representations and Warranties.** All representations and warranties made in this Amendment shall survive the execution and delivery of this Amendment.

(d) **Severability.** Any provision of this Amendment held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Amendment.

(e) **Reviewed by Attorneys.** The Debtor and the Lenders represent and warrant to each other and AFI Lending that they (i) understand fully the terms of this Amendment and the consequences of the execution and delivery of this Amendment, (ii) have been afforded an opportunity to have this Amendment reviewed by, and to discuss this Amendment with such attorneys and other persons they may wish, and (iii) have entered into this Amendment and executed and delivered all documents in connection herewith of their own free will and accord and without threat, duress or other coercion of any kind by any person.

(f) **Counterparts.** This Amendment may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

(g) **Headings**. Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purposes.

IN WITNESS WHEREOF, this Amendment has been duly executed as of the day and year first above written.

AUBURN FOUNDRY, INC.

By: *[signature]*

Its: CFO

BANK OF AMERICA, N. A.

By: _____

Its: _____

GMAC COMMERCIAL FINANCE LLC, SUCCESSOR BY MERGER TO GMAC BUSINESS CREDIT LLC

By: _____

Its: _____

AFI LENDING GROUP, LLC

By: _____

Its: _____

FWIMAN1 357824v1
CH\719474.2

**AUBURN FOUNDRY, INC.**

By: _____

Its: _____

**BANK OF AMERICA, N. A.**

By: _____*Robert Barthwmy*_____

Its: _____*VP.*_____

**GMAC COMMERCIAL FINANCE LLC, SUCCESSOR BY MERGER TO GMAC BUSINESS CREDIT LLC**

By: _____

Its: _____

**AFI LENDING GROUP, LLC**

By: _____

Its: _____

-6-

AUBURN FOUNDRY, INC.

By: _____

Its: _____

BANK OF AMERICA, N. A.

By: _____

Its: _____

GMAC COMMERCIAL FINANCE LLC,
SUCCESSOR BY MERGER TO GMAC
BUSINESS CREDIT LLC

By: *[signature]*

Its: *SENIOR VICE PRESIDENT*

AFI LENDING GROUP, LLC

By: _____

Its: _____

**AUBURN FOUNDRY, INC.**

By: _____

Its: _____

**BANK OF AMERICA, N. A.**

By: _____

Its: _____

**GMAC COMMERCIAL FINANCE LLC, SUCCESSOR BY MERGER TO GMAC BUSINESS CREDIT LLC**

By: _____

Its: _____

**AFI LENDING GROUP, LLC**

By: *[signature: Timothy S Bowden]*

Its: Managing member

-6-

FWIMAN1 357824v1
CH\719474.2

Cash Flow Analysis Jan thru Feb
Auburn Foundry Inc
Weekly Cash Flow

| Week ending dates | 10/8/2004 | 10/15/2004 | 10/22/2004 | 10/29/2004 | 11/5/2004 |
|---|---|---|---|---|---|
| **Sales for week** | | | | | |
| Pounds | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 |
| Dollars | $1,728 | $1,728 | $1,728 | $1,728 | $1,728 |
| Collections | $1,350 | $1,350 | $1,350 | $1,400 | $2,600 |
| Non A/R | 5 | 5 | 5 | 5 | 5 |
| Total payroll, taxes, and benefits | 580 | 465 | 580 | 390 | 580 |
| Total purchase of materials | 959 | 978 | 986 | 990 | 959 |
| Utilities | 150 | 150 | 270 | 150 | 150 |
| Bank Fee/Interest | 6 | 10 | | | 6 |
| Total payments | 1,695 | 1,603 | 1,836 | 1,530 | 1,695 |
| Cash Flow from Operations | ($340) | ($248) | ($481) | ($125) | $910 |
| **Professional/Bankruptcy Costs** | | | | | |
| Debtor Counsel | | 75 | | 0 | |
| Debtor Financial Advisor | | | | 0 | |
| Other | | | | 0 | |
| Creditor Committee | 35 | | | 0 | 10 |
| US Trustee | | | | 10 | |
| Draw on letter of credit | 1,021 | | | | |
| Renew Liability Insurance | 50 | | | | 50 |
| Total Professional/Bankruptcy Costs | $1,106 | $75 | $0 | $10 | $60 |
| Total cash inflow ( outflow ) | ($1,446) | ($323) | ($481) | ($135) | $850 |
| Cumulative Cash Flow | ($1,430) | ($1,753) | ($2,234) | ($2,369) | ($1,519) |
| **Borrowing Base** | | | | | |
| Acc't Rec - beg | $9,669 | $10,047 | $10,425 | $10,803 | $11,131 |
| Plus Sales | $1,728 | $1,728 | $1,728 | $1,728 | $1,728 |
| Less Cash Receipts | ($1,350) | ($1,350) | ($1,350) | ($1,400) | ($2,600) |
| Acc't Rec - end | 10,047 | 10,425 | 10,803 | 11,131 | 10,259 |
| Less Ineligibles | (2,155) | (2,155) | (2,155) | (2,155) | (2,155) |
| Eligible Rec | 7,892 | 8,270 | 8,648 | 8,976 | 8,104 |
| Available from A/R - 85% | 6,708 | 7,030 | 7,351 | 7,630 | 6,888 |
| Available from Inv | 1,456 | 1,456 | 1,456 | 1,456 | 1,456 |
| Overadvance | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 |
| Total borrowing base | 9,489 | 9,811 | 10,132 | 10,411 | 9,669 |
| **Line of Credit** | | | | | |
| Beg Bal | 7,482 | 8,928 | 9,251 | 9,732 | 9,867 |
| Less Cash Receipts | ($1,355) | ($1,355) | ($1,355) | ($1,405) | ($2,605) |
| Plus borrowings | $2,801 | $1,678 | $1,836 | $1,540 | $1,755 |
| | 8,928 | 9,251 | 9,732 | 9,867 | 9,017 |
| Plus Letter of Credit | 0 | | | | |
| Total Line of Credit | 8,928 | 9,251 | 9,732 | 9,867 | 9,017 |
| Availability | 561 | 560 | 400 | 544 | 652 |