IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

IN THE MATTER OF:

AUBURN FOUNDRY, INC

      Debtor.

Chapter 11

BK Case No. 04-10427

**AGREED ORDER CONCERNING**
**CONTINUED USE OF CASH COLLATERAL**

      Upon the Joint Motion of Auburn Foundry, Inc. ("Auburn" or the "Debtor") and the Senior Lenders to Approve Agreement Concerning Continued Use of Cash Collateral (the "Cash Collateral Motion") for an Agreed Order extending the use of cash collateral pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedures upon the terms and conditions set forth in this Order and the Agreement, as amended by a Seventh Amendment, which are attached hereto as Exhibits A and B, respectively, and incorporated herein by reference (the "Agreement")[1], as amended by a Seventh Amendment thereto.  A final hearing was held on May 12, 2004, and the Court entered a final order (the "Final Order") approving the Agreement and authorizing the use of cash collateral through August 31, 2004.  The parties entered into three written consensual extensions of cash use through September 15, 2004, September 30, 2004, and October 7, 2004, respectively, and agreed to further cash use thereafter.  The Court having considered the Cash Collateral Motion and any objection thereto, this Court having found good and sufficient cause appearing therefore;

      The Court hereby makes the following FINDINGS:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

A.      On February 8, 2004 (the "Filing Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor is continuing in possession of its property, and operating and managing its business, as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.      This Court has jurisdiction over this Chapter 11 Case and the Cash Collateral Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Cash Collateral Motion constitutes a core proceeding as defined in 28. U.S.C. § 157(b)(2).

C.      Notice of the relief requested in the Cash Collateral Motion has been given to (i) the Office of the United States Trustee, (ii) the official committee of unsecured creditors (the "Committee"), (iii) known holders of pre-petition liens against the Debtor's property, and (iv) other parties in interest who have filed requests for notice in this Chapter 11 Case with the Court.

D.      The Debtor, AFI Lending and the Lenders have agreed that as of the Filing Date, the Debtor was liable to the Lenders in the aggregate principal amount of approximately $23,312,638.40 in respect of loans made by the Lenders to the Debtor pursuant to the Pre-Petition Credit Agreement (plus attorneys' fees, costs and interest accrued and unpaid thereon, to the extent allowed) (the "Pre-Petition Indebtedness").  The Pre-Petition Indebtedness includes $10,901,915.66 of Revolving Loans (including undrawn Letters of Credit) and $12,410,722.74 of Term Loans.  The Pre-Petition Indebtedness consisting of Revolving Loans (including all undrawn Letters of Credit) plus attorneys' fees, costs and interest accrued and unpaid thereon, to the extent allowed, is referred to herein as the "Pre-Petition Revolver Indebtedness."

E.      This Court concludes that entry of this Agreed Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things,

FWIMAN1 358581v2

allow for the flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business.

   F.  Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED** that:

   1.  <u>Motion Granted</u>.  The Cash Collateral Motion is granted, subject to the terms and conditions set forth in this Agreed Order and the Agreement.

   2.  <u>Agreement Approved</u>.  The Agreement, as amended by a Seventh Amendment thereto, is hereby approved in all respects.

   3.  <u>Authorization</u>.  Upon the terms and conditions set forth in the Agreement, the Debtor is expressly authorized and empowered to use Cash Collateral, and enter into and perform its obligations under the Agreement and the other DIP Loan Documents.

   4.  <u>Replacement Liens</u>.  The Lenders are hereby granted as security for the repayment of all the Lender's Cash Collateral used by the Debtor, pursuant to § 363 of the Bankruptcy Code, a valid and perfected lien and security interest in the DIP Collateral with the priority set forth in paragraph 9 of the Agreement.  Other than the liens and security interests in favor of the Lenders pursuant to the Agreement, the DIP Loan Documents and this Agreed Order, the Prior Claims and the claims of First Insurance Funding Corp., as described more fully in the Cash Collateral Motion filed herein on April 7, 2004, no other claims, liens or security interests prior to or <u>pari passu</u> with the claims, liens or security interests of the Lenders shall attach to the DIP Collateral in this or any superceding or subsequent chapter 11 or chapter 7 case (collectively, the "Successor Case") without the express prior written consent of the Lenders.

FWIMAN1 358581v2

5.    <u>Limitations on Post-Petition Liens and Cross Collateralization</u>.  The post-petition liens and security interests granted in the DIP Collateral shall secure the Pre-Petition Indebtedness only to the limited extent set forth in paragraph 10 of the Agreement.  The Lenders shall retain all of the rights available to them pursuant to § 507(b) of the Bankruptcy Code.

6.    <u>Modification of Automatic Stay</u>.  The automatic stay pursuant to § 362 of the Bankruptcy Code is hereby modified on the limited basis described in paragraph 12 of the Agreement.  Upon the occurrence of a Termination Date, the Lenders shall be entitled to, among other things, (i) revoke the Debtor's right, if any, under this Agreed Order, the Agreement and the DIP Loan Documents to use Cash Collateral (provided, however, that the Debtor may use the Base Operating funds to pay expenses arising or occurring after the occurrence of a Termination Date until entry of the Stay Relief Order (as defined below)), (ii) file an emergency motion for relief from the automatic stay for the purpose of foreclosing or otherwise enforcing their liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the Agreement, the DIP Loan Documents, this Agreed Order or applicable law, and (iii) to obtain an expedited hearing on such motion upon four (4) days' notice to counsel for the Debtor, counsel for any Committee, counsel for AFI Lending and the U.S. Trustee.  The Lenders shall be entitled to such relief from the automatic stay (a "Stay Relief Order") upon a showing that a Termination Date has occurred and is continuing; provided, however, that if the Debtor pays the DIP Indebtedness in full and the Debtor proves that notwithstanding the occurrence of a Termination Date, the Lenders are and will continue to be adequately protected through November 5, 2004 (or December 31, 2004, if cash use is extended to that date in accordance with the Agreement), the Debtor shall be entitled to seek an order of the Court to continue to use Cash Collateral

limited to the Borrowing Base through November 5, 2004 (or December 31, 2004, if cash use is extended to that date in accordance with the Agreement).

7.    <u>Limitation on Right to Seek Further Use of Cash Collateral</u>.  To induce the Lenders to permit the Debtor to use Cash Collateral and borrow additional funds, the Debtor has agreed that as long as any Indebtedness is outstanding, the Debtor shall not seek, assert, argue for, encourage or support the use of Cash Collateral of the Lenders by the Debtor except as expressly permitted and consented to by the Lenders pursuant to the terms of the Agreement; provided, however, that upon the occurrence of a material unforeseen change in the Debtor's circumstances, the Debtor may seek to use the Cash Collateral of the Lenders (subject to proving the Lenders are adequately protected) on such terms as will not cause the Lenders to suffer a material adverse effect of their rights or interests hereunder or the Lenders' collateral position as of the Filing Date less any permanent reduction of Pre-Petition Indebtedness after the Filing Date (provided, however, that the inability of the Debtor to comply with the Borrowing Base alone shall not constitute a material unforeseen change).

8.    <u>Perfection of New Liens</u>.  All liens and security interests on or in the DIP Collateral granted to the Lenders by the Agreement and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection.  The Lenders may (in their discretion) but shall not be required to, file a certified copy of this Agreement in any filing or recording office in any country or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall

5

be accepted and shall constitute further evidence of perfection of the Lenders' interests in the DIP

Collateral.

9.    <u>Binding on Successors</u>.  The provisions of this Agreed Order and the

Agreement shall be binding upon and inure to the benefit of the Lenders, the Debtor, and their

respective successors and assigns (including any trustee or other estate representative appointed

as a representative of the Debtor's estate or of any estate in any Successor Case).  Except as

otherwise explicitly set forth in this Agreed Order or the Agreement, no third parties are intended

to be or shall be deemed to be third party beneficiaries of this Agreed Order, the Agreement or

the DIP Loan Documents.

10.    <u>Effect of Dismissal or Conversion</u>.  If the Chapter 11 Case is dismissed,

converted, otherwise superseded, the Lenders' rights and remedies under this Agreed Order, the

Agreement and the DIP Loan Documents shall be and remain in full force and effect as if such

Chapter 11 Case had not been dismissed, converted, superseded.  Furthermore, notwithstanding

any such dismissal, conversion, supercission, all of the terms and conditions of this Agreed

Order and the Agreement, including, without limitation, the liens and the priorities granted

hereunder and thereunder, shall remain in full force and effect, to the extent permitted by

applicable law.

11.    <u>Effect of Modification</u>.  Except as permitted hereby, the Debtor shall not,

without the Lenders' prior written consent, seek to modify, vacate or amend this Agreed Order,

the Agreement or any DIP Loan Documents.  If any of the provisions of this Agreed Order or the

Agreement are hereafter modified, vacated or stayed by subsequent order of this or any other

Court, such stay, modification or vacatur shall not affect the validity of any Indebtedness

outstanding immediately prior to the effective time of such stay, modification or vacation, or the

FWIMAN1 358581v2

validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Indebtedness.

    12. <u>Objections Overruled or Withdrawn</u>.  All objections to the entry of this Agreed Order have been withdrawn or overruled.

    13. <u>Controlling Effect</u>.  To the extent any provisions in this Agreed Order, the Preliminary Order, the Final Order, or the Agreement conflict with any provisions of the Cash Collateral Motion, any Pre-Petition Loan Documents, any DIP Loan Documents, any prior debtor-in-possession financing order or any prior cash collateral order, the provisions of this Agreed Order and the Agreement shall control.

    14. <u>Order Effective</u>.  This Agreed Order shall be effective as of the date of signature by the Court.

IT IS SO ORDERED.

DATED _____, 2004.


    _____
    UNITED STATES BANKRUPTCY JUDGE

FWIMAN1 358581v2