IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

## MOTION TO APPROVE COMPROMISE
## WITH MICHAEL L. POLICH

The Debtor-in-Possession, Auburn Foundry, Inc. ("AFI" or the "Debtor"),

respectfully submits this Motion to Approve Compromise with Michael L. Polich (the "Motion")

and in support thereof states as follows:

1.     AFI filed a Voluntary Petition under Chapter 11 of the United States

Bankruptcy Code on February 8, 2004 and, since that date, has continued in possession of its

property and management of its business as debtor-in-possession pursuant to Sections 1107 and

1108 of the Bankruptcy Code.

2.     The Debtor and Michael L. Polich are parties to a certain executory

employment contract (the "Contract").  Michael L. Polich's employment commenced, under the

terms of the Contract, on October 8, 1997.  Attached hereto as Exhibit A and incorporated herein

by reference is a copy of the Contract.

3.     The Debtor seeks to reject the Contract through a contemporaneously filed

Motion to Reject Executory Employment Contract of Michael L. Polich and to enter into a post-

petition compromise agreement mutually agreeable to AFI and Michael L. Polich.

4.     The rejection by AFI described herein will create rejection damages in

favor of Michael L. Polich, the exact amount of which is subject to dispute.

5.    Michael L. Polich is owed severance amounts under his existing employment agreement from AFI in addition to amounts from accrued vacation allowances and work performed while employed by AFI.

6.    AFI and Michael L. Polich have agreed to compromise and settle Debtor's obligations pursuant to the agreement (the "Agreement") attached hereto as Exhibit B and to provide certain other benefits to both parties as more fully set forth in Exhibit B. The Agreement provides, in pertinent part, that (1) AFI will reject the Contract, thus terminating the employment relationship between AFI and Michael L. Polich; (2) AFI and Michael L. Polich will enter into a post-petition agreement whereby AFI will provide Michael L. Polich with forty(40) days of severance amounts as set forth more fully in the Agreement, subject to the terms and conditions therein; (3) AFI will provide Michael L. Polich health, dental, and life insurance benefits for the duration of the "Severance Payment" period. as set forth more fully in the Agreement, subject to the terms and conditions therein; and (4) Michael L. Polich will waive any potential, existing, or remaining claims against AFI as they relate to the Contract as set forth more fully in the Agreement, subject to the terms and conditions therein. Resolving potential disputes concerning the existing agreement and obtaining the additional proposed benefits of the new agreement reduces potential costs and otherwise protects AFI

7.    The Agreement is conditioned upon this Court's approval of this Motion and the contemporaneously filed Motion to Reject Executory Contract.

8.    Notwithstanding any provision of the Agreement to the contrary, the Agreement shall be effective on the date of entry of the Order approving the Agreement, with each of its provisions applied retroactively to a date ten (10) days prior thereto.

WHEREFORE, Debtor, by counsel pursuant to Bankruptcy Rule 9019, respectfully requests that the Court approve its compromise with Michael L. Polich as described more fully herein.

Dated: November 15, 2004        BAKER & DANIELS

By: /s/ John R Burns III
       John R Burns III (#3016-02)
       Mark A. Werling (#20426-02)
       111 East Wayne Street, Suite 800
       Fort Wayne, Indiana 46802
       Telephone: (260) 424-8000
       Facsimile: (260) 460-1700

ATTORNEYS FOR THE DEBTOR,
AUBURN FOUNDRY, INC.



# auburn foundry, inc.

**SINCE 1911**    *635-639 WEST ELEVENTH STREET* ■ *AUBURN, INDIANA 46706* ■  **TELEPHONE (219) 925-0900**
**FAX (219) 925-5137**

October 7, 1997

Mr. Michael L. Polich
1001 Elmsmere Drive
Northville, Michigan  48167

Dear Mr. Polich:

Prior to today, you and I have discussed your possible employment by Auburn Foundry, Inc. and have engaged in mutual discussions to that end.  We have negotiated between us the initial terms of your employment.  This letter confirms the essential employment information which we have agreed upon.

## I.    Duties.

In your position as Vice President/Sales and Marketing, you would report directly to the President.  You would be responsible for all sales and marketing operations of Auburn Foundry, Inc. with some responsibility for coordination of our sister companies' sales and marketing activities.  Upon employment, you would sign our normal confidentiality agreement (a copy of which is attached).

You would be expected to devote all of your time, attention, skill and efforts to the performance of your duties subject to the supervision of the President/CEO.

## II.    Salary and Bonus.

You would receive during your employment a base salary annualized at $180,000 payable bi-weekly after appropriate withholdings.  However, in the first twelve months of your employment, you may draw down any amount of your first year's salary which you require to cover certain immediate needs you have explained.  The balance would be prorated over the balance of the first twelve calendar months of employment.



EXHIBIT

Page Two
Mr. Michael L. Polich
October 7, 1997

Your performance and salary will be subject to a review accomplished in December of 1998, and at such subsequent times as the President may determine. At the end of the 1998 fiscal year, you would receive a minimum incentive bonus of $45,000.00, with an incentive potential of 80% of the base salary predicated upon Auburn Foundry's current bonus plan. Thereafter the minimum bonus potential shall be based solely on the bonus plan then in effect. That Plan is subject to change from time to time. Under the current plan, the actual amount of bonus is based on current net income as a percent of sales before tax. The targets are subject to adjustment in subsequent fiscal years. Bonuses are normally paid in January.

**III. Signing Bonus.**

Upon commencement of employment under this agreement, Auburn Foundry, Inc. will pay to you the sum of $10,000, less applicable tax withholdings.

**IV. Long Term Incentive.**

Also you would be eligible to participate in the existing Auburn Foundry long term incentive plan for the fiscal year ending November 30, 1998. An election to participate must be made by November 30, 1997. All incentive amounts would be payable to you according to the then current Auburn Foundry incentive bonus payment practices.

**V. Health Insurance, Pension, and Other Benefits.**

You would participate in and be entitled to all benefits payable under Auburn Foundry's group health and life insurance and long-term disability coverage, together with pension and any other benefit plans as Auburn Foundry now has or may establish, including waiting periods or vesting and service requirements, as applied to all other exempt employees of Auburn Foundry. Attached hereto is the current Auburn Foundry Summary of Salaried Benefit Plans.

**VI. Life Insurance Bridge; Physical Examination.**

In addition, in order to serve as a bridge for you pending the time when you may satisfy the requirements for participation in the Auburn Foundry pension plan, Auburn Foundry will pay to you the cash equivalent of a premium for the purchase of term life insurance to secure the amount of insurance which may become available to you through the pension plan upon your satisfaction of the vesting and service requirements. This term insurance "bridge" would cease upon your qualifying to participate as a beneficiary under the term insurance provisions of the Auburn Foundry pension plan. You would also receive the benefit of a bi-annual physical examination conducted at the Mayo-Clinic, Rochester, Minnesota, (or other facility selected by the Company for its officers' benefit) in the same manner as this benefit is from time to time extended to other senior managers of Auburn Foundry.

Page Three
Mr. Michael L. Polich
October 7, 1997

In particular with reference to Auburn Foundry life insurance plans and coverage, you would be covered by the special key man term insurance and the group plan term insurance, respectively. You would be responsible for accomplishing beneficiary designations for any life insurance made available to you through Auburn Foundry.

**VII.   Automobile and Support Services.**

You would be entitled to the use of a company provided vehicle on the same basis as other exempt officers and employees of Auburn Foundry. You will have office space, stenographic assistance and such other facilities and services as are suitable to your position and appropriate for the performance of your duties.

**VIII.   Vacation; Reimbursable Expenses.**

You would be entitled to vacation periods in line with the policies of Auburn Foundry for officers. In addition, you would be entitled to reimbursement for all reasonable and necessary expenses incurred in connection with the performance of your duties on behalf of Auburn Foundry, including entertainment, travel, reasonable attendance at meetings and seminars, and other expenses incident to the duties undertaken in the position; provided, however, that you would be responsible for submitting bills and vouchers supporting requests for reimbursement.

**IX.   Relocation Expenses.**

In the event you accept the position, Auburn Foundry will reimburse you for relocation expenses as follows:

1.   Real estate sales commission, closing costs, and related expenses of sale, payable upon the sale of your current residence in Northville, Michigan;

2.   Payment of moving and, if necessary, storage expenses, and;

3.   Temporary housing expenses commensurate with the position for up to ten (10) months;

Alternately, if you elect, Auburn Foundry will pay you a lump sum amount upon which we mutually agree, which is equal to the amounts described in paragraphs 1, 2 and 3 above. You would then be responsible for all of your relocation expenses.

Page Four
Mr. Michael L. Polich
October 7, 1997

**X.    Bridge Loan.**

To assist with your relocation, we will offer to arrange financing of an amount reasonably required for you to obtain a residence in the Auburn area.  If you have not yet sold your current residence, we will pay the interest (or loan the funds ourself) on that amount of loan for a period not to exceed ten months.

**XI.    Severance Benefits.**

In the event of your involuntary termination by Auburn Foundry of your employment, not due to your performance, retirement, death or disability, Auburn Foundry will, until the earlier of:  one year beyond the date of termination; or the date on which subsequent employment is secured, pay your then current bi-weekly salary and provide health insurance coverage for you and your spouse.

In the case of the controlling shareholders of Auburn Foundry, Inc., selling a majority interest in the Company to an unrelated outside party, which results in your involuntary termination of employment (except for cause or retirement), then this severance benefit shall extend to the earlier of two years or the date of re-employment elsewhere.

**XII.    Repayment Upon Early Termination.**

If your employment is terminated for cause or by your voluntary termination, within the first twelve (12) months, you will repay to Auburn Foundry the signing bonus, the outstanding Bridge Loan, and any portion of your salary which has been advanced and which exceed the amount you would otherwise be entitled to if no advancement had occurred, all together with any applicable wage withholding and taxes.

**XIII.    Transition Travel Expenses.**

Until you have relocated to the Auburn area, but not for more than ten months, you will be reimbursed for travel to and from Northville, Michigan, for yourself and/or your wife and dependent children.  You would also be paid a living/meal expense allowance per our mutual agreement.

**XIV.    At Will Employment.**

Other than for any benefits provided herein, all employment of senior management at Auburn Foundry is, of course, at the will of either party.

Page Five
Mr. Michael L. Polich
October 7, 1997

### XV.    Signature.

If you agree with all of these terms, please signify your acceptance by signing a copy of this letter below, and returning it to me. I look forward to welcoming you to Auburn! This letter supersedes the offer contained in my letter of October 3, 1997.

Sincerely,

AUBURN FOUNDRY, INC.

BY: _David B. Fink_

David B. Fink, Chairman

Acknowledged and Accepted:

_Michael Polich_

Michael L. Polich
Date: October __8__, 1997

Y:\WP\EMPCON\POLICH1

# VOLUNTARY SEPARATION AGREEMENT
## AND GENERAL RELEASE

THIS VOLUNTARY SEPARATION AGREEMENT AND GENERAL RELEASE is made and entered into by and between MICHAEL L. POLICH (hereinafter "Employee"), and AUBURN FOUNDRY, INC. and AFI LLC, (collectively hereinafter "Company"), and shall be effective upon the date of execution hereof by Employee.

## RECITALS

Employee was employed by Company from on or about October 1997 until his resignation from Company on October 19, 2004; and

Employee and Company have negotiated the terms of the Employee's resignation from the Company and desire to reduce to writing the terms of their agreement.

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained, it is agreed as follows:

1.      Employee unqualifiedly and voluntarily accepts his permanent separation from the employment of Company effective upon the execution hereof by Employee.

2.      In consideration of the agreements and promises made by Employee in this Agreement, Company shall pay Employee as severance pay an amount equal to four months' salary in the gross amount of $66,666.68 ("Severance Payment").  The Severance Payment shall be divided into equal partial installments in a gross amount of $ 7,692.31, each of which shall be paid on Employee's regularly-scheduled pay days, subject to all legally-required tax withholding and reporting. The Severance Payment constitutes an all-inclusive amount, including all vacation pay or any other amounts due.  Company does not agree to pay Employee any amount in excess of this Severance Payment, including but not limited to any benefits of employment, compensation, bonuses, or employer contributions to any benefit plan except as otherwise provided in this Agreement.  Employee acknowledges that Company is not in any way obligated under any plan, policy or guideline to provide the Severance Payment and that such payment is made on a non-precedential basis and does not constitute a welfare benefit plan for purposes of the Employee Income Retirement Security Act ("ERISA").  The Severance Payment installments shall be mailed to the Employee's home address located at 7822 Ladue Court, Fort Wayne, Indiana 46804, beginning on Employee's first regularly-scheduled pay day that is at least eight (8) days after Employee's execution of this Agreement, so long as Employee has not breached the confidentiality provisions of this Agreement set forth in Paragraphs 12 and 13 below and the non-compete provision in Paragraph 9 below.

3.      Company agrees that during the term the Severance Payment described in the preceding paragraph is being paid, Employee shall continue as an active participant in the health, dental and life insurance benefit programs of the Company.  The parties agree that the date of the Qualifying Event for purposes of COBRA continuation coverage shall be October 19, 2004, the



effective date of Employee's resignation.  Employee shall be considered a participant in Company's retirement plans pursuant to their respective terms.

4.     It is understood and agreed that the Severance Payment is solely in consideration of Employee's release of rights and other agreements and promises made herein, and is not to be construed as an award of backpay or wages due to Employee.

5.     As a material inducement to Company to enter into this Agreement, Employee hereby irrevocably, unconditionally and generally releases, acquits, and forever discharges to the fullest extent permitted by law, Company and its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, divisions, subsidiaries, affiliates, insurers (and agents, directors, officers, employees, representatives and attorneys of such divisions, subsidiaries and affiliates), and all persons acting by, through, under or in concert with any of them (collectively "Releasees"), or any of them, from any and all grievances, charges, complaints, claims, damages, actions, causes of action, suits, rights, demands, grievances, costs, losses, debts, and expenses (including attorney's fees and costs incurred), of any nature whatsoever, known or unknown, arising out of or related in any way to his employment with Company ("Claim" or "Claims"), which Employee now has, owns, or holds, or claims to have, own, or hold, or which Employee at any time heretofore had, owned, or held, or claimed to have, own, or hold from the beginning of time to the date of this Agreement.

6.     By way of specification and not by way of limitation, Employee specifically waives, releases and agrees to forgo any rights or claim that he may now have, may have heretofore had, against each or any of the Releasees, under tort, contract or other law of the State of Indiana (including, but by no means limited to, claims arising out of or alleging wrongful discharge, **promissory estoppel**, breach of contract, breach of implied covenant of good faith and fair dealing, misrepresentation, interference with contractual or business relations, personal injury, slander, libel, emotional distress, mental suffering or damage to professional reputation), under the **Age Discrimination in Employment Act, under Title VII of the Civil Rights Act of 1964, under the Equal Pay Act, under the Americans with Disabilities Act, under the Employee Retirement Income Security Act ("ERISA")**, or under any other laws, ordinances, executive orders, rules, regulations or administrative or judicial case law arising under the statutory or common laws of the United States, the State of Indiana, or any political subdivision of the State of Indiana.

7.     Employee does not waive, nor has Company asked Employee to waive, any rights arising exclusively under the Fair Labor Standards Act, except as such waiver may henceforth be made in a manner provided by law.  Employee does not waive, nor has Company asked Employee to waive, any other rights or claims which legally may not be waived, including those which may arise after the date Employee signs this Agreement.

8.     Employee represents that he has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any Claim or any portion thereof or interest therein.

EWIMAN1 358812v2

9.    As a further material inducement to Company to enter into this Agreement, Employee understands and agrees that if he should fail to comply with the conditions hereof or to carry out the agreement set forth herein (including without limitation the confidentiality provisions of Paragraphs 12 and 13 below and the non-compete provision in Paragraph 9 below), Employee acknowledges that Company will be damaged by such breach and shall be entitled to pursue any available legal or equitable relief for such breach. Employee hereby agrees to indemnify and hold each and all of the Releasees harmless from and against any and all loss, cost, damage, or expense, including, without limitation, attorney's fees, incurred by Releasees, or any of them, arising out of any breach of this Agreement by Employee or the fact that any representation made herein by Employee was false when made.

10.    For four (4) months from the effective date of this Agreement, Employee agrees to not, directly or indirectly, in any Competitive Capacity, become employed by, engage in business with, serve as an agent or consultant to, or become a partner, member, principal or stockholder (other than a holder of less than five percent (5%) of the outstanding voting shares) of: (i) Grede, Inc.; Metal Technologies, Inc.; Dalton Foundry, Inc; and Wapaka, Inc.; or, (ii) any entity or business in the Protected Area that competes in any material way with Company's domestic operations, unless approved in writing by the Company's CEO & President. The parties agree that "Competitive Capacity" means any managerial, sales, financial, engineering, or leadership position, and that such definition is reasonably related to Employee's activities at Company. The parties agree that "Protected Area" means within a 200-mile radius of Company's location in Auburn, Indiana, and that such definition is a reasonable restriction under the circumstances.

11.    Employee further acknowledges and agrees that the restraints imposed by this paragraph are reasonable in subject matter, duration, geographic extent and scope, and are reasonable and necessary to protect the legitimate business interests of the Company. Employee represents and acknowledges that the restrictions imposed by this paragraph will not prohibit or substantially limit his ability to earn a living or otherwise provide for himself and his family.

12.    Employee agrees to neither make contact with any customer of Company nor respond to contacts made by any such customer without the explicit approval of the Company's President and CEO, for a period of one hundred twenty (120) days from the date of this Agreement.

13.    In consideration for Company's promises set forth herein, Employee agrees that he will not make disparaging comments or reveal Confidential Information about the Company or the Company's business, finances or operations to Company employees or outside parties including customers, vendors, suppliers, clients and others in the community. For purposes of this Agreement, "Confidential Information" includes any and all information concerning Company's financial status, credit records and agreements, payroll and salary information, accounts receivables, income statements, budgetary information, customer lists, pricing information, purchasing information, vendor and supplier lists and prices, or any other proprietary information obtained during the course of Employee's work with Company. Employee understands that if he makes such disparaging comments or discloses Confidential Information, he breaches this Agreement.

FWIMANI 358812v2

14. Employee agrees that he will forever keep the terms and amount of this Agreement completely confidential and will not disclose any information concerning this Agreement to anyone, except his legal counsel, accountant, tax consultant/ preparer, or as otherwise required by taxing authorities or court order.

15. Employee agrees that he will immediately return all Company property including, credit card, computer, docking-station, keyboard, monitor, fax/copier/printer/scanner, computer files, customer lists, and contact information he currently possesses. Employee agrees he will not retain copies of said information or any computer files.

16. Within 30 days of the date of this Agreement, Employee may present proof of any unreimbursed business expenses incurred by Employee while employed by Company. Company agrees to reimburse Employee for any such unreimbursed business expenses consistent with existing Company policies and procedures within ten (10) business days of their submission to Company.

17. Employee represents and acknowledges that in executing this Agreement he does not rely and has not relied upon any representation or statement made by any of the Releasees or by any of the Releasees' agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.

18. This Agreement shall be binding upon Employee and upon his heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of Releasees and each of them, and to their respective heirs, administrators, representatives, executors, successors and assigns, as the case may be.

19. This Agreement is made and entered into in the State of Indiana, and shall in all respects be interpreted, enforced and governed under the internal laws (and not the conflicts of laws rules) of said State.

20. Any violations of this Agreement will be brought in the Superior or Circuit Court of Allen County, Indiana.

21. As used in this Agreement, the singular or plural number shall be deemed to include the other whenever the context so indicates or requires. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

22. This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior negotiations, agreements or understandings between the parties hereto pertaining to the subject matter hereof. Consequently, Employee waives his right to file a claim in the Company's bankruptcy arising out of the rejection of his employment contract dated October 7, 1997. This Agreement may not be modified or amended except by a written agreement signed by the parties hereto.

23. Should any provision of this Agreement be declared or determined to be null, void, inoperative, illegal or invalid for any reason, the validity of the remaining parts, terms or

-4-

provisions shall not be affected thereby and they shall retain their full force and effect, and said null, void, inoperative, illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

24.    Employee acknowledges that a copy of this Agreement was first provided to him on October 19, 2004, and that he has been advised that he has twenty-one (21) calendar days with which to consider the Agreement, although he may accept and sign this Agreement at any time prior to expiration of that time period, and by so doing, Employee will waive any remaining balance of such period.

25.    Employee has the right to revoke this Agreement, for a revocation period of seven (7) calendar days following his execution of it, and it will not become effective or enforceable until such revocation period has expired. Such revocation must be in writing, addressed to Mr. Timothy R. Eastom, Human Resources Manager, Auburn Foundry, Inc., 635 W. Eleventh Street, Auburn, Indiana 46706, and received no later than 4:00 p.m. of the eighth day following Employee's execution of this Agreement in order for it to be effective.

26.    Employee acknowledges that he has been advised that he should discuss this Agreement with his own attorney prior to signing it. Employee confirms that he has had this Agreement and the release explained to him by his attorney or that he has had ample opportunity to consult with his attorney regarding this Agreement. Employee is competent to execute this Agreement, does so voluntarily with complete knowledge and understanding of its effect, and is relying on his own judgment and/or the advice of his attorney, and not upon any recommendations or representations (oral or otherwise) except as specifically set forth herein.

### AFFIRMATION OF EMPLOYEE

I, _Michael Polich_, fully understand that this Agreement generally releases all of my claims, both known and unknown arising prior to the execution hereof, against each and all of the Releasees, except as specifically otherwise provided herein.

Executed at Auburn, Indiana, this _11_ day of _Nov._, 2004.

_____
Michael L. Polich – Employee

EWIMAN1 358812v2

## ACCEPTANCE OF COMPANY

The undersigned accepts the foregoing Agreement on behalf of Auburn Foundry, Inc.

AUBURN FOUNDRY, INC.

Dated: _October 27_, 2004

By: _BWochlke_

Its: _President and CEO_

## ACCEPTANCE OF COMPANY

The undersigned accepts the foregoing Agreement on behalf of AFI LLC.

AFI LLC

Dated: _Nov. 12_, 2004

By: _____

Its: _Member_

-6-

FWIMAN1 358812v2