IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

## *AUBURN FOUNDRY'S PLAN OF REORGANIZATION*
### *DATED JANUARY 20, 2005*

**BAKER & DANIELS**
John R Burns (#3016-02)
Stephen A. Claffey (#3233-98)
Mark A. Werling (#20426-02)
111 East Wayne Street, Suite 800
Fort Wayne, Indiana 46802
Telephone:  (260) 424-8000
Facsimile:  (260) 460-1700

ATTORNEYS FOR THE DEBTOR,
AUBURN FOUNDRY, INC.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

### AUBURN FOUNDRY'S PLAN OF REORGANIZATION
### DATED JANUARY 20, 2005

Auburn Foundry, Inc. (the "Debtor" or "AFI") proposes the following plan of reorganization under section 1121(a) of Title 11 of the United States Code.

### ARTICLE I
### DEFINITIONS

The following terms, when used herein, shall have the following meanings unless the context otherwise indicates (such meanings to be equally applicable to both the singular and plural):

**1.01.   Accrued Personal Day Pay**.  Unpaid wages of the Debtor's employees earned on account of personal days, as such amounts may be modified or amended prior to the Effective Date through negotiations between the Debtor and the Union, or by order of the Court.

**1.02.   Accrued Vacation Pay**.  Unpaid wages of the Debtor's employees earned on account of vacation pay, as such amounts may be modified or amended prior to the Effective Date through negotiations between the Debtor and the Union, or by order of the Court.

**1.03.   Administrative Bar Date.**  The date that is forty-five (45) days after the Effective Date.

**1.04.   Administrative Expense Claim.**  A Claim under section 503(b) of the Bankruptcy Code entitled to priority under section 507(a)(1), including, without limitation: any actual and necessary post-petition costs and expenses of preserving the Estate or administering this Reorganization Case as authorized by a Final Order; any actual and necessary post-petition costs and expenses incurred in the ordinary course of the Debtor's business; fees and expenses of Professionals under sections 328, 330, 331 or 503 of the Bankruptcy Code; and all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**1.05.   AFI Documents**.  Documents of Auburn Foundry, Inc.

**1.06.    AFI, LLC**.  An Indiana limited liability company, also referred to in the Plan as New AFI.

**1.07.    AFI Lending Group.**  AFI Lending Group, LLC, an Indiana limited liability company.

**1.08.    Allowed Claim or Allowed Interest.**  Regarding any Claim or Interest against the Debtor:

A.    if the filing of a proof of claim or interest is required, and a proof of claim or interest was:

(i)    timely filed on or before the Claims Bar Date; or

(ii)    deemed timely filed pursuant to section 1111(a) of the Bankruptcy Code or by reason of a Final Order; and

B.    it is not disputed, or is not a Disputed Claim or Disputed Interest; and

C.    it is allowed pursuant to section 502 of the Bankruptcy Code by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or by stipulation; or

D.    it is allowed by operation of this Plan.

**1.09.    Allowed Secured Claim**.  A Claim which is allowed as a Secured Claim in accordance with the terms of the Plan.

**1.10.    Assumption Schedule.**  The schedule of executory contracts and unexpired leases to be assumed pursuant to Section 6.01(A) hereof, as the same may be amended through the Effective Date.

**1.11.    Auction Agreement.**  An agreement between the Debtor and a Guaranteed Bidder, a copy of which will accompany the Plan Supplement, pursuant to which the Guaranteed Bidder shall (1) offer a guaranteed sum for the Property Subject to Auction and (2) conduct the Plant 1 Auction.  Amounts bid at the auction(s) greater than the guaranteed sum plus an agreed upon amount to the Guaranteed Bidder for its auction-related expenses shall be divided between the Debtor and the Guaranteed Bidder.  In the alternative, the Debtor may, in its discretion, negotiate a fixed dollar amount from the Guaranteed Bidder for the Property Subject to Auction.  The Debtor will, in its discretion, select the Guaranteed Bidder and the method of sale that provides the Debtor with the anticipated largest Net Proceeds.

**1.12.    Avoidance Action Recoveries.**  The proceeds realized from Avoidance Actions, net of collection costs and expenses.

**1.13.    Avoidance Actions.**  The assertion and/or exercise of all avoiding powers, all rights and remedies under, relating to, or similar to Bankruptcy Code sections 544, 545, 547,

548, 549, 550, 551 553, or any state-created fraudulent conveyance, fraudulent transfer or preference Laws.

**1.14.    Bank of America**.  Bank of America, National Association, and its successors.

**1.15.    Bankruptcy Code.**  The Bankruptcy Reform Act of 1978, as amended, Title 11 of the United States Code.

**1.16.    Bankruptcy Court.**  The United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, the Court having jurisdiction over this Reorganization Case.

**1.17.    Bankruptcy Rules.**  The Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the local rules of the Bankruptcy Court applicable in this Reorganization Case.

**1.18.    Business Day.**  Any day other than a Saturday, a Sunday or any other day on which banking institutions in Fort Wayne, Indiana are required or authorized to close by Law or executive order.

**1.19.    Cash.**  Lawful currency of the United States of America (including deposits with, and cashier's checks drawn on, a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, and wire transfers).

**1.20.    Cash Use Agreement**.  The Agreement for Long-Term Cash Use and Senior Debtor-in-Possession Financing attached as Exhibit A to the Final Cash Use Order, as from time to time amended by agreement of each party thereto.

**1.21.    Claim.**  A Claim has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.22.    Claimant.**  The holder of a Claim.

**1.23.    Claims Agent.**  Any entity designated by the Reorganized Debtor (including the Reorganized Debtor or New AFI if either acts in such capacity) to maintain a Claims Register in this Reorganization Case.

**1.24.    Claims Bar Date.**  The bar dates established by the Bankruptcy Court for the filing of proofs of claim or interest (other than for Administrative Expense Claims), as follows: (i) August 6, 2004, for a Governmental Unit; and (ii) June 17, 2004, for all other holders of Claims and Equity Interests.

**1.25.    Claims Register.**  The list maintained by the Claims Agent listing all claims as scheduled and/or filed in the Reorganization Case.

**1.26.    Class.**  A category of persons holding Claims or Equity Interests that are substantially similar in nature to the Claims or Equity Interests of other holders in such Class, as designated in Article III of this Plan.

**1.27.    Collateral.**  Any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.28.    Collective Bargaining Agreement**.  The collective bargaining agreement between the Debtor and the Union for the period May 3, 2003 through May 3, 2006, or as modified by written agreement between the Debtor and the Union or by order of the Court.

**1.29.    Common Stock.**  Common stock of the Debtor authorized to be issued as of the Petition Date pursuant to the Debtor's certificate of incorporation.

**1.30.    Confirmation Date.**  The date on which the Clerk of the Court enters the Confirmation Order on the docket.

**1.31.    Confirmation Order.**  The Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.32.    Court.**  The United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, having jurisdiction over the Reorganization Case, and to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court under 28 U.S.C. § 151.

**1.33.    Creditor**.  Any person who holds a Claim against the Debtor.

**1.34.    Creditors' Committee.**  The Official Committee of Unsecured Creditors appointed by the United States Trustee in this Reorganization Case pursuant to section 1102(a)(1) of the Bankruptcy Code, as the same has been or may be modified by the addition or removal of members from time to time.

**1.35.    Customer Contracts.**  Contracts between the Debtor and its customers in force on the Effective Date.

**1.36.    Debtor.**  Auburn Foundry, Inc. or AFI.

**1.37.    DIP Collateral**.  The Collateral defined and described as DIP Collateral in the Cash Use Agreement.

**1.38.    DIP Indebtedness**.  The indebtedness defined and described as DIP Indebtedness in the Cash Use Agreement.

**1.39.    DIP Loan Documents**.  The documents identified as DIP Loan Documents in the Cash Use Agreement.

**1.40.    Disbursing Agent.**  Any entity designated by the Reorganized Debtor (including the Reorganized Debtor or New AFI, if either acts in such capacity) in its capacity as disbursing agent.

**1.41.    Disclosure Statement.**  The disclosure statement as the same may be amended, relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Court pursuant to section 1125 of the Bankruptcy Code and by Order of Court.

**1.42.    Disputed Claim or Disputed Interest.**  As to a Claim or Interest, any such Claim or Interest that is not an Allowed Claim or an Allowed Interest as of the relevant date or that is the subject of an objection filed pursuant to this Plan or otherwise.

**1.43.    Effective Date.**  The first Business Day on or after the Confirmation Date specified by the Debtor on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent to the effectiveness of the Plan specified in section 10.01 hereof have been satisfied or waived.

**1.44.    Equity Interest or Interest.**  The rights and interests of the holders of the Debtor's common stock.

**1.45.    Estate.**  The bankruptcy estate of the Debtor, Auburn Foundry, Inc., created in this Reorganization Case pursuant to section 541 of the Bankruptcy Code.

**1.46.    Excess Cash Flow.**  EBITDA of New AFI (excluding extraordinary gains and losses) less capital expenditures, actual distributions to members for taxes for any year (the "Tax Year") (excluding first quarter payments relating to the prior year's taxes, but including payments made in the first quarter of the following year for taxes for the Tax Year), interest and scheduled principal obligations owing to Senior Lenders under Term Facility A (included in the New Credit Facility), and actual payments made on amortized obligations assumed as part of the purchase of the assets of the Debtor to employees, pension funds, and taxing authorities and the PBGC as provided in the Plan.

**1.47.    Final Cash Use Order**.  The final order of the Bankruptcy Court dated May 13, 2004 entitled "Final Order Approving Joint Motion Pursuant to Rule 4001(B) to Approve Agreement Concerning Use of Cash Collateral," as it may from time to time be extended by separate order of the Court, including the Order dated January 4, 2005 granting the Joint Motion of the Debtor and the Senior Lenders to Approve Agreed Order Concerning Use of Cash Collateral.

**1.48.    Final Junior DIP Financing Order.**  The final order of the Bankruptcy Court dated May 12, 2004 entitled "Final Order Authorizing Debtor to Obtain Financing Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, and 364," as it may from time to time be extended by separate order of the Court, including the Order dated January 4, 2005 granting the Debtor's Motion Pursuant to Rule 4001(C) to Continue and Extend Financing Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 filed with the Court.

1.49.   **Final Order.**  Order or judgment of a court as entered on the docket that (i) has not been reversed, stayed, modified or amended, and as to which the time to appeal from or seek review or rehearing of, shall have expired, and as to which no appeal, petition for review, rehearing or certiorari is pending, or (ii) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmation or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

1.50.   **Final Senior DIP Financing Order.**  The final order of the Bankruptcy Court dated May 12, 2004 entitled "Final Order Approving Joint Motion Pursuant to Rule 4001(C) to Approve Agreement Concerning Senior DIP Financing," as it may from time to time be extended by separate order of the Court, including the Order dated January 4, 2005 granting the Debtor's Motion to Continue and Extend Senior DIP Financing.

1.51.   **General Unsecured Claim.**  An Unsecured Claim other than an IDEM Claim.

1.52.   **Governmental Unit.**  Governmental Unit has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.53.   **Guaranteed Bidder.**  A firm selected by the Debtor to enter into the Auction Agreement.

1.54.   **IDEM.**  The Indiana Department of Environmental Management.

1.55.   **IDEM Claims.**  Unsecured Claims of IDEM, including those scheduled as contingent on the Debtor's Schedules.

1.56.   **Insurance Claim.**  Any claim against the Debtor to the extent it may be covered and payable under any Insurance Policy of the Debtor; provided, however, all Insurance Claims shall be considered Disputed Claims until such time as any such Insurance Claim becomes an Allowed Claim.

1.57.   **Insurance Claim – Kemper.**  That Insurance Claim filed with Kemper Insurance by the Debtor covering claims arising from the Debtor's ownership or operation of the Landfills.

1.58.   **Insurance Policy.**  Any policy of insurance and agreements relating thereto covering the Debtor or that may be available to provide coverage for claims against the Debtor.

1.59.   **Insurer.**  Any entity that has issued an Insurance Policy to the Debtor.

1.60.   **IRS.**  The Internal Revenue Service.

1.61.   **Junior DIP Financing.**  The post-petition financing described more fully in the Final Junior DIP Financing Order.

1.62.   **Junior DIP Lender.**  AFI Lending Group.

**1.63.    Landfill or Landfills**.  That certain real estate of the Debtor separately identified as landfills in the legal descriptions set forth in the Disclosure Statement or Plan Supplement. The Landfills are not a part of Plant 1 or Plant 2.  The Landfills are designated, based on their location, as the County Road 48 Landfill and the County Road 50 Landfill.

**1.64.    Law.**  Any law, rule, regulation, order, decree or other requirement having the force of law and, where applicable, any interpretation thereof by an authority having jurisdiction with respect thereto or charged with the administration thereof.

**1.65.    Lien.**  A judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, mortgage, charge or encumbrance, except a lien that has been avoided in accordance with any of sections 544 through and including 554 of the Bankruptcy Code.  The term Lien includes post-petition replacement Liens granted by Order of the Bankruptcy Court, any Liens granted by the Reorganized Debtor to New AFI to secure loans to the Reorganized Debtor for administration of the Estate, and the lien on Avoidance Action Recoveries granted under the Plan to the Senior Lenders.

**1.66.    Miscellaneous Secured Claim**.  A Secured Claim which is not a Claim for Secured Revolver Debt, Secured Term Debt, or Secured Subordinated Debt.  Such Claims will consist principally, if not exclusively, of certain financing leases listed on the Debtor's Schedules as Secured Claims and itemized separately on the Plan Supplement.

**1.67.    Net Proceeds.**  The Cash received from a sale of property, net of all costs and expenses to satisfy and discharge any Liens thereon, and net of all legal and other costs incurred to negotiate, document, consummate, and complete such sale, and all taxes and other governmental charges payable in respect to such sale.

**1.68.    New AFI**.  AFI, LLC, an Indiana limited liability company.

**1.69.    New AFI Sale.**  The sale to New AFI of substantially all of the Debtor's assets except (i) the manufacturing facility and certain equipment located at Plant 1, (ii) the Landfills, and (iii) Avoidance Action Recoveries and proceeds of Insurance Claim – Kemper.

**1.70.    New Credit Facility.**  The financing facility proposed to be entered into among the Senior Lenders and New AFI executed in conjunction with the consummation of the Plan, which shall be in form and substance satisfactory to the Lenders.

**1.71.    PBGC**.  The Pension Benefit Guaranty Corporation.

**1.72.    Pension Excise Tax Claims**.  Allowed Claims, both pre-petition and post-petition, of the IRS or the PBGC arising on account of Underfunded Pension Liabilities.

**1.73.    Pension Plans**.  The Debtor's defined benefit pension plans:  Auburn Foundry, Inc. Salaried Employees' Retirement Plan and Auburn Foundry, Inc. Retirement Income Plan.

**1.74.    Petition Date.**  February 8, 2004, the date on which the Debtor filed its Reorganization Case with the Court under Chapter 11 of the Bankruptcy Code.

**1.75.    Person.**  Person has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.76.    Plan.**  The Debtor's Plan of Reorganization dated January 20, 2005, as the same may be amended, modified or supplemented from time to time, and including the Plan Supplement.

**1.77.    Plan Supplement.**  The Plan Supplement as defined in Article VII hereof.

**1.78.    Plant 1**.  That certain real estate of the Debtor described more fully in the Disclosure Statement or the Plan Supplement.  Plant 1 includes a manufacturing facility in the City of Auburn, Indiana, an attached parking lot and office building, and a machine shop across the street from the manufacturing facility.

**1.79.    Plant 1 Auction.**  The sale of the Property Subject to Auction, pursuant to the Auction Agreement.

**1.80.    Plant 1 Obligation.**  The sum of $250,000 plus the amount of real estate taxes paid as part of the sale of the Property Subject to Auction, plus the Net Proceeds from the sale of the Property Subject to Auction and any other assets of the Debtor or Reorganized Debtor other than the Landfills, the Insurance  Claim-Kemper, and the Avoidance Action Recoveries in excess of the Senior Lenders' Avoidance Action Lien Amount.

**1.81.    Plant 1 Obligation Credit Facility.**  The financing facility to be entered into among the Senior Lenders, New AFI, and the Reorganized Debtor to evidence the Plant 1 Obligations.

**1.82.    Plant 2**.  That certain real estate of the Debtor described more fully in the Disclosure Statement or the Plan Supplement.  Plant 2 includes a building and attached parking lot, a retention pond, and undeveloped vacant land, but does not include the Landfills, the Residential Real Estate, or the Wetlands.

**1.83.    Pre-Petition Collateral**.  The Collateral defined and described as Pre-Petition Collateral in the Cash Use Agreement.

**1.84.    Pre-Petition Credit Agreement**.  That certain Financing and Security Agreement dated as of April 10, 2000, as amended, supplemented, or modified from time to time thereafter, by and between the Debtor, as borrower, and Bank of America, as both lender and agent, and all collateral and ancillary documents executed in accordance therewith.

**1.85.    Pre-Petition Revolver Indebtedness**.  The aggregate unpaid amount of revolving loans (including overline advances and undrawn letters of credit) made by the Senior Lenders to the Debtor pursuant to the Pre-Petition Credit Agreement as of the Petition Date.

**1.86.    Pre-Petition Term Loan Indebtedness**.  The aggregate unpaid amount of term loans made by the Senior Lenders to the Debtor pursuant to the Pre-Petition Credit Agreement as of the Petition Date.

**1.87.    Prime Rate.**  For any day, the rate of interest in effect for such day as publicly announced from time to time by Bank of America in Charlotte, North Carolina as its "prime rate."  Any change in the prime rate announced by Bank of America shall take effect at the opening of business on the day specified in the public announcement of such change.

**1.88.    Priority Claim.**  Claim or portion thereof that is entitled to priority status under sections 507(a)(2) through (9) of the Bankruptcy Code.

**1.89.    Priority Non-Tax Claim.**  Any Claim against the Debtor entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

**1.90.    Priority Tax Claim.**  Any Claim of a Governmental Unit against the Debtor of the kind entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.91.    Professional.**  Any Person (a) employed pursuant to a specific order of the Bankruptcy Court or general order of the Bankruptcy Court relating to ordinary course of business retentions, in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, or (b) for whom compensation and reimbursement is allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.92.    Professional Fee Claim.**  A Claim for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Reorganization Case.

**1.93.    Property Subject to Auction.**  The manufacturing facility at Plant 1 and certain related equipment, a listing of which shall accompany the Plan Supplement.

**1.94.    Pro Rata Share.**  A proportionate share, so that the ratio for consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.95.    Record Date.**  The day that is five Business Days from and after the Confirmation Date.

**1.96.    Reorganization Case.**  The case for the reorganization of the Debtor commenced by a voluntary petition under chapter 11 of title 11 of the United States Code, on February 8, 2004, and now pending in this Court and captioned *"In re Auburn Foundry, Inc.,* Chapter 11 Case No. 04-10427".

**1.97.    Reorganized Debtor.**  The Debtor, as reorganized pursuant to the Plan, on and after the Effective Date.

**1.98.    Residential Real Estate**.  That certain residential real estate owned and rented by the Debtor as described more fully in the legal descriptions set forth in the Disclosure Statement or the Plan Supplement.  The Residential Real Estate is not part of Plant 1 or Plant 2.

**1.99.    Retained Property**.  Any property of the Debtor which is not sold in connection with the New AFI Sale or the Plant 1 Auction, or distributed pursuant to the Plan, including the Landfills, Avoidance Action Recoveries in excess of the Senior Lenders' Avoidance Action Lien Amount, and the proceeds of Insurance Claim - Kemper.

**1.100.    Retiree Benefits.**  Payments to a Person for the purpose of providing or reimbursing payments for retired employees of the Debtor and of any other entities as to which the Debtor is obligated to provide retiree benefits and the eligible spouses and eligible dependents of such retired employees, for, among other things, life insurance, medical, surgical or hospital care benefits, or in the event of death of a retiree under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established by the Debtor prior to the Petition Date, as such plan, fund or program was then in effect, or as heretofore or hereafter amended and including all Retiree Benefits as defined by section 1114 of the Bankruptcy Code.

**1.101.    Schedules.**  The schedules of assets and liabilities filed by the Debtor with the Bankruptcy Court in accordance with the Bankruptcy Rules, as such schedules have been or may be supplemented or amended through the Confirmation Date.

**1.102.    Secured Claim.**  A Claim, including interest, fees, costs and other charges to the extent provided for pursuant to section 506(b) of the Bankruptcy Code, that is secured by a valid, perfected lien as defined under section 101(37) of the Bankruptcy Code on property of the Debtor, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code.  To the extent all or any portion of any purported Secured Claim exceeds the value of the Collateral securing such Claim, the excess shall be a Class 5 General Unsecured Claim.

**1.103.    Secured Revolver Debt**.  That portion of the Senior Lenders' Claim for Pre-Petition Revolver Indebtedness which consists of unpaid, pre-petition principal.

**1.104.    Secured Subordinated Debt**.  That portion of the Subordinated Lenders' Claims for Subordinated Debt which is allowed as a Secured Claim under Article V of the Plan.

**1.105.    Secured Term Debt**.  That portion of the Senior Lenders' Claim for Pre-Petition Term Indebtedness which consists of unpaid, pre-petition principal.

**1.106.    Senior DIP Financing**.  The Senior DIP Financing as described more fully in the Final Senior DIP Financing Order.

**1.107.    Senior DIP Lenders**.  The Senior Lenders.

**1.108.  Senior Lenders**.  Bank of America, National Association, and GMAC Commercial Finance, LLC, successor by merger to GMAC Business Credit, LLC, and their respective successors and assigns.

**1.109.  Senior Lenders' Avoidance Action Lien Amount.**  The sum of $250,000 plus the amount of real estate taxes paid as part of the sale of the Property Subject to Auction.

**1.110.  Subordinated Debt**.  The Allowed Claims of the Subordinated Lenders.

**1.111.  Subordinated Lenders**.  The following Creditors listed on Schedule D of the Schedules, as from time to time amended:  A.F. Europe, Inc., Anne Meeks Davis Trust, Christy Davis Trust, David B. Fink, David M. Meeks, Jr. Trust, Janet F. Borden, John A. Fink, John A. Urbaska Revocable Trust, Katie Urbaska Revocable Trust, Malie M. Urbaska Revocable Trust, Malia Davis Megorden Trust, Sheela B. Davis Trust, Timothy S. Borden, Trevor Meeks Agency, 11th Street Capital, LLC, and William E. Fink.

**1.112.  Tax Code.**  The Internal Revenue Code of 1986, Title 26 of the United States Code, as amended.

**1.113.  Undefined Terms.**  A term used in the Plan, whether or not capitalized, that is not defined in the Plan, but that is used or defined in the Bankruptcy Code, Bankruptcy Rules or the Disclosure Statement has the meaning used or defined in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement, in that order.

**1.114.  Underfunded Pension Liabilities**.  Unpaid contributions, payable either pre-petition or post-petition, under the Pension Plans.

**1.115.  Union**.  The Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO, CLC (GMP International Union), Local 322.

**1.116.  Unsecured Claim.**  A Claim that is unsecured and neither an Administrative Claim, a Priority Claim nor a Secured Claim.

**1.117.  Wetlands**.  That certain real estate of the Debtor described more fully in the Disclosure Statement or the Plan Supplement.

**INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION.**  Unless the context of this Plan clearly requires otherwise: (i) references to the plural include the singular and vice versa; (ii) references to Person include such Person's successors and assigns, (iii) references to one gender include all genders; (iv) "including" is not limiting; (v) "or" has the inclusive meaning represented by the phrase "and/or"; (vi) the words "hereof," "herein," "hereby," "hereunder" and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan; (vii) section and clause references are to this Plan unless otherwise specified; (viii) reference to any agreement (including this Plan), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof; and (ix) general or specific references to any Law mean

such Law as amended, modified, codified, or reenacted, in whole or in part, and in effect from time to time.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

### 2.01.  Non-classification.

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtor are not classified for the purposes of voting on or receiving distributions under the Plan.  All such claims are instead treated separately on terms set forth in this Article II.

### 2.02.  Administrative Expense Claims

Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees, in writing, to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, and except as specifically set forth herein to the contrary, each holder of an Allowed Administrative Expense Claim shall receive, in full and complete settlement, discharge and satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to such Administrative Expense Claim on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable.  With respect to Administrative Expense Claims of the Debtor's vendors, such vendors shall be entitled to payment pursuant to agreed-upon trade terms.  Purchase orders from post-petition vendors shall presumptively establish agreed-upon trade terms for purposes of this Article.

### 2.03.  Claims for Underfunded Pension Liabilities and Pension Excise Taxes

The New AFI Sale is premised upon the assumption of Allowed Claims for Underfunded Pension Liabilities by New AFI, regardless of whether such Claims are administrative in nature, entitled to payment on a priority basis under § 507 of the Code, or allowable as Unsecured Claims.  New AFI shall pay such Claims in full.  If the IRS and/or PBGC grant one or more waivers of minimum funding contribution requirements, New AFI shall make the first payment to which such waiver applies on the first day of the first month after the Effective Date (or, if a waiver is granted after the Effective Date, such date as may be agreed upon by the IRS and/or PBGC), and shall continue making payments quarterly thereafter, with interest, pursuant to IRS procedures and regulations.

New AFI will also assume, and pay in full, Allowed Pension Excise Tax Claims.  New AFI may, at its option, pay such Claims (i) on the Effective Date or (ii) in quarterly installments over a six year period, with interest at a fixed annual rate of 6.5% and the first payment due on the first day of the first month after the Effective Date.

**2.04.    Claims Arising Under the Collective Bargaining Agreement**

The New AFI Sale is premised upon the assumption by New AFI of Allowed Claims for Accrued Vacation Pay and Accrued Personal Day Pay, regardless of whether such Claims are otherwise administrative in nature, entitled to payment on a priority basis under § 507 of the Bankruptcy Code, or allowed as General Unsecured Claims.  New AFI shall pay such Claims, in full, through four (4) monthly Cash payments commencing the fifteenth (15th) day of the first full month after the Effective Date in an aggregate amount equal to such Allowed Claims.  If the Debtor does not have an agreement with the Union in place on the Effective Date to modify the Collective Bargaining Agreement (in accordance with the agreement of August 21, 2004, described more fully in the Disclosure Statement), then New AFI shall pay, in Cash, on the fifteenth (15th) day of the first full month after the Effective Date, so much of the Accrued Vacation Pay and Accrued Personal Day Pay as is entitled to payment as a Priority Claim.  In such event, any remaining balance of Accrued Vacation Pay and Accrued Personal Day Pay shall be included as a Class 5, General Unsecured Claim.

**2.05    Pension Plans.**

The Debtor intends, and the Plan contemplates, that New AFI will assume the Pension Plans, as first modified and restructured under the Plan.  Thereafter, New AFI will be the contributing sponsor of the Debtor's Pension Plans.  Each of the Pension Plans is a defined benefit pension plan insured by the Pension Benefit Guaranty Corporation ("PBGC") under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461, *et seq*.  The Pension Plans are subject to minimum funding requirements of ERISA and § 412 of the Internal Revenue Code.  It is the position of the PBGC that no provision of the Plan, the Confirmation Order, or § 1141 of the Code will discharge, release, or relieve the Debtor or any other party, in any capacity, from any liability with respect to the Pension Plans under any law, governmental provision, or regulatory provision.  In addition, it is the position of the PBGC that neither the PBGC nor the Pension Plans shall be enjoined from enforcing such liability as a result of the Plan's provisions for satisfaction, release and discharge of claims.  The Debtor does not concur with the PBGC's positions, although it makes provision for the satisfaction of Underfunded Pension Liabilities in the Plan.

It is the position of the PBGC that the Pension Plans are underfunded on a termination basis in an amount it estimates to be $5,912,300 for the Salaried Plan and $6,981,100 for the Retirement Income Plan.  An underfunded pension plan can terminate only in either a distress termination or PBGC-initiated termination under Title IV of ERISA.  Should the Pension Plans terminate, it is the position of the PBGC that it will assert claims for the underfunding, for any unpaid minimum funding contributions owed the Pension Plan, and for any unpaid premiums owed the PBGC.  The Debtor does not concur with the PGBC's positions.  The Pension Plans will not terminate, however, if the Plan is confirmed.  If the Pension Plans terminate, the PBGC's contingent termination claims could become Allowed Claims against the Estate.

**2.06    Bar Date For Administrative Expense Claims.**

PROOFS OF ADMINISTRATIVE EXPENSE CLAIMS AND REQUESTS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS THAT HAVE ARISEN ON OR

AFTER THE PETITION DATE MUST BE FILED AND SERVED PURSUANT TO THE PROCEDURES SET FORTH IN THE CONFIRMATION ORDER OR NOTICE OF ENTRY OF CONFIRMATION ORDER, NO LATER THAN THE ADMINISTRATIVE BAR DATE. Notwithstanding anything to the contrary herein, no proof of Administrative Expense Claim or application for payment of an Administrative Expense Claim need be filed for the allowance of any:  (i) Administrative Expense Claim held by a trade vendor, which administrative liability was incurred in the ordinary course of business of the Debtor and such creditor after the Petition Date; (ii) Professional Fee Claims; or (iii) fees of the U.S. Trustee arising under 28 U.S.C. § 1930.  All Claims described in clause (i) and (iii) of the immediately preceding sentence shall, if assumed by New AFI, be paid by New AFI in the ordinary course of business or as the holder of any such claim and New AFI shall agree in writing.  Professional Fee Claims shall be paid as provided in Article 2.07 hereunder.

Any Persons that fail to file a proof of Administrative Expense Claim or request for payment thereof on or before the Administrative Bar Date as required herein shall be forever barred from asserting such Claim against any of the Debtor, the Estate, the Reorganized Debtor, New AFI, or any Person who assumes responsibility for paying such Claims, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Expense Claim.

**2.07    Professional Fee Claims.**

All Persons acting as professionals of the Debtor seeking an award by the Bankruptcy Court of a Professional Fee Claim, after the application of retainers and carve-out payments, if any, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code: (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within forty five (45) days after the Confirmation Date; and (b) if granted, such an award by the Bankruptcy Court, shall, unless first paid in full by the Debtor, be assumed by New AFI and paid in full in such amounts as are allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon thereafter as practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of the Allowed Professional Fee Claim and the Debtor, or, on and after the Effective Date, New AFI, or (iii) in accordance with any administrative procedures order entered by the Bankruptcy Court.  All Professional Fee Claims for services rendered by professionals of the Debtor in connection with the Bankruptcy Case and the Plan after the Confirmation Date shall be assumed and paid by New AFI upon receipt of an invoice therefor, or on such other terms and conditions as New AFI may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. New AFI shall accede to the rights of the Debtor in and to any retainer paid by the Debtor to its Professionals.

**2.08    Senior DIP Lender's Claims.**

Unless otherwise agreed by the Senior DIP Lender, in writing, the Debtor's obligations under or evidenced by the Senior DIP Financing will be paid in full on the Effective Date.

**2.09    Junior DIP Lender's Claims.**

Unless otherwise agreed by the Junior DIP Lender, in writing, the Debtor's obligations under or evidenced by the Junior DIP Financing, including the "Commitment Fee," as that term is defined in the Final Junior DIP Financing Order, and $50,000 in "DIP Lender's attorney's fees," as that term is defined in the Final Junior DIP Financing Order, will be paid in full on the Effective Date.  The difference between AFI Lending Group's $3,300,000 commitment and the outstanding balance of the Junior DIP Financing shall be computed and funded on the Effective Date and converted concurrently to a membership interest in New AFI.  The balance due shall also be converted to a membership interest in New AFI.

**2.10    U.S. Trustee.**

Pursuant to 28 U.S.C. § 1930(a)(6), a reorganized debtor is obligated to continue paying statutory quarterly fees to the United States Trustee post confirmation of a plan of reorganization until the case is closed, dismissed or converted.  The Reorganized Debtor (or New AFI, if it assumes such responsibility with the consent of the United States Trustee) will continue to be responsible for making such statutory quarterly payments and submitting appropriate financial reports to the United States Trustee until the Reorganization Case is closed.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

**3.01.    Classes.**

The following table designates the Classes of Claims against and Equity Interests in the Debtor, and specifies which Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to accept or reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Tax Claims | Unimpaired | No (deem accepted) |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (deem accepted) |
| Class 3 | Secured Claims | Impaired | Yes |
| Class 4 | Miscellaneous Secured Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |

| Class 6 | IDEM Claims | Impaired | Yes |
| Class 7 | Common Stock Interests | Impaired | No (deem rejected) |

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

In full and complete satisfaction of the Allowed Claims and Allowed Interests classified under Article III of the Plan, the holders of such Allowed Claims and Allowed Interests will receive the treatment set forth below.  All payments due hereunder, whether assumed by New AFI or payable by the Reorganized Debtor, shall first be restructured in accordance with the Plan.

**4.01.    Class 1:  Priority Tax Claims.**

Distributions:  Except to the extent that a holder of an Allowed Class 1 Claim has been paid by the Debtor prior to the Effective Date or agrees, in writing, to a different treatment, each holder of an Allowed Class 1 Claim as of the Record Date shall receive, as payment in full, at the sole option of New AFI, (a) Cash in an amount equal to such Allowed Class 1 Claim on the later of the Effective Date and the date such Claim becomes an Allowed Class 1 Claim, or as soon thereafter as is practicable, (b) equal quarterly Cash payments in an aggregate amount equal to such Allowed Class 1 Claim, together with interest at a fixed annual rate equal to 6.5% through the sixth anniversary date of the Effective Date, or (c) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Class 1 Claim deferred cash payments having a value, as of the Effective Date, equal to such Allowed Class 1 Claim.

**Class 1 is unimpaired under the Plan.  Each holder of an Allowed Class 1 Claim is conclusively presumed to have accepted the Plan and, consequently, is not entitled to vote to accept or reject the Plan.**

**4.02.    Class 2:  Priority Non-Tax Claims.**

Distributions:  Except to the extent that a holder of an Allowed Class 2 Claim has been paid by the Debtor prior to the Effective Date or agrees, in writing, to a different treatment, each holder of an Allowed Class 2 Claim as of the Record Date shall receive, as payment in full, Cash in an amount equal to such Allowed Class 2 Claim on the later of the Effective Date and the date such claim becomes an Allowed Class 2 Claim, or as soon thereafter as practicable, or such other treatment that will not impair the holder of such Allowed Class 2 Claim in accordance with Section 1124 of the Bankruptcy Code.

**Class 2 is unimpaired under the Plan.  Each holder of an Allowed Class 2 Claim is conclusively presumed to have accepted the Plan and, consequently, is not entitled to vote to accept or reject the Plan.**

**4.03a.  Class 3A:  Senior Lender Secured Claims.**

Distributions:  The Allowed Class 3A Claims of the Senior Lenders shall consist of the Secured Revolver Debt, the Secured Term Debt, and all accrued and unpaid interest thereon and fees, costs, and charges incurred by the Senior Lenders in connection therewith, in an amount estimated to be $26,961,000 in the aggregate but subject to final determination as of the Effective Date.  Except to the extent that a holder of an Allowed Class 3A Claim has been paid by the Debtor prior to the Effective Date or agrees, in writing, to a different treatment, each holder of an Allowed Class 3A Claim as of the Record Date shall receive the treatment set forth in Article VII hereof on the Effective Date.

Retention of Liens:  Each holder of an Allowed Class 3A Claim shall, to the extent provided in Article VII of the Plan, retain the Liens (or replacement Liens) securing its Allowed Class 3 Claim as of the Effective Date until full and final satisfaction of such Allowed Class 3 Claim is made as provided herein, and upon such full and final satisfaction, such Liens shall, except to the extent provided in Article VII hereof, be deemed null and void, and shall be unenforceable for all purposes (all without further act or action).

**Class 3A is impaired under the Plan.  Holders of Allowed Class 3A Claims are entitled to vote to accept or reject the Plan.**

**4.03b.  Class 3B:  Subordinated Secured Claims.**

Distributions:  The Allowed Class 3B Claims of the Subordinated Lenders shall be $8,530,530.34 in the aggregate.  Notwithstanding any provision hereof to the contrary, the Allowed Class 3B Claims shall, upon the Effective Date, be subordinated with respect to distributions to all Allowed Claims.  Accordingly, the holders of Allowed Class 3B Claims shall receive no distribution on account of their Allowed Claims.

Retention of Liens:  Each holder of an Allowed Class 3B Claim shall retain the Liens (or replacement Liens) securing its Allowed Class 3B Claim until the Effective Date.  Upon the Effective Date, all such Liens shall be null and void, and shall be unenforceable for all purposes (without further act or action).

**Class 3B is impaired under the Plan.  Holders of Allowed Class 3B Claims are entitled to vote to accept or reject the Plan.**

**4.03.    Class 4:  Miscellaneous Secured Claims.**

Distributions:  Except to the extent that a holder of a Miscellaneous Secured Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Miscellaneous Secured Claim as of the Record Date shall receive payment in full of its Allowed Class 4 Claim in accordance with the term set forth in Article VII of the Plan.

Retention of Liens:  Each holder of an Allowed Class 4 Claim shall retain the Liens securing its Allowed Class 4 Claim as of the Effective Date until full and final payment of such

Allowed Class 4 Claim is made as provided herein, and upon such full and final payment, such Liens shall be unenforceable for all purposes (all without further act or action).

**Class 4 is impaired under the Plan.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.**

**4.04.    Class 5:  General Unsecured Claims**.

Distributions:  Except to the extent that a holder of a General Unsecured Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed General Unsecured Claim as of the Record Date, shall receive payment, in full and complete settlement, discharge and satisfaction of such Allowed Class 5 Claims, in accordance with the terms set forth in Article VII of the Plan.

**Class 5 is impaired under the Plan.  Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.**

**4.05.    Class 6:  IDEM Claims**.

Distributions:  Except to the extent that IDEM, as the holder of an IDEM Claim, has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, IDEM shall receive payment, in full and complete settlement, discharge and satisfaction of such Allowed Class 6 Claims, in accordance with the terms set forth in Article VII of the Plan.  If the Landfills or components thereof are liquidated at any time subsequent to the Effective Date, all Net Proceeds therefrom shall be distributed to IDEM on account of its holders of Allowed Class 6 General Unsecured Claim as soon as practicable after any such sale.

**Class 6 is impaired under the Plan.  Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.**

**4.06.    Class 7: Equity Interests.**

Distributions.  This Class shall retain its Common Stock and all rights therein subject to the provisions of the Plan, but shall not receive or retain any property or distributions under the Plan on account of such Equity Interests.

**Class 7 is impaired under the Plan, and the holders of Allowed Class 7 Interests are deemed to reject the Plan.  Consequently, holders of Allowed Class 7 Interests are not entitled to vote to accept or reject the Plan.**

## ARTICLE V
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS
## UNDER THE PLAN AND TREATMENT OF DISPUTED,
## <u>CONTINGENT AND UNLIQUIDATED CLAIMS</u>

### 5.01.     Voting of Claims.

Each holder of an Allowed Claim in an impaired Class of Claims pursuant to Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other applicable order or orders of the Bankruptcy Court.

### 5.02.     Method of Distributions Under the Plan.

A.     <u>Disbursing Agent.</u>  All distributions under the Plan will be made by the Disbursing Agent.  The Disbursing Agent will not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and in the event that the Disbursing Agent is otherwise so ordered, all costs and expenses of procuring any such bond or surety will be borne by the Reorganized Debtor (or New AFI, if it assumes such responsibility).  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated in the Plan, (iii) employ professionals to represent it with respect to its responsibilities under the Plan and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor (or New AFI, if it assumes such obligation).  The Debtor anticipates that the Reorganized Debtor will be the Disbursing Agent unless New AFI assumes that responsibility.  If an entity other than the Reorganized Debtor is the Disbursing Agent, it shall receive ordinary and reasonable compensation for services rendered pursuant to monthly invoices submitted to the Reorganized Debtor and available for inspection upon request by parties in interest of the Reorganization Case.  Notwithstanding any provision hereof to the contrary, the Senior Lenders and the Subordinated Lenders shall be deemed to have complied in full with the provisions of this Article 5.02, including Sections (A) through (J), inclusive, upon the Effective Date, all without further act or action; provided, however, within ten days after the Effective Date, the Senior Lenders shall deliver to the Reorganized Debtor original promissory notes stamped "paid" or, for any note not so produced, an affidavit of lost instrument.

B.     <u>Surrender of Instruments.</u>  As a condition to receiving any distribution under the Plan, each holder of a Claim  represented by an instrument, including notes and certificates, must surrender such instrument held by it to the Disbursing Agent or its designee

accompanied by a letter of transmittal substantially in the form set forth in the Plan Supplement, if any. Any holder that fails to (i) surrender such instrument or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan in respect of such Claim. Any distribution so forfeited shall become the sole and exclusive property of the Reorganized Debtor.

      C.    <u>Delivery of Distributions.</u> Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules, or on the books and records of the Debtor or its agents unless the Debtor has been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such holder that provides an address for such holder different from the address reflected in the Schedules or in the Debtor's books and records. In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder will be made unless and until the Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder without interest; provided, however, that, such undeliverable distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 365 days after the date of distribution in accordance with the section on Unclaimed Distributions below. The Disbursing Agent will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules and its books and records (including any proofs of claim filed against the Debtor).

      D.    <u>Distributions of Cash.</u> Any payment of Cash made pursuant to the Plan, at the option of the Disbursing Agent, will be made by a check drawn on a domestic bank or by wire transfer.

      E.    <u>Satisfaction of Claims.</u> Unless otherwise expressly provided herein, any distributions or deliveries made on account of Allowed Claims hereunder shall be in full payment of such Allowed Claims.

      F.    <u>Compromise of Controversies.</u> Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. Notwithstanding the

foregoing, settlement by the Debtor, Reorganized Debtor, or New AFI of Insurance Claims pursuant to Bankruptcy Rule 9019 or under the provisions of the Plan shall not:

        (i)      be binding upon the Insurers,

        (ii)     be considered a settlement of or judgment under the provisions of the Insurance Policies,

        (iii)   accelerate any obligations of the Insurers under the Insurance Policies, nor

        (iv)   be admissible in any court or proceeding as to the amount of any Insurance Claim.

        G.    <u>Minimum Distributions.</u>  No payment of Cash less than $5 will be made by the Disbursing Agent to any holder of an Allowed Claim, and the amount distributable to the holder of an Allowed Claim otherwise entitled to a distribution in an amount less than $5 shall be zero.

        H.    <u>Unclaimed Distributions.</u>  All distributions under the Plan that are unclaimed for a period in excess of 365 days after distribution thereof will be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and revested in the Reorganized Debtor, and any entitlement of any holder of any Claim to such distributions will be extinguished and forever barred.

        I.    <u>Date of Distributions.</u>  Unless otherwise expressly provided herein, any distributions or deliveries to be made hereunder shall be made on the Effective Date, or as soon thereafter as is practicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

        J.    <u>Distributions to Holders as of the Record Date.</u>  As of the close of business on the Record Date, the Claims Register, the equity register and transfer and other registers as maintained by the Debtor and its respective agents, as applicable, will be closed and there will be no further changes in the record holder of any Claim or Interest.  The Reorganized Debtor and New AFI will have no obligation to recognize any transfer of any Claim or Interest occurring after the Record Date.  They will instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the Claims Register and equity register and other registers as of the close of business on the Record Date.

        **5.03.**   **Allowed Secured Claims of the Senior Lenders**.  For purposes of the Plan, including, but not limited to, distributions pursuant to Article IV hereof, the Allowed Secured Claims of the Senior Lenders shall be an amount estimated to be $26,961,000 but subject to final determination as of the Effective Date.

**5.04.    Allowed Secured Claims of the Subordinated Lenders**.  For purposes of the Plan, including, but not limited to, distributions pursuant to Article IV hereof, the Allowed Secured Claims of the Subordinated Lenders, unless waived in writing, shall be $8,530,530.34 in the aggregate.  All other unpaid, pre-petition Claims of the Subordinated Lenders, including, without limitation, accrued interest, professional fees, and other fees, costs, and charges, which are incurred by the Subordinated Lenders, collectively or individually, and for which the Debtor has a reimbursement obligation, shall be allowed as General Unsecured Claims.

Notwithstanding any provision hereof to the contrary, the holders of Allowed Claims for Subordinated Debt, whether such Claims are Secured Claims or Unsecured Claims (the Subordinated Lenders have approximately $502,245 in Unsecured Claims), shall, upon the Effective Date, consent to the subordination of their distribution rights (but no other rights), to holders of Allowed Class 5 and Class 6 Claims.  Accordingly, the Subordinated Lenders shall receive no distribution under the Plan on account of their Allowed Claims.

**5.05.    Disputed Claims.**

A.    <u>Distributions as to Allowed Portion of Disputed Claims.</u>  The holder of a Disputed Claim that becomes, in part, an Allowed Claim, will receive a distribution in respect of the Allowed portion of such Claim, in accordance with Article IV of the Plan for Claims partially Allowed on or prior to the Effective Date, and Article V of the Plan for Claims partially Allowed subsequent to the Effective Date.

B.    <u>Distributions Upon Allowance of Disputed Claims.</u>  The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date will receive the distribution that would have been made to such holder under the Plan, if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date, without any additional post-Effective Date interest thereon on the first business day of the next succeeding month that is at least ten business days after the date such Disputed Claim becomes an Allowed Claim.

C.    <u>Distributions to Holders of Allowed Claims Upon Disallowance of Disputed Claims.</u>  Upon disallowance of any Disputed Claim, each holder of an Allowed Claim in the same Class as the disallowed Disputed Claim will be entitled to the distribution that would have been made in accordance with Article IV of the Plan to the holder of such Disputed Claim had such Disputed Claim been an Allowed Claim on or prior to the Effective Date.  Such distributions on account of disallowed Claims will be made as soon as practicable after the fifteenth business day following allowance or disallowance of the last Disputed Claim.  Upon allowance or disallowance of all or any portion of such Disputed Claims, the Reorganized Debtor will make appropriate distributions in accordance with the Plan.

D.    <u>Insurance Claims.</u>  All Insurance Claims are Disputed Claims.  Any Insurance Claim for which a timely proof of claim was filed in this Reorganization Case will be determined and liquidated in the administrative or judicial tribunal(s) in which it was pending on the Effective Date, or if no action was pending on the Effective Date, in any

administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of a court of competent jurisdiction.  Any Insurance Claim determined and liquidated pursuant to applicable nonbankruptcy Law that has become a Final Order, or in any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction, shall be treated and paid in accordance with the terms of any applicable Insurance Policy.

**5.06.    Objections to and Resolution of Claims.**

A.    <u>Procedures.</u>  Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code, the Reorganized Debtor shall, on and after the Effective Date, have the exclusive right to make and file objections to Claims.  Unless otherwise extended by the Bankruptcy Court, any objections to such Claims shall be served and filed on or before the later of: (i) one hundred twenty (120) days after the Effective Date; (ii) thirty (30) days after a request for payment or proof of claim is timely filed and properly served upon the Debtor; or (iii) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) hereof.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Claimant if the Debtor or the Reorganized Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Claimant's behalf in the Reorganization Case.  On and after the Effective Date, the Reorganized Debtor in accordance with this Article 5.06, will have the authority, at its sole discretion, to compromise, settle or otherwise resolve or withdraw any objection that it has filed, which act shall be effective upon the filing of a notice by the Reorganized Debtor with this Court.

B.    <u>No Recourse.</u>  Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claimant shall have recourse against the Disbursing Agent, the Debtor, the Reorganized Debtor, New AFI, or any of their respective professional consultants, attorneys, advisors, officers, directors or members or their successors or assigns, or any of their respective property.  However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases.**

      A.      <u>Executory Contracts and Unexpired Leases.</u>  In accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and any Person will be deemed rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed by the Debtor pursuant to order of the Bankruptcy Court entered prior to the Confirmation Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, (iii) that is an Insurance Policy, benefit program or a purchase order from a customer, or (iv) that is set forth in the Assumption Schedule of executory contracts and unexpired leases to be assumed, which schedule will be filed at least fifteen (15) days prior to the hearing on the confirmation of the Plan provided, however, that the Debtor reserves the right, on or prior to the Effective Date to amend the Assumption Schedule to delete any executory contract or unexpired lease therefrom thus providing for its rejection, or add any executory contract or unexpired lease thereto, thus providing for its assumption.  The Debtor will provide notice of any amendments to the Assumption Schedule to the parties to executory contracts and unexpired leases affected thereby. The listing of a document on the Assumption Schedule shall not constitute an admission by the Debtor that such document is an executory contract or unexpired lease or that the Debtor has any liability thereunder.  Additionally, all executory contracts and unexpired leases entered into after the Petition Date shall remain in effect according to their terms.

      Notwithstanding anything to the contrary contained herein, all executory contracts in which the Debtor is a seller of goods, wares and merchandise and a third party is the purchaser of goods, wares and merchandise shall be assumed upon entry of the Confirmation Order unless a motion to reject such sales contract is filed prior to the Confirmation Date.

      B.      <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.</u>  Entry of the Confirmation Order will, subject to and upon the occurrence of the Effective Date, constitute (i) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the assumption of the executory contracts and unexpired leases hereunder pursuant to Article 6.01(A) hereof, and (ii) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the assumption of the executory contracts and unexpired leases listed in the Assumption Schedule pursuant to Article 6.01(A) hereof.

      C.      <u>Cure of Defaults.</u>  An order of the Bankruptcy Court entered on or prior to the Confirmation Date will specify the procedures for providing to each Person whose executory contract or unexpired lease is being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed; (ii) the proposed cure to be paid in connection with the assumption; and (iii) the procedures for such Person to object to the assumption of the contract or the amount of the proposed cure.  Except as may otherwise be agreed to by the parties, or specifically provided herein, within thirty (30) days after the Effective Date, the Reorganized Debtor (or New AFI, if it assumes such obligation) will cure any and all

undisputed monetary defaults under any executory contract or unexpired lease assumed in accordance with Article 6.01(A) hereof and section 365(b)(1) of the Bankruptcy Code. All disputed defaults that are required to be cured will be cured either within thirty (30) days following the entry of a Final Order determining the amount, if any, of liability of the Reorganized Debtor (or New AFI, as the case may be) with respect thereto, or as may otherwise be agreed to by the parties or specifically provided herein.

D.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected by Operation of the Plan. Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article 6.01 must be filed with the Claims Agent and served upon the Debtor or, on and after the Effective Date, the Reorganized Debtor, no later than thirty (30) days after the later of (i) the effective date of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order and (iii) notice of an amendment to the Assumption Schedule. All claims not filed within such time will forever be barred from being asserted against the Debtor, its Estate, the Reorganized Debtor, and the Purchaser or Purchasers.

**6.02.    Continuation of Officer, Director and Employee Indemnification.**

The obligations of the Debtor to defend, indemnify, reimburse or limit the liability of its present and former directors and officers who were directors or officers, respectively, on or after the Petition Date, solely in their capacity as directors or officers, against any claims or obligations pursuant to the Debtor's certificate of incorporation or by-laws, applicable state Law or any specific agreement, or any combination of the foregoing, shall be assumed by the Reorganized Debtor or New AFI, as the case may be, survive confirmation of the Plan, remain unaffected thereby, and not be discharged irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.

**6.03.    Compensation and Benefit Plans.**

Except as otherwise provided under the Plan or established by Order of the Bankruptcy Court, the Customer Contracts, Collective Bargaining Agreement, Pension Plans, compensation plans, all saving plans, retirement plans or Retiree Benefits, as modified by the Debtor pursuant to Bankruptcy Code Sections 1113 and 1114 or otherwise, agreements or commitments concerning Accrued Vacation Pay or Accrued Personal Day Pay, health care plans, performance-based incentive plans, workers' compensation programs, and life, disability, directors and officers liability, and other employee benefit insurance plans are treated as executory contracts under the Plan and shall be assumed on the Effective Date by the Debtor in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, and, subsequent to any modification or restructuring thereof, assigned to, and assumed by, the Reorganized Debtor or New AFI, as the case may be, which contracts shall then continue to be performed by the Debtor or New AFI, as the case may be, in the ordinary course, except as specifically provided herein. The Debtor shall reject any and all employment contracts with Non-Union Employees which are not separately identified as a contract of such nature to be assumed in the Plan Supplement. The Debtor shall also reject the Benefits Restoration Plan dated January 1,

1994, the 1995 Long-Term Incentive Plan Grant Agreement dated November 30, 1998, and the 1995 Long-Term Incentive Plan dated December 1, 1994 on the Effective Date if not rejected by the Debtor before that date.

**ARTICLE VII**
**IMPLEMENTATION OF THE PLAN**

On the Effective Date, the Reorganized Debtor shall take all action necessary to implement the Plan including, without limitation, the actions described herein.

**7.01.    The New AFI Sale.**

On the Effective Date, the Reorganized Debtor shall conduct the New AFI Sale by selling substantially all of its assets to New AFI except (i) the manufacturing facility and certain equipment located at Plant 1, (ii) the Landfills; and (iii) Avoidance Action Recoveries, (iv) the Insurance  Claim – Kemper, and (v) any letters of credit or trust agreements funded by said letters of credit which may be utilized to cover or pay the IDEM Claim.  In exchange, New AFI shall pay an amount equal to:  (i) the Secured Revolver Debt and Secured Term Debt; (ii) the balance due under the Senior DIP Financing on the Effective Date; (iii) the balance due under the Junior DIP Financing to be computed on the Effective Date and converted concurrently to membership interests in New AFI; (iv) Priority Tax Claims; (v) Priority Non-Tax Claims; (vi) Administrative Expense Claims (other than expenses pertaining to Retained Property), including post-petition employee wage obligations and payments for Underfunded Pension Liabilities, Accrued Vacation Pay, and Accrued Personal Day Pay; (vii) Pension Excise Tax Claims; (viii) Miscellaneous Secured Claims; (ix) indemnification obligations preserved in Article 6.02 of the Plan and assumed by New AFI in Article IX of the Plan; and (x) $1,500,000 for holders of Allowed Class 5 Claims, to be distributed, over time, pursuant to the terms of this Article VII.  The Subordinated Lenders' distribution rights on account of Allowed Claims shall be subordinated on the Effective Date as described in Article 5.04 of the Plan.

**7.02.    The Plant 1 Sale.**

Within ninety (90) days of the Effective Date, if not earlier, the Debtor shall negotiate and enter into an Auction Agreement with a Guaranteed Bidder, and either conduct the Plant 1 Auction or sell the Property Subject to Auction to the Guaranteed Bidder.

**7.03.    Satisfaction of Senior Lenders' and Senior DIP Lenders' Claims**.

The Senior Lenders' Allowed Secured Claims shall be satisfied as described herein.  On the Effective Date, the New Credit Facility and the Plant 1 Obligation Credit Facility shall be entered into by and among each of the respective parties thereto, which collectively will extinguish the Debtor's obligations to the Senior Lenders except for the Plant 1 Obligation (for which New AFI will be a co-obligor).  The payment of the Plant 1 Obligation shall be secured by a first priority Lien upon (i) the Property Subject to Auction, (ii) the Net Proceeds from the sale of the Property Subject to Auction, (iii) all other assets of the Debtor and Reorganized Debtor other than the Landfills, the Insurance Claim – Kemper, and the Avoidance Action

Recoveries in excess of the Senior Lenders' Avoidance Action Lien Amount and the proceeds thereof and (iv) all of the assets of New AFI and the proceeds thereof. If the Property Subject to Auction Sale (principally, Plant 1 and related assets) is not sold prior to the Effective Date, then the Senior Lenders shall retain their first priority Lien on such assets, but shall agree that upon a sale of such assets, the first $250,000 of Net Proceeds therefrom shall be payable to holders of Allowed Class 5 Claims in partial satisfaction of distributions to which they are entitled under the Plan. The balance of such Net Proceeds shall be paid to the Senior Lenders as a reduction of Term Note B as provided in the New Credit Facility. If the Property Subject to Auction is sold prior to the Effective Date, the Senior Lenders' Lien shall attach to the Net Proceeds therefrom, but the first $250,000 of such proceeds shall likewise be payable, on or after the Effective Date, to holders of Allowed Class 5 Claims in partial satisfaction of distributions to which they are entitled under the Plan. The balance of the Net Proceeds of the Property Subject to Auction shall be paid to the Senior Lenders.

If the Property Subject to Auction is sold prior to the Effective Date, it shall be sold only upon entry of an order of the Bankruptcy Court approving the sale under Section 363 of the Bankruptcy Code after notice and a hearing.

Upon the Effective Date, the Senior Lenders will receive Cash proceeds from the New Credit Facility equal to the amount owing by the Debtor on its revolving loan obligations arising under the Pre-Petition Credit Agreement, plus or minus any amounts due or credits owed under the Senior DIP Financing, plus $10,411,000 (less any Net Proceeds paid prior to the Effective Date to the Senior Lenders from the Property Subject to Auction, the share of the Reorganized Debtor described in Article VII hereof, a special membership unit in New AFI, and entitlement to a risk fee as described more fully in the New Credit Facility.

Upon the Effective Date, to the extent of any outstanding balance owed to the Senior DIP Lenders, the Senior Lenders will receive Cash equal to such amount. If, upon the Effective Date, there is a credit balance on the Senior DIP Financing, the Senior DIP Lenders shall apply such credit balance to the Debtor's revolving loan balance arising under the Pre-Petition Credit Agreement.

**7.04. Payment of Miscellaneous Secured Claims**.

The value of the Collateral securing a Miscellaneous Secured Claim shall be determined as follows. The Debtor and the holder of any such Claim shall (i) agree upon a value or (ii) submit to a binding determination of valuation by an appraiser selected by the Debtor. If the holder of any such Claim so elects, it may seek a determination of value from the Court in accordance with § 506(a) of the Bankruptcy Code.

Holders of Allowed Class 4 Claims will receive, at the Debtor's sole discretion, (i) the Collateral securing the Allowed Class 4 Claim, (ii) the liquidation proceeds of the Collateral securing the Allowed Class 4 Claim, less the cost of liquidation, or (iii) monthly cash payments in an aggregate amount equal to such Allowed Claim, together with interest at a rate of 6.5% until the Claim is paid in full, with payments to be made over a period equal to 1.5 times the unexpired period, as of the Effective Date, of any applicable pre-petition lease or contract

instruments which give rise to such Claims, but not to exceed three years from the Effective Date in total, or, if no such instruments exist, payments shall be made on a thirty-six (36) month basis beginning on the Effective Date.  If valuation is determined by agreement or appraisal as provided herein, the holders of such Claims shall receive such payments beginning on the Effective Date, with all payments credited to the total balance finally determined to be owed hereunder.  If valuation is determined under § 506(a) at the election of holders of such Claims, no payments shall be made to such holders hereunder until valuation is determined on a final, nonappealable basis by the Bankruptcy Court.

### 7.05.    Distributions to Unsecured Creditors.

Holders of Allowed Class 5 claims shall receive a total of $1,500,000 consisting of the following:  the first $250,000 of Net Proceeds from the Plant 1 Auction and $1,250,000 from 20% of New AFI's Excess Cash Flow, which shall be calculated for the first, third and fourth calendar year fiscal quarter commencing on the last day of the fourth quarter of the Effective Date (e.g., fourth quarter 2005) and paid within 30 days after the end of such quarter based upon the calculation of 20% of Excess Cash Flow times 80%; and within 120 days after the end each fiscal year a determination of excess cash flow for the entire fiscal year will be calculated and such amount so determined less the amounts paid for the first, third and fourth quarter of such fiscal year will be paid. Such payments shall continue for four years from the Effective Date unless sooner paid.  Notwithstanding any provision hereof to the contrary, no distributions shall be made to members of New AFI other than for state and federal taxes on account of New AFI and repayments of subordinate secured operating loans to the extent such loans may be required by the Senior Lenders until $1,500,000 in total distributions have been made hereunder.  No payments shall be made to General Unsecured Creditors from Excess Cash Flow unless, after giving effect to all such payments, no default or event of default shall have occurred under the New Credit Facility.

### 7.06.    Distributions to IDEM.

IDEM shall receive, on account of its Allowed IDEM Claim, the rights under a trust agreement funded in the amount of  $1,021,000 from a letter of credit furnished by the Debtor and an assignment by the Debtor of proceeds from the Insurance Claim-Kemper.  IDEM shall also receive the Net Proceeds from any disposition of the Landfills.

### 7.07.    Plan Supplement.

Within the earlier of (i) fourteen days prior to the hearing to approve the Debtor's Disclosure Statement or (ii) seven days before objections to the sufficiency of the Disclosure Statement are due, the Debtor shall file the Plan Supplement.

### 7.08.    Additional Share of the Reorganized Debtor.

On the Effective Date, the Reorganized Debtor's organizational documents shall provide for the creation of an additional class of stock having one authorized share in the Reorganized Debtor that will be held by Bank of America, on behalf of the Senior Lenders.  This share shall

be entitled to no economic rights.  Bank of America, as the holder of this share, shall, pursuant to the Reorganized Debtor's organizational documents, have the exclusive right to prohibit the Reorganized Debtor from supporting, encouraging, seeking or filing a bankruptcy case under chapter 7 or chapter 11 of the Bankruptcy Code, or a receivership, dissolution, or similar insolvency proceeding.  Provided, however, that GMAC Commercial Finance will be prohibited from consulting with General Motors Corporation regarding voting such additional unit.

### 7.09.   Cancellation of Existing Securities and Agreements.

On the Effective Date, except as expressly provided in this Plan, the promissory notes, trust indentures, share certificates and other instruments evidencing a Claim or Interest shall be deemed cancelled without further act or action under any applicable agreement or Law, and the obligations of the Debtor under the agreements, instruments, trust indentures and certificates governing such Claims and Interests, as the case may be, shall be discharged.

### 7.10.   U.S. Trustee.

Beginning as of the Effective Date, the Reorganized Debtor shall not be required to prepare or file monthly operating reports. The Reorganized Debtor (or New AFI, if it assumes such obligation with the consent of the U.S. Trustee) shall be fully responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, and within thirty (30) days after the end of each calendar quarter, the Reorganized Debtor or New AFI, as the case may be, shall file with the Court and serve on the U.S. Trustee a quarterly financial report for each calendar quarter (or portion thereof) during which the case remains open, in a format prescribed by the U.S. Trustee and provided to the Debtor by the U.S. Trustee.

### 7.11.   Waiver of Subordination.

The distributions under the Plan take into account the relative priority of the Claims in each Class in connection with any contractual subordination provisions relating thereto. Accordingly, the distributions to the holders of Claims shall not be subject to levy, garnishment, attachment or other legal process by any holder of indebtedness senior to the indebtedness of the holders of any Claims, by reason of claimed contractual subordination rights.

### 7.12.   Release or Retention of Liens.

Except as otherwise specifically provided in or contemplated by the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, including, without limitation, Article 7.03 hereof, (i) each holder of: (a) any purported Secured Claim; and/or (b) any judgment, personal property or *ad valorem* tax, mechanics' or similar Lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (y) turn over and release to the Estate or the Reorganized Debtor, as the case may be, any and all property of the Debtor or Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor, the Estate, or the Reorganized Debtor, be deemed

released; and (z) execute such documents and instruments as the Disbursing Agent or the Reorganized Debtor, as the case may be, requires to evidence such Claimant's release of such property or Lien, and if such holder refuses to execute appropriate documents or instruments, the Debtor, the Estate, or the Reorganized Debtor (as applicable) may, in its discretion, (i) file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any Claimant's rights in such property; and (ii) on the Effective Date, all right, title and interest in such property shall revert or be transferred to the Reorganized Debtor or the Disbursing Agent, as applicable, free and clear of all Claims, interests, and Liens of any kind.  Notwithstanding any provision hereof to the contrary, the Senior Lenders will retain their Liens on assets of the Debtor, together with the Lien on Avoidance Actions granted under the Plan, until a full and final distribution is made on account of its Secured Claims.  The Senior Lenders shall, however, consent to the transfer or assignment of the Insurance Claim – Kemper as provided under the Plan, notwithstanding its Lien thereon.

## ARTICLE VIII
## PROVISIONS REGARDING CORPORATE GOVERNANCE
## AND MANAGEMENT OF THE REORGANIZED DEBTOR

**8.01.   General**.

On and after the Effective Date, management, control and operation of the Reorganized Debtor will be the responsibility of the Board of Directors of the Reorganized Debtor, subject to applicable Law and the obligations of the confirmed Plan.

**8.02.   Issuance of New Securities.**

The issuance of stock and/or membership units under the Plan is hereby authorized without further act or action under applicable Law. All securities issued pursuant to this Plan will be exempt from registration under the Securities Act of 1933, as amended, pursuant to section 1145 of the Bankruptcy Code to the extent permitted thereby.

## ARTICLE IX
## EFFECT OF CONFIRMATION OF THE PLAN

**9.01.   Term of Bankruptcy Injunction or Stays.**

Unless otherwise provided, all injunctions or stays provided for in this Reorganization Case under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

**9.02.   Vesting of Assets.**

A.     On or before the Effective Date, except as otherwise provided under the Plan, including, but not limited to, the provisions hereof respecting Retained Property, all property of the Debtor's Estate will vest (i) in New AFI or (ii) as provided in the Auction Agreement.

B.    From and after the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire and dispose of property in accordance with the Plan and the Confirmation Order, but otherwise free of any restrictions imposed under the Bankruptcy Code, the Bankruptcy Rules or the Office of the U.S. Trustee.

C.    As of the Effective Date, all property of the Reorganized Debtor will be free and clear of all Liens, claims and interests of holders of Claims and Equity Interests, except as provided in the Plan.

**9.03.    Claims Preserved.**

A.    As of the Effective Date, any and all Avoidance Actions and actions pertaining to antitrust or price fixing violations accruing to the Debtor and Debtor-in-Possession, including those under sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, will be preserved and will vest with the Reorganized Debtor.  Except as specifically provided herein, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, Claims or causes of action that the Debtor, the Estate, or the Reorganized Debtor may have or which may be asserted on behalf of the Estate in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy Law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim and/or Claim for setoff which seeks affirmative relief against the Debtor or the Reorganized Debtor, their officers, directors, managers, or representatives, (ii) any and all rights, claims, obligations and causes of action of any nature of any of the Debtor against any non-debtor subsidiary or affiliate, (iii) the avoidance of any transfer by or obligation of the Estate or the Debtor or the recovery of the value of such or (iv) the turnover of any property of the Estate. All such rights, Claims and causes of action shall remain in full force and effect and are retained by the Debtor, its Estate, and the Reorganized Debtor for enforcement.  A non-exclusive summary of potential Avoidance Actions, based on payments made by the Debtor within 90 days of the Petition Date, is attached hereto as Exhibit A and incorporated herein by reference.

B.    Except for the releases set forth in Article IX of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  The Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff or other legal or equitable defenses which they or any of them had immediately prior to the Petition Date fully as if the Reorganization Case had not been commenced, and all legal and/or equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if this case had not been commenced.

**9.04.    Discharge of Debtor.**

The rights afforded to the holders of Claims and Interests hereunder will be in consideration and for complete satisfaction, discharge and release of Claims and Equity

Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, its bankruptcy Estate or any of its assets or properties. Except as otherwise provided herein, (a) on the Effective Date, all such Claims against and Equity Interests in the Debtor will be satisfied, discharged and released in full and (b) all Persons will be precluded and enjoined from asserting against the Reorganized Debtor and New AFI, their successors, or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

### 9.05.    Discharge of Claims and Termination of Equity Interests.

Except as otherwise specifically provided herein or in the Confirmation Order, including, without limitation, the retention of Common Stock in the Reorganized Debtor pursuant to Article 4.07 of the Plan, and other than indemnification obligations to the Debtor's current officers and directors, which obligations may be assumed by New AFI pursuant to Article 6.02 of the Plan, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Equity Interests of any kind, nature or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, all existing Claims against the Debtor and Equity Interests in the Debtor, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, or any of its assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

### 9.06.    Release of Senior Lenders and Officers and Directors of the Debtor.

On the Effective Date, the Debtor, and the Reorganized Debtor will automatically release and will be deemed to release any and all claims (including any claims arising out of any alleged fiduciary or other duty), causes of action, rights of setoff or other legal or equitable defenses that they have or may have against (i) the Senior Lenders, arising or based upon any actions, conduct or omissions accruing prior to the Effective Date, or based upon the Senior Lenders' status as a pre-or post-petition lender of the Debtor, and (ii) any of their officers and directors who held such positions after the Petition Date in their capacities as such, arising or based upon any actions, conduct or omissions occurring prior to the Effective Date, or based on their status as officers and directors, excluding willful misconduct and gross negligence. The Confirmation Order shall constitute an order approving the compromise, settlement and release of any and all such claims pursuant to section 1123(b)(3)(A) of the Bankruptcy Code. To the full extent permitted by applicable Law, each holder of a Claim (whether or not Allowed) against or Equity Interest in the Debtor shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover and shall be deemed to release any Claim against (i) the Senior Lenders and (ii) such officers and directors occurring prior to the Effective Date, excluding, however, willful misconduct and gross negligence.

### 9.07.    Injunction.

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on or after the Effective Date, from (a) commencing or continuing in any manner any action or proceeding of any kind against the Debtor with respect to any Claim or Equity Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, Reorganized Debtor, or New AFI, or against the property or interest in property of the Debtor, the Reorganized Debtor, or New AFI, on account of any such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance or Lien of any kind against the Debtor, the Reorganized Debtor, or New AFI, or against the property or interest in property of the Debtor, the Reorganized Debtor, or New AFI, on account of any such Claim or Equity Interest, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the Reorganized Debtor, or New AFI, against the property or interests in property of the Debtor, the Reorganized Debtor, or New AFI, on account of any such Claim or Equity Interest or (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are extinguished, dismissed or released pursuant to the Plan. Such injunction shall extend to successors of the Debtor, including, without limitation, the Reorganized Debtor, New AFI, and their respective properties and interests in properties.  No provision of the Plan shall be construed as a limitation on the Senior Lenders' rights and remedies contained in the New Credit Facility or the Plant 1 Obligation Credit Facility.

### 9.08.    Injunction Against Interference with Plan.

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests, and other parties-in-interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; provided, however, that nothing set forth herein shall be deemed to require the Senior Lenders to make any loan except on a consensual basis.

### ARTICLE X
### EFFECTIVENESS OF THE PLAN

### 10.01.    Conditions Precedent to Effectiveness.

The Plan will not become effective unless and until the following conditions have been satisfied or waived in writing by the Debtor and the Senior Lenders:

A.    The Confirmation Order has been entered on the docket for the Reorganization Case by the Clerk of the Bankruptcy Court in a form and of a substance acceptable to the Debtor, and such Confirmation Order becomes a Final Order, with no stay or injunction in effect with respect thereto;

B.      All actions, documents, and agreements necessary to implement the Plan and the New AFI Sale have been effected or executed, including, without limitation, the execution, delivery and/or filing of the Plan Supplement, the funding of all commitments pursuant to which New AFI will fulfill its obligations to the Senior Lenders under the Plan, including, without limitation, capital call commitments and funding commitments arising under the New Credit Facility; and

C.      The Debtor has received all authorizations, consents, regulatory approvals, rulings, opinion letters or documents that are determined by the Debtor to be necessary to implement and effectuate the Plan.

### ARTICLE XI
### <u>RETENTION OF JURISDICTION</u>

The Court shall retain jurisdiction after the Confirmation Date for the following purposes:

A.      <u>Claims:</u>  The classification and allowance of Claims or Equity Interests and the re-examination of Claims that have been allowed for purposes of voting only, and the determination of such objections as may be filed to Claims.  The failure by the Debtor or other party-in-interest to object to, or to examine any Claim for the purposes of voting, shall not be deemed a waiver of the Debtor's right, in accordance with the provisions of this Plan, to later timely object to or reexamine the Claim in whole or in part.

B.      <u>Disputes:</u>  The determination of all questions and disputes regarding title to the assets of the Debtor and the determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the Confirmation Date between the Debtor and any other Persons, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code, and, more particularly for the Debtor or the Reorganized Debtor to pursue the Avoidance Actions.

C.      <u>Corrections:</u>  The correction of any defects, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

D.      <u>Modification:</u>  The modification or amendment of this Plan after the Confirmation Date.

E.      <u>Interpretation:</u>  To enforce and interpret the terms and conditions of the Plan and to resolve any dispute arising under or relating to the Plan.

F.      <u>Enforcement:</u>  Entry of any Order, including injunctions, necessary to enforce the title, right and powers of the Debtor, the Reorganized Debtor, or New AFI, and to impose such limitations, restrictions, terms and conditions of such title, right and powers as this Court may deem necessary.

G.      <u>Termination of Case:</u>  Entry of any Order concluding and terminating this Reorganization Case.

H.    <u>Causes of Action:</u>  To hear and determine causes of action by or against the Debtor, Reorganized Debtor, New AFI, or by the Creditors' Committee on behalf of the Debtor, arising prior to commencement of, or during the pendency of, this Reorganization Case, including but not limited to Avoidance Actions.

I.    <u>Professional Fee Claims:</u>  To hear and determine fee applications of Professionals or other Claims, including, but not limited to, any dispute regarding Professional fees.

J.    <u>Implementation:</u>  At any time, the Court may issue Orders and give directives to the Debtor, Reorganized Debtor, New AFI, and other parties to implement and enforce the Plan pursuant to section 1142 of the Bankruptcy Code.

K.    <u>Other Matters:</u>  For all other purposes and matters to the extent that subject matter jurisdiction exists for this Court under the Bankruptcy Code, as currently enacted or subsequently amended.

L.    <u>Taxes:</u>  To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

M.    <u>Executory Contracts and Leases:</u>  To hear and determine motions for the assumption or rejection of executory contracts and unexpired leases and the allowance of Claims resulting therefrom and incident thereto.

N.    <u>Employee Benefits.</u>  To hear and determine motions made pursuant to sections 1113 and 1114 of the Bankruptcy Code, and to hear and determine any disputes regarding determinations necessary to effect pension and other benefit plan terminations or modifications.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### 12.01.  Effectuating Documents and Further Transactions.

Each of the Debtor, the Reorganized Debtor, and New AFI is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

### 12.02.  Exemption From Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation any bills of sale or assignments executed in connection with any of the transactions contemplated under in furtherance of or in connection with the Plan,

shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All transactions consummated by the Debtor and approved by the Bankruptcy Court on or after the Petition Date through and including the Effective Date, including without limitation, the sale of property by the Debtor pursuant to section 363(b) of the Bankruptcy Code and the assumption, assignment and sale by the Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

### 12.03.  Bankruptcy Court Approved Payments.

Notwithstanding the contents of the Debtor's Schedules, Claims listed therein as undisputed, liquidated, and not contingent shall be reduced by the amount, if any, that was paid by the Debtor pursuant to previous Orders of the Bankruptcy Court. To the extent such payments are not reflected in the schedules, such schedules are hereby amended and reduced to reflect that such payments were made. After the Confirmation Date, nothing in this Plan shall preclude the Debtor from paying or honoring, and the Debtor is hereby authorized to pay or honor, Claims, policies or programs that the Debtor was authorized to pay or honor pursuant to any order of the Bankruptcy Court entered prior to the Confirmation Date.

### 12.04.  Cram Down.

In the event that a Class votes against the Plan, and the Plan is not withdrawn as provided herein, the Debtor reserves the right to effect a "cram down" of the Plan pursuant to section 1129(b) of the Bankruptcy Code. To the extent any Class is deemed to reject the Plan by virtue of the treatment provided to such Class, the Plan shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

### 12.05.  Confirmation Order.

The Confirmation Order shall and is hereby deemed to ratify all transactions effected by the Debtor during the period commencing on the Petition Date through the Effective Date, except for any acts constituting willful misconduct, gross negligence or fraud.

### 12.06.  Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.07.  Exculpation.

None of the Debtor, the Reorganized Debtor, New AFI, the Senior DIP Lender, the Junior DIP Lender, the Creditors' Committee, or any of their respective members, shareholders, officers, directors, employees, advisors, Professionals or agents shall have or incur any liability to any holder of a Claim or Equity Interest for any action or omission in connection with, related to, or arising out of the Reorganization Case, the pursuit of confirmation of the Plan, the

consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct and gross negligence, and, in all respects, the Debtor, the Reorganized Debtor, New AFI, the Senior DIP Lender, the Junior DIP Lender, and the Creditor's Committee, and each of their respective members, shareholders, officers, directors, employees, advisors, Professionals and agents will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that nothing in this section shall be deemed a release of any non-debtor from liability, if any, under Title I of the Employee Retirement Income Security Act of 1974, as amended.

### 12.08.  Termination of Committee.

The appointment of the Creditors' Committee will terminate on the Effective Date and the Creditors' Committee shall be dissolved on such date.

### 12.09.  Post-Effective Date Fees and Expenses.

From and after the Effective Date, New AFI (if it assumes such obligation) will, in the ordinary course of business, and without the necessity of any approval from the Bankruptcy Court, pay the reasonable fees and expenses of Professionals hereafter incurred by the Reorganized Debtor or New AFI, including without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 12.10.  Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor has complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code. The Debtor may, without notice to holders of Claims or Equity Interests insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto or in any document required by the Plan.

### 12.11.  Substantial Consummation.

Substantial Consummation of the Plan within the meaning of section 1101(2)(B) of the Bankruptcy Code will have occurred on the Effective Date when substantially all of the property proposed to be transferred under the Plan has been transferred, the Reorganized Debtor has assumed the business of the Debtor and its Estate, and distributions, assumptions of indebtedness, and transfers under the Plan have commenced in the manner provided under the Plan and in the Confirmation Order.

**12.12.  Severability.**

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision hereof.

**12.13.  Revocation, Withdrawal or Amendment of the Plan.**

The Debtor reserves the right to revoke, withdraw or amend the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**12.14.  Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor and New AFI.

**12.15.  Notices.**

All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

|  |  |
|---|---|
| If to Debtor: | Thomas Woehlke |
|  | Auburn Foundry, Inc. |
|  | 635 West 11th Street |
|  | Auburn, Indiana 46706 |
|  |  |
| With a copy to: | John R Burns |
|  | Baker & Daniels |
|  | 111 East Wayne Street, Suite 800 |
|  | Fort Wayne, Indiana 46802 |

**12.16.  Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other Law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Laws of the State of Indiana, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.17.  Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Debtor, the Reorganized Debtor, or New AFI (if it assumes such responsibility), as the case may be, will comply with all withholding and reporting requirements imposed by any Federal, State or local taxing authority and all distributions hereunder will be subject to any such withholding and reporting requirements.

**12.18.  Allocation of Plan Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for Federal Income Tax purposes, be allocated to the interest amount of the Claim first and then to the principal amount of the Claim.

**12.19.  Headings.**

Headings are used in the Plan for convenience and reference only, and will not constitute a part of the Plan for any other purpose.

**12.20.  Plan Supplement and Assumption Schedule.**

All documents included in the Plan Supplement and Assumption Schedule are incorporated into and are a part of the Plan as if set forth in full herein.

BAKER & DANIELS

By:  /s/ John R Burns
      John R Burns (#3016-02)
      Stephen A. Claffey (#3233-98)
      Mark A. Werling (#20426-02)
      111 East Wayne Street, Suite 800
      Fort Wayne, Indiana 46802
      Telephone:  (260) 424-8000
      Facsimile:  (260) 460-1700

ATTORNEYS FOR THE DEBTOR,
AUBURN FOUNDRY, INC.