# AUBURN FOUNDRY, INC.

## 1995 LONG-TERM INCENTIVE PLAN *

* Including amendments through
February 1, 1999

# AUBURN FOUNDRY, INC.

## 1995 LONG-TERM INCENTIVE PLAN

## INDEX

| Section | Contents | Page |
|---|---|---|
| 1 | General Purpose of Plan | 3 |
| 2 | Definitions | 3 |
| 3 | Administration of Plan | 5 |
| 4 | Participation | 6 |
| 5 | Deferrals | 7 |
| 6 | Units | 9 |
| 7 | Accounts | 10 |
| 8 | Termination of Employment | 11 |
| 9 | Change-of-Control | 12 |
| 10 | Redemption of Units | 12 |
| 11 | Amendment and Termination | 13 |
| 12 | General Provisions | 13 |

## SECTION 1 - GENERAL PURPOSE OF PLAN

The Auburn Foundry, Inc., 1995 Long-Term Incentive Plan for eligible executives of Auburn Foundry, Inc. has been authorized by the Board of Directors and will be effective as of December 1, 1994. The Plan is unfunded and is maintained by the Company for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

The purpose of the Plan is as follows:

- To provide a competitive total compensation opportunity which will attract, retain and reward key executives;

- To tie executives' long-term reward to Company performance; and

- To give executives a sense of Company ownership through the opportunity to acquire Units through Unit Awards and/or by deferring all or a portion of their Bonus.

## SECTION 2 - DEFINITIONS

2.1   **"Account"** means the bookkeeping account(s) established in the name of each Participant to which is credited a number of Units representing:

   (a)   Deferrals under the Plan; and

   (b)   Unit Awards made under the Plan.

2.2   **"Beneficiary"** means the person or persons designated in accordance with Section 4.4 below.

2.3   **"Board"** means the Board of Directors of the Company.

2.4   **"Bonds"** means the amount, if any, awarded to a Participant in the Plan under the Auburn Foundry, Inc. Salaried Bonus Plan, or other annual incentive award program approved by the Committee.

2.5   **"Cause"** means a felony conviction of a Participant or the failure of Participant to contest prosecution for a felony, or a Participant's willful misconduct or dishonesty, any of which is directly and materially damaging to the business reputation of the Company.

2.6   **"Change-of-Control"** means (i) the registration and sale of over fifty percent of the Company's Common Stock pursuant to a registration statement filed under the Securities Act of 1933, as amended; (ii) the sale of at least sixty percent of the assets of the Company to an unaffiliated Company; or (iii) the occurrence of a transaction requiring shareholder approval in connection with the acquisition of the Company by another unaffiliated entity through merger, consolidation, reorganization, change of capital structure, election of a slate of directors constituting a majority by the Board, or otherwise.

2.7   **"Committee"** means the Compensation Committee of the Board, or any successor committee appointed by the Board which has been designated to administer the Plan.

2.8   **"Common Stock"** means the Common Stock at no par value per share of the Company.

3

2.9    **"Company"** means Auburn Foundry, Inc., a corporation organized under the laws of the State of Indiana or any successor corporation and its subsidiaries.

2.10    **"Current Unit Value"** means the Unit Value of a Unit as of a given date during the Plan Year.

2.11    **"Deferral"** means deferral by an Eligible Executive of all or a portion of such Eligible Executive's Bonus by execution of a Deferral Agreement.

2.12    **"Deferral Agreement"** means a completed agreement including any amendments or attachments required under Section 4.2(a), between an Eligible Executive and the Company under which the Eligible Executive agrees to defer such Eligible Executive's Bonus.

2.13    **"Effective Date"** means December 1, 1994, the effective date of the Plan.

2.14    **"Eligible Executive"** means an employee of the Company who has been selected by the Committee under Section 4.1 to participate in the Plan during a Plan Year.

2.15    **"Fiscal Year"** means the Company's business year, commencing on December 1 of each calendar year and terminating on the following November 30.

2.16    **"Initial Unit Value"** means $1.00, the value of Units established by the Committee on the Effective Date for the purpose of measuring appreciation in Unit Value and thereafter, the value of a Unit when first credited to a Participant's Account.

2.17    **"Net Income"** means the effective after-tax Net Income of the company as determined by the Committee in accordance with generally accepted accounting principles applied on a consistent basis as reported by the Company's auditors; LESS, to the extent not taken into account as compensation expense, the sum of amounts paid under the Company's incentive programs, and accruals for payments of Deferrals and Unit Awards under this Plan.

2.18    **"Participant"** means an officer or other key executive of the Company who has been selected by the Committee to participate in the Plan in a Plan Year and, subject to Section 5.4, who has executed Unit Grant Agreement and/or a Deferral Agreement.

2.19    **"Plan"** means the Auburn Foundry, Inc. 1995 Long-Term Incentive Plan, as amended form time to time.

2.20    **"Plan Administrator"** means the individual(s) appointed by the Committee to carry out the day-to-day administration of the Plan.

2.21    **"Plan Year"** means the Company's Fiscal Year, except that the 1995 Plan year shall begin on the Effective Date.

2.22    **"Retirement"** means "Retirement" as set forth in the Savings Plan.

2.23    **"Return On Equity"** means for a given Plan Year, the Net Income of the Company for that Plan Year divided by the sum of the value of the Company's Common Stock as of the first business day of such Plan Year plus the aggregate accrued deferral liability under the Plan equal to the accrued deferral liability as of the first day of such Plan Year plus additional deferrals made during the Plan Year.

2.24    **"Savings Plan"** means the Auburn Foundry, Inc. Salaried 401(k) Plan.

2.25  **"Significant Reduction in Duties"** means:

    (a)    the assignment of duties to a Participant by the Company which:

        (i)    are materially different from the Participant's previously assigned duties; and which

        (ii)    result in the Participant having significantly less authority and/or responsibility that such Participant previously had, without such Participant's express written consent, or

    (b)    the reduction in Participant's salary by the Company, except if such reduction is part of a change in a Company or division-wide compensation program which has been approved by the Committee and/or the Board.

2.26  **"Special Valuation Date"** means the date on which a determination of Unit Value is required due to the occurrence of a Change-of-Control under Section 9.

2.27  **"Termination of Employment"** means any of the events set forth in Section 8 causing the termination of a Participant's employment with the Company.

2.28  **"Unit"** means the Units created by the Committee to denominate Participant Deferrals or Unit Awards made under the Plan for the express purpose of measuring appreciation on such Deferrals or Unit Awards.

2.29  **"Unit Value"** means the value of a Unit determined on a Valuation Date or in the event of a Change-of-Control, the Special Valuation Date.

2.30  **"Unit Award"** means a grant of a specified number of Units to an Eligible Executive by the Committee under Section 6.1.

2.31  **"Valuation Date"** means the last business day of a Plan Year, or such other date as approved by the Committee as of which the appreciation or depreciation in the Unit Value over such Plan Year is determined.

## SECTION 3 - ADMINISTRATION OF THE PLAN

3.1  **Administration of the Plan.**

The Committee shall have the authority to adopt, alter and repeal such administrative rules, guidelines and practices governing the Plan as it shall, from time to time, deem advisable, to interpret the terms and provisions of the Plan, and to otherwise supervise the administration of the Plan.

All decisions made by the Committee under the Plan shall be final and binding on all persons, including the Company, Eligible Executives, and the Participants, subject to approval of the Board.

3.2  **Appointment of Plan Administrator.**

This Plan shall be administered by the Plan Administrator appointed by the Committee.  The Plan Administrator shall take any action necessary for the proper operation of the Plan, subject to approval by the Committee.  Any disputes between a Participant, former Participant, Beneficiary, or their legal representative, and the Plan Administrator shall be resolved by the Committee.

3.3    **Adjustments.**

In order to determine the value of Participant Accounts in the event of any merger, acquisition, consolidation, combination, other corporate change, any material changes in accounting practices, tax laws, other applicable laws or regulations, or any extraordinary losses, gains or other similar events affecting the Company, the Committee, in its sole discretion, may make such substitutions or adjustments, if any, that it deems necessary or equitable with respect to the number and/or value of Units held by a Participant in order to preserve the intent of the Plan and to avoid unintended windfalls or hardships; provided, that such adjustment shall not adversely affect the rights of any Participant with respect to any Units previously credited to a Participant's Account without such Participant's written consent.

In the event that an adjustment is authorized by the Board under this Section 3.3., each Participant's Account shall be appropriately adjusted by the Committee.

## SECTION 4 - PARTICIPATION

4.1    **Eligibility.**

Officers and other key executives of the Company who are selected by the Committee, and who are eligible to participate in the Auburn Foundry, Inc. Salaried 401(k) Plan, may set aside a portion of any bonus paid to them after they are eligible to participate in the 401(k) Plan. Each plan year, Eligible Executives shall be selected by the Committee, in its sole discretion, on the basis of recommendations made by the Company's Chief Executive Officer.

[NOTE: This Section was amended to this language on July 2, 1996.]

4.2    **Participation Through Deferral of Compensation.**

(a)    An Eligible Executive who has been selected by the Committee to Participate in the Plan for a Plan Year shall become a Participant in the Plan for the purpose of deferring compensation for such Plan Year as of the date such Eligible Executive first files a Deferral Agreement with the Plan Administrator on the form attached as Appendix A and a Unit Grant Agreement in the form attached as Appendix B.

(b)    The Deferral Agreement executed by a Participant shall be in writing and approved by the Plan Administrator who shall be the sole judge of the proper completion of the Agreement. Such Deferral Agreement shall provide, subject to the limitations specified in Section 5, for the deferral of a portion of such Participant's Bonus to be earned in the following Plan Year. The Deferral Agreement shall include such other provisions as the Plan Administrator deems appropriate.

(c)    The Unit Grant Agreement shall be in writing and approved by the Plan Administrator who shall be the sole judge of the proper completion of the agreement. Such Unit Grant Agreement shall provide for the terms and conditions of the Units into which Participant Deferrals will be converted for the purpose of crediting Deferrals to Participant Accounts and determining appreciation and/or depreciation on such Deferrals.

4.3     **Participation Through Receipt of Unit Award.**

An Eligible Executive who has been selected by the Committee to participate in the Plan for the purpose of receiving a grant of a Unit Award in a Plan Year shall become a Participant by executing a Unit Grant Agreement which shall be in writing and approved by the Plan Administrator, who shall be the sole judge of the proper completion of the agreement. Such Unit Grant Agreement shall provide for the terms and conditions of the Units subject to the Unit Award made to such Participant.

4.4     **Designation of Beneficiary.**

Each Participant may file, on the form attached as Appendix C, a written election designating one or more primary and contingent Beneficiaries with respect to any amounts payable under the Plan in the event of a Participant's death. A Participant may amend such Beneficiary designation in writing at any time prior to such Participant's death, without the consent of any previously designated Beneficiary unless such consent is required by state law.

Such amended designation shall not be effective unless and until received by the duly authorized representatives of the Company prior to such Participant's death. If no Beneficiary is named by the Participant, the Beneficiary designated under the Savings Plan shall be deemed to be the designated Beneficiary.

4.5     **Termination of Participation and Re-employment.**

Participation in the Plan shall cease upon a Participant's termination of employment with the Company; provided, however, if a former Participant whose participation in the Plan ceases under this Section 4.5 is re-employed, such former Participant may again become a Participant in accordance with the provisions of this Plan, upon selection by the Committee.

4.6     **One-Time Election To Redeem Units For Certain Employees.**

Any Participant who, prior to July 1, 1996, has vested Units credited to his account, but who the Committee determines will not be selected for continued participation in the Plan, shall have a one-time opportunity to elect redemption of all, and not part, of the vested Units credited to that Participant's Account, by making such election in writing delivered to the Plan Administrator between August 1, 1996 and November 30, 1996. Such redemption shall be computed as of the Valuation Date for the Plan's 1996 Fiscal Year and shall be paid as soon as practical thereafter, but not before January 1, 1997.

[NOTE: This Section was added by Amendment #2 adopted July 2, 1996.]

## SECTION 5 - DEFERRALS

5.1     **Filing Requirements.**

Prior to the close of business on November 30 in any Plan Year, an Eligible Executive may elect, subject to the limits of this Section 5, to defer a portion of the Bonus to be earned in the following Plan Year by filing a Deferral Agreement with the Plan Administrator no later than the close of business on November 30. If an employee becomes an Eligible Executive during a Plan Year, such Eligible Executive may elect to defer the Bonus for such Plan Year by filing a Deferral Agreement with the Plan Administrator prior

7

to the close of business on the thirtieth business day following the date such employee becomes an Eligible Executive; provided, however, that the Bonus may be deferred only if the amount of the Bonus for that Plan Year has not already been determined by appropriate action of the Board and cannot be determined by such Eligible Executive with reasonable accuracy at the time of election.

5.2    **Deferral Election Irrevocable.**

A Participant's election to defer the Bonus for any Plan Year shall become irrevocable on the last date the Deferral may be elected under Section 5.1. A Participant may revoke or change a Deferral election any time prior to the date such election becomes irrevocable. Any such revocation or change shall be made in a form and manner determined by the Plan Administrator.

5.3    **Annual Deferral Election.**

An Eligible Executive must file, in accordance with Section 5.1, a new Deferral Agreement for each Plan Year in which such Eligible Executive is selected to participate in the Plan through a Deferral. A Participant's Deferral Agreement shall only apply to the Bonus earned in the Plan Year for which the Deferral election is made.

5.4    **Suspension of Deferrals.**

Notwithstanding anything in this Plan to the contrary, if an Eligible Executive:

(1)    receives a withdrawal on account or hardship from the Savings Plan or any other plan maintained by the Company which meets the requirements of Section 401(k) of the Internal Revenue Code (or any successor thereto); and

(2)    is precluded from making contributions to such 401(k) plan for at least 12 months after receipt of such hardship withdrawal, no amounts shall be deferred under this Plan pursuant to the Deferral Agreements executed by an Eligible Executive under Section 4.2(a), until such time as the Eligible Executive is again permitted to contribute to such 401(k) plan. Any Bonus payment which would have been deferred pursuant to a Deferral Agreement but for the application of this Section 5.4 shall be paid to the Eligible Executive as if he had entered into such Deferral Agreement.

5.5    **Amount and Timing of Deferral.**

An Eligible Executive may elect to defer such percentage of such Eligible Executive's Bonus as determined by the Committee up to 50% of the Bonus to be earned in the Plan Year for which the election is made; provided, that the minimum Deferral for any Plan Year shall not be less than $1,000. Any Deferral shall either be in whole percentages or in increments of $1,000. All Deferrals must be made for either five or ten full calendar years from the date such Bonus becomes payable.

5.6    **Changes in Deferral Limitations.**

The Committee may establish such other maximum or minimum limits on the amount of the Bonus which may be deferred or the timing of such deferral. Eligible Executives shall be given written notice of any such changes at least ten (10) business days prior to the date they take effect.

## SECTION 6 - UNITS

6.1    **Acquisition of Units.**

Units shall be available for:

(a)     purchase by Eligible Executives electing to defer the Bonus under Section 5.1; and

(b)     the grant of Unit Awards by the Committee to Eligible Executives.

6.2    **Unawarded and Forfeited Units.**

The Committee, in its sole discretion, may reserve for future grants to current or future Participants any portion of the Units available for grants under the Plan. Any Unit granted to a Participant which is either forfeited or redeemed pursuant to the provisions of Section 8 shall be available for current or future grants, as the Committee, in its sole discretion, determines.

6.3    **Term of Units.**

The term of a Unit shall be as follows:

(a)     A Unit purchased through a Deferral shall have a term commencing on the date the Bonus relating to such Deferral first becomes payable and terminating on the earlier of (i) the last day of the deferral period regarding such Deferral elected by a Participant under Section 5.1, (ii) the date of such Participant's termination of employment with the Company as provided in Section 8, (iii) the date of a Change-of-Control as provided in Section 9, or (iv) the date of approval of a plan amendment and/or termination under Section 11 which results in the redemption of such Units.

(b)     Units subject to Unit Awards shall have a term commencing on the date of the grant and terminating on the earlier of (i) the fifth or tenth anniversary of the date of the grant as determined by the Committee, (ii) the date of such Participant's termination of employment with the Company as provided in Section 8, (iii) the date of a Change-of-Control as provided in Section 9, or (iv) the date of approval of a plan amendment and/or termination under Section 11 which results in the redemption of such Units.

(c)     In the event of a Redemption pursuant to Section 10.1(f), the Redemption shall be computed as of the first Valuation Date following the Committee's determination pursuant to Section 10.1(f), and shall be paid as soon as practical after the following January 1st.

[NOTE: This Section was added by Amendment #2 adopted July 2, 1996.]

6.4    **Non-Transferability of Units.**

A Participant's rights and interest in the Units may not be assigned or transferred in whole or in part either directly or by operation of law or otherwise; except that in the event of a Participant's death, such rights and interest may be transferred by will or by the laws of descent and distribution. Such limitation on transfer shall include, but not be limited to, transfer by way of execution, levy, garnishment, attachment, pledge, bankruptcy or transfer in any other manner. In addition, no such rights or interests of any Participant under the Plan shall be subject to any obligation or liability of such Participant other than any obligations or liabilities owed by the Participant to the Company.

6.6     **Vesting of Units.**

    (a)    Participants shall be 100% vested at all times in Units purchased through deferrals.

    (b)    Participants shall become 100% vested in all Units granted as part of Unit Awards under the Plan upon either the fifth or tenth anniversary of the date of the grant as determined by the Committee on the date of the grant, in its sole discretion.

## SECTION 7 - PARTICIPANT ACCOUNT BALANCES

7.1     **Participant Accounts.**

An account shall be established in the name of a Participant for the purpose of tracking the number of Units credited to a Participant's Account from:

    (a)    Participant Deferrals elected under Section 5.1; and

    (b)    Participant Unit Awards made under Section 6.1

7.2     **Investment of Participant Accounts.**

For the purpose of determining appreciation/depreciation in Unit Value of the Units credited to Participant Accounts, the Unit Value shall be determined with reference to Return On Equity. Any appreciation and/or depreciation reflected in Unit Value shall be net of fund expenses.

7.3     **Determination of Unit Value.**

The Committee shall establish the Initial Unit Value which shall be adjusted on each Valuation Date, any Special Valuation Date, and such other dates as deemed necessary by the Committee, in its sole discretion. The Units shall be adjusted by multiplying the Current Unit Value by the sum of one plus the Return on Equity for the Plan Year (or portion thereof) for which the adjustment is required.

7.4     **Crediting of Units to Participants Account.**

All Units, whether acquired as a result of a Deferral of Unit Award, shall be credited to a Participant's Account no later than the first business day of the first calendar month, following the month in which the Deferral becomes payable, or Unit Award is granted. The number of Units to be credited to a Participant's Account on account of a Deferral or Unit Award shall be based no the Current Unit Value on the date that such Deferral becomes payable, or Unit Award is granted.

7.5     **Valuation of Accounts.**

The Plan Administrator shall adjust or cause to be adjusted Participant Accounts:

    (a)    annually based on the Return On Equity for the most recently ended Plan Year; and

    (b)    in the event of a Change-of-Control or at such other time or times as the Committee shall deem, in its sole discretion, to be necessary, based on a prorated calculation of Return On Equity to date for the Plan Year for which such valuation is required.

10

7.6     **Participant Statement.**

The Plan Administrator shall maintain or cause to be maintained, records showing the balance of each Participant's Account. On or about February 1 of each year, or such other time as the Plan Administrator shall determine, each Participant shall be furnished with an Account Statement showing the change in the value of each Participant's Account calculated on the Valuation Date for the most recently ended Plan Year.

## SECTION 8 - TERMINATION OF EMPLOYMENT

8.1     **Death.**

If a Participant's employment with the Company terminates by reason of death, all units credited to such Participant's Account shall immediately become 100% vested. The Units shall be redeemed by the Company in accordance with Section 10.1, and the proceeds paid to the legal representative of the Participant's estate or Beneficiary as provided in Section 10.2.

8.2     **Disability, Retirement, or Involuntary Termination Other Than For Cause.**

If a Participant's employment with the Company terminates by reason of Disability, Retirement or involuntary termination (including voluntary termination for a Significant Reduction in Duties) other than for Cause, all unvested Units credited to such Participant's Account shall become 100% vested. All Units credited to such Participant's Account shall be redeemed by the Company in accordance with Section 10.1, and the proceeds paid to such Participant as provided in Section 10.2.

A Significant Reduction in Duties of a Participant which results in the Committee determining, in its sole discretion, that the Participant will not be selected for continued participation in the Plan.

[NOTE: This Section was added by Amendment #2 adopted July 2, 1996.]

8.3     **Voluntary Termination.**

If a Participant voluntarily terminates employment by the Company other than for a Significant Reduction in Duties, all unvested Units credited to such Participant's Account shall immediately be forfeited. All vested Units credited to such Participant's Account shall be redeemed by the Company in accordance with Section 10.1; **provided, however,** that the amount paid under this section shall equal the Initial Unit Value of such Units plus 40% of the difference between the Current Unit Value and such Initial Unit Values. The proceeds shall be paid to such Participant as provided in Section 10.2.

8.4     **Termination for Cause.**

If a Participant's employment with the Company is terminated for Cause, all vested and unvested Units credited to such Participant's Account shall immediately be forfeited.

8.5     **Discretion of the Committee.**

Paragraphs 8.3 and 8.4 notwithstanding, in the event of a Participant's termination of employment, the Committee, in it sole discretion, may vest a portion or all of the unvested Units and cause all or a portion of such vested Units along with previously vested Units to be redeemed.

11

## SECTION 9 - CHANGE-OF-CONTROL

In the event of a change-of-control of the Company, all Units credited to Participant Accounts shall immediately become 100% vested. The Units shall be redeemed by the Company in accordance with Section 10.1, and the proceeds paid to the Participant as provided in Section 10.2.

## SECTION 10 - REDEMPTION OF UNITS

10.1   **Events Constituting Redemption**.

Redemption of all or part of the number of Units credited to such Participant's Account shall occur upon the occurrence of the earlier of:

(a)   with respect to a Deferral elected by such Participant under Section 5.1, the expiration of the term of such Deferral;

(b)   with respect to the grant of a Unit Award to such Participant, the expiration of the term of the Units subject to such award;

(c)   the termination of employment of such Participant as provided in Section 8;

(d)   termination or amendment of this Plan or of such Participant's Deferral Agreement as provided in Section 11; or

(e)   a Change-of-Control of the Company as provided in Section 9.

10.2   **Redemption Payment**.

(a)   Within sixty days of the date of an event set forth in Section 10.1(a-d), which requires a redemption of all or a number of the Units credited to a Participant's Account, the company shall pay in a lump sum to a Participant or the legal representative of such Participant's estate or Beneficiary, an amount equal to the Current Unit Value of the number of Units which are to be redeemed.

(b)   In the event of a Change-of-Control of the Company, the Company shall pay in a lump sum to Participant, the legal representative of such Participant's estate, or Beneficiary as soon as is practicable, but no later than sixty days from the date of such event, an amount equal to the Unit Value of the number of Units credited to such Participant's Account on the date of such Change-of-Control. The Unit Value shall be the Unit Value calculated on the Special Valuation Date necessitated by such Change-of-Control.

10.3   **Payment of Withholding and Other Taxes**.

The amounts payable under Section 10.2 above to a Participant or the legal representative of such Participant's estate or Beneficiary shall be reduced by any amount that the Company is required to withhold with respect to such payments for the payment of federal, state or local taxes, unless such Participant, legal representative or Beneficiary, otherwise satisfies such withholding requirements.

12

To assist the Company in collecting any withholding or other taxes that shall become due as a result of any payment due under Section 10.2, such Participant, legal representative of such Participant's estate, or Beneficiary, as a condition to receiving such payments, shall make any arrangements requested by the Committee regarding the payment of federal, state or local taxes required by law to be withheld with respect to such amounts(s).

10.4    **Additional Information**.

Prior to paying any benefit under this Plan, the Plan Administrator may require the Participant, legal representative of Participant's estate, or Beneficiary to provide such information or material as the Plan Administrator, in its sole discretion, shall deem necessary to make any determination the Plan Administrator may be required to make under this Plan. The Plan Administrator may withhold payment of any benefit under this Plan until all such information and material is received by the Plan Administrator and the Plan Administrator is reasonably satisfied as to its accuracy.

## SECTION 11 - AMENDMENT OR TERMINATION

11.1    **Right To Terminate**.

The Company may, by action of the Committee, terminate this Plan and the related Deferral Agreements at any time. In the event the Plan and related Deferral Agreements are terminated, each Participant, the legal representative of such Participant's estate, or Beneficiary shall receive a lump sum payment in cash equal to the value of the number of all vested Units credited to Participant's Account as provided in Section 10.2. The payment shall be made as soon as practicable following the date the Plan is terminated in accordance with Section 10.2.

11.2    **Right to Amend**.

The Company may, by action of the Committee, amend this Plan and the related Deferral Agreements in any way on thirty days prior notice to the Participants. If any amendment to this Plan or to the Deferral Agreements shall adversely affect the rights of a Participant, such Participant must consent in writing to such amendment prior to its effective date.

If such Participant does not consent to the amendment, the Plan and related Deferral Agreements shall be deemed to be terminated with respect to such Participant and such Participant shall receive a lump sum payment in cash equal to the value of the number of vested Units credited to such Participant's Account as provided in Section 10.2.

11.3    **Uniform Action**.

Notwithstanding anything in the Plan to the contrary, any action to amend or terminate the Plan or the Deferral Agreements must be taken in a uniform and nondiscriminatory manner.

## SECTION 12 - GENERAL PROVISIONS

12.1    **No Funding**.

Nothing contained in this Plan or in a Deferral Agreement shall require the Company to segregate any monies from its general funds, or to create any trusts, or to make any special deposits for any amounts to be paid to any Participant. Neither a Participant, former Participant, Beneficiary, or their legal

representative shall have any right, title or interest in or to any funds of the Company on account of this Plan or on account of Participant having completed a Deferral Agreement except as specifically set forth in the Plan document, or in any amendments or attachments.

12.2    **No Contract of Employment**.

The existence of this Plan, a Deferral Agreement, or Unit Grant Agreement does not:

(a)    constitute a contract for continued employment between a Participant and the Company; or

(b)    give a Participant any voting or other rights as a shareholder of the Company.

Except as otherwise limited by the terms of any valid employment contract or agreement entered into between the Company and such Participant, the Company reserves the right to modify a Participant's remuneration and to terminate a Participant for any reason and at any time, notwithstanding the existence of this Plan or of a Deferral or Unit Grant Agreement.

12.3    **Claims Procedure**.

The Plan Administrator shall provide adequate notice in writing to any Participant, former Participant, Beneficiary, or their legal representative whose claim for a payment under this Plan has been denied, setting forth the specific reasons for such denial. A reasonable opportunity shall be afforded to any such person for a full and fair review by the Committee of a decision denying the claim. The Committee's decision on any such review shall be final and binding on such Participant, such former Participant, Beneficiary, their legal representatives and/or all other interested persons.

12.4    **Nonpayment to Beneficiary**.

In the event the Committee shall find that a Participant or Participant's Beneficiary is unable to care for Participant's affairs because of illness or accident, the Committee may direct that any benefit payment due Participant, unless a claim shall have been made by a duly appointed legal representative, be paid to Participant's spouse, child, parent or other blood relative, or to a person with whom Participant resides, and any such payment so made shall be a complete discharge of the liabilities of the Plan therefor.

12.5    **Limitation of Liability**.

The Company, the members of the Committee, and any officer, employee or agent of the Company shall not incur any liability or on behalf of any other individuals or on behalf of the Company for any act or failure to act, made in good faith in carrying out such person's delegated, administrative or other duties under the Plan.

12.6    **Indemnification**.

The Company, the members of the Committee, the Plan Administrator and the officers, employees and agents of the Company shall, unless prohibited by any applicable law, be indemnified against any and all liabilities arising by reason of any act, or failure to act, in relation to the Plan including, without limitation, expenses reasonably incurred in the defense of any claim relating to the Plan, amounts paid in any compromise or settlement relating to the Plan and any civil penalty or excise tax imposed by any applicable statute, if:

14

(a)   the act or failure to act shall have occurred;

    (i)   in the course of such person's service as an officer of the Company or member of the Committee or while serving as Plan Administrator; or

    (ii)   in connection with a service provided with or without charge to the Plan or to a Participant, former Participant, Beneficiary, or their legal representative, if such service was requested by the Committee or was in connection with administrative or other duties delegated to such person under the Plan, and

(b)   the act or failure to act is in good faith, and not opposed to, the best interests of the Company. The determination shall be made by the Company and, if such determination is made in good faith and not arbitrarily or capriciously, shall be conclusive.

The foregoing indemnification shall be from the assets of the Company. However, the Company's obligation under this Section 12.6 shall be offset to the extent of any applicable insurance coverage under a policy maintained by the Company or any other person, or other source of indemnification funds which are paid to such person as reimbursement under this Section 12.6.

12.7.   **Payment of Expenses**.

All administrative expenses of the Plan and all benefits under the Plan shall be paid from the general assets of the Company.

12.8   **Construction**.

(a)   The Plan is intended to constitute an unfunded deferred compensation arrangement for a select group of management or highly compensated personnel. All rights hereunder shall be governed by and construed in accordance with the Employee Retirement Income Security Act of 1974, as amended, and laws of the state of Indiana.

(b)   The masculine pronoun shall mean the feminine wherever appropriate.

(c)   The captions inserted in the Plan are inserted as a matter of convenience and shall not affect the construction of the Plan.

**IN WITNESS WHEREOF,** Auburn Foundry, Inc. has caused this Plan to be executed this 15th day of December ,1994.

                    **AUBURN FOUNDRY, INC.**

                    BY:   [W.A. Bienz]
                    W.A. Bienz
                    Treasurer

Attest:


   [Nancy Kern]

Y:\WP\INCENTIV.DOC
Prepared 2/1/99