**WESTERN RESERVE**
PARTNERS LLC

200 Public Square . Suite 3020 . Cleveland, Ohio 44114
Phone: (216) 589-0900 . Fax: (216) 589-9558 . www.wesrespartners.com

January 21, 2005

Board of Directors
Auburn Foundry, Inc.
635 W. Eleventh Street
Auburn, IN 46706

Gentlemen:

You have requested our opinion as to the fairness, from a financial point of view, to the Bankruptcy Estate of Auburn Foundry Inc. (the "Company") of the Consideration to be received by the Company in connection with the proposed purchase by AFI LLC ("AFI") of certain assets of the Company pursuant to the Company's bankruptcy reorganization (the "Transaction") contemplated by the Disclosure Agreement dated January 20, 2005.

The Transaction contemplates the assets to be sold as:

1. The Company's Plant 2 in Auburn, Indiana
2. Various machinery, tools, dies and fixtures currently located in the Company's Plant 1 in Auburn, Indiana
3. The Company's accounts receivable and inventory
4. The Company's intellectual property, books and records, customer and supplier contracts, labor union agreement, etc.
5. Various other assets necessary for the orderly functioning of the business

The Consideration contemplated consists of:

| Amount | Form of Consideration |
|---:|---|
| $ 5,083,000 | Revolver to secured creditors |
| 7,000,000 | Term Note "A" with amortization schedule to secured creditors |
| 3,110,000 | Term Note "B" paid out of cash flow to secured creditors |
| 0 – 6,000,000 | Term Note "C" paid according to Company refinancing schedule to secured creditors |
| 1,800,000 | Real estate and personal property tax assumed |
| 6,800,000 | Present value of pension plan assumed |
| 5,883,000 | Administrative and other liabilities assumed |
| 0 – 1,750,000 | Unsecured creditor payment plan (paid out of cash flow) |
| $29,676,000–$37,426,000 | Total Consideration (depending on Company's post-contribution refinancing schedule and cash flow) |

Board of Directors
January 21, 2005
Page 2

Western Reserve Partners LLC, as part of its investment banking business, is customarily engaged in the valuation of business and their securities in connection with mergers and acquisitions, negotiated underwritings, competitive bidding, secondary distributions of listed and unlisted securities, private placements and valuations for estate, corporate and other purposes.

In connection with rendering this opinion, we have reviewed and analyzed, among other things, the following: (i) Draft "Auburn Foundry's Plan of Reorganization Dated January 19, 2005"; (ii) Draft "Disclosure Statement to Accompany Plan of Reorganization Dated January 19, 2005"; (iii) the Company's 1997, 1998, 1999, 2000, 2001 and 2002 audited financial statements; (iv) the Company's 2003 and 2004 internal financial statements; (v) the Company's 2005, 2006 and 2007 financial forecasts provided to us by the Company's senior management; (vi) Analysis from February 27, 2004 court hearing illustrating the Company's history of consistently missing financial projections; (vii) "Accounts Receivable Aged Trial Balance Summary"; (viii) "Pre-Bankruptcy Auburn Foundry, Inc. Accounts Receivable Aged Trial Balance Summary"; (ix) "Auburn Foundry, Inc. Draft Confidential Memorandum, January 2004", prepared by KeyBanc Capital Markets and provided by the Company; (x) "Auburn Foundry, Inc. Plant 1 Depreciation Report"; (xi) "Auburn Foundry, Inc. – Plant 2 Depreciation Report"; (xii) "Auburn Foundry, Inc. Plant #1 Asset list – Items to be Retained"; (xiii) "Other Plant #1 Equipment – To be Disposed"; (xiv) "Auburn Foundry, Inc. Schedule 2 Legal Due-Diligence summary Environmental Item #H-1-8/B-1"; (xv) "Auburn Foundry, Inc. Recapitulation"; (xvi) "Auburn Operations Organizational Overview"; (xvii) "Collective Bargaining Agreement between Auburn Foundry, Inc. Auburn, Indiana and Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO (GMP International Union) Local 322 May 4, 2003 through May 6, 2006"; (xviii) Analysis of the Company's Salaried and Hourly Employees Retirement Pension Plan Actuarial Report (xix) "Auburn Foundry, Inc. Real Property"; (xx) "Auburn Foundry, Inc. 2002 U.S. Income Tax Return for an S Corporation"; (xxi) Publicly available financial information of comparable public companies; (xxii) Publicly available information concerning terms of precedent comparable transactions.

In addition Western Reserve Partners also conducted a tour of the Company's headquarters and Plant 2 and detailed interviews concerning all aspects of the Company's past, present and forecast operations and financial conditions with five members of the Company's senior management team:

- Thomas Woehlke, President and CEO
- Dennis Maude, CFO
- David Weber, Vice President - Technology
- Joseph Harmon, Director – Sales & Marketing
- Timothy Opar, Manager, Foundry Operations

Board of Directors
January 21, 2005
Page 3

     In our review and analysis and in arriving at our opinion, we have assumed and relied upon the accuracy and completeness of all the financial and other information provided us or publicly available and have assumed and relied upon the representations and warranties of the Company, contained in the Disclosure Statement. We have not been engaged to, and have not independently attempted to, verify any of such information. We have also relied upon the management of the Company as to the reasonableness and achievability of the financial and operating projections (and the assumptions and bases thereof) provided to us and, with your consent, we have assumed that such projections reflect the best currently available estimates and judgments of the Company's management. We have not been engaged to assess the reasonableness and achievability of such projections or the assumptions on which they were based and express no view as to such projections or assumptions. We have also assumed that the conditions to the transactions as set forth in the Purchase Agreement and the Plan of Reorganization would be satisfied and that such that such transactions would be consummated on a timely basis in the manner contemplated by the Purchase Agreement and the Plan of Reorganization.

     It should be noted that this opinion is based on economic and market condition and other circumstances existing on, and information made available as of, the date hereof and does not address any matters subsequent to such date, including the value of the Membership Interest at the time of issuance thereof to the Purchasers. In addition, our opinion is, in any event, limited to the fairness, as of the date hereof, from a financial point of view, of the consideration to be received by the Company pursuant of the Purchase Agreement and does not address the Company's underlying business decision to affect the transactions contemplated by the Purchase Agreement or any other terms thereof. It should be noted that although subsequent developments may affect this opinion, we do not have any obligation to update, revise or reaffirm our opinion.

     We will receive from the Company a fee for our services in rendering this opinion.

     It is understood that this opinion is directed to the Board of Directors of the Company and may not be disclosed, summarized, excerpted from or otherwise publicly referred to without our prior written consent, except if approved by the Bankruptcy Court to be attached as an exhibit to the Company's Disclosure Statement to be filed in its bankruptcy proceeding. Our opinion does not constitute a recommendation to any party to the Company's reorganization as to how that party should vote in the Company's reorganization.

     We were engaged by the Board to render this opinion in connection with the Board's discharge of its fiduciary obligations. We have advised the Board that we do not believe that any person (including a stockholder of the Company) other than the directors has the legal right to rely on this opinion for any claim arising under state law and that, should any such claim be brought against us, this assertion will be raised as a defense. In the absence of governing authority, this assertion will be resolved by the final adjudication of such issue by a court of competent jurisdiction. Resolution of this matter under state law, however, will have no effect on the rights and responsibilities of Western Reserve Partners under the federal securities laws or on the rights and responsibilities of the Company's Board of Directors under applicable law.

Board of Directors
January 21, 2005
Page 4

In order to reach a conclusion regarding the fairness from a financial point of view, of the Consideration to be received by the Company, WRP analyzed the historical and projected financial results of the Company and established a fair value range for the Company by applying a variety of commonly accepted valuation techniques, including:

- Comparable Public Company Analysis: Analysis of the trading multiples of a comparable group of publicly traded companies deemed to be similar to the Company
- Comparable Transactions Analysis: Analysis of recent publicly announced transactions of companies with similar attributes to the Company
- Discounted Cash Flow Analysis: Analysis of the present value of the Company's future cash flows discounted to the present, based on projections provided by the Company's senior management and other assumptions
- Leveraged Buyout Analysis: Analysis of the potential value of the Company from a financial buyer's perspective, taking into consideration current debt and private equity market conditions

Based upon and subject to the foregoing and such other matters as we consider relevant, it is our opinion that as of the date hereof, the Consideration to be received by the Company from AFI pursuant to the Purchase Agreement described in the Company's January 20 Disclosure Statement is fair, from a financial point of view, to the Company.

Very Truly Yours,

*Western Reserve Partners LLC*

Western Reserve Partners LLC