

**Yale**
**Financial**
**Services**

# LEASE AGREEMENT

Lease No. 4120494

Lease Date: MAY 8, 2001

| | |
|---|---|
| Lessor: KMH Systems, Inc.<br>Address: 6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee: Auburn Foundry Inc<br>Address: 635 West Eleventh St<br>Auburn, IN 46706 |

## TERMS AND CONDITIONS

**I.    LEASING:**

(a) Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment ("Equipment") described in any schedule hereto ("Schedule"). Terms defined in a Schedule and not otherwise defined herein shall have the meanings ascribed to them in such Schedule.

(b) The obligation of Lessor to purchase Equipment from the manufacturer or supplier thereof ("Supplier") and to lease the same to Lessee under any Schedule shall be subject to receipt by Lessor, prior to the Lease Commencement Date (with respect to such Equipment), of each of the following documents in form and substance satisfactory to Lessor: (i) a Schedule relating to the Equipment then to be leased hereunder, (ii) evidence of insurance which complies with the requirements of Section VIII, and (iii) such other documents as Lessor may reasonably request. As a further condition to such obligations of Lessor, Lessee shall, upon delivery of such Equipment execute and deliver to Lessor a Certificate of Acceptance (which can be either, at Lessor's discretion, incorporated into the applicable Schedule or in a seperate form acceptable to the Lessor) covering such Equipment, and deliver to Lessor a document which passes title to such Equipment (in form and substance satisfactory to Lessor). Lessor hereby appoints Lessee its agent for inspection and acceptance of the Equipment from the Supplier. Upon execution by Lessee of any Certificate of Acceptance, the Equipment described thereon shall be deemed to have been delivered to, and irrevocably accepted by, Lessee for lease hereunder.

**II.    TERM, RENT AND PAYMENT:**

(a) The rent payable hereunder and Lessee's right to use the Equipment shall commence on the date of execution by Lessee of the Certificate of Acceptance for such Equipment ("Lease Commencement Date"). The term of this Agreement shall be the period specified in the applicable Schedule. If any term is extended, the word "term" shall be deemed to refer to all extended terms, and all provisions of this Agreement shall apply during any extended terms, except as may be otherwise specifically provided in writing.

(b) Rent shall be paid to Lessor at its address stated above, except as otherwise directed by Lessor. For the period from and including the Lease Commencement Date to the first day of the month following the Lease Commencement Date ("Basic Term Commencement Date"), Lessee shall pay as rent ("Interim Rent") for the Equipment, a pro-rata portion of the Basic Term Rent for any such interim period. Interim Rent shall be due on Basic Term Commencement Date. Commencing on the Basic Term Commencement Date and on the same day of each month thereafter during the Basic Term, Lessee shall pay as rent the Basic Term Rent. If one or more Advance Rentals are payable, such Advance Rental shall be (i) set forth on the applicable Schedule, (ii) due upon acceptance by Lessor of such Schedule, and (iii) when received by Lessor, applied to the first rent payment and the balance, if any, to the final rental payment(s) under such Schedule. In no event shall any Advance Rental or any other rent payments be refunded to Lessee. If rent is not paid within ten days of its due date, Lessee agrees to pay a late charge of five cents (5¢) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any.

(c) For any Schedule, Lessee hereby acknowledges that the Basic Term Rent has been calculated on the assumption that each unit of Equipment will be operated annually during the term of the Schedule for the number of hours listed as the Annual Operating Hours listed on said Schedule, and that the condition of the Equipment upon return to the Lessor, pursuant to Section IX of this Agreement, shall comply with such assumption. In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the applicable Schedule: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

**III.    TAXES:** Except as provided in Section XIII(b), Lessee shall have no liability for taxes imposed by the United States of America or any State or political subdivision thereof which are on or measured by the net income of Lessor. Lessee shall report (to the extent that it is legally permissible) and pay promptly all other taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or the purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rentals or receipts hereunder), any Schedule, Lessor or Lessee by any foreign, federal, state or local government or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (all hereinafter called "Taxes"). Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, (ii) make a timely report of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports or returns show the ownership of the Equipment by Lessor, and (iv) send a copy thereof to Lessor. TO THE EXTENT ALLOWED BY APPLICABLE LAW AND UNLESS AND UNTIL LESSOR NOTIFIES LESSEE IN WRITING TO THE CONTRARY, LESSOR WILL FILE ALL PERSONAL PROPERTY TAX RETURNS COVERING THE EQUIPMENT AND WILL PAY THE PERSONAL PROPERTY TAXES LEVIED OR ASSESSED THEREON. LESSEE, UPON RECEIPT OF INVOICE, WILL PROMPTLY PAY TO LESSOR, AS SUPPLEMENTAL RENT, AN AMOUNT EQUAL TO THE PROPERTY TAXES SO PAID BY LESSOR. IF APPLICABLE LAW REQUIRES THAT THE LESSEE FILE PERSONAL PROPERTY TAX RETURNS, LESSEE SHALL DO SO AND PAY ANY APPLICABLE TAXES AND PROVIDE LESSOR WITH COPIES OF ALL SUCH PERSONAL PROPERTY TAX RETURNS, TOGETHER WITH EVIDENCE OF PAYMENT THEREFOR, NOT LATER THAN FIFTEEN DAYS FOLLOWING SUCH PAYMENT.

**IV.    REPORTS:**

(a) Lessee will notify Lessor in writing, within ten days after any tax or other lien shall attach to any Equipment, of the full particulars thereof and of the location of such Equipment on the date of such notification.

(b) Lessee will permit Lessor to inspect any Equipment during normal business hours.

# EXHIBIT "A" (1 of 23)

(c) Lessee will keep the Equipment at the Equipment Location (specified in the applicable Schedule) and will promptly notify Lessor prior to any relocation of Equipment. Upon the written request of Lessor, Lessee will notify Lessor forthwith in writing of the location of any Equipment as of the date of such notification.

(d) Lessee will promptly and fully report to Lessor in writing if any Equipment is lost or damaged (where the estimated repair costs would exceed 10% of its then fair market value), or is otherwise involved in an accident causing personal injury or property damage.

V.    DELIVERY, USE AND OPERATION:

(a) All Equipment shall be shipped directly from the Supplier to Lessee.

(b) Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable federal, state, and local laws and regulations.

(c) LESSEE SHALL NOT, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, ASSIGN, MORTGAGE, SUBLET OR HYPOTHECATE ANY EQUIPMENT, OR THE INTEREST OF LESSEE HEREUNDER, NOR SHALL LESSEE REMOVE ANY EQUIPMENT FROM THE CONTINENTAL UNITED STATES.

(d) Lessee will keep the Equipment free and clear of all liens and encumbrances other than those which result from acts of Lessor.

VI.    SERVICE; REPAIRS; MAINTENANCE; USE; ALTERATIONS: Lessee, at its sole expense, shall keep all Equipment in good repair, condition and working order in accordance with manufacturer's recommendations and furnish all labor, parts, and supplies required therefor. Lessee's obligations hereunder shall not be abrogated irregardless of any third-party maintenance contracts covering the Equipment. Lessee agrees to maintain accurate and complete records of all repairs and maintenance to the Equipment and allow Lessor to inspect such records at any time during business hours of Lessee. Any modifications or additions to the Equipment required by any governmental edict shall be promptly made by Lessee at its own expense. Without the prior written consent of Lessor, Lessee shall not make any alterations, additions or improvements to the Equipment which are permanent or which detract from its economic value or functional utility, except as may be required pursuant to the preceding sentence of this Section VI. All additions and improvements to the Equipment shall belong to and immediately become the property of Lessor and shall be returned to Lessor with the Equipment upon the expiration or earlier termination of this Agreement unless Lessor notifies Lessee to restore such Equipment to its original state.

VII.    LOSS, DAMAGE AND STIPULATED LOSS VALUE: Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever. Lessee shall promptly and fully notify Lessor in writing if any unit of Equipment shall be or become worn out, lost, stolen, destroyed, irreparably damaged in the reasonable determination of Lessee, or permanently rendered unfit for use from any cause whatsoever (each such occurrence being hereinafter called a "Casualty Occurrence"). On the Rent Payment next succeeding a Casualty Occurrence (the "Payment Date"), Lessee shall pay Lessor the sum of (a) the Stipulated Loss Value of such unit calculated as of the Rent Payment Date next preceding such Casualty Occurrence; and (b) all Rent and other amounts which are due or accrued hereunder on or as of the Payment Date. Stipulated Loss Value as used herein shall be the sum of (i) all Rent due and accrued as of the Payment Date; plus (ii) the remaining Rent payable during the Term, present valued from each Rent Payment Date to the Payment Date using a simple interest rate equal to four percent (4 %); plus (iii) the estimated Fair Market Value (as that term is defined in the proceeding sentence) of the Equipment at the end of the term of the applicable Schedule. Fair Market Value shall be determined by Lessor at the time that the Stipulated Loss Value for the Equipment is calculated. For the purposes of this Agreement, the term "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement; (ii) in the case of any installed Equipment, that Equipment shall be valued on an installed basis; and (iii) costs of removal from current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value at least 45 days before lease expiration, Lessor shall appoint an independant appraiser (reasonably acceptable to Lessee) to determine Fair Market Value, and that determination shall be final, binding and conclusive. Lessee shall bear all costs associated with any such appraisal. Upon payment of all sums due hereunder, the Term of this Lease as to the unit of Equipment which has suffered the Casualty Occurrence shall terminate, and Lessee shall be entitled to retain possession of such unit.

VIII.    INSURANCE: Lessee agrees, at its own expense, to keep all Equipment insured for such amounts and against such hazards as Lessor may require, including, but not limited to, insurance for damage to, or loss of, such Equipment and liability coverage for personal injuries, death or property damage. Public liability insurance shall be in the amounts set forth in the Schedule and Casualty and Property Damage shall be in an amount equal to the higher of the Stipulated Loss Value or the full replacement cost of the Equipment. All insurance policies shall name Lessor as additional insured and with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. All such policies shall be with companies, and on terms, satisfactory to Lessor. Lessee agrees to deliver to Lessor evidence of insurance satisfactory to Lessor. No insurance shall be subject to any co-insurance clause. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made as a result of such insurance policies. Any expense of Lessor in adjusting or collecting insurance shall be borne by Lessee. Said policies shall provide that the insurance may not be altered or cancelled by the insurer until after thirty (30) days written notice to Lessor. Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Equipment or any portion thereof, or (ii) satisfy any obligation of Lessee to Lessor hereunder.

IX.    RETURN OF EQUIPMENT:

(a) Upon any expiration or termination of this Agreement or any Schedule, Lessee shall promptly, at its own cost and expense: (i) perform any testing and repairs required to place the affected units of Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for their originally intended purpose; (ii) have the Equipment inspected by an authorized dealer (or other authorized agent) for the Equipment; and (iii) return such units to a location within the continental United States that is mutually acceptable to both Lessor and Lessee. Lessee agrees to pay for all damages to Equipment, as evidenced by the Return Inspection Report, other than that attributable to ordinary wear and tear from usage in accordance with the terms of this Agreement.

(b) For any Equipment which is a lift truck, in addition to the conditions set forth in IX(a) above, at the end of the term, the Equipment will be returned with frame and major components (including, without limitation, all forks, overhead guards, load backrests and sheet metal) structurally sound, without breaks, cracks or excessive rust and corrosion. Drive motors, engines, hydraulic systems, and transmissions will operate properly at fully rated loads in all gear ranges, both forward and reverse. Smoking engines deemed excessive by the Inspector must be repaired prior to return. Water, oil and hydraulic leaks shall not be in excess of one drop per minute. Mechanical drive train will be in good condition and operate quietly without vibrations. Service and parking brakes must be able to stop Equipment within a safe distance, both forward and reverse. Steering will operate normally stop-to-stop without excessive play in linkage, or axle components such as king pins. Tires will not exhibit chunking and will have at least 40% of the original thickness remaining. All cabs, lights and other accessories will be in good operating condition and appearance. All components will have been recently serviced following manufacturer's operating and maintenance procedures. Equipment will be complete with all components, accessories, attachments, parts and pieces as when originally delivered.

(c) Until Lessee has fully complied with the requirements of Section IX (a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate such continued leasehold interest upon ten (10) days notice to Lessee.

X.    DEFAULT:

EXHIBIT "A" (2 of 23)

(a) Lessor may in writing declare this Agreement in default if: Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten (10) days; Lessee breaches any of its insurance obligations under Section VIII; Lessee breaches any of its other obligations and fails to cure that breach within thirty (30) days after written notice thereof; any representation or warranty made by Lessee in connection with this Agreement is illegally used; or a false or misleading in any material respect; Lessee becomes insolvent or ceases to do business as a going concern; any Equipment is illegally used; or a petition is filed by or against Lessee under any bankruptcy or insolvency laws. Such declaration shall apply to all Schedules except as specifically provided by Lessor.

(b) After default, at the request of Lessor, Lessee shall comply with the provisions of Section IX (a). Lessee hereby authorizes Lessor to enter, with or without legal process, any premises where any Equipment is believed to be and take possession thereof. Lessee shall, without further demand, forthwith pay to Lessor (i) as liquidated damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment (calculated as of the rental next preceding the declaration of default), and (ii) all rentals and other sums then due hereunder. Lessee may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale; or Lessor may, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Equipment, and Lessor may use Lessee's premises for any or all of the foregoing without liability for rent, costs, damages or otherwise. The proceeds of sale, lease or other disposition, if any, shall be applied in the following order of priorities: (1) to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (3) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor. Lessee shall pay any deficiency in lieu of or in addition to each other or any remedies at law, in equity, or under statute. The foregoing remedies are cumulative, and any or all thereof may be exercised in lieu of or in addition to each other or any remedies at law, in equity, or under statute.

(c) Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising, Lessee shall pay, in addition to any and all amounts due hereunder, any and all costs or expenses incurred by Lessor related to any default hereunder, including but not limited to reasonable attorney's fees. Waiver of any default shall not be a waiver of any other or subsequent default.

(d) Any default under the terms of this or any other agreement between Lessor and Lessee may be declared by Lessor a default under this and any such other agreement.

**XI.** ASSIGNMENT: Lessor may assign this Agreement or any Schedule. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

**XII.** NET LEASE; NO SET-OFF, ETC: This Agreement is a net lease. Lessee's obligation to pay rent and other amounts due hereunder shall be absolute and unconditional. Lessee shall not be entitled to any abatement or reductions of, or set-offs against, said rent or other amounts, including, without limitation those arising out of claims (present or future, alleged or actual, and including claims arising out of strict tort or negligence of Lessor) of Lessee against Lessor under this Agreement or otherwise. Nor shall this Agreement terminate or the obligations of the parties that rents and any defect in or damage to, or loss of possession, use or destruction of, any Equipment from whatsoever cause. It is the intention of the parties that rents and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless the obligation to do so shall have been terminated pursuant to the express terms hereof.

**XIII.** INDEMNIFICATION:

(a) Lessee hereby agrees to indemnify, save and keep harmless Lessor, its agents, employees, successors and assigns from and against any and all losses, damages, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature, in contract or tort, except to the extent such include, but not be limited to, Lessor's active liability in tort, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessee or Lessor and any claim for patent, trademark or copyright infringement) or (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublease or employees of Lessee. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing.

(b) [SUBPARAGRAPHS (b) AND (d) OF THIS SECTION XIII DO NOT APPLY TO ANY SCHEDULE DESIGNATED TO BE A LEASE/PURCHASE; OTHERWISE THESE SUBPARAGRAPHS (which, as between Lessor and Lessee, is mutual) that the statutory maximum corporate periodic Rent payments herein have been calculated on the assumption that (i) on the Lease Commencement Date, the Equipment will qualify for all of the items of federal income tax rate ("Tax Rate") represents, warrants and covenants that (i) in the hands of Lessor (all references to Lessor in this Section C of the applicable Schedule.

(c) Lessee hereby represents, warrants and covenants that (i) on the Lease Commencement Date, the Equipment will qualify for all of the items of deduction and credit specified in Section C of the Schedule (the "Tax Benefits") is a member), and (ii) at no time during the Term of this Lease will Lessee take or omit to take, Lessor and the consolidated taxpayer group of which Lessor is a member, and (ii) at no time during the Term of this Lease will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or the terms of this Lease), which will result in the disqualification of any Equipment for, or recapture of, all or any portion of such Tax Benefits (as noted on the applicable Schedule) such that referred to as "Net Economic Return"; such increase in Tax Rate, hereinafter the TRI) or if, as a result of a breach of any representation, warranty or covenant of the Lessee contained in this Lease (i) tax counsel of Lessor determine that Lessor is not entitled to claim on its Federal income tax return of Lessor are disallowed or adjusted by the Internal Revenue Service; or (iii) any of the Tax Benefits are recomputed or recaptured (any such determination, disallowance, adjustment, recomputation, or recapture hereinafter called a "Loss"), then Lessee shall pay to Lessor, as an indemnity and as additional Rent, such amount as shall, in the reasonable opinion of Lessor, cause Lessor's Net Economic Return, computed on the same assumptions (including, but not limited to, the original Tax Rate assumption), as were utilized by Lessor in originally evaluating the transaction to equal the Net Economic Return that would have been realized by Lessor if such Loss or TRI had not occurred. Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such TRI or Loss and the computation of the amount of the indemnity.

(d) All of Lessor's rights, privileges and indemnities contained in this Section XIII shall survive the expiration or other termination of this Lease or the Term hereof as it relates to any item of Equipment and the rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by, Lessor, its successors and assigns.

**XIV.** DISCLAIMER: LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, AND FITNESS FOR ANY PURPOSE, USE OR OPERATION, Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following, regardless of any negligence of Lessor (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy

EXHIBIT "A" (3 of 23)

thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment. If, and so long as, no default exists under this Lease, Lessee shall be, and hereby is, authorized during the term of this Lease to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessor and/or Lessee, as their interests may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

XV.   REPRESENTATIONS AND WARRANTIES OF LESSEE:   Lessee hereby represents and warrants to Lessor that on the date hereof and on the date of execution of each Schedule:

(a)  Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b)  The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c)  No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d)  The entry into and performance by Lessee of the Documents will not:  (i)  violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's Certificate of Incorporation or By-Laws; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e)  There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(f)  The Equipment accepted under any Certificate of Acceptance is and will remain tangible personal property.

(g)  Lessee is and will be at all times validly existing and in good standing under the laws of the State of its incorporation (specified in the first sentence of this Agreement).

(h)  The Equipment will at all times be used for commercial or business purposes.

XVI.   RENEWAL OF LEASE TERM:   If an event of default has not occurred and is not continuing hereunder, Lessee, by giving Lessor not less than ninety (90) days' written notice prior to the expiration of the Basic Term of any Schedule, may elect to renew any such Schedule with reference to all, but not less than all, of the Equipment leased thereunder for the period(s) and for the renewal rental(s) (payable in advance) as may be determined by Lessor in its sole discretion. Renewal rental shall be based upon the Fair Market Rental Value of the Equipment at Schedule expiration. Fair Market Rental Value shall be determined in the same manner as Fair Market Value pursuant to Section VII above.

XVII.   MISCELLANEOUS:

(a)  Unless and until Lessee exercises its rights under Section XVI above, nothing herein contained shall give or convey to Lessee any right, title or interest in and to any Equipment except as a lessee. Any cancellation or termination by Lessor, pursuant to the provision of this Agreement, any Schedule, supplement or amendment hereto, or the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property become a part thereof.

(b)  Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith. Lessee agrees, upon Lessor's request, to execute any instrument necessary or expedient for filing, recording or perfecting the interest of Lessor. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedule and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(c)  THE PARTIES TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THEM. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(d)  In case of a failure of Lessee to comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated to, effect such compliance, in whole or in part; and all moneys spent and expenses and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor within five days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e)  Any rent or other amount not paid to Lessor when due hereunder shall bear interest, both before and after any judgment or termination hereof, at the lesser of eighteen percent per annum or the maximum rate allowed by law. Any provisions in this Agreement and any Schedule which are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

XVIII.   POWER OF ATTORNEY:   LESSEE HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS LESSOR OR ITS ASSIGNEE, AS ITS AGENT AND ATTORNEY IN FACT TO EXECUTE AND FILE ON LESSEES BEHALF ANY UCC FINANCING STATEMENTS (OR THEIR EQUIVALENT), INCLUDING AMENDMENTS THERETO, WHICH LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) DEEMS ADVISABLE IN ITS DISCRETION TO SECURE THE INTERESTS OF LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) AND LESSEE FURTHER AUTHORIZES LESSOR OR SUCH ASSIGNEE (AS THE CASE MAY BE) TO FILE SAME WITH OR WITHOUT LESSEES SIGNATURE APPEARING THEREON.

THIS AGREEMENT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL EXECUTED BY LESSOR.

EXHIBIT "A" (4 of 23)

| LESSOR:<br>KMH Systems, Inc. | LESSEE:<br>Auburn Foundry Inc |
|---|---|
| By: _William J_____ | By: _Thomas Shold_____ |
| Title: _Controller_____ | Title: _VP. Finance_____ |
| | Federal Tax Id Number: 469513695 |

EXHIBIT "A" (5 of 23)

 **Yale Financial Services**



## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF MAY 8, 2001

SCHEDULE NO. 4120494-001                          DATED THIS 8 20 01

| Lessor: KMH Systems, Inc. | Lessee: Auburn Foundry Inc |
|---|---|
| Address: 6900 Poe Avenue | Address: 635 West Eleventh St |
| Dayton, OH 45414-0268 | Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                          LESSEE:
KMH Systems, Inc.                                Auburn Foundry Inc

By: _William Guy_                                By: _Thomas B Walsh_

Name: _William H. Guy_                           Name: _THOMAS B. WALSH_

Title: _Controller_                              Title: _V.P. FINANCE_

**A. Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (Include all attachments) |
|---|---|---|---|---|
| 1 | Yale | A875B14658V | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B14659V | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B14662V | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B14568V | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B14669V | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B14670V | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B14671V | GDP060TGNUAV087 | New Forklift |

Equipment immediately listed above is located at: 635 West Eleventh St, Auburn, De Kalb County, IN 46706

Supplier: KMH Systems, Inc.

**B. Financial Terms**

| | |
|---|---|
| 1. Advance Rent (if any): $4,747.95 | 2. Basic Term Rent: $4,747.95 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance: Minimum $200M/500M total Liability per occurrence. |
| 5. Annual Operating Hours: 4000 | |

The second sentence of Section II (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

EXHIBIT "A" (6 of 23)

**C.**    **Tax Benefits**

Schedule Type/Tax Benefits

True Lease - Lessor retains Tax Benefits

a. Depreciation Deductions (True Lease Only):  200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

  b. Recovery Period: 5 years.

  c. Tax Rate: 35%

**D.**    **Purchase Option**

**Purchase Option Price:    Fair Market Value**

For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes).  If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.**    **Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY.  BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

EXHIBIT "A" (7 of 23)

 

**EQUIPMENT SCHEDULE/PURCHASE OPTION**
**TO LEASE AGREEMENT DATED AS OF MAY 8, 2001**

SCHEDULE NO. 4120494-002                                 DATED THIS  9/26/01

| Lessor: KMH Systems, Inc. | Lessee: Auburn Foundry Inc |
|---|---|
| Address: 6900 Poe Avenue | Address: 635 West Eleventh St |
| Dayton, OH 45414-0268 | Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "**Lease**").

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

| LESSOR: | LESSEE: |
|---|---|
| KMH Systems, Inc. | Auburn Foundry Inc |
| By: _William E. Ing_ | By: _Thomas B Walsh_ |
| Name: _William E. Ing_ | Name: _THOMAS B WALSH_ |
| Title: _Controller_ | Title: _V.P. FINANCE_ |

**A.    Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | C813V015334 | GDP080LJNGBV085 | New Forklift |

Equipment immediately listed above is located at: 635 West Eleventh St, Auburn, De Kalb County, IN 46706

Supplier: **KMH Systems, Inc.**

**B.    Financial Terms**

| | |
|---|---|
| 1. Advance Rent (if any): $846.73 | 2. Basic Term Rent: $846.73 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance: Minimum $200M/500M total Liability per occurrence. |
| 5. Annual Operating Hours: 4000 | |

The second sentence of Section II (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

EXHIBIT "A" (8 of 23)

**C.**    <u>Tax Benefits</u>
Schedule Type/Tax Benefits
    True Lease - Lessor retains Tax Benefits
a. Depreciation Deductions (True Lease Only): 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.
  b. Recovery Period: 5 years.
  c. Tax Rate: 35%

**D.**    <u>Purchase Option</u>
    **Purchase Option Price:    Fair Market Value**
For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes). If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.**    <u>Assignment</u>

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY. BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

EXHIBIT "A" (9 of 23)




4120494003

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF <u>MAY 8, 2001</u>

SCHEDULE NO. 4120494-003                    DATED THIS _7/5/02_

| | |
|---|---|
| Lessor: KMH Systems, Inc.<br>Address: 6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee: Auburn Foundry Inc<br>Address: 635 West Eleventh St<br>Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ( "Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

| LESSOR:<br>KMH Systems, Inc. | LESSEE:<br>Auburn Foundry Inc |
|---|---|
| By: _William E Jung_ | By: _Thomas B Walsh_ |
| Name: _William E Jung_ | Name: _Thomas B Walsh_ |
| Title: _Controller_ | Title: _CEO/VP Finance_ |

**A.**    <u>Equipment</u>
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (Include all attachments) |
|---|---|---|---|---|
| 1 | Yale | A875B18339 Z | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B18297 Z | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B18336 Z | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B18343 Z | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B18353 Z | GDP060TGNUAV087 | New Forklift |
| 1 | Yale | A875B18354 Z | GDP060TGNUAV087 | New Forklift |

Equipment immediately listed above is located at: 635 West Eleventh St, Auburn, De Kalb County, IN 46706

Supplier: <u>KMH Systems, Inc.</u>

**B.**    <u>Financial Terms</u>

| | |
|---|---|
| 1. Advance Rent (if any): <u>$3,942.90</u> | 2. Basic Term Rent: <u>$ 3,942.90</u> |
| 3. Basic Term (No. of Months): <u>36</u> | 4. Public Liability Insurance: Minimum <u>$ 200M/500M</u> total Liability per occurrence. |
| 5. Purchase Order #: _____ | 6. Annual Operating Hours: <u>4000</u> |

_EXHIBIT "A" (10 of 23)_

The second sentence of Section II (c) of the Agreement shall be deleted in its entirety and the following added in its stead:

In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

**C.    Tax Benefits**

Schedule Type/Tax Benefits

True Lease - Lessor retains Tax Benefits

a. Depreciation Deductions (True Lease Only): 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

b. Recovery Period: 5 years.

c. Tax Rate: 35%

**D.    Purchase Option**

Purchase Option Price:    **Fair Market Value**

For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes). If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.    Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY. BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

EXHIBIT "A" (11 of 23)





4120494004

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF <u>MAY 8, 2001</u>

SCHEDULE NO. 4120494-004                        DATED THIS  7/5/02

| Lessor:  KMH Systems, Inc.<br>Address:  6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee:  Auburn Foundry Inc<br>Address:  635 West Eleventh St<br>Auburn, IN  46706 |
|---|---|

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above (  "Agreement"; said Agreement and this Schedule being collectively referred to as  "**Lease**").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code.  Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement <u>shall remain in full force and effect</u>.  This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:
KMH Systems, Inc.

By: _William Jay_

Name: _William E Jay_

Title: _Controller_

LESSEE:
Auburn Foundry Inc

By: _Thomas B Walsh_

Name: _Tom B Walsh_

Title: _CFO/VP Finance_

A.   <u>Equipment</u>
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | A875B18517Z | GDP060TGNUAF086 | New Forklift |

Equipment immediately listed above is located at: 635 West Eleventh St,  Auburn, De Kalb County, IN 46706

Supplier: KMH Systems, Inc.

B.   **Financial Terms**

| | |
|---|---|
| 1. Advance Rent (if any): $654.71 | 2. Basic Term Rent:  $654.71 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance:  Minimum $200M/500M total Liability per occurrence. |
| 5. Purchase Order #: _____ | 6. Annual Operating Hours: 4000 |

The second sentence of Section II (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

EXHIBIT "A" (12 of 23)

**C.**   **Tax Benefits**

   Schedule Type/Tax Benefits

   True Lease - Lessor retains Tax Benefits

a. Depreciation Deductions (True Lease Only):  200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

 b. Recovery Period: 5 years.

 c. Tax Rate: 35%

**D.**   **Purchase Option**

   **Purchase Option Price:    Fair Market Value**

For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes).  If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.**   **Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY.  BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

EXHIBIT "A" (13 of 23)





4120494005

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF MAY 8, 2001

SCHEDULE NO. 4120494-005                                   DATED THIS  8|5|02

| | |
|---|---|
| Lessor:  KMH Systems, Inc.<br>Address:  6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee: Auburn Foundry Inc<br>Address:  635 West Eleventh St<br>Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above (  "Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

## ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:
KMH Systems, Inc.

By:  _William Qing_

Name:  _William Q. Qing_

Title:  _Controller_

LESSEE:
Auburn Foundry Inc

By:  _Thomas B Walsh_

Name:  _Thomas B Walsh_

Title:  _CFO / VP Finance_

A.    **Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | C813V02156Z | GDP080LJNUAV085 New Forklift | |

Equipment immediately listed above is located at: 635 West Eleventh St,   Auburn, De Kalb County, IN 46706

Supplier: KMH Systems, Inc.

B.    **Financial Terms**

| | |
|---|---|
| 1.  Advance Rent (if any): $845.74 | 2.  Basic Term Rent: $ 845.74 |
| 3.  Basic Term (No. of Months): 36 | 4.  Public Liability Insurance:  Minimum $ 200M/500M total Liability per occurrence. |
| 5.  Purchase Order #: _____ | 6.  Annual Operating Hours:  4000 |

The second sentence of Section 11 (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

EXHIBIT "A" (14 of 23)

**C.**     **Tax Benefits**

        Schedule Type/Tax Benefits

           True Lease - Lessor retains Tax Benefits

a. Depreciation Deductions (True Lease Only):  200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

  b. Recovery Period: 5 years.

  c. Tax Rate: 35%

**D.**     **Purchase Option**

        **Purchase Option Price:    Fair Market Value**

For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes).  If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.**     **Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY.  BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

EXHIBIT "A" (15 of 23)

 **Yale Financial Services**



4120494006

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF <u>MAY 8, 2001</u>

SCHEDULE NO. 4120494-006                    DATED THIS __11/27/02__

| Lessor: KMH Systems, Inc. | Lessee: Auburn Foundry Inc |
|---|---|
| Address: 6900 Poe Avenue | Address: 635 West Eleventh St |
| Dayton, OH 45414-0268 | Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ( "Agreement"; said Agreement and this Schedule being collectively referred to as "**Lease**").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

## ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

| LESSOR: | LESSEE: |
|---|---|
| KMH Systems, Inc. | Auburn Foundry Inc |
| By: _William Sky_ | By: _Thomas Walsh_ |
| Name: _William E. Tully_ | Name: _Thomas Walsh_ |
| Title: _Controller_ | Title: _CFO_ |

**A.     Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | E108V175 71Z | ERC065RGN48TF084 | New Forklift w/3 batteries & 1 charger |

Equipment immediately listed above is located at: 635 West Eleventh St,  Auburn, De Kalb County, IN 46706

Supplier: <u>KMH Systems, Inc.</u>

**B.     Financial Terms**

| | |
|---|---|
| 1. Advance Rent (if any): $1,047.52 | 2. Basic Term Rent: $ 1,047.52 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance:  Minimum $ 200M/500M total Liability per occurrence. |
| 5. Purchase Order #: | 6. Annual Operating Hours: 2000 |

The second sentence of Section II (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

 _B_ _1·2_ EXHIBIT "A" (16 of 23)

**C.    Tax Benefits**
　　　Schedule Type/Tax Benefits
　　　True Lease - Lessor retains Tax Benefits
a. Depreciation Deductions (True Lease Only):  200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.
　b. Recovery Period: 5 Years.
　c. Tax Rate: 35%

**D.    Purchase Option**
　　　**Purchase Option Price:    Fair Market Value**
For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes).  If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.    Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY.  BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.





4120494007

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF <u>MAY 8, 2001</u>

SCHEDULE NO. 4120494-007                                    DATED THIS <u>11/27/02</u>

| | |
|---|---|
| **Lessor:** KMH Systems, Inc.<br>**Address:** 6900 Poe Avenue<br>Dayton, OH 45414-0268 | **Lessee:** Auburn Foundry Inc<br>**Address:** 635 West Eleventh St<br>Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above (  "Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code.  Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.  This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                                    LESSEE:
**KMH Systems, Inc.**                                      **Auburn Foundry Inc**

By: _William Jung_                                         By: _Thomas Walsh_

Name: _William C. Jung_                                    Name: _Thomas Walsh_

Title: _Controller_                                        Title: _CFO_

**A.    Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | EI08V175802 | ERC065RGN48TF078 | New Forklift w/3 batteries  & 1 charger |

Equipment immediately listed above is located at: 635 West Eleventh St,  Auburn, De Kalb County, IN 46706

Supplier: KMH Systems, Inc.

**B.    Financial Terms**

| | |
|---|---|
| 1. Advance Rent (if any): $1,064.97 | 2. Basic Term Rent: $ 1,064.97 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance:  Minimum $ 200M/500M total Liability per occurrence. |
| 5. Purchase Order #: _____ | 6. Annual Operating Hours:  2000 |

The second sentence of Section 11 (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

C
1-2

EXHIBIT "A" (18 of 23)

**C.    Tax Benefits**

Schedule Type/Tax Benefits

True Lease - Lessor retains Tax Benefits

a. Depreciation Deductions (True Lease Only): 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

b. Recovery Period: 5 Years.

c. Tax Rate: 35%

**D.    Purchase Option**

**Purchase Option Price:    Fair Market Value**

For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes).  If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.    Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY.  BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

C
L.2

EXHIBIT "A" (19 of 23)





4120494008

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF MAY 8, 2001

SCHEDULE NO. 4120494-008                    DATED THIS 11 27 02

| Lessor: KMH Systems, Inc.<br>Address: 6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee: Auburn Foundry Inc<br>Address: 635 West Eleventh St<br>Auburn, IN 46706 |
|---|---|

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ( "Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                          LESSEE:
KMH Systems, Inc.                                Auburn Foundry Inc

By: _William E. Ray_                             By: _Thomas Walsh_

Name: _William E. Ray_                           Name: _THOMAS WALSH_

Title: _Controller_                              Title: _CFO_

---

**A.    Equipment**
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | E108V175772 | ERC065RGN48TE084 New Forklift w/3 batteries & 1 charger |

Equipment immediately listed above is located at: 635 West Eleventh St,  Auburn, De Kalb County, IN 46706

Supplier: KMH Systems, Inc.

**B.    Financial Terms**

| | |
|---|---|
| 1. Advance Rent (if any): $1,036.99 | 2. Basic Term Rent: $ 1,036.99 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance:  Minimum $ 200M/500M total Liability per occurrence. |
| 5. Purchase Order #: _____ | 6. Annual Operating Hours: 2000 |

The second sentence of Section II (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

EXHIBIT "A" (20 of 23)

**C.    Tax Benefits**
Schedule Type/Tax Benefits
True Lease - Lessor retains Tax Benefits
a. Depreciation Deductions (True Lease Only): 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.
b. Recovery Period: 5 Years.
c. Tax Rate: 35%

**D.    Purchase Option**
Purchase Option Price:    Fair Market Value
For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes). If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.    Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY.  BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

EXHIBIT "A" (21 of 23)





4120494009

## EQUIPMENT SCHEDULE/PURCHASE OPTION
## TO LEASE AGREEMENT DATED AS OF MAY 8, 2001

SCHEDULE NO. 4120494-009          DATED THIS 11 27 02

| | |
|---|---|
| Lessor: KMH Systems, Inc.<br>Address: 6900 Poe Avenue<br>Dayton, OH 45414-0268 | Lessee: Auburn Foundry Inc<br>Address: 635 West Eleventh St<br>Auburn, IN 46706 |

Capitalized terms not defined herein shall have the meanings assigned to them in the Lease Agreement identified above ( "Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements and other documents pertaining to any or all of the Equipment.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

## ALL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SCHEDULE ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

| LESSOR:<br>KMH Systems, Inc. | LESSEE:<br>Auburn Foundry Inc |
|---|---|
| By: William Ong | By: Thomas Walsh |
| Name: William E. Ong | Name: Thomas Walsh |
| Title: Controller | Title: CFO |

### A.  Equipment
Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed below:

| Qty | Make | Serial No. | Model | Description (include all attachments) |
|---|---|---|---|---|
| 1 | Yale | E108V175672 | ERC065RGN48TF084 | New Forklift w/3 batteries & 1 charger |
| 1 | Yale | E108V175822 | ERC065RGN48TF084 | New Forklift w/3 batteries & 1 charger |
| 1 | Yale | E108V175772 | ERC065RGN48TF084 | New Forklift w/3 batteries & 1 charger |
| 1 | Yale | E108V175782 | ERC065RGN48TF084 | New Forklift w/3 batteries & 1 charger |

Equipment immediately listed above is located at: 635 West Eleventh St, Auburn, De Kalb County, IN 46706

Supplier: KMH Systems, Inc.

### B.  Financial Terms

| | |
|---|---|
| 1. Advance Rent (if any): $4,190.08 | 2. Basic Term Rent: $4,190.08 |
| 3. Basic Term (No. of Months): 36 | 4. Public Liability Insurance: Minimum $200M/500M total Liability per occurrence. |
| 5. Purchase Order #: _____ | 6. Annual Operating Hours: 3000 |

The second sentence of Section 11 (c) of the Agreement shall be deleted in its entirety and the following added in its stead:
In the event that it should be determined that the actual number of operating hours for any unit of Equipment exceeds the applicable Annual Operating Hours by 20% or more, Lessee may, at Lessor's option, be required to pay upon demand, in addition to any other amounts due under the Lease: (i) an excess usage



EXHIBIT "A" (22 of 23)

charge which shall be determined by Lessor based on the applicable rental rates currently in effect at that time; plus (ii) any and all repair costs which are deemed necessary by Lessor, in its sole reasonable discretion, which are related to such excess usage.

**C.**    **Tax Benefits**
  Schedule Type/Tax Benefits
    True Lease - Lessor retains Tax Benefits
a. Depreciation Deductions (True Lease Only): 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.
  b. Recovery Period: 5 Years.
  c. Tax Rate: 35%

**D.**    **Purchase Option**
  Purchase Option Price:    Fair Market Value
For the purposes of this Schedule only, so long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least 90 days prior written notice to Lessor, purchase all (but not less than all) of the Equipment leased pursuant to this Schedule on an AS IS BASIS for cash equal to the Purchase Option Price indicated above (plus applicable sales taxes). If the Purchase Option Price is Fair Market Value, Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within 15 days after Fair Market Value is determined (by agreement or appraisal).

**E.**    **Assignment**

FOR VALUE RECEIVED, THE UNDERSIGNED LESSOR HEREBY SELLS, TRANSFERS AND ASSIGNS TO NMHG FINANCIAL SERVICES, INC. ("ASSIGNEE"), ITS SUCCESSORS AND ASSIGNS, ALL OF ASSIGNOR'S RIGHT, TITLE AND INTEREST IN AND TO THIS LEASE AND ALL RELATED GUARANTIES, DOCUMENTS AND OTHER INSTRUMENTS RELATED THERETO (COLLECTIVELY, THE "ACCOUNT DOCUMENTS"), AND ALL EQUIPMENT, COLLATERAL AND OTHER PROPERTY DESCRIBED THEREIN (COLLECTIVELY, THE "ACCOUNT PROPERTY"), AND ALL RIGHTS AND REMEDIES THEREUNDER PURSUANT TO THE TERMS OF THE ASSIGNMENT BY DEALER DATED MAY 8, 2001 AND HEREBY REAFFIRMS ALL OF THE REPRESENTATIONS AND WARRANTIES SET FORTH THEREIN WITH RESPECT TO THE ACCOUNT DOCUMENTS AND THE ACCOUNT PROPERTY. BY ITS SIGNATURE BELOW, THE LESSEE HEREBY ACKNOWLEDGES SAID ASSIGNMENT AND CONSENTS THERETO.

$\mathcal{E}$
2.2

EXHIBIT "A" (23 of 23)