UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Auburn Foundry, Inc., | ) | Case No. 04-10427 |
| | ) | |
| Debtor. | ) | |

**STATEMENT OF BANK OF AMERICA, N.A., IN SUPPORT OF AUBURN FOUNDRY'S REQUEST FOR AN EMERGENCY SALE HEARING ON APRIL 22, 2005**

Bank of America, N. A. ("BofA"), as agent for the pre-petition secured lenders (the "Lenders"), parties in interest in the chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby files this Statement in Support of Auburn Foundry's Request for an Emergency Sale Hearing on April 22, 2005 (the "Request").[1] In support hereof, BofA represent as follows:

**BACKGROUND**

1. On February 8, 2004 (the "Petition Date"), Auburn Foundry, Inc. ("Auburn") commenced its bankruptcy case (the "Chapter 11 Case") by filing a voluntary petition in the Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division (the "Bankruptcy Court").

**CASH COLLATERAL**

2. On February 9, 2004, Auburn filed an Emergency Motion For Order (I) Pursuant to 11 U.S.C. § 363; (II) Providing Adequate Protection Regarding Use of Cash Collateral; and

---

[1]   Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Request.

(III) Scheduling Preliminary And Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Cash Collateral Motion").

3. The Lenders objected to the Cash Collateral Motion. At the hearing on the Cash Collateral Motion, the Lenders presented evidence that the value of their collateral was approximately $27 to $27.5 million. The Lenders argued that notwithstanding the fact that they were oversecured, the Debtor was rapidly losing money and customers. In support of their argument, the Lenders presented evidence that the Debtor had consistently failed to meet its overly-optimistic budgets in the past and was thus unlikely to meet them in the future. The Court granted the Debtor the right to use cash collateral based on the first of the twin pillars of bankruptcy: that an honest debtor is entitled to a fresh start.

## THE PLAN

4. As the Lenders predicted, the Debtor continued to lose money and customers. The Debtor continued to underperform its budget, which was revised several times. Nonetheless, the Debtor was able to convince certain shareholders, affiliates and board members of the Debtor (the "Subordinated Lenders") to make a subordinate debtor-in-possession financing loan and to agree to fund a plan.

5. In March, just one month away from confirmation, the Subordinated Lenders declared the subordinate debtor-in-possession loan in default and informed the Debtor and the Lenders they were no longer willing to fund a plan.

6. Shortly thereafter, the Lenders declared a default under the Cash Use Agreement.

## MAXIMIZATION OF VALUE

7. After the Subordinated Lenders pulled out, the Lenders were faced with a decision. The Lenders could cease funding and seek relief from the stay to liquidate their collateral or continue funding losses to get to a going concern sale.

8. The Debtor and the Lenders reached an agreement pursuant to which the Debtor would (a) obtain accommodation agreements from large customers that they would not set off against accounts receivable in exchange for the Debtor's agreement to produce through April 22, 2005, (b) send out WARN notices to employees informing them that the Debtor would cease operating on April 22, and (c) market the Debtor's assets for sale as a going concern to close no later than April 22, 2005. In reliance on that agreement, the Lenders agreed to fund hundreds of thousands of dollars of unpaid administrative expenses and approximately $250,000 per week in losses. The agreement was shared with the Creditors' Committee immediately upon execution.

9. The accommodation agreements have been entered into, the WARN Notices have been sent and the sale process has begun.

## THE SALE MOTION

10. The Debtor selected The Reserve Group as its stalking horse bidder. Based on the stalking horse bid, the Lenders' collateral is now worth less than $10 million.

11. The Debtor filed and served a sale motion on or about March 31, 2005, more than 20 days in advance of the proposed April 22, 2005 hearing date. Multiple parties are expected to bid on the assets. All parties have conditioned their bids on the continued operation of the Debtor through closing.

CH\757324.1

## ARGUMENT

12. After April 22, 2005, absent a going concern sale, the customers who entered into accommodation agreements and the Debtor's employees are expected to leave.

13. Even if losses after April 22, 2005 were no worse than the current $250,000 per week and even if the Lenders were to agree to fund those losses for two or three more weeks to get to a non-emergency sale, it is doubtful the Debtor could continue to operate until closing.[2]

14. The Lenders understand that due process is extremely important and that emergency hearings should be held only in rare circumstances. However, where, as here, there is evidence that the Debtor's assets have declined in value more than $17 million since the Petition Date and the Debtor continues to lose money and value at an alarming rate, an emergency sale hearing is warranted.

---

[2] If the Debtors are unable to continue to operate, all employees would be immediately be let go.

WHEREFORE, the Lenders respectfully request that the Court grant the Debtor's Request.

April 12, 2005                              Respectfully submitted,


          /s/ Grant F. Shipley
Grant F. Shipley
SHIPLEY & ASSOCIATES
233 West Baker Street
Fort Wayne, Indiana  46802
(260) 422-2700

and

Josef S. Athanas
Caroline A. Reckler
LATHAM & WATKINS, LLP
233 South Wacker Drive
Sears Tower, Suite 5800
Chicago, Illinois  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Attorneys of Bank of America, N.A.

5

## CERTIFICATE OF SERVICE

I certify that on the 12th day of April, 2005, service of a true and exact copy of the above and foregoing pleading was served electronically through the Court's ECF system to:

| | | |
|---|---|---|
| Becket & Lee, LLP | Gary D. Boyn | John R. Burns |
| John R. Burns (DM) | John R. Burns (JF) | John R. Burns (SR) |
| Henry A. Efroymson | Stephen L. Fink | Edmund P. Kos |
| Brian J. Lange | Stephen E. Lewis | Marlene Reich (DKW) |
| Brad Rogers | Tricia A. Sherick | Michael Dunstan Story (BW) |
| Ellen L. Triebold | W. Erik Weber | Mark Werling (DM) |
| Mark Werling (TW) | Elizabeth A. Whelan | James T. Young |

And by depositing same in the United States Mail in envelopes properly addressed to them and with sufficient first class postage affixed to:

Lawrence S. Crowther
6055 Rockside Woods Blvd., Ste. 200
Cleveland, OH 44131

Honigman Miller Schwartz & Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

Patrick L. Proctor
Eilbacher Fletcher LLP
803 S. Calhoun St., Ste. 2100
Fort Wayne, IN 46802

Mark A. Warsco
Rothberg Logan & Warsco
110 W. Berry St., Ste. 2100
P.O. Box 11647
Fort Wayne, IN 46859

                                                           */s/ Grant F. Shipley*
                                                        Grant F. Shipley