IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

**DEBTOR'S MOTION FOR APPROVAL OF SALE OF
MANUFACTURING PLANTS AND RELATED ASSETS FREE
AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004 and 9014, the Debtor, Auburn Foundry, Inc., as debtor in possession ("AFI" or the "Debtor"), hereby requests that this Court enter an order approving the sale, free and clear of all liens, claims and interests, of the Debtor's two manufacturing facilities and certain related assets. In support of this Motion, the Debtor respectfully states the following:

**INTRODUCTION**

1. On February 8, 2004 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is a manufacturer of ductile and grey iron cast products for the automobile, truck, recreational vehicle and appliance industries.

2. Since the Petition Date, AFI has continued to manage its affairs and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. On January 20, 2005, the Debtor filed herein a plan of reorganization ("Plan") and disclosure statement ("Disclosure Statement").

4.      The Court set a hearing on April 20, 2005 at 1:00 p.m. to consider AFI's request to make changes to its Plan and Disclosure Statement.

5.      The Debtor has two manufacturing facilities in the State of Indiana: an older facility in the City of Auburn (Plant 1) and a newer facility near Interstate 69 (Plant 2). Plant 1 is closed. Plant 2 remains an operating facility whose operations are being financed with consensual cash use and extensions of credit from AFI's Senior Lenders.

6.      AFI wishes to sell its assets in two parcels. The first parcel, described herein as the "Plant 2 Assets," shall consist of all of Plant 2's manufacturing equipment, land, buildings, and remaining inventories (subject to prior purchases by companies which have entered into post-petition accommodation agreements with AFI), including but not limited to scrap metal, alloys, supplies, and spare parts associated with Plant 2, the maintenance and pattern building located adjacent to Plant 1, and several assets located in Plant 1, including the "Core-making equipment," several air handlers, and several other pieces of ancillary equipment, along with certain office furniture and equipment from the main office building. The second parcel, described herein as the "Plant 1 Assets," shall include the Plant 1 site and its equipment (to the extent not included in the Plant 2 Assets), and the main office building. The Plant 1 Assets and Plant 2 Assets are sometimes referred to herein collectively as the "Property."

7.      This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

8.      The Debtor is actively marketing the Property to no less than five potential buyers who have expressed a serious, ongoing interest in an acquisition of the Plant 2 Assets. It

has also received more than one written offer for the Plant 1 Assets.  These potential buyers are referred to herein as the "Potential Purchasers."

        9.     The Debtor has made detailed lists of its assets (e.g., equipment) available, upon request, to Potential Purchasers, and will continue to provide such information to interested parties between now and the sale dates described herein.

        10.    Subject to Court approval, AFI has accepted an offer from The Reserve Group, an Akron, Ohio based entity, to acquire the Plant 2 Assets, through an affiliate to be formed, for the sum of $4,000,000 plus 70% of the net book value of inventory at the date of sale.  A copy of The Reserve Group's offer is attached hereto as Exhibit A.  The Reserve Group has no affiliation with insiders of the Debtor or with New AFI, the proposed purchaser of certain assets identified in the Plan.  The Reserve Group also bid $1,100,000 for the Plant 1 Assets and AFI has accepted that offer as well subject to Court approval.

        11.    AFI needs to sell the Property as quickly as possible, consistent with the 20-day notice requirements of Bankruptcy Rules 6004 and 2002, because its Senior Lenders will consent to the use of cash collateral, and/or make extensions of post-petition financing, only if a sale will occur at the earliest practicable moment.  If the Motion is not granted, and the Senior Lenders do not consent to further use of cash collateral, and/or further grants of post-petition financing, the estate will be at serious risk of losing the opportunity to sell the business as a going concern.  The Debtor believes the going concern value of the business is substantially greater than its liquidation value, but it can only recover such value if and to the extent it has access to cash to continue operations with the consent of the Senior Lenders.

**PROPOSED SALE**

12.     The Debtor seeks authority to approve the sale of the Plant 2 Assets to The Reserve Group, with any higher offers to be filed with the Court and submitted to the undersigned Debtor's counsel at the address indicated herein on or before April 15, 2005.  If AFI receives any such higher offers, it will conduct an auction sale of the Plant 1 Assets and Plant 2 Assets on April 18, 2005.  AFI will, in all events, conduct an auction sale of the Plant 1 Assets on April 18, 2005 and seek approval for such sale at the Sale Hearing.  Debtor thus seeks approval of its sale to The Reserve Group, subject to higher and better offers.  Although the auction described herein is not required by § 363 of the Code, AFI is taking this additional step to ensure it receives the highest possible value for the Property.

13.     The anticipated purchasers of the Property are referred to herein collectively as the "Purchaser."  Any "Qualified Bidder," as defined below, wishing to bid on either Plant 1 Assets or Plant 2 Assets at the auction on April 18, 2005, shall tender to Debtor a Cashiers Check payable to Auburn Foundry, Debtor-In-Possession in the amount of $100,000.00 prior to commencement of the auction as a deposit to be applied to the purchase price at closing.  All such checks from bidders not becoming the highest and best bidder at the auction for either parcel will be returned to such unsuccessful bidder, but the deposit of the prevailing bidder shall be retained until closing.

14.     The closing date ("Closing Date") for each of the sales described herein shall be such date as may be mutually agreed upon by the Debtor and the Purchaser, with the approval of the Senior Lenders.  No closing shall occur prior to this Court's approval of the sale.

15.     Only those parties who file and submit timely written offers on or before April 15, 2005, upon the terms described herein shall be permitted to participate at any auction of

the Plant 2 Assets. Essentially, the same procedure will be followed with respect to Plant 1 Assets. Persons wishing to participate in the auction thereof must likewise submit a higher written offer to the Debtor, through its undersigned counsel, and file such offer with the Court on or before April 15, 2005.

16. Each offer for any of the Property must state with specificity the assets to be acquired, any liabilities the bidder intends to assume, and any executory contracts and leases the bidder intends to assume. The Reserve Group's offer includes the assumption of real estate tax liability for Plant 2 (payable over the Indiana statutory installment period) and post-petition manufacturing trade payables of no more than $400,000 pursuant to the terms described more fully in the attached offer. Any offers that include the assumption of Senior Lender indebtedness will not be considered unless accompanied by a written commitment from Bank of America stating the amount it agrees may be assumed. Debtor does not anticipate any such commitments will be issued by Bank of America.

17. Each bid must fully disclose the identity of entities, if any, which shall be acquiring directly or indirectly a portion of the Debtor's assets under or in connection with a bid. Each bid shall also provide sufficient information regarding both the bidder and partners, if any, to satisfy the Debtor with respect to the requirements of § 363(n) of the Bankruptcy Code, and specifically must disclose whether any officers, directors or shareholders of Debtor are insiders of the Potential Purchaser or has an agreement to become such.

18. For a bid to be considered, it must be submitted by a "Qualified Bidder." A "Qualified Bidder" is one who has complied with the terms and conditions set forth herein, and has demonstrated the ability to close the transaction as determined by the Debtor in the exercise of its reasonable business judgment, in consultation with Senior Lenders.

19. The Debtor does not seek approval herein for any "break up fee" or other mechanisms designed to benefit a "stalking horse bidder." It does hereby disclose, however, that the Senior Lenders and The Reserve Group are negotiating a contractual "break up fee" (not a claim against the estate) not to exceed $150,000, payable if another buyer acquires the Property for a price at least $200,000 greater than The Reserve Group's offer, which fee shall be payable solely by the Senior Lenders, if at all, with no impact, directly or indirectly, on the bankruptcy estate. In exchange for this payment, The Reserve Group would commit, in writing, to enter into a binding Asset Purchase Agreement to acquire the Property at the price set forth in its current offer with no financial or operational contingencies on or before April 13, 2005. Bidding increments for each auction shall be as follows: $200,000 for the first overbid, and $50,000 for each overbid thereafter.

20. With respect to the Lien Claimants set forth in paragraph 25 below, to the extent that the Debtor obtains the consent of the Lien Claimants, the Debtor requests that the Court authorize the sale of the Property under § 363(f)(2) of the Bankruptcy Code. The Debtor further requests that any creditor that receives notice of this motion and does not object to the relief requested herein be deemed to have consented to the sale of the assets free and clear of such creditor's interest pursuant to § 363(f)(2) of the Bankruptcy Code, with the creditor's interest to attach to the proceeds of the sale.

21. Alternatively, the Debtor requests that the Court authorize the sale under § 363(f)(5) of the Bankruptcy Code, as any interest or lien asserted by any nonconsenting entity claiming an interest or lien on the assets could be compelled, in a legal or equitable proceeding, to accept money in satisfaction of such interest or lien.

22. Contemporaneously with the filing of this Motion, AFI is notifying each of the Potential Purchasers of the sales and the auction(s) described herein. The auction(s) will begin at 9:00 a.m. on April 18, 2005 in the offices of Baker & Daniels, 111 E. Wayne Street, Suite 800, Fort Wayne, Indiana 46802.

23. The Debtor intends to negotiate agreements for the purchase and sale of the Property (collectively, the "Agreement") at arm's length. The Agreement will comport with acceptable commercial standards. The Debtor believes, based on the potential for competitive bidding and the preservation of credit bidding rights for secured creditors, that the price paid for the Property will represent fair market value. Moreover, except as the Debtor shall disclose at the Sale Hearing, to the best of the Debtor's knowledge and belief, the Purchaser shall have no connections with the Debtor or its estate, and the Debtor consequently believes that the Purchaser shall be a good faith purchaser entitled to the protection afforded by 11 U.S.C. § 363(m). If New AFI or any insider of the Debtor shall acquire any portion of Debtor's assets, Debtor shall make full disclosure of that fact at the Sale Hearing. The Debtor's intended sale of the Property under the Agreement shall be free and clear of all liens, claims or other interests, with such liens, claims or other interests to attach to the proceeds of the sale in the same order of priority as they are entitled to under applicable law and subject to any allowable changes under 11 U.S.C. § 506(c).

24. This Court may authorize the Debtor's sale of its interest in the Property free and clear of any liens, claims or interests pursuant to 11 U.S.C. §§ 363(b) and 363(f). Specifically, this court may authorize the Debtor's sale of assets out of the ordinary course of business and free and clear of any interests if (i) such interests are liens and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, or (ii)

the entities asserting such interests could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. §§ 363(b) and 363(f)(3), (5). The Debtor submits that this Court may authorize the sale of the Property free and clear of interests under one or more subsections of § 363(f).

25. The Senior Lenders (as defined in the Plan) assert a first priority lien on the Property and its proceeds totaling approximately $23,312,638. The Debtor's assets are also secured by liens and mortgages in favor of certain Subordinated Lenders (as defined in the Plan). Further, the Debtor granted certain liens post-petition to its Senior DIP Lenders and Junior DIP Lender (each as defined in the Plan). The entities asserting liens are sometimes referred to herein as the "Lien Claimants."

26. The Debtor believes that the Senior Lenders' claim is substantially undersecured. The offer from The Reserve Group for the Plant 2 Assets is more than $16,000,000 less than Senior Lenders' claim. Further, the Plant 2 Assets are substantially more valuable than the Plant 1 Assets. Consequently, to the extent any other person or entity other than those identified above asserts a lien on the Property, such lien would have no value.

27. The Debtor is serving this Motion upon all creditors and parties in interest in the case with 20 days negative notice pursuant to the applicable Local Rules, and has contemporaneously delivered copies thereof to the Potential Purchasers. Debtor is also publishing notice in the leading Fort Wayne newspapers, prior to April 15, 2005, of the proposed sale of the Property to The Reserve Group, the April 15, 2005 deadline for higher offers, and the auction(s) proposed herein. Several prominent newspaper articles have already discussed these dates.

**CONCLUSION**

By virtue of the foregoing, the Debtor submits that the approval of its intended sale of the Property is both necessary and appropriate under the circumstances.

WHEREFORE, the Debtor respectfully requests that this Court enter an order: (i) granting this Motion; (ii) approving and authorizing the Debtor's sale of the Property outside the ordinary course of business and free and clear of all liens, claims and interests as described herein and pursuant to the terms of the Agreement; (iii) authorizing the Debtor to take all further actions and execute and deliver all documents necessary to consummate the transactions described herein; and (iv) allowing such other relief as is just and to which the Debtor may be entitled under the circumstances.

Dated: April 13, 2005               BAKER & DANIELS

                                                By:  /s/ John R Burns III
                                                    John R Burns III (#3016-02)
                                                    Mark A. Werling (#20426-02)
                                                    111 East Wayne Street, Suite 800
                                                    Fort Wayne, Indiana 46802
                                                    Telephone: (260) 420-8000
                                                    Facsimile: (260) 460-1700

                                            ATTORNEYS FOR THE DEBTOR,
                                            AUBURN FOUNDRY, INC.