**ASSET PURCHASE AGREEMENT**

**(PLANT 2)**

By and among

AUBURN FOUNDRY, INC.

AS SELLER

and

SUMMITBRIDGE NATIONAL INVESTMENTS, LLC

or ITS DESIGNEE

AS BUYER

Dated as of April 28, 2005

ARTICLE I        PURCHASE AND SALE OF ACQUIRED ASSETS....................................1

1.1    Agreement to Sell and Purchase Transferred Assets ............................................1

1.2    Agreement for Seller to Retain Excluded Assets...................................................4

1.3    Assumed and Excluded Liabilities.........................................................................4

1.4    Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests..................................................................................................................5

1.5    Method of Conveyance ...........................................................................................5

ARTICLE II        PURCHASE PRICE; PAYMENTS..............................................................5

2.1    Purchase and Sale Subject .....................................................................................5

2.2    Purchase Price; Payment........................................................................................5

ARTICLE III        CLOSING .........................................................................................................6

3.1    Closing ....................................................................................................................6

3.2    Seller's Deliveries ..................................................................................................6

ARTICLE IV        ASSUMED OBLIGATIONS............................................................................6

ARTICLE V        REPRESENTATIONS AND WARRANTIES OF SELLER..........................6

5.1    Organization, Qualification, and Powers of Seller ...............................................6

5.2    Disclosure ...............................................................................................................6

5.3    Representations and Warranties; Performance .....................................................7

5.4    Proceedings and Documents...................................................................................7

5.5    Physical Inventory ..................................................................................................7

5.6    Corporate Authorization ........................................................................................7

5.7    Enforceability .........................................................................................................7

5.8    Title .........................................................................................................................7

5.9    Environmental Matters...........................................................................................7

ARTICLE VI        REPRESENTATIONS AND WARRANTIES OF BUYER ...........................8

6.1    Organization............................................................................................................8

6.2    Authorization ..........................................................................................................8

6.3    Enforceability..........................................................................................................8

6.4    Compliance with Other Instruments and Laws.......................................................8

6.5    Authorization for this Agreement ...........................................................................8

6.6    Financial Capacity..................................................................................................8

6.7    Notification .............................................................................................................8

ARTICLE VII        COVENANTS OF SELLER .............................................................................9

| | | |
|---|---|---|
| 7.1 | Conduct of Business | 9 |
| 7.2 | Conduct Outside the Ordinary Course of Business | 9 |
| 7.3 | Access and Due Diligence | 9 |
| 7.4 | Employment/Employees | 10 |
| 7.5 | Release of Liens, Security Interests, and Leases | 10 |
| 7.6 | Delivery of Contracts | 10 |
| 7.7 | Obtaining Sale Order of the Bankruptcy Court | 10 |
| 7.8 | Survival of Covenants | 10 |
| ARTICLE VIII | COVENANTS OF BUYER | 10 |
| 8.1 | Access and Due Diligence | 10 |
| 8.2 | Survival of Covenants | 10 |
| ARTICLE IX | COVENANTS OF BOTH PARTIES | 10 |
| 9.1 | General | 10 |
| 9.2 | Taxes and any Other Charges Relating to Sale | 11 |
| 9.3 | Costs and Expenses | 11 |
| 9.4 | Survival of Covenants | 11 |
| ARTICLE X | [INTENTIONALLY OMITTED] | 11 |
| ARTICLE XI | CONDITIONS TO CLOSING | 11 |
| 11.1 | Conditions to Buyer's Obligations | 11 |
| 11.2 | Conditions to Seller's Obligations | 12 |
| ARTICLE XII | TERMINATION | 13 |
| 12.1 | Right to Terminate Agreement | 13 |
| 12.2 | Effect of Termination | 13 |
| ARTICLE XIII | MISCELLANEOUS | 13 |
| 13.1 | Risk of Loss | 13 |
| 13.2 | Further Assurances | 14 |
| 13.3 | Certain References | 14 |
| 13.4 | Notices | 14 |
| 13.5 | Assignment | 15 |
| 13.6 | Entire Agreement; Amendment; Governing Law; Etc | 15 |
| 13.7 | Consent to Jurisdiction | 15 |
| 13.8 | Severability | 16 |
| 13.9 | Interpretation | 16 |

13.10   Counterparts ................................................................................................... 16

<u>Schedules</u>

Schedule 1.1(a)         -  Plant 2 Assets
Schedule 1.1(a)(ii)      -  Equipment
Schedule 1.1(a)(iii)     -  Contracts
Schedule 1.1(a)(vi)      -  Intellectual Property
Schedule 1.1(a)(viii)    -  Real Estate
Schedule 1.2(b)         -  Landfills

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement"), dated as of April 28, 2005, is by and between Auburn Foundry, Inc., an Indiana corporation ("Seller"), and SummitBridge National Investments, LLC, a Delaware limited liability company, or its designee ("Buyer").

## RECITALS

A.      Seller is a debtor-in-possession in a proceeding under the United States Bankruptcy Code, 11 U.S.C. §§101 et. seq. (the "Bankruptcy Code"), pending as Case No. 04-10427 (the "Chapter 11 Case") in the United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division (the "Bankruptcy Court") commenced on February 8, 2004 (the "Petition Date").

B.      Buyer has agreed to acquire from Seller, and Seller has agreed to sell to Buyer, certain of Seller's assets (including certain real estate assets of Seller more specifically described herein ("Plant 2") (collectively, the "Acquired Assets") as described herein related to the business of Seller (the "Business"), on the terms and subject to the conditions set forth herein.

C.      The closing of the contemplated transactions and consummation of this Agreement, and Buyer's and Seller's obligations under this Agreement, are contingent on the Bankruptcy Court's approval of the transactions described in this Agreement, and the parties acknowledge that no "sale" as that term is used in the Bankruptcy Code shall occur until the Bankruptcy Court enters its order approving such sale.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants hereinafter set forth, Buyer and Seller hereby agree as follows:

## ARTICLE I

## PURCHASE AND SALE OF ACQUIRED ASSETS

1.1      **Agreement to Sell and Purchase Transferred Assets**  Subject to the terms and conditions of this Agreement, Seller agrees to sell, assign, convey and transfer to Buyer, and Buyer agrees to purchase from Seller, at the Closing (as defined herein), all right, title and interest in and to the Acquired Assets described below, free and clear of all liens, claims, encumbrances and other interests pursuant to Section 363 of the Bankruptcy Code:

(a)      certain assets described more specifically on the attached Schedule 1.1(a) (collectively, the "Plant 2 Assets") which include, in addition to Plant 2, Seller's newer manufacturing facility:

(i)      all of the right, title and interest of Seller in and to inventories of every kind and nature owned by Seller at the Closing Date, wherever located; including all supplies, work in process, and finished goods (the "Inventory");

(ii)      all of the right, title and interest of Seller in and to plant, equipment, including spare parts and machinery, leasehold improvements, furniture,

fixtures, furnishings, materials and supplies, vehicles, data processing hardware, jigs, molds, tools, and dies and other personal property, wherever situated, owned by Seller at the Closing Date, including, but not limited to that listed on the attached Schedule 1.1(a)(ii) (the "Equipment");

   (iii)  all of the right, title and interest of Seller in and to all contracts, agreements and commitments including sales orders, purchase orders, and quotes, listed on the attached Schedule 1.1(a)(iii) (the "Contracts");

   (iv)  all of the right, title and interest of Seller in and to all customers lists, customers, marketing data and plans, advertising and display materials, sales literature, promotional material, catalogs, samples, demos and prototypes;

   (v)  all of the right, title and interest of Seller in and to all of the following, including, but not limited to that listed on the attached Schedule 1.1(a)(vi) (the "Intellectual Property"):

     1.  all concepts, inventions, plans, designs, research data, patents, trade secrets and other proprietary know-how (and all applications therefor and registrations and renewals thereof), formulae and manufacturing processes, operating manuals, drawings and other art works, technology, methods and manuals, proprietary knowledge, proprietary rights or information, data, records, procedures, related technical data (including all relevant documentation and testing materials), research and development records related to or used in the Business;

     2.  to the extent assignable, all licenses or other rights to use any technical information and know-how of others or to use any trademarks, trade names, patents or copyrights owned by others (the "Intellectual Property Licenses");

     3.  all of Seller's right, title and interest in all trade names, corporate names, logos, URLs and other network and email identifiers, trade dress, trademarks and service marks, brand names and all registrations and applications therefore associated with the name "Auburn Foundry" and all goodwill associated therewith including, without limitation, the name "Auburn Foundry, Inc." and all derivations thereof, excluding "AFI" which will be used by the Seller as Debtor-In-Possession;

     4.  all rights, claims, defenses or causes of action at law or in equity for any past, present or future infringement of any of the Intellectual Property, including the right to receive all proceeds and damages therefrom, including rights under insurance policies and the right to receive insurance proceeds, and all rights to obtain renewals, continuations, divisions or other extensions of legal protections pertaining thereto;

     5.  all of the Seller's rights under any registration, certificate of occupancy, permit or approval of any nature or grandfathered

-2-

practice or authorization that permits the Seller to use the Acquired Assets, together with all ISO, GSA, QPL, UL, CUL, NEMA, ANSI certifications for Seller's products and facilities;

      6.    all of the Seller's rights, claims, defenses, or causes of action against third parties in respect of the Acquired Assets (including, without limitation, the Inventory, Equipment, Intellectual Property and Assumed Contracts) arising out of transactions prior to the Closing, except all claims and causes of action of the Seller against third parties under Bankruptcy Code §§ 544-550, inclusive; and

      7.    all rights benefiting Seller under any warranty, express or implied, which relate to the Acquired Assets, and all other assets, other than the Excluded Assets;

      (vi)    all of the right, title and interest of Seller in and to all prepayments, prepaid expenses, deferred charges, advance payments and security deposits as of the Closing Date, but excluding the Seller's retainer deposit with Baker & Daniels;

      (vii)    all of the right, title and interest of Seller in and to the real estate (including, without limitation, land, buildings and improvements, whether any such buildings or improvements are owned in fee, leased or otherwise), including but not limited to, the real estate and all buildings located thereon, which are described on the attached Schedule 1.1(a)(viii), which specifically excludes the Landfills;

      (viii)    all of the right, title and interest of Seller in and to all insurance reserves and deposits (including, without limitation, reserves and deposits related to workmen's compensation) of Seller as of the Closing Date;

      (ix)    all of the right, title and interest of Seller in and to all business and marketing plans and proposals and pricing and cost information related to the Business;

      (x)    all of the right, title and interest of Seller in and to all computer hardware and software and systems of Seller, including licenses related thereto, proprietary or otherwise, and related source codes, data and documentation, subject to Sellers right to reasonable access, and copies, for purposes of concluding the affairs of Seller and concluding its Chapter 11 Case;

      (xi)    all of the right, title and interest of Seller in and to all creative materials, advertising and promotional materials and all other printed or written materials related to the Business;

      (xii)    any accounts receivable of the Seller (the "Accounts Receivable"), together with any claims, defenses, and causes of action in any way related to the collection of such Accounts Receivable and all proceeds of the foregoing; and

BDDB01 4053649v2

(xiii)    all interest in and to telephone numbers, property addresses, e-mail addresses and all listings pertaining to Seller in all telephone books and other directories and other communications media, provided that AFI may use the name "AFI" for such listings after the Closing.

The Contracts and Intellectual Property Licenses that constitute Acquired Assets hereunder shall be referred to herein as the "Assumed Contracts".

1.2    **Agreement for Seller to Retain Excluded Assets**    The Acquired Assets do not include any of the following (collectively, the "Excluded Assets"):

(a)    any interest in actions, causes of action and proceeds therefrom arising out of or relating to any claims under Bankruptcy Code §§ 544-550, inclusive, together with any and all claims or causes of action whatsoever not specifically included in the Acquired Assets.

(b)    the County Road 48 and County Road 50 landfills owned by Seller and described on Schedule 1.2(b) (collectively the "Landfills");

(c)    all Contracts and Intellectual Property Licenses of Seller that are not Assumed Contracts, together with all proceeds thereof.  Notwithstanding any provision hereof to the contrary, any Contract or Intellectual Property which must be assumed or assigned pursuant to the Bankruptcy Code and which has not been so assumed or assigned (or made the subject of a request to do so effective prior to the Closing Date) on or before Closing shall constitute an Excluded Asset;

(d)    any and all claims by Seller, or on Seller's behalf, against Kemper Insurance Company arising out of Seller's use or operation of its County Road 50 Landfill;

(e)    all of the right, title and interest of Seller in and to all original books and records relating to the operation of the Business but Buyer shall have reasonable access during normal business hours to such books and records as necessary upon prior written notice to Buyer and Buyer may make copies  of such books and records as it deems necessary;

(f)    the Plant 1 Assets listed on the Asset Purchase Agreement (Plant 1);

(g)    Debtor's Workers Compensation Trust; and

(h)    Debtor's Indiana Department of Environmental Management Trust.

1.3    **Assumed and Excluded Liabilities**

(a)    At the Closing, Buyer agrees to fully satisfy (A) any and all cure costs related to the Assumed Contracts under Bankruptcy Code section 365 and all obligations and liabilities that arise post-Closing under any Assumed Contracts (collectively, the "Assumed Liabilities"); and (B) the real estate taxes associated with Plant 2 (the "Plant 2 Real Estate Taxes").  Other than the Assumed Liabilities, Buyer shall not assume any other obligations or liabilities of the Seller.

-4-

(b)     Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of Seller of whatever nature, whether presently in existence or arising hereafter. All such liabilities and obligations shall be retained by and remain liabilities and obligations of Seller (all such liabilities and obligations not being assumed are referred to herein as the "Excluded Liabilities"). The Excluded Liabilities shall include, without limitation, the following:

(i)     any of Seller's liabilities in respect of any state, federal, county, municipal, foreign or other taxes (collectively, "Taxes") accruing on or prior to the Closing Date, other than the Plant 2 Real Estate Taxes;

(ii)     any obligations of Seller for borrowed money or other debts or similar liabilities, whether absolute or contingent of the Seller (other than the Assumed Liabilities);

(iii)     any rebates, allowances, credits, deductions, offsets, and/or price discrepancies relating in any manner to products or services sold in pursuit of the Business prior to the Closing Date;

(iv)     any liabilities or obligations of Seller to past or present employees for claims, regardless or when arising or accruing;

(v)     any claims for defective or non-conforming goods manufactured by Seller or services provided by Seller, regardless of when arising or accruing; and

(vi)     fees and expenses incurred by any "professional persons" employed by Seller or any "insiders" of Seller; provided, however, this provision shall not affect any carve-out agreements with respect to compensation of Debtor's counsel.

1.4     **Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests**.   The Acquired Assets shall be transferred free and clear of all liens, claims, encumbrances, and other interests, including without limitation, all security interests of record and all interests not specifically assumed by Buyer, to the fullest extent permitted by Section 363 of the Bankruptcy Code.

1.5     **Method of Conveyance**.   Upon the Closing, title to all of the Acquired Assets shall pass to Buyer; and Seller shall make available to Buyer possession of all of the Acquired Assets, and shall further, upon Buyer's reasonable request, deliver to Buyer proper assignments, deeds, conveyances and bills of sale sufficient to convey to Buyer title to all the Acquired Assets, in accordance with Section 1.1 of this Agreement, as well as such other instruments of conveyance as Buyer may reasonably deem necessary (both at and after the Closing) to effect or evidence the transfers contemplated herein.

BDDB01 4053649v2

## ARTICLE II

## PURCHASE PRICE; PAYMENTS

2.1      **Purchase and Sale Subject**.    Subject to the terms and conditions of this Agreement, and in consideration of the Purchase Price, Seller will sell, transfer, and convey all the Acquired Assets on an "as is, where is" basis to Buyer at the Closing, free and clear of all liens, claims, and encumbrances and other interests pursuant to Sections 363 and 365 of the Bankruptcy Code.

2.2      **Purchase Price; Payment**.  The purchase price ("Purchase Price") shall be in the form of a credit bid under Section 363(k) of the Bankruptcy Code and the assumption by Buyer of the Assumed Liabilities.  The Credit Bid ("Credit Bid") shall be $12,000,000.00, of which Buyer allocates $3,000,000.00 to Plant 1 and $9,000,000.00 to Plant 2.  Additionally, Buyer credit bids an amount equal to 70 percent of all accounts receivable aged less than 90 days as of the date of Closing.

## ARTICLE III

## CLOSING

3.1      **Closing**.  The sale shall be effected by a closing of the sale and purchase of the Business (the "Closing") which will take place pursuant to Bankruptcy Code Section 363(m) at 3:00 p.m. on May 19, 2005, if the Bankruptcy Court has entered an Order approving the sale no later than 1:00 p.m. on May 19, 2005 or, alternatively, at a time mutually agreeable to Buyer and Seller (the "Closing Date").  In no event shall a Saturday, Sunday, or legal holiday be the Closing Date unless Seller has received the Purchase Price and deposited it into its account before such Saturday, Sunday, or legal holiday.  The Closing will be deemed to have occurred as of 12:01 a.m. on the Closing Date.

3.2      **Seller's Deliveries**.  At Closing, Seller will deliver to Buyer possession of the Acquired Assets and all other agreements or documents required to be delivered to Buyer pursuant to the terms of this Agreement.

## ARTICLE IV

## ASSUMED OBLIGATIONS

Buyer shall become obligated for only those obligations that it specifically assumes pursuant to the Assumed Liabilities and will become obligated to pay only those amounts that first come due with respect to the Assumed Liabilities after the Closing Date.

-6-

# ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that all of the following statements are, to the best of its knowledge and belief, true and accurate as of the date of execution of this Agreement by both parties and shall be true and correct as of the Closing Date:

5.1    **Organization, Qualification, and Powers of Seller**.

(a)    Seller is a corporation duly organized and validly existing under the laws of the State of Indiana.

(b)    Seller is a debtor-in-possession in the Chapter 11 Case pursuant to the Bankruptcy Code, with the rights and obligations incident to Sections 1107 and 1108 of the Bankruptcy Code.

5.2    **Disclosure**.  To the best of Seller's knowledge and belief, neither this Agreement nor any of the contracts, exhibits, attachments, written statements, documents, certificates or other items prepared for or supplied to Buyer by or on behalf of Seller with respect to the transactions contemplated hereby contains any untrue statement of a material fact or omits a material fact necessary to make each statement contained herein or therein not misleading. Seller has provided Buyer with access to its records and employees in order for Buyer to conduct due diligence as it deems appropriate under the circumstances.

5.3    **Representations and Warranties; Performance**.    The representations and warranties of Seller contained in this Agreement and all information contained in any exhibit or schedule hereto delivered by, or on behalf of Seller, to Buyer, shall, to the best of Seller's knowledge and belief, be true and accurate when made and on the Closing Date as though then made, except as expressly provided herein. Seller shall have performed and complied with all agreements, covenants and conditions required by this Agreement to be performed and complied with by it prior to the Closing Date.

5.4    **Proceedings and Documents**.  All corporate and other proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be reasonably satisfactory in form and substance to Buyer and Buyer's counsel, and Seller shall have made available to Buyer for examination the originals or true, complete and correct copies of all records and documents relating to the Business and affairs of Seller that Buyer may reasonably request in connection with this transaction.

5.5    **Physical Inventory**.  Buyer shall be allowed to complete a physical inventory of the Acquired Assets prior to the Closing Date, and Buyer shall be satisfied as to the accuracy of the books and records of Seller with respect to such inventory.

5.6    **Corporate Authorization**.  Subject to the Bankruptcy Court's entry of the Sale Order, the execution, delivery, and performance of this Agreement and all other documents related thereto, either executed or to be executed pursuant to this Agreement by the Seller, and

-7-

the consummation of the transactions herein, have been duly authorized by all necessary corporate or company actions on part of Seller.

5.7    **Enforceability**.  Subject to the entry of the Sale Order, this Agreement constitutes Seller's valid and legally binding obligation, enforceable in accordance with its terms.

5.8    **Title**.  Subject to the Chapter 11 Case and the Bankruptcy Code, Seller has good and marketable title to all of the Acquired Assets. The Seller sells, assigns, transfers and conveys the Acquired Assets to Buyer free and clear of all liens, claims, and encumbrances to the fullest extent permitted by Section 363 of the Bankruptcy Code.

5.9    **Environmental Matters**.

(a)    Buyer has familiarized itself with Environmental Laws (as defined herein) applicable to the operation of the Acquired Assets and Seller has provided Buyer an opportunity to conduct due diligence with respect to the nature of claims asserted by the Indiana Department of Environmental Management against Seller.  As used herein:  "Environmental Laws" means any domestic, foreign, federal, state, interstate or local statute, law or regulation in effect in any jurisdiction where the Business is presently conducted by the Seller, which has been properly promulgated, is in effect and is binding upon the Seller as of the Closing Date or any order, injunction, judgment, decree, common law or other enforceable requirement of any governmental entity, and relating to the protection of the environment.

(b)    Buyer shall determine for itself, and Seller makes no representation or warranty with respect to, the nature, scope, and extent of compliance or remedial action necessary, if any, in order that buyer's future use of the Acquired Assets complies with applicable Environmental Laws.

**ARTICLE VI**

**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer hereby represents and warrants to Seller that all the following statements are true, accurate and correct as of the date of execution of this Agreement and shall be true and correct as of the Closing Date:

6.1    **Organization**.  Buyer is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware and has all the corporate power and authority to enter into this Agreement and any other documents that Buyer is required to execute and deliver hereunder to perform its obligations under this Agreement.

6.2    **Authorization**.  The execution, delivery, and performance of this Agreement and all other documents related thereto, either executed or to be executed pursuant to this Agreement by Buyer, and the consummation of the transactions herein, have been duly authorized by all necessary limited liability company actions on the part of Buyer.

6.3    **Enforceability**.  This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable in accordance with its terms, except as such enforceability may

-8-

be limited by equitable principles and applicable bankruptcy or similar laws relating to or affecting the rights of creditors.

6.4    **Compliance with Other Instruments and Laws**.  The execution and delivery of this Agreement by Buyer, and the performance by Buyer of its obligations under this Agreement, will not:  (i) violate Buyer's charter documents; (ii) result in a material violation or breach of, or permit any third party to rescind any term or provision of, or constitute a default under, any loan, note, indenture, mortgage, deed of trust, security agreement or material contract, license, lease or other agreement to which Buyer is a party; or (iii) to the best of Buyer's knowledge, violate any law, statute, rule or regulation, or any order, writ, judgment, injunction or decree of any court, administrative agency or government body applicable to Buyer.

6.5    **Authorization for this Agreement**.  No authorization, approval, consent of, or filing with any governmental department, bureau, agency, public board, authority or other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

6.6    **Financial Capacity**.  Buyer has the financial capacity to consummate this Agreement and transactions contained herein.

6.7    **Notification**.  Prior to Closing, Buyer will immediately notify Seller at such time as buyer becomes aware that any statement, representation, or warranty is materially untrue.

## ARTICLE VII

## COVENANTS OF SELLER

Seller covenants and agrees with Buyer as follows:

7.1    **Conduct of Business**.  Except with the prior written consent of Buyer, and subject to any order of the Bankruptcy Court, from the date of this Agreement through the Closing, Seller will:

(a)    except as required by the Bankruptcy Court under its Chapter 11 Case, operate the Business in substantially the same manner as it operates as of the date of this Agreement;

(b)    continue in full force and effect all existing insurance policies relating to the Business;

(c)    except as provided as a result of this Chapter 11 Case, conduct its Business in compliance with all applicable laws.

7.2    **Conduct Outside the Ordinary Course of Business**.  Without limiting the generality of Section 7.1, and except as may be approved by the Bankruptcy Court or by written consent by Buyer, from the date of this Agreement through the Closing, Seller will not with respect to the Business:

-9-

(a)     engage in any practice, take any action, or enter into any transaction outside the ordinary course of its business as presently operated; or

(b)     sell, lease, transfer, or encumber or assign any of the Acquired Assets, tangible or intangible, other than in the ordinary course of business as presently operated.

7.3     **Access and Due Diligence**.

Upon execution of this Agreement by both parties, Seller will afford Buyer and its agents full, free, and reasonable opportunity and access to investigate and review the books and records of Seller and investigate the Business during normal business hours or at other agreed times, and subject to Buyer's covenants. Seller shall provide to Buyer copies of all material documents relating to the Business and any additional documents reasonably requested by Buyer within five (5) days of execution of this Agreement by Seller.

7.4     **Employment/Employees**. Buyer shall have the right, in its sole discretion, from the date hereof, to interview and to offer employment to any or all of the Seller's employees but shall have no obligation to do so. If Buyer elects to offer employment to any employees of the Seller, it shall be upon such terms and conditions as Buyer, in its sole discretion, shall determine, and nothing expressed or implied by this Agreement shall confer upon the Seller's employees, or any legal representative thereof, any rights or remedies, including any right to employment, or for any specified period, of any nature or kind whatsoever, under or by reason of this Agreement. If Buyer determines to enter into an employment agreement with any other employees of the Seller, it may be on either an at-will or a fixed duration basis.

7.5     **Release of Liens, Security Interests, and Leases**. Pursuant to an order of the Bankruptcy Court, Seller will transfer the Acquired Assets to Buyer free and clear of all liens, interests, claims, security interests, and encumbrances to the fullest extent permitted by Section 363 of the Bankruptcy Code.

7.6     **Delivery of Contracts**. Seller will deliver to Buyer true and correct copies of all Assumed Contracts and Seller shall assign to Buyer the Assumed Contracts.

7.7     **Obtaining Sale Order of the Bankruptcy Court**. Seller shall take all steps reasonably necessary or appropriate to obtain the entry by the Bankruptcy Court of the Sale Order by no later than May 19, 2005 in a form reasonably acceptable to Seller and Buyer and as described below. Buyer and Seller recognize that if objections are filed to the Motion to Sell, that Closing may not occur until the court resolves such objections. The filing of a motion to sell and the noticing of such motion to creditors shall satisfy this requirement.

7.8     **Survival of Covenants**. Each of the covenants set forth in Section 7 and the representations and warranties in Section 5 shall terminate upon the Closing Date.

-10-

## ARTICLE VIII

## COVENANTS OF BUYER

8.1     **Access and Due Diligence**.  In conducting the review of Seller's Business, Buyer will provide Seller at least one (1) business day advanced notice of the time when Buyer intends to conduct its due diligence and for access to Seller's property and records and, further, Buyer's agents, auditors, attorneys, consultants and other authorized representatives will not disrupt or interfere with Seller' Business.

8.2     **Survival of Covenants**.  Each of the covenants set forth in Section 8 and the representations and warranties in Section 6 shall terminate upon the Closing Date.

## ARTICLE IX

## COVENANTS OF BOTH PARTIES

9.1     **General**.  Subject to the terms and conditions of this Agreement, each party will use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary under applicable law to consummate this Agreement, including the execution and delivery of any further instruments or documents that are reasonably requested by Buyer or Seller, or their respective counsel, and parties in interest, or their counsel, to evidence or facilitate the consummation of this Agreement and its related transactions.

9.2     **Taxes and any Other Charges Relating to Sale**.  All Taxes, including, without limitation, sales, use, transfer or other Taxes, duties, or any other charges or obligations imposed on and/or relating to the sale of the Acquired Assets to Buyer under this Agreement shall be paid in accordance with Bankruptcy Code priorities.

9.3     **Costs and Expenses**.  Buyer and Seller shall each bear their own costs and expenses in connection with the negotiation, purchase, and approval of the purchase of the Acquired Assets and any transaction related thereto, including costs and fees associated with their retention of counsel, and neither Buyer nor Seller will have any obligation with respect to costs and expenses incurred by the other in connection herewith.

9.4     **Survival of Covenants**.  The covenants set forth in this Section 9 shall survive the Closing; provided, however, that parties shall file any claim arising from the breach of this Agreement no later than 90 days after the Closing Date.

BDDB01 4053649v2

# ARTICLE X

# [INTENTIONALLY OMITTED]

# ARTICLE XI

# CONDITIONS TO CLOSING

11.1  **Conditions to Buyer's Obligations**.   Buyer's obligation to purchase the Acquired Assets and otherwise consummate the transactions contemplated under this Agreement at Closing is subject to the satisfaction of each of the following conditions precedent, except as Buyer may expressly waive the same in writing and in its sole discretion:

(a)  **Covenants**.  Seller shall have complied in all material respects with all of its agreements and covenants contained herein to be performed at or prior to Closing.

(b)  **Accuracy of Representations and Warranties on Closing Date**.  The representations and warranties made herein by Seller in Section 5 hereof shall, to the best of Seller's knowledge and belief, be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(c)  **Deliveries**.  Seller will have delivered to Buyer at the Closing all documents, certificates, and agreements necessary to transfer to Buyer all of Seller's rights and title to and interests in the Acquired Assets.

(d)  **Secretary's Certificate; Good Standing**.  Seller shall have delivered to Buyer certificates, dated the Closing Date, executed by the secretary of Seller certifying in such capacity and on behalf of Seller (a) as to the charter and bylaws (and any amendments thereto) of Seller as being correct, complete and in full force and effect on the Closing Date; (b) as to the incumbency and signatures of the officers of Seller who executed this Agreement and the related transaction documents on behalf of Seller; (c) as to the adoption of resolutions of the board of directors of Seller as being correct, complete and in full force and effect on the Closing Date, authorizing (i) the execution and delivery of this Agreement and the related transaction documents, and (ii) the performance of the obligations of Seller hereunder and thereunder. Seller shall have also delivered certificates of good standing from the Secretary of State of its jurisdiction of incorporation and of comparable authority in other jurisdictions in which Seller is qualified to do Business stating that it is a validly existing corporation in good standing.

(e)  **Instruments of Transfer**.  Buyer, or its nominee, shall have received deeds and a bill of sale, and such other duly executed instruments of transfer, conveyance, and assignment, executed by a duly authorized officer of Seller, as is necessary or desirable to effect the transfers, conveyances, and assignments to Buyer of the Acquired Assets as contemplated by this Agreement.

(f)  **Bankruptcy Court's Approval of Sale**. Seller shall have obtained an order from the Bankruptcy Court in a form and content reasonably satisfactory to Buyer

-12-

approving the transactions contemplated herein (the "Sale Order").  Among other things, the Sale Order shall (a) approve the sale of the Acquired Assets to Buyer on the terms and conditions set forth in this Agreement and authorize Seller to proceed with this transaction, (b) include a specific finding that Buyer is a good faith purchaser of the Acquired Assets, (c) state that the sale of the Acquired Assets to Buyer shall be free and clear of all liens, claims, interests and encumbrances of any nature whatsoever to the fullest extent permitted by Section 363 of the Bankruptcy Code, and (d) provide for a waiver of the stays contemplated by Bankruptcy Rule 6004(g).

11.2    **Conditions to Seller's Obligations**.  Seller's obligation to sell the Acquired Assets and otherwise consummate the transactions contemplated under this Agreement at Closing is subject to the satisfaction of each of the following conditions precedent, except as Seller may expressly waive the same in writing and in its sole discretion:

(a)    **Accuracy of Representations and Warranties and Covenants on Closing Date**.  The representations and warranties made herein by Buyer in this Agreement shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.  Seller shall have performed all of the covenants contained herein on or prior to the Closing Date.

(b)    **Deliveries**.  Buyer will have delivered to Seller at the Closing all fully executed documents and payments required under this Agreement, including but not limited to the Purchase Price.  Buyer shall deliver to Seller at Closing a letter in a form acceptable to Seller by which Buyer agrees that for a period of six months, without charge, Buyer will provide Seller's Plant 1 offices with access to the Plant 2 mainframe computer and email service (subject to appropriate firewall protection) in order to permit Seller to conclude its duties as Debtor-In-Possession.

(c)    **Further Instruments**.  Buyer will have delivered to Seller such further instruments of assumption or other documents of further assurance as Seller may reasonably request in advance of the Closing.

(d)    **Bankruptcy Court Approval**.  The Bankruptcy Court will have entered the Sale Order and the implementation, operation, or effect of the Sale Order shall have not been stayed.

## ARTICLE XII

## TERMINATION

12.1    **Right to Terminate Agreement**.  This Agreement may be terminated and the transactions contemplated herein may be abandoned at any time before the Closing and Closing Date (referenced herein as "Termination Date"):

(a)    by mutual written agreement of Buyer and Seller;

-13-

(b)    by Buyer, if any material condition to close has not been satisfied or if Seller fails to comply or perform a material covenant of this Agreement and Seller is unable within a reasonable time to satisfy such condition or covenant;

(c)    by Seller, if any material condition to close has not been satisfied by Buyer or if Buyer fails to comply or perform a material covenant or agreement of this Agreement and Buyer is unable within a reasonable time to satisfy such condition or covenant;

(d)    by Buyer, in writing, if the Closing does not occur by May 27, 2005.

If Buyer is not selected as the winning bidder, this Agreement will automatically terminate on the date the Bankruptcy Court enters an order approving an alternate transaction.

12.2    **Effect of Termination**.  Except as otherwise provided under this Section, upon the termination of this Agreement by Buyer in accordance with this Section, all rights and obligations of Buyer and Seller will terminate without any liability of one party to the other party, except for any liability of Buyer or Seller for breach before termination.

## ARTICLE XIII

## MISCELLANEOUS

13.1    **Risk of Loss**.  The risk of loss, damage or destruction to all Acquired Assets before Closing will be with the Seller. Notwithstanding the foregoing, if the loss, damage or destruction to any Acquired Assets is not the result of willful misconduct, willful omission or gross negligence, then Seller's only obligation to Buyer with respect to the loss, damage or destruction of the Acquired Assets will be limited to insurance proceeds available in Acquired Assets after Closing will be with Buyer, but Buyer may elect not to close if such loss, damage or destruction has a Material Adverse Effect.

13.2    **Further Assurances**.  Each Party will, at any time and from time to time after the Closing Date, upon reasonable request from the other Party, do, execute, acknowledge and deliver, as appropriate, such further acts, deeds, assignments, transfers, conveyances, assumptions and powers of attorneys as may reasonably be required for: (a) the better assigning, transferring, granting, conveying, assuming, assuring and confirming to such other Party, or successor and assignee of any of the assets, properties or liabilities to be assigned to it; or (b) the reassignment or return to Seller of assets that may have been inadvertently assigned, transferred or delivered to Buyer but should not have been so assigned, transferred or delivered, in each case as provided in this Agreement.

13.3    **Certain References**.  Whenever the context requires the gender of all words used herein will include the masculine, feminine and neuter. References to Articles, Sections or Subsections will be to Articles, Sections or Subsections of this Agreement unless otherwise specified. The headings and captions used in this Agreement are solely for convenient reference and will not affect the meaning or interpretation of any article, section or paragraph herein, or this Agreement. The terms "hereof," "herein" or "hereunder' will refer to this Agreement as a whole and not to any particular article, section or paragraph. The terms "including" or "include" will be deemed to mean "including without limitation" and "include without limitation,"

-14-

respectively. Words importing the singular number mean and include, as applicable, the plural number and vice versa. The Exhibits and Schedules are incorporated into this Agreement. All times referenced herein refer to Eastern time.

13.4    **Notices**.    All notices, requests, demands, waivers and other communications required or permitted to be given under this Agreement will be in writing and will be deemed to have been duly given if: (a) delivered personally; (b) mailed by first-class registered or certified mail, return receipt requested, postage prepaid; (c) sent by a national next day or overnight mail or courier service; (d) sent by confirmed facsimile transmission; or (e) sent by confirmed electronic mail. All such notices, requests, demands, waivers and other communication will be deemed to have been received:  (i) if by personal delivery, upon delivery; (ii) if by certified or registered mail, on the third business day after the mailing thereof; (iii) if by next-day or overnight mail or courier, on the business day after such mailing; or (iv) if by confirmed facsimile or electronic mail upon receipt.

|  |  |
|---|---|
| If to Buyer: | c/o Summit Investment Management LLC |
| | Attn:  Steven C. Petrie |
| | 1700 Lincoln Street, Suite 2150 |
| | Denver, Colorado 80203 |
| | Facsimile: (303) 830-9538 |
| | Email:  spetrie@summit-investment.com |
| with a copy to: | Michael M. Eidelman, Esq. |
| | Vedder, Price, Kaufman & Kammholz, P.C. |
| | 222 North LaSalle Street, Suite 2600 |
| | Chicago, Illinois 60601 |
| | Facsimile:  (312) 609-5005 |
| | Email:  meidelman@vedderprice.com |
| | |
| If to Seller: | Auburn Foundry, Inc. |
| | Attn:  Thomas Woehlke |
| | 635 West Eleventh Street |
| | Auburn, Indiana 46706 |
| | Facsimile:  (260) 925-7844 |
| | Email:  twoehlke@auburnfoundry.com |
| | |
| with a copy to | John R. Burns III |
| Debtor's Counsel: | Baker & Daniels |
| | 111 E. Wayne Street, #800 |
| | Fort Wayne, IN 46802 |
| | Facsimile:  (260) 460-1700 |
| | Email:  john.burns@bakerd.com |

Any Party may give notice, instruction or communication in connection with this Agreement using any other means (including personal delivery, electronic mail, telecopy or ordinary mail), but no such notice, instruction or communication will be deemed to have been delivered unless and until it is actually received by the Party to whom it was sent. Any Party may

-15-

change the address to which notices, instructions, or communications are to be delivered by giving the other Parties to this Agreement notice thereof in the manner set forth in this Section.

13.5    **Assignment**.  This Agreement may not be assigned by Seller.  This Agreement may be assigned by Buyer, but no assignment will relieve Buyer of its obligations set forth herein will inure to the benefit of, and be binding upon the Parties and each of their respective successors, heirs and permitted assigns.

13.6    **Entire Agreement; Amendment; Governing Law; Etc.**

(a)    This Agreement, together with the exhibits and the Sale Order, embody the entire agreement and understanding among Buyer and Seller. This Agreement may be amended, modified, waived, discharged or terminated only by (and any consent hereunder will be effective only if contained in) an instrument in writing signed by the Party against which enforcement of such amendment, modification, waiver, discharge, termination or consent is sought.

(b)    This Agreement will be construed in accordance with and governed by the laws of the State of Indiana without reference to its choice of law provisions, except as to those matters that must be governed by the Bankruptcy Code.

13.7    **Consent to Jurisdiction**.

(a)    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT, ANY RELATED AGREEMENTS, OR INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

(b)    Service of any process, summons, notice or document by U.S. registered mail to a Party's address set forth in Section will be effective service process of any action, suit or proceeding with respect to any matter to which it has submitted to jurisdiction as set forth above. Buyer and Seller irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court, and irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. If a court finds that subject matter jurisdiction is not available in the Bankruptcy Court, Buyer and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the U.S. District Court for the Northern District of Indiana, Fort Wayne Division, or if such court will not have jurisdiction, then to the appropriate courts of the State of Indiana sitting in the City of Fort Wayne.

13.8    **Severability**.    Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction as to such jurisdiction, will be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining terms

-16-

and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

13.9 **Interpretation**.  This Agreement has been negotiated at arm's length and between parties and their representatives sophisticated and knowledgeable in the matters dealt with in this Agreement, and legal counsel has represented Buyer and Seller. Accordingly, each provision of this Agreement will be interpreted as though the parties equally participated in its drafting and no rule of law or legal decision that would require any ambiguity to be construed against the Party that drafted this Agreement will apply. This Agreement will be interpreted in a reasonable manner to effect the purposes of this Agreement.

13.10 **Counterparts**.  This Agreement may be executed by facsimile signature and in any number of counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.

-17-

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the day and year first above written.

Buyer:                                    SUMMITBRIDGE NATIONAL
                                          INVESTMENTS, LLC


                                          By: _____
                                          Its: _____



Seller:                                   AUBURN FOUNDRY, INC.


                                          By: _____
                                          Its: _____

-18-