IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

**DEBTOR'S MOTION FOR APPROVAL OF SALE OF
MANUFACTURING PLANTS AND RELATED ASSETS TO
SUMMITBRIDGE NATIONAL INVESTMENTS, LLC FREE
AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004 and 9014, the Debtor, Auburn Foundry, Inc., as debtor in possession ("AFI" or the "Debtor"), hereby requests that this Court enter an order approving the sale, free and clear of all liens, claims and interests, of the Debtor's two manufacturing facilities and certain related assets to SummitBridge National Investments, LLC or its designees ("Summit") based on Summit's highest and best bid for such assets at a recent auction (the "Motion). In support of this Motion, the Debtor respectfully states the following:

**INTRODUCTION**

1. On February 8, 2004 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is a manufacturer of ductile and grey iron cast products for the automobile, truck, recreational vehicle and appliance industries.

2. Since the Petition Date, AFI has continued to manage its affairs and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

BDDB01 4053322v2

3. On January 20, 2005, the Debtor filed herein a plan of reorganization ("Plan") and disclosure statement ("Disclosure Statement"). The Plan was premised upon a sale of certain assets to AFI, LLC, an entity to be formed by certain insiders of the Debtor. Because of changes in Debtor's circumstances that Plan has now been withdrawn.

4. The Debtor has two manufacturing facilities in the State of Indiana: an older facility in the City of Auburn (Plant 1) and a newer facility near Interstate 69 (Plant 2). Plant 1 is closed. Plant 2 remains an operating facility whose operations are being financed with consensual cash use and extensions of credit from AFI's senior secured lender.

5. AFI wishes to sell its assets in two parcels. The first parcel, described herein as the "Plant 2 Assets," consists of all of Plant 2's manufacturing equipment, land, buildings, and remaining inventories (subject to prior purchases by companies which have entered into post-petition accommodation agreements with AFI), including but not limited to scrap metal, alloys, supplies, and spare parts associated with Plant 2, the maintenance and pattern building located adjacent to Plant 1, and several assets located in Plant 1, including the "Core-making equipment," several air handlers, and several other pieces of ancillary equipment, along with certain office furniture and equipment from the main office building. The second parcel, described herein as the "Plant 1 Assets," includes the Plant 1 site and its equipment (to the extent not included in the Plant 2 Assets), and the main office building. The Plant 1 Assets and Plant 2 Assets are sometimes referred to herein collectively as the "Property."

6. This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

7.      The Debtor actively marketed the Property to more than five potential buyers who expressed a serious interest in an acquisition of the Plant 2 Assets. It also received more than one written offer for the Plant 1 Assets. These potential buyers are referred to herein as the "Potential Purchasers."

8.      The Debtor made detailed lists of its assets (e.g., equipment) available, upon request, to the Potential Purchasers.

9.      On or about March 31, 2005, AFI filed a motion herein (the "Initial Sale Motion") in which it stated that, subject to Court approval, AFI had accepted an offer from The Reserve Group, an Akron, Ohio based entity, to acquire the Plant 2 Assets, through an affiliate to be formed, for the sum of $4,000,000 plus 70% of the net book value of inventory at the date of sale. A copy of The Reserve Group's offer was attached to the Initial Sale Motion as Exhibit A. The Reserve Group has no affiliation with insiders of the Debtor or with AFI, LLC, the proposed purchaser of certain assets identified in the Plan. The Reserve Group also bid $1,100,000 for the Plant 1 Assets and AFI tentatively accepted that offer as well subject to Court approval.

**BID PROCEDURES**

10.     AFI adopted certain bid procedures (the "Bid Procedures") which it included in the Initial Sale Motion and communicated to the Potential Purchasers. Under the Bid Procedures, offers for the Property in excess of The Reserve Group's offer were required to be submitted to the Debtor's counsel on or before April 15, 2005. If AFI received any such higher offers, it would conduct an auction sale of the Plant 1 Assets and Plant 2 Assets on April 18, 2005. AFI indicated that it would, in all events, conduct an auction sale of the Plant 1 Assets on April 18, 2005 and seek approval for such sale at a subsequent sale hearing.

11. Although the auction described in the Initial Sale Motion was not required by § 363 of the Code (i.e., AFI could have sought Court approval for a private sale to The Reserve Group), it took this additional step to ensure that it received the highest possible value for the Property. AFI informed the Potential Purchasers that no closing would occur prior to this Court's approval of any sale.

12. The Reserve Group's offer included the assumption of real estate tax liability for Plant 2 (payable over the Indiana statutory installment period) and post-petition manufacturing trade payables of no more than $400,000 pursuant to the terms described more fully in the offer attached to the Initial Sale Motion.

13. AFI also required that each bid fully disclose the identity of entities, if any, which shall be acquiring directly or indirectly a portion of the Debtor's assets under or in connection with a bid. Each bid was required to provide sufficient information regarding both the bidder and partners, if any, to satisfy the Debtor with respect to the requirements of § 363(n) of the Bankruptcy Code, and specifically must disclose whether any officers, directors or shareholders of Debtor are insiders of the Potential Purchaser or has an agreement to become such. AFI, LLC did not participate as a Potential Purchaser. None of the Potential Purchasers disclosed insider participation in their bids.

## SALE MOTIONS

14. At the time AFI filed the Initial Sale Motion, the Senior Lenders agreed to consent to further use of cash collateral only if AFI filed a (i) § 363 sale motion late in the day on March 31, 2005, with service to follow one day later and (ii) asked this Court to set a hearing on the motion one day after the expiration of the 20-day notice period (rather than utilizing negative notice and awaiting a Court order – or a hearing on any objections – thereafter). To that end,

AFI filed a separate Request for Hearing on April 1, 2005 seeking a hearing date on April 22, 2005.

15. This Court denied the Request for Hearing on April 11, 2005. At the insistence of the Senior Lenders, whose consent to cash use was still set to expire on April 22, 2005, AFI filed an emergency request for shortened notice of a sale hearing on April 11, 2005. The Court denied this request by Order dated April 13, 2005.

16. On or about April 13, 2005, AFI filed a second sale motion (the "Second Sale Motion") by which it utilized 20-days negative notice to approve substantially the same sale process embodied in the Initial Sale Motion.

## THE AUCTION

17. On or about April 15, 2005, AFI learned that the Senior Lenders sold their debt to Summit.

18. By April 15, 2005, AFI had published notice of the auction in leading Fort Wayne newspapers for three consecutive days. Several prominent newspaper articles also summarized the Bid Procedures prior to the auction.

19. As of April 15, 2005, AFI had received three qualified bids for the Plant 2 Assets and two qualified bids for the Plant 1 Assets, apart from Summit's credit bidding rights pursuant to § 363(k) of the Code.

20. AFI conducted an auction at 9:00 a.m. at the offices of Baker & Daniels in Fort Wayne, Indiana. The auction was attended by (1) AFI and its representatives, (2) representatives and attorneys of the Potential Purchasers bidding at the auction, and (3) counsel for the Unsecured Creditors' Committee.

21. AFI conducted an auction for the Plant 1 Assets, then the Plant 2 assets, and finally, the two parcels combined (in the event a combination offer would exceed individual offers for the two parcels). Competitive bidding ensued. The highest and best bid for the Property was Summit, which placed a combined credit bid of $12,000,000 for both parcels and agreed to assume property taxes on Plant 2.

22. Debtor's counsel, in response to a request by Summit's counsel, confirmed on the record that Summit is not affiliated with any insiders of the Debtor.

## REQUEST FOR APPROVAL OF SALE

23. With respect to the Lien Claimants set forth in paragraph 32 below, to the extent that the Debtor obtains the consent of the Lien Claimants, the Debtor requests that the Court authorize the sale of the Property under § 363(f)(2) of the Bankruptcy Code. The Debtor further requests that any creditor that receives notice of this motion and does not object to the relief requested herein be deemed to have consented to the sale of the assets free and clear of such creditor's interest pursuant to § 363(f)(2) of the Bankruptcy Code, with the creditor's interest to attach to the proceeds of the sale.

24. Alternatively, the Debtor requests that the Court authorize the sale under § 363(f)(5) of the Bankruptcy Code, as any interest or lien asserted by any nonconsenting entity claiming an interest or lien on the assets could be compelled, in a legal or equitable proceeding, to accept money in satisfaction of such interest or lien.

25. The Debtor has negotiated an agreement for the purchase and sale of the Property (collectively, the "Agreement") with Summit at arm's length, the form of which, when executed, will be substantially similar to the documents attached hereto as Exhibits A and B. Copies of the executed document will be available upon request from Debtor's counsel. The

Agreement comports with acceptable commercial standards. The Debtor believes, based on the potential for competitive bidding and the preservation of credit bidding rights for secured creditors, that the credit bid amount is in excess of fair market value. Moreover, to the best of the Debtor's knowledge and belief, Summit (the "Purchaser") has no connections with the Debtor or its estate, and the Debtor consequently believes that the Purchaser is a good faith purchaser entitled to the protection afforded by 11 U.S.C. § 363(m). The Debtor's intended sale of the Property under the Agreement shall be free and clear of all liens, claims or other interests, with such liens, claims or other interests to attach to the proceeds of the sale in the same order of priority as they are entitled to under applicable law and subject to any allowable changes under 11 U.S.C. § 506(c).

26. This Court may authorize the Debtor's sale of its interest in the Property free and clear of any liens, claims or interests pursuant to 11 U.S.C. §§ 363(b) and 363(f). Specifically, this court may authorize the Debtor's sale of assets out of the ordinary course of business and free and clear of any interests if (i) such interests are liens and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, or (ii) the entities asserting such interests could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. §§ 363(b) and 363(f)(3), (5) and Bankruptcy Rule 6004(f). The Debtor submits that this Court may authorize the sale of the Property free and clear of interests under one or more subsections of § 363(f).

27. The Senior Lenders asserted a first priority lien on the Property and its proceeds totaling approximately $23,312,638. This lien has now been assigned to Summit. The Debtor's assets are also secured by liens and mortgages in favor of certain Subordinated Lenders (as defined in the Plan). Further, the Debtor granted certain liens post-petition to its Senior DIP

Lenders and Junior DIP Lender (each as defined in the Plan). The entities asserting liens are sometimes referred to herein as the "Lien Claimants."

28. The Debtor believes that Summit is substantially undersecured. Summit's credit bid, which was higher and better than competing cash offers, was more than $10,000,000 less than its claim. Consequently, to the extent any other person or entity other than those identified above asserts a lien on the Property, such lien would have no value.

29. The Debtor is serving this Motion upon all creditors and parties in interest in the case with 20 days negative notice pursuant to the applicable Local Rules. By separate Notice, AFI intends to withdraw both the Initial Sale Motion and the Second Sale Motion, both of which are superseded by this Motion.

## CONCLUSION

By virtue of the foregoing, the Debtor submits that the approval of its intended sale of the Property is both necessary and appropriate under the circumstances.

WHEREFORE, the Debtor respectfully requests that this Court enter an order: (i) granting this Motion; (ii) approving and authorizing the Debtor's sale of the Property outside the ordinary course of business and free and clear of all liens, claims and interests as described herein and pursuant to the terms of the Agreement; (iii) authorizing the Debtor to take all further actions and execute and deliver all documents necessary to consummate the transactions described herein; (iv) providing that the order shall be effective and enforceable immediately upon entry pursuant to Fed. R. Bankr. Proc. 6004(g) and 6006(d); and (v) allowing such other relief as is just and to which the Debtor may be entitled under the circumstances.

Dated:  April 28, 2005					BAKER & DANIELS

By:  /s/ John R Burns III
    John R Burns III (#3016-02)
    Mark A. Werling (#20426-02)
    111 East Wayne Street, Suite 800
    Fort Wayne, Indiana 46802
    Telephone:  (260) 420-8000
    Facsimile:  (260) 460-1700

ATTORNEYS FOR THE DEBTOR,
AUBURN FOUNDRY, INC.