IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AUBURN FOUNDRY, INC. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | BK Case No. 04-10427 |

**ORDER AUTHORIZING AND APPROVING SALE OF PLANTS AND
RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

Upon consideration of the motion (the "Motion" or "Sale Motion")[1] of Auburn Foundry, Inc., as debtor in possession ("AFI" or the "Debtor"), for the entry of an order authorizing and approving the sale (the "Sale") of Property free and clear of all liens, claims and interests; all interested parties having been afforded an opportunity to be heard with respect to the Motion; the Court having reviewed and considered (i) the Motion, and (ii) the objections thereto, if any; it appearing that the relief requested in the Motion and approval of the sale of the Property is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and based on the Motion, and the record in this case, the court having determined and concluded as follows:

      A.    On February 8, 2004 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is a manufacturer of ductile and grey iron cast products for the automobile, truck, recreational vehicle and appliance industries.

      B.    Since the Petition Date, AFI has continued to manage its affairs and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

[1] Capitalized terms not otherwise defined carry the same meanings ascribed to them in the Sale Motion.

C.	On January 20, 2005, the Debtor filed herein a plan of reorganization ("Plan") and disclosure statement ("Disclosure Statement").  The Plan was premised upon a sale of certain assets to AFI, LLC, an entity to be formed by certain insiders of the Debtor.  Because of changes in Debtor's circumstances that Plan has now been withdrawn.

D.	The Debtor has two manufacturing facilities in the State of Indiana:  an older facility in the City of Auburn (Plant 1) and a newer facility near Interstate 69 (Plant 2). Plant 1 is closed.  Plant 2 remains an operating facility whose operations are being financed with consensual cash use and extensions of credit from AFI's Senior Secured Creditor.

E.	AFI wishes to sell its assets in two parcels.  The first parcel, described herein as the "Plant 2 Assets," consists of all of Plant 2's manufacturing equipment, land, buildings, and remaining inventories (subject to prior purchases by companies which have entered into post-petition accommodation agreements with AFI), including but not limited to scrap metal, alloys, supplies, and spare parts associated with Plant 2, the maintenance and pattern building located adjacent to Plant 1, and several assets located in Plant 1, including the "Core-making equipment," several air handlers, and several other pieces of ancillary equipment, along with certain office furniture and equipment from the main office building.  The second parcel, described herein as the "Plant 1 Assets," includes the Plant 1 site and its equipment (to the extent not included in the Plant 2 Assets), and the main office building.  The Plant 1 Assets and Plant 2 Assets are sometimes referred to herein collectively as the "Property."

F.	This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

G.	The Debtor actively marketed the Property to more than five potential

buyers who expressed a serious interest in an acquisition of the Plant 2 Assets.  It also received more than one written offer for the Plant 1 Assets.  These potential buyers are referred to herein as the "Potential Purchasers."

        H.      The Debtor made detailed lists of its assets (e.g., equipment) available, upon request, to the Potential Purchasers.

        I.      On or about March 31, 2005, AFI filed a motion herein (the "Initial Sale Motion") in which it stated that, subject to Court approval, AFI had accepted an offer from The Reserve Group, an Akron, Ohio based entity, to acquire the Plant 2 Assets, through an affiliate to be formed, for the sum of $4,000,000 plus 70% of the net book value of inventory at the date of sale.  A copy of The Reserve Group's offer was attached to the Initial Sale Motion as Exhibit A.  The Reserve Group has no affiliation with insiders of the Debtor or with AFI, LLC, the proposed purchaser of certain assets identified in the Plan.  The Reserve Group also bid $1,100,000 for the Plant 1 Assets and AFI tentatively accepted that offer as well subject to Court approval.

        J.      AFI adopted certain bid procedures (the "Bid Procedures") which it included in the Initial Sale Motion and communicated to the Potential Purchasers.  Under the Bid Procedures, offers for the Property in excess of The Reserve Group's offer were required to be submitted to the Debtor's counsel on or before April 15, 2005.  If AFI received any such higher offers, it would conduct an auction sale of the Plant 1 Assets and Plant 2 Assets on April 18, 2005.  AFI indicated that it would, in all events, conduct an auction sale of the Plant 1 Assets on April 18, 2005 and seek approval for such sale at a subsequent sale hearing.

        K.      Although the auction described in the Initial Sale Motion was not required by § 363 of the Code (i.e., AFI could have sought Court approval for a private sale to The Reserve Group), it took this additional step to ensure that it received the highest possible value

for the Property. AFI informed the Potential Purchasers that no closing would occur prior to this Court's approval of any sale.

L.      The Reserve Group's offer included the assumption of real estate tax liability for Plant 2 (payable over the Indiana statutory installment period) and post-petition manufacturing trade payables of no more than $400,000 pursuant to the terms described more fully in the offer attached to the Initial Sale Motion.

M.      AFI also required that each bid fully disclose the identity of entities, if any, which shall be acquiring directly or indirectly a portion of the Debtor's assets under or in connection with a bid. Each bid was required to provide sufficient information regarding both the bidder and partners, if any, to satisfy the Debtor with respect to the requirements of § 363(n) of the Bankruptcy Code, and specifically must disclose whether any officers, directors or shareholders of Debtor are insiders of the Potential Purchaser or has an agreement to become such. AFI, LLC did not participate as a Potential Purchaser. None of the Potential Purchasers disclosed insider participation in their bids.

N.      At the time AFI filed the Initial Sale Motion, the Senior Lenders agreed to consent to further use of cash collateral only if AFI filed a (i) § 363 sale motion late in the day on March 31, 2005, with service to follow one day later and (ii) asked this Court to set a hearing on the motion one day after the expiration of the 20-day notice period (rather than utilizing negative notice and awaiting a Court order – or a hearing on any objections – thereafter). To that end, AFI filed a separate Request for Hearing on April 1, 2005 seeking a hearing date on April 22, 2005.

O.      This Court denied the Request for Hearing on April 11, 2005. At the insistence of the Senior Lenders, whose consent to cash use was still set to expire on April 22,

2005, AFI filed an emergency request for shortened notice of a sale hearing on April 11, 2005. The Court denied this request by Order dated April 13, 2005.

P. On or about April 13, 2005, AFI filed a second sale motion (the "Second Sale Motion") by which it utilized 20-days negative notice to approve substantially the same sale process embodied in the Initial Sale Motion.

Q. On or about April 15, 2005, AFI learned that the Senior Lenders sold their debt to Summit.

R. By April 15, 2005, AFI had published notice of the auction in leading Fort Wayne newspapers for three consecutive days. Several prominent newspaper articles also summarized the Bid Procedures prior to the auction.

S. As of April 15, 2005, AFI had received three qualified bids for the Plant 2 Assets and two qualified bids for the Plant 1 Assets, apart from Summit's credit bidding rights pursuant to § 363(k) of the Code.

T. AFI conducted an auction at 9:00 a.m. at the offices of Baker & Daniels in Fort Wayne, Indiana. The auction was attended by (1) AFI and its representatives, (2) representatives and attorneys of the Potential Purchasers bidding at the auction, and (3) counsel for the Unsecured Creditors' Committee.

U. AFI conducted an auction for the Plant 1 Assets, then the Plant 2 assets, and finally, the two parcels combined (in the event a combination offer would exceed individual offers for the two parcels). Competitive bidding ensued. The highest and best bid for the Property was Summit, which placed a combined credit bid of $12,000,000 for both parcels and agreed to assume property taxes on Plant 2.

V. Debtor's counsel, in response to a request by Summit's counsel, confirmed

on the record that Summit is not affiliated with any insiders of the Debtor.

    W. The Debtor has negotiated an agreement for the purchase and sale of the Property (collectively, the "Agreement"), copies of which are substantially in the form attached to the Motion as Exhibits A and B, with Summit at arm's length.  The Agreement comports with acceptable commercial standards.  The Debtor believes, based on the potential for competitive bidding and the preservation of credit bidding rights for secured creditors, that the credit bid amount is in excess of fair market value.  Moreover, to the best of the Debtor's knowledge and belief, Summit (the "Purchaser") has no connections with the Debtor or its estate, and the Debtor consequently believes that the Purchaser is a good faith purchaser entitled to the protection afforded by 11 U.S.C. § 363(m).  The Debtor's intended sale of the Property under the Agreement shall be free and clear of all liens, claims or other interests, with such liens, claims or other interests to attach to the proceeds of the sale in the same order of priority as they are entitled to under applicable law and subject to any allowable changes under 11 U.S.C. § 506(c).

    **NOW THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

    1. The Motion is granted in its entirety and as further described herein.

    2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

    3. The proposed sale of the Property, and all of the terms and conditions thereof, is hereby approved.

4. Pursuant to 11 U.S.C. § 363(b), the Debtor is authorized to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Motion.

5. The Debtor is authorized to execute and deliver, and is empowered to perform under, consummate and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6. Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 105(a) and 363(f), the Property shall be transferred to the Purchaser, and as of the date ("Closing Date") of the consummation of the Agreement, shall be free and clear of all liens, claims and interests of any kind or nature whatsoever, with all such liens, claims and interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property, subject to any claims and defenses the Debtor may possess with respect thereto.

7. The transfer of the Property to the Purchaser pursuant to the Agreement shall constitute a legal, valid and effective transfer of the Property, and shall vest the Purchaser with all right, title and interest of the Debtor in and to the Property free and clear of all liens, claims and interests of any kind or nature whatsoever.

8. The consideration provided by the Purchaser for the Property under the Agreement is fair and reasonable under the circumstances of this case and shall be deemed to

constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

9. This court retains jurisdiction to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtor, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Sale Order.

10. The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date. The Purchaser is a purchaser in good faith of the Property, and the Purchaser is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

11. The terms and provisions of the Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Debtor's estate, and its creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting liens, claims and interests in the Property to be sold to the Purchaser pursuant to the Agreement.

12. The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the court that the Agreement be authorized and approved in its entirety.

13. The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties with the consent of the Senior Lenders, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

14. As provided by Fed. R. Bankr. P. 6004(g) and 6006(d), this Sale Order shall not be stayed for 10 days after the entry of the Sale Order and shall be effective and enforceable immediately upon entry.

15. The provisions of this Sale Order are nonseverable and mutually dependent.

Dated: _____, 2005            ENTERED:

_____
Robert E. Grant
United States Bankruptcy Judge

Prepared by:

John R Burns III (#3016-02)
Mark A. Werling (#20426-02)
Baker & Daniels
111 East Wayne Street, Suite 800
Fort Wayne, Indiana 46802
Tel:  260-424-8000

BDDB01 4040637v2                                9