UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

|   |   |   |
|---|---|---|
| IN RE | ) | Chapter 11 |
|   | ) |   |
| AUBURN FOUNDRY, INC., | ) | Cause No. 04-10427 |
|   | ) |   |
|   | ) |   |
| Debtor. | ) |   |

:

### Indiana Department of Environmental Management's
### Objection to Partial Sale

The debtor's steel-making facilities include two landfills, each of which is in violation of environmental laws. The Debtor proposes to sell only the productive assets of the estate, thus leaving abandonment of the landfills as the only remaining alternative.

The Indiana Department of Environmental Management objects to the sale until such time as all assets, including the landfills, are bundled for sale so that the future environmental liabilities may pass to the successful bidder. In the alternative, the Debtor should reserve and commit sufficient cash to protect the public health and safety from the identified hazards posed by these landfills. In support of this objection the Department states as follows:

1. In addition to the manufacturing plants which the debtor intends to sell, the Debtor owns two landfills:

> **County Road 48 Landfill**. Originally a gravel pit adjacent to Cedar Creek, this site became a city dump. Thereafter, the Debtor purchased this landfill for disposal of foundry wastes. This landfill is now capped and closed. The foundry wastes include hazardous wastes containing high concentrations of lead and cadmium. Monitoring wells downgradient are now beginning to pick up concentrations of lead and cadmium in the groundwater, indicating that this landfill is leaking its hazardous waste constituents.

1

The Department estimates that post closure care and monitoring of this landfill as required by law will cost $2,120,759.14 over the next 25 years.

**County Road 50 Landfill**.   This landfill was built and permitted as a 15-acre disposal facility exclusively for Auburn Foundry's non-hazardous wastes.   However, Auburn Foundry over-filled the permitted landfill and disposed of some hazardous wastes in this landfill.   Auburn Foundry has not capped the landfill, thus these hazardous wastes remain exposed to transportation by air and rainwater.   Auburn Foundry estimates that it will cost in excess of $5M to cap this landfill, and that the annual monitoring will cost $100,000 per year over the next 30 years.

2. As required by law, years ago the Debtor posted a letter of credit to guarantee the closure and post closure care of the County Road 50 landfill.   The addition of hazardous wastes to the County Road 50 landfill greatly increased the costs of closure and post closure care, which also requires an increase in the amount of the letter of credit.

3. During the year prior to bankruptcy, the Debtor acknowledged these environmental liabilities and negotiated an Agreed Order to remedy the ongoing violations at the landfills.   However, the Debtor refused to sign the Agreed Order as anticipated and instead filed bankruptcy on February 8, 2004.

4. On May 14, 2004, the Bank of America gave notice to the Department that it would not renew the existing letter of credit.   The Department timely asserted its claim against the Bank and now holds $1,021,096 in trust resulting from the proceeds from this letter of credit. The Debtor has not provided any other form of financial assurance for the additional costs of closure and post closure care as now necessary at these landfills.

5. On April 28, 2005, the Debtor filed its motion to "Approve Sale of Manufacturing Plants and Related Assets."   However, the Debtor does not intend to sell the landfills.

**The sale can only lead to abandonment of the landfills**

6. As stand alone assets, the landfills have no value and will not be salable apart from the manufacturing plant. In effect, the Debtor's motion to sell everything except the landfills will leave abandonment as the only alternative for the landfills.

7. A debtor may not abandon property without taking measures to protect the public's health and safety:

> A Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety. Accordingly, without reaching the question whether certain state laws imposing conditions on abandonment may be so onerous as to interfere with the bankruptcy adjudication itself, we hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards. Accordingly, we affirm the judgments of the Court of Appeals for the Third Circuit.

*Midlantic National Bank v. New Jersey*, 474 U.S. 494, 507, 106 S.Ct. 755, 762, 106 S.Ct. 755 (1986).

8. At a minimum, protecting the public health and safety from identified hazards would require capping of the hazardous wastes now found in the County Road 50 landfill and continued monitoring of the contaminated plume from the County Road 48 landfill.

**The estate's environmental compliance
costs are administrative expenses**

9. This bankruptcy was commenced on February 8, 2004. From that date forward the Debtor's duty to comply with environmental laws is an ongoing obligation of the Bankruptcy estate. 28 USC § 1259.

10. The owners and operators of landfills have a duty to close the landfills to prevent the release of hazardous wastes into the environment, and an ongoing duty to monitor those

3

landfills for 30 years after closure.   329 IAC § 3.1-15-3, *et seq.,* 329 IAC § 3.1-15-4, *et seq., incorporating by reference* 40 CFR § 264.111; 329 IAC § 3.1-15-5, *et seq.,* 329 IAC § 3.1-15-6, *et seq., incorporating by reference* 40 CFR § 264.117.

11.    The cost of compliance with applicable laws for the closure and post closure care of landfills is an administrative expense, and any fines or penalties incurred by the estate while in violation of the law are also administrative expenses:

> It is by now abundantly clear that in state-regulated areas such as protection of the environment, a bankruptcy court must comply with the laws of the state involved.   *In re Virginia Builders, Inc.,* 153 B.R. 729, 735 (Brc. E.D. Va. 1993).    . . .
>
>  . . .  The payment of a fine for failing, during bankruptcy, to meet the requirements of Florida environmental protection laws is a cost "ordinarily incident to operation of a business" in light of today's extensive environmental regulations.

*Cumberland Farms v. Fl. Dept. of Env. Protection*, 116 F.3rd 16, 19-20 (1st Cir. 1997).

12.    Administrative expenses are entitled to parity and equal treatment with each other.   *In re Barron,* 73 B. R. 812, 813 (S.D. Cal. 1987); *State of Ill., Dept. of Rev. v. Schechter*, 195 B.R. 380, 385 (N.D. Ill. 1996).

### The Debtor has not addressed the environmental hazards

13.    The Debtor's disclosure statement and plan of reorganization (since withdrawn) acknowledged the Department's claims for at least $5,000,000, and proposed to allow the Department to keep (a) the proceeds from the letter of credit, (b) "any Net Proceeds from the disposition of the Landfills," and (c) an assignment of proceeds from "Insurance Claim – Kemper."   These promises were illusory.

10(a)   The proceeds from the letter of credit are not a bankruptcy asset.  *Wetzel v. Lumbermens Mutual Cas. Co.*, 2005 WL 644642, at Ftn. 18 (SD IN Jan. 28, 2005) ("Although the Seventh Circuit has not definitively ruled on the matter, we agree with the majority position that a letter of credit and the proceeds therefrom are not property of the debtor's estate.")   In any event, these proceeds are insufficient to cap and close the County Road 50 landfill, as now necessitated by the debtor's illegal dumping of hazardous wastes in this landfill.

10(b)   The landfills are a liability, so the sale of these landfills separately is not likely.

10(c)   To the Department's knowledge, the insurer has not committed to paying claims against the insurance, and the Debtor has not commenced litigation to compel payment.

14.   SummitBridge's "credit bid" leaves the Debtor's estate with no funds to address environmental issues.

Wherefore, the Department objects to the Debtor's proposed sale of assets and asks that the landfills be sold with the assets proposed for sale, else provide necessary assurances that the public's health and safety will not be threatened by these landfills if subsequently abandoned.

Respectfully submitted

STEVE CARTER
Indiana Attorney General
Attorney No. 4150-64


By: /s/ Elizabeth A. Whelan
    Elizabeth A. Whelan
    Deputy Attorney General
    Atty. No.24444-49

Office of the Attorney General
Indiana Government Center South
Fifth Floor
402 W. Washington Street
Indianapolis, IN  46204-2770
Telephone: (317) 234-3089

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the parties listed in the attached distribution list by electronic mail and/or U.S. First Class Mail, postage prepaid, this 18th day of May, 2005.


Ellen L. Triebold
Office of the United States Trustee
100 East Wayne Street, Suite 555
South Bend, IN  46601

John R. Burns
Mark A. Werling
Baker & Daniels
111 East Wayne Street, Suite 800
Fort Wayne, IN  46802-2603

Stephen E. Lewis
Haller & Colvin, P.C.
444 East Main Street
Fort Wayne, IN  46802

Stephen L. Fink
Barnes & Thornburgh
600 One Summit Square
Fort Wayne, IN  46802

Richard J. Swanson
Macey Swanson and Allman
445 North Pennsylvania Street, Suite 401
Indianapolis, IN  46204-1800

W. Erik Weber
Mefford and Weber, P.C.
130 East 7th Street
P.O. Box 667
Auburn, IN  46706-1839

Robert A Weiss
Tricia A Sherick
Honigman Miller Schwartz & Cohn, LLP
2290 First National Building
600 Woodward Avenue
Detroit, Michigan 48226

Josef S. Athanas
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL  60606

Lawrence S. Crowther
6055 Rockside Woods Boulevard, Suite 200
Cleveland, OH  44131

Brian Green
Shapero Green & Michel, LLC
Signature Square II, Suite 220
25101 Chagrin Boulevard
Cleveland, OH  44122

Becket & Lee, LLP
16 General Warren Boulevard
P.O. Box 3001
Malvern, PA

Gary Boyn
Warrick And Boyn
121 West Franklin Street
Elkhart, IN  46516

6

| | |
|---|---|
| Marlene Reich<br>Jerald I Ancel<br>Sommer Barnard Ackerson, P.C.<br>One Indiana Square, Suite 3500<br>Indianapolis, IN  46204-2023 | Brian J. Lange<br>Schenkel, Tirpak & Kowalczyk<br>520 South Calhoun Street<br>Fort Wayne, IN  46802-0501 |
| Grant F. Shipley<br>Shipley & Associates<br>233 West Baker Street<br>Fort Wayne, IN  46802-3413 | Brad Rogers<br>Pension Benefit Guaranty Corporation<br>1200 K Street NW<br>Washington, DC  20005-4026 |
| Edmund P. Kos<br>Kos & Associate<br>110 West Berry Street, Suite 1904<br>Fort Wayne, IN  46802 | Nancy J. Gargula<br>United States Trustee<br>101 West Ohio Street, Suite 1000<br>Indianapolis, IN  46204 |
| James T Young<br>Rubin & Levin, P.C.<br>500 Marrott Center<br>342 Massachusetts Avenue<br>Indianapolis, IN  46204-2161 | Patrick L. Proctor<br>Eilbacher Fletcher, LLP<br>803 South Calhoun Street, Suite 400<br>Fort Wayne, IN  46802 |

By:/s/ Elizabeth A. Whelan_____
    Elizabeth A. Whelan
    Deputy Attorney General

Office of Attorney General
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Telephone:  317-234-3089
Facsimile:   317-232-7979