IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN THE MATTER OF: | Chapter 11 |
| AUBURN FOUNDRY, INC. | BK Case No. 04-10427 |
| Debtor. | |

**ORDER AUTHORIZING AND APPROVING SALE OF PLANTS AND
RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

Upon consideration of the motion (the "Motion" or "Sale Motion")[1] of Auburn Foundry, Inc., as debtor in possession ("AFI" or the "Debtor"), for the entry of an order authorizing and approving the sale (the "Sale") of Property free and clear of all liens, claims and interests; all interested parties having been afforded an opportunity to be heard with respect to the Motion; the Court having reviewed and considered (i) the Motion, and (ii) the objections thereto, if any; it appearing that the relief requested in the Motion and approval of the sale of the Property is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and based on the Motion, and the record in this case, the Court makes the following findings:

A.  On February 8, 2004 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is a manufacturer of ductile and grey iron cast products for the automobile, truck, recreational vehicle and appliance industries.

B.  Since the Petition Date, AFI has continued to manage its affairs and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

C.  On January 20, 2005, the Debtor filed herein a plan of reorganization ("Plan") and disclosure statement ("Disclosure Statement"). The Plan was premised upon a sale of certain

---

[1] Capitalized terms not otherwise defined carry the same meanings ascribed to them in the Sale Motion.

CHICAGO/#1368957.6

assets to AFI, LLC, an entity to be formed by certain insiders of the Debtor. Because of changes in Debtor's circumstances that Plan has now been withdrawn.

    D.    The Debtor has two manufacturing facilities in the State of Indiana: an older facility in the City of Auburn (Plant 1) and a newer facility near Interstate 69 (Plant 2). Plant 1 is closed. As of the filing date of the Sale Motion, Plant 2 was an operating facility whose operations were financed with consensual cash use and extensions of credit from AFI's current senior secured creditor, Summitbridge National Investments, LLC ("Summit").

    E.    As set forth in the Motion, Debtor wishes to sell its assets in two parcels. The first parcel, described herein as the "Plant 2 Assets," consists of all of Plant 2's manufacturing equipment, land, buildings, accounts receivable and remaining inventories (subject to prior purchases by companies which have entered into post-petition accommodation agreements with AFI), including but not limited to scrap metal, alloys, supplies, and spare parts associated with Plant 2, the maintenance and pattern building located adjacent to Plant 1, and several assets located in Plant 1, including the "Coremaking equipment," several air handlers, and several other pieces of ancillary equipment, along with certain office furniture and equipment from the main office building, all of which is more fully described in the Asset Purchase Agreement (Plant 2), a copy of which is attached hereto as Exhibit "A" (the "Plant 2 APA"). The second parcel, described herein as the "Plant 1 Assets," includes the Plant 1 site and its equipment (to the extent not included in the Plant 2 Assets), and the main office building, all of which is more fully described in the Asset Purchase Agreement (Plant 1), a copy of which is attached hereto as Exhibit "B" (the "Plant 1 APA"). The Plant 1 Assets and Plant 2 Assets are sometimes referred to herein collectively as the "Property."

F.    This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

G.    The Debtor actively marketed the Property to more than five potential buyers who expressed a serious interest in an acquisition of the Plant 2 Assets. It also received more than one written offer for the Plant 1 Assets. These potential buyers are referred to herein as the "Potential Purchasers."

H.    The Debtor made detailed lists of its assets (e.g., equipment) available, upon request, to the Potential Purchasers.

I.    On or about March 31, 2005, AFI filed a motion herein (the "Initial Sale Motion") in which it stated that, subject to Court approval, AFI had accepted an offer from The Reserve Group, an Akron, Ohio-based entity, to acquire the Plant 2 Assets, through an affiliate to be formed, for the sum of $4,000,000 plus 70% of the net book value of inventory at the date of sale. A copy of The Reserve Group's offer was attached to the Initial Sale Motion as Exhibit A. The Reserve Group has no affiliation with insiders of the Debtor or with AFI, LLC, the proposed purchaser of certain assets identified in the Plan. The Reserve Group also bid $1,100,000 for the Plant 1 Assets and AFI tentatively accepted that offer as well subject to Court approval.

J.    AFI adopted certain bid procedures (the "Bid Procedures") which it included in the Initial Sale Motion and communicated to the Potential Purchasers. Under the Bid Procedures, offers for the Property in excess of The Reserve Group's offer were required to be submitted to the Debtor's counsel on or before April 15, 2005. If AFI received any such higher offers, it would conduct an auction sale of the Plant 1 Assets and Plant 2 Assets on April 18,

2005 (the "Auction Date"). AFI indicated that it would, in all events, conduct an auction sale of the Plant 1 Assets on April 18, 2005 and seek approval for such sale at a subsequent sale hearing.

K.  Although the auction described in the Initial Sale Motion was not required by § 363 of the Code (i.e., AFI could have sought Court approval for a private sale to The Reserve Group), it took this additional step to ensure that it received the highest possible value for the Property. AFI informed the Potential Purchasers that no closing would occur prior to this Court's approval of any sale.

L.  The Reserve Group's offer included the assumption of real estate tax liability for Plant 2 (payable over the Indiana statutory installment period) and post-petition manufacturing trade payables of no more than $400,000 pursuant to the terms described more fully in the offer attached to the Initial Sale Motion.

M.  AFI also required that each bid fully disclose the identity of entities, if any, which shall be acquiring directly or indirectly a portion of the Debtor's assets under or in connection with a bid. Each bid was required to provide sufficient information regarding both the bidder and partners, if any, to satisfy the Debtor with respect to the requirements of § 363(m) of the Bankruptcy Code, and specifically must disclose whether any officers, directors or shareholders of Debtor are insiders of the Potential Purchaser or has an agreement to become such. AFI, LLC did not participate as a Potential Purchaser. None of the Potential Purchasers disclosed insider participation in their bids.

N.  At the time AFI filed the Initial Sale Motion, the Debtor's prior secured lenders, Bank of America National Association and GMAC Commercial Finance, LLC (jointly, the "Prior Lenders"), agreed to consent to further use of cash collateral only if AFI filed a (i) § 363 sale motion late in the day on March 31, 2005, with service to follow one day later and (ii) asked

this Court to set a hearing on the motion one day after the expiration of the 20-day notice period (rather than utilizing negative notice and awaiting a Court order - or a hearing on any objections - thereafter). To that end, AFI filed a separate Request for Hearing on April 1, 2005 seeking a hearing date on April 22, 2005.

O.    This Court denied the Request for Hearing on April 11, 2005. At the insistence of the Prior Lenders, whose consent to cash use was still set to expire on April 22, 2005, the Debtor filed an emergency request for shortened notice of a sale hearing on April 11, 2005. The Court denied this request by Order dated April 13, 2005.

P.    On or about April 13, 2005, AFI filed a second sale motion (the "Second Sale Motion") by which it utilized 20-days negative notice to approve substantially the same sale process embodied in the Initial Sale Motion.

Q.    On or about April 15, 2005, AFI learned that the Prior Lenders transferred all of their right, title and interest in and to all claims they held against the Debtor to Summit.

R.    By April 15, 2005, AFI had published notice of the auction in leading Fort Wayne newspapers for three consecutive days. Several prominent newspaper articles also summarized the Bid Procedures prior to the auction.

S.    As of April 15, 2005, AFI had received three qualified bids for the Plant 2 Assets and two qualified bids for the Plant 1 Assets, apart from Summit's credit bidding rights pursuant to § 363(k) of the Code.

T.    AFI conducted an auction at 9:00 a.m. at the offices of Baker & Daniels in Fort Wayne, Indiana. The auction was attended by (1) AFI and its representatives, (2) representatives and attorneys of the Potential Purchasers bidding at the auction, and (3) counsel for the Unsecured Creditors' Committee.

U.    On the Auction Date, AFI conducted an auction for the Plant 1 Assets, then the Plant 2 assets, and finally, the two parcels combined (in the event a combination offer would exceed individual offers for the two parcels). Competitive bidding ensued. The highest and best bid for the Property was Summit, which placed a combined credit bid of $12,000,000 for both parcels and agreed to assume property taxes on both Plant 1 and Plant 2.

V.    Summit's counsel, in response to a request by Debtor's counsel, confirmed on the record that Summit is not affiliated with any insiders of the Debtor.

W.    No other or further notice of the Second Sale Motion, the hearing or the entry of this Sale Order is necessary.

X.    Notice of the Second Sale Motion was timely served upon all creditors and other parties in interest upon whom service is required, and such notice satisfies the provisions Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and any other notice requirements.

Y.    The Auction was conducted without collusion and in good faith.

Z.    Subsequent to the Auction Date, Summit commenced negotiations with Auburn Investment Company, LLC ("AIC") concerning the designation of AIC as the "Purchaser" under the Plant 1 APA (the "Plant 1 Purchaser"). In addition, Summit preliminarily designated Metal Technologies Auburn, LLC ("MTA"), a limited liability company of which Summit is a member, as the Purchaser under the Plant 2 APA (Summit and/or MTA shall hereinafter be referred to as the "Plant 2 Purchaser").

AA.    Neither the Debtor, the Plant 1 Purchaser nor the Plant 2 Purchaser engaged in any conduct that would cause the sale of substantially all of the Debtor's assets to be avoided under 11 U.S.C. § 363(n).

BB. The Debtor negotiated the Plant 1 APA and the Plant 2 APA (jointly, the "Agreements") with the Plant 1 Purchaser and the Plant 2 Purchaser, respectively, in good faith and at arm's length. The Agreements comport with acceptable commercial standards. The Debtor believes, based on the potential for competitive bidding and the preservation of credit bidding rights for secured creditors, that the credit bid amount is in excess of fair market value. Moreover, to the best of the Debtor's knowledge and belief, neither the Plant 1 Purchaser or the Plant 2 Purchaser have any connections with the Debtor or its estate, and the Debtor consequently believes that the Plant 1 Purchaser and the Plant 2 Purchaser are each good faith purchasers, entitled to the protection afforded by 11 U.S.C. § 363(m). The Debtor's intended sale of the Property under the Agreements shall be free and clear of all liens, claims or other interests, other than real estate taxes respecting the real property purchased by the Plant 1 Purchaser and the Plant 2 Purchaser.

CC. The sale of substantially all of the Debtor's assets represents the valid and reasonable exercise of the Debtor's business judgment. The Debtor has demonstrated both (i) good, sufficient and sound business purpose and justification pursuant to 11 U.S.C. §§ 105, 363 and 365; and (ii) compelling circumstances for the sale of such assets pursuant to 11 U.S.C. §363(b), prior to the confirmation of, and outside of, a plan or reorganization.

DD. The findings of fact and conclusion of law set forth in this Sale Order shall constitute the Court's findings and conclusions of law pursuant to bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, or to the extent any conclusion of law shall be determined to be a finding of fact, they shall be so deemed.

**NOW THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted in its entirety and as further described herein.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3. The proposed sale of the Property, and all of the terms and conditions thereof, is hereby approved.

4. Pursuant to 11 U.S.C. § 363(b), the Debtor is authorized to consummate the Sale, on substantially the same terms as set forth in the Agreements (as same be amended, changed or modified), pursuant to and in accordance with the terms and conditions of the Motion.

5. Pursuant to 11 U.S.C. § 365, the Debtor is authorized to assume and assign the Assumed Contracts in the Plant 2 APA to the Plant 2 Purchaser.

6. The Debtor is authorized to execute and deliver, and is empowered to perform under, consummate and implement, the Agreements (as same be amended, changed or modified), together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreements, and to take all further actions as may be requested by the Plant 1 Purchaser and the Plant 2 Purchaser for the purpose of assigning, transferring, granting, conveying, conferring, reducing to possession or taking such other action as may be necessary or appropriate to effectuate the transactions contemplated in each of the Agreements, to (a) the Plant 1 Purchaser, the "Acquired Assets" under the Plant 1 APA; and (b) the Plant 2 Purchaser, the "Acquired Assets" under the Plant 2 APA.

7. On the Closing Date under each of the Agreements and except as expressly permitted or otherwise specifically provided for in the Agreements or this Sale Order, pursuant to 11 U.S.C. §§ 105(a), 363(f) and 365, the Property shall be transferred to the Plant 1 Purchaser

and the Plant 2 Purchaser, as applicable, free and clear of all liens, claims and interests of any kind or nature whatsoever, including, without limitation, administrative and priority claims asserted in the Debtor's bankruptcy case, claims asserted against the Debtor for personal property taxes, claims asserted against the Debtor by current and former employees of the Debtor under State or Federal laws or claims asserted against the Debtor based upon Environmental Laws (as that terms is defined in the Agreements) (collectively, the "Claims"), other than real estate taxes respecting the real property purchased by the Plant 1 Purchaser and the Plant 2 Purchaser in accordance with the Agreements.

8. The transfer of the Acquired Assets to the Plant 1 Purchaser and the Plant 2 Purchaser pursuant to the Agreements (as applicable) constitutes a legal, valid and effective transfer of the Property, and vests (a) the Plant 1 Purchaser with all right, title and interest of the Debtor in and to the Acquired Assets under the Plant 1 APA; and (b) the Plant 2 Purchaser with all right, title and interest of the Debtor in and to the Acquired Assets under the Plant 2 APA, free and clear of all liens, Claims and interests of any kind or nature whatsoever, other than real estate taxes respecting the real property purchased by the Plant 1 Purchaser and the Plant 2 Purchaser.

9. Summit's $12 million credit bid under the Agreements is fair and reasonable under the circumstances of this case and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

10. This Court retains sole and exclusive jurisdiction to enforce and implement the terms and provisions of the Agreements (as same be amended, changed or modified) any waivers and consents thereunder, and each of the agreements executed in connection therewith in all

CHICAGO/#1368957.6

respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Plant 1 Purchaser and/or the Plant 2 Purchaser (as applicable), free and clear of all liens, Claims and interests of any kind or nature whatsoever, other than real estate taxes respecting the real property purchased by the Plant 1 Purchaser and the Plant 2 Purchaser, (b) compel performance of other obligations owed to the Debtor, (c) resolve any disputes arising under or related to the Agreements, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Sale Order.

11. The transactions contemplated by the Agreements are undertaken by each of the Plant 1 Purchaser and the Plant 2 Purchaser in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Plant 1 Purchaser and/or the Plant 2 Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date under the Plant 1 APA or the Plant 2 APA (as applicable). The Plant 1 Purchaser and the Plant 2 Purchaser are each found to be a purchaser in good faith, and each are entitled to all of the protections afforded by 11 U.S.C. § 363(m).

12. The terms and provisions of the Agreement (as may be amended, changed or modified) and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Debtor's estate, and its creditors, the Plant 1 Purchaser, the Plant 2 Purchaser and their respective affiliates, members, successors and assigns, and any affected third parties including, but not limited to, all persons asserting liens, Claims and interests in the assets to be sold to the purchasers pursuant to the Agreements.

13. The failure specifically to include any particular provisions of the Agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the

intent of the court that the Agreements (as may be amended, changed or modified) be authorized and approved in its entirety.

14. The Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties with the consent of the Summit, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

15. Each and every federal, state and local agency, department or governmental authority is hereby authorized to accept this Sale Order as binding authority and no further approval, consent or license of any federal, state or local agency, department or authority is necessary or required to effectuate, consummate, and implement the sale of the Debtor's assets in accordance with the Agreements or this Sale Order.

16. Neither conversion of this case to a case under Chapter 7 of the Bankruptcy Code nor dismissal of this case shall have any effect upon the rights of the Plant 1 Purchaser or the Plant 2 Purchaser under or in connection with the Agreements or this Sale Order, and such purchasers shall be entitled to all of the rights and benefits afforded under the Agreements (as applicable), the instruments and documents to be executed and delivered in connection therewith and this Sale Order. The Agreements and this Sale Order shall be binding upon and enforceable against any trustee appointed in this case or in any case to which this case may be converted. No plan of reorganization or liquidation filed or confirmed in this case shall alter in any way the terms of the Agreements or this Sale Order, which terms shall be deemed incorporated into such plan and the order confirming such plan. In the event of a conflict between the terms of the

Agreements and the terms of any plan of reorganization or liquidation confirmed in this case, the terms of the Agreements shall govern and control.

17. The sale of the Debtor's assets under the Plant 1 APA and the Plant 2 APA is a transfer pursuant to 11 U.S.C. § 1146(c) and may not be taxed under any law imposing a stamp, transfer, recording or similar tax. Each federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entitles who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report to insure any title or state of title in or to any of the Acquired Assets under the Plant 1 APA or the Plant 2 APA, is authorized to accept any and all documents and instruments necessary and appropriate to effectuate the transfer of such assets without imposition or payment of any stamp, transfer, recording or similar tax.

18. Except as may be otherwise specifically provided in the Plant 1 APA or the Plant 2 APA (as applicable) neither the Plant 1 Purchaser nor the Plant 2 Purchaser shall be liable for any claims against the Debtor, whether relating to or arising out of the operation of the Debtor's business, fixed or contingent, disclosed or undisclosed, and the Plant 1 Purchaser and the Plant 2 Purchaser, and their respective affiliates and members, shall have no successor liabilities of any kind or character, including, without limitation, for any products manufactured by the Debtor and placed into the stream of commerce prior to the consummation of the transactions contemplated in the Agreements. Upon the closing of the sales contemplated by the Agreements, the creditors of the estate shall not be permitted to satisfy any claims they may have against the estate from

the assets of the Plant 1 Purchaser, the Plant 2 Purchaser or their respective affiliates and members, including the Acquired Assets under the Plant 1 APA or Plant 2 APA, and such claims, shall be satisfied, if at all, out of the remaining property of the estate.

19. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, registrations or other documents or agreements evidencing claims against the Acquired Assets under the Plant 1 APA or Plant 2 APA, shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing or registration and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all such claims, each of the Debtor, the Plant 1 Purchaser and the Plant 2 Purchaser is hereby authorized and directed to execute and file or register such statements, instruments, releases, registrations and other documents on behalf of the person or entity with respect to such assets.

20. All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets under the Plant 1 APA or the Plant 2 APA are hereby directed to surrender possession of such assets to the appropriate purchaser on the Closing Date.

21. Each of Thomas Woehlke, David Hunter and Dennis Maude are authorized to sign the Plant 1 APA and the Plant 2 APA on the Debtor's behalf.

22. As provided by Fed. R. Bankr. P. 6004(g) and 6006(d), this Sale Order shall not be stayed for 10 days after the entry of the Sale Order and shall be effective and enforceable immediately upon entry.

23. The provisions of this Sale Order are nonseverable and mutually dependent.

24. In the event that either the Plant 1 Purchaser or the Plant 2 Purchaser consummates the transactions contemplated in the Plant 1 APA or Plant 2 APA (as applicable) while an appeal of this Sale Order is pending, such purchaser shall be entitled to rely upon the

protections of 11 U.S.C. §§363(m), absent any stay pending appeal granted on or before the consummation of the purchase by a court of competent jurisdiction.

25. Other than as specifically set forth herein, nothing contained herein is intended to impair or effect the rights of any party seeking to assert an administrative claim in the Debtor's bankruptcy case.

Dated: June 8, 2005

ENTERED:

Robert E. Grant
United States Bankruptcy Judge

Prepared by:

John R. Burns III (#3016-02)
Mark A. Werling (#20426-02)
Baker & Daniels
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802
Tel: 260-424-8000

CHICAGO/#1368957.6